# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BOARD OF COMMISSIONERS OF THE SOUTHEAST LOUISIANA FLOOD PROTECTION AUTHORITY – EAST, INDIVIDUALLY AND AS THE BOARD GOVERNING THE ORLEANS LEVEE DISTRICT, THE LAKE BORGNE BASIN LEVEE DISTRICT, AND THE EAST JEFFERSON LEVEE DISTRICT,** | * * * * * * * * * | **Civil action no. 2:13-cv-05410**<br><br>**Section: G**<br><br>**Division: 3**<br><br>**Judge: Nannette Jolivette Brown**<br><br>**Magistrate: Daniel E. Knowles, III** |
| **Plaintiffs** | * * | |
| **v.** | * * | |
| **TENNESSEE GAS PIPELINE COMPANY, LLC, ET AL.,** | * * * | |
| **Defendants.** | * | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING LOUISIANA ACT 544

Gladstone N. Jones, III (La. No. 22221)
Eberhard D. Garrison (La. No. 22058)
Kevin E. Huddell (La. No. 26930)
Emma Elizabeth Antin Daschbach (La. No. 27358)
**Jones, Swanson, Huddell & Garrison, L.L.C.**
601 Poydras St., Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

James R. Swanson (La. No. 18455)
Brent B. Barriere (La. No. 2818)
Benjamin D. Reichard (La. No. 31933)
**Fishman, Haygood, Phelps, Walmsley Willis & Swanson, L.L.P.**
201 St. Charles Ave.
Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250

J. Michael Veron (La. No. 7570)
J. Rock Palermo III (La. No. 21793)
Alonzo P. Wilson (La. No. 13547)
Turner D. Brumby (La. No. 33519)
Ashley E. Philen (La. No. 31285)
**Veron, Bice, Palermo & Wilson, L.L.C.**
721 Kirby St. (70601)
P.O. Box 2125
Lake Charles, Louisiana 70602
Telephone: (337) 310-1600
Facsimile: (337) 310-1601

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.    Background ................................................................................................................... 3

       A.     Plaintiffs' Claims ............................................................................................ 3

       B.     LOGA's Unsuccessful Lawsuit ...................................................................... 5

       C.     2014 Louisiana Act No. 544 ........................................................................... 6

II.   Analysis ..................................................................................................................... 10

       A.     Standard ........................................................................................................ 11

       B.     Act 544 Does Not Apply To SLFPA-E Or The Levee Districts ..................... 11

               1.    Both SLFPA-E And The Levee Districts Are Political Subdivisions
                     Outside The Scope Of "Local Governmental Entities" Under The
                     Coastal Zone Management Laws ......................................................... 11

               2.    Even If SLFPA-E Individually Is Contemplated By Act 544, The
                     Levee Districts Are Distinct Entities Not Within The Statute's
                     Reach .................................................................................................. 17

       C.     Act 544 Violates The Louisiana State Constitution ....................................... 19

               1.    Act 544 Violates Separation Of Powers ............................................. 19

               2.    Act 544 Violates The Ban On Local Or Special Laws ........................ 23

               3.    Act 544 Violates The Advertising Requirement For Local
                     Or Special Laws ................................................................................. 26

               4.    Act 544 Violates The Constitutional Public Trust Doctrine ................ 27

               5.    Act 544 Violates Procedural Public Notice Requirements .................. 30

       D.     Act 544 Does Not Prohibit The Plaintiffs' Causes Of Action ........................ 32

III.  Conclusion ................................................................................................................ 35

i

## TABLE OF AUTHORITIES

***Cases***

*A&M Pest Control Service, Inc. v. LaBurre*, 247 La. 315 (La. 1965) .....................................30, 31

*Avenal v. State*, 2003-3521 (La. 10/19/2004), 886 So. 2d 1085 .............................................28, 29

*Bd. of Com'rs of Orleans Levee Dist. v. Dep't of Natural Resources*, 483 So. 2d 958 (La. 1986) .....................................................................................................................................14

*Burnette v. Stalder*, 2000-2167 (La. 6/29/2001), 789 So. 2d 573 .................................................19

*Catahoula Parish Sch. Bd. v. La. Machinery Rentals, LLC*, 2013 WL 5788749 (La. Oct. 15, 2013) ...............................................................................................................................16

*City of New Orleans v. Bd. of Com'rs of Orleans Levee Dist.*, 640 So. 2d 237 (La. 1994) ..........15

*City of New Orleans v. La. Mut. Ins. Co.*, 26 La. Ann. 499 (La. 1874)........................................20

*Crier v. Whitecloud*, 496 So. 2d 305 (La. 1986).........................................................................21

*Deer Enters., LLC v. Parish Council of Washington Parish*, 2010-671 (La. 1/19/2011), 56 So. 3d 936 ...................................................................................................................23, 24, 25

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568 (1988)......................................................................................................................33

*Forum for Equality PAC v. McKeithen*, 2004-2477 (La. 1/19/2005), 893 So. 2d 715 .................31

*Gardner v. Zulu Social Aid & Pleasure Club, Inc.*, 98-1040 (La. App. 4 Cir. 2/10/99), 729 So. 2d 675 ...................................................................................................................34

*In the Matter of Rubicon, Inc.*, 95-108 (La. App. 1 Cir. 2/14/1996), 670 So. 2d 475 .............28, 31

*In re Orso*, 283 F.3d 686 (5th Cir. 2002).....................................................................................22

*In re U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013) ..........................................33

*La. Federation of Teachers v. State*, 2013-120 (La. 5/7/2013), 118 So. 3d 1033 ...................30, 31

*La. High Sch. Athletics Ass'n v. State*, 2012-1471 (La. 1/29/2013), 107 So. 3d 583 ...................24

*La. Indep. Auto Dealers Ass'n v. State*, 295 So. 2d 796 (La. 1974) ............................................30

*La. Paddlewheels v. La. Riverboat Gaming Comm'n*, 94-2015 (La. 11/30/1994), 646 So. 2d 885..................................................................................................................................23

*Kennedy Marr Offshore Singapore Pte Ltd. v. Techcrane Intern. Inc.*, 2013 WL 3283343 (E.D. La. 6/27/2013) ..................................................................................................11

*Kimball v. Allstate Ins. Co.*, 97-2885 (La. 4/14/98), 712 So. 2d 46 .................................23, 25, 26

*Mallard Bay Drilling, Inc. v. Kennedy*, 2004-1089 (La. 6/29/2005), 914 So. 2d 533..................23

*Morial v. Smith & Wesson Corp.*, 2000-1132 (La. 4/3/2001), 785 So. 2d 1 ...............................21

*New Orleans Campaign for a Living Wage v. City of New Orleans*, 825 So. 2d 1098 (La. 9/4/2002) ..........................................................................................................................15

*Pociask v. Moseley*, 122 So. 3d 533 (La. 6/28/2013) .................................................................13

*Reeder v. North*, 97-239 (La. 10/21/1997), 701 So. 2d 1291 ......................................................21

*Save Ourselves, Inc. v. La. Env't'l Control Comm'n*, 452 So. 2d 1152 (La. 1984).......................28

*Soileau v. Smith True Value & Rental*, 2013 WL 3305265 (La. June 28, 2013)..........................16

*State v. Sissons*, 292 So. 2d 523 (La. 1974).................................................................................21

*State v. Stirgus*, 437 So. 2d 249 (La. 1983) ................................................................................26

*State Licensing Bd. for Contractors v. State Civil Serv. Comm'n*, 123 So. 2d 76 (La. 1960) ..............................................................................................................................20

*Unwired Telecom Corp. v. Parish of Calcasieu*, 2003-732 (La. 1/19/2005), 903 So. 2d 392........................................................................................................................22, 23

*Vogt v. Bd. of Com'rs of Orleans Levee Dist.*, 294 F.3d 684 (5th Cir. 2002)...............................11

### <u>Statutes and Legislative Materials</u>

Fed. R. Civ. P. 56 .......................................................................................................................11

La. C.C. art. 9 .............................................................................................................................16

La. C.C. art. 13 ...........................................................................................................................12

La. C.C. art. 656 ...........................................................................................................................4

La. C.C. art. 667 ...........................................................................................................................4

La. Const. Art. II, § 2 ...............................................................................................................2, 19

La. Const. Art. III, § 12 ............................................................................................................2, 23

La. Const. Art. III, § 13 ............................................................................................................2, 26

La. Const. Art. III, § 15 ................................................................................................2, 30

La. Const. Art. VI, § 38.1 ...........................................................................................13, 18

La. Const. Art. VI, § 44 ................................................................................................2, 14

La. Const. Art. IX, § 1 ..................................................................................................2, 27

La. R.S. § 1:3 .....................................................................................................................12

La. R.S. § 38:2 ...................................................................................................................14

La. R.S. § 38:330.1 ............................................................................................................14

La. R.S. § 38:330.2 ......................................................................................................17, 18

La. R.S. § 38:330.3 ............................................................................................................18

La. R.S. § 38:330.7 ............................................................................................................14

La. R.S. § 38:330.10 ..........................................................................................................18

La. R.S. § 38:2319.2 ..........................................................................................................15

La. R.S. § 49:214.1 ............................................................................................................13

La. R.S. § 49:214.23 ...................................................................................................1, 12, 15

La. R.S. § 49:214.31 ..........................................................................................................13

La. R.S. § 49:214.36 .................................................................................4, 11, 12, 32, 33

2014 La. Acts. No. 544 .............................................................................................. *passim*

2014 SB 469....................................................................................................................... *passim*

2014 SB 531......................................................................................................................7

La. Sen. J., 2014 Reg. Sess. No. 1 (March 10, 2014) ..................................................7, 8

La. Sen. J., 2014 Reg. Sess. No. 1 (May 6, 2014) .........................................................10

La. Sen. J., 2014 Reg. Sess. No. 1 (May 7, 2014) .........................................................10

### ***Other Authorities***

La. A.G. Op. 00-486 ..........................................................................................................14

La. A.G. Op. 980363(A) (2002) .......................................................................................15

La. A.G. Op. 06-129 ...................................................................................................................14

H. Alston Johnson III, *Legislative Process,* 36 La. L.Rev. 549 (1976)..........................................23

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING LOUISIANA ACT 544

The plaintiffs—the Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East, individually ("SLFPA-E"), and as the board governing the Orleans Levee District, the Lake Borgne Basin Levee District, and the East Jefferson Levee District ("the Levee Districts")—submit this memorandum in support of their motion for entry of a partial summary judgment on the defense that the plaintiffs' claims are foreclosed by 2014 Louisiana Act No. 544 ("Act 544"). Before this Court could begin to address the merits of the plaintiffs' causes of action asserted in their Petition, opponents of the plaintiffs' lawsuit rushed to two other fora: the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana ("19th JDC"), in a lawsuit filed by the Louisiana Oil and Gas Association ("LOGA"), and, when the LOGA lawsuit did not go their way, the Louisiana legislature. A stable of legislative bills was filed with the purported aim to retroactively kill this lawsuit. Only one of the bills, SB 469, largely through the efforts of eleventh-hour legislative gamesmanship on the part of the opponents of this lawsuit, made it all the way through the legislative process, enacted as Act 544.

Due to the rush and the convolutions of the legislative process, however, Act 544 did not come out the way the lawsuit's opponents may have hoped. For example, the Act does not actually include SLFPA-E or the Levee Districts within the scope of the entities prohibited from pursuing various claims, because the Act's prohibitory language applies only to "state or local governmental entit[ies]," a phrase with a distinct legal meaning that does not encompass SLFPA-E or the Levee Districts. Act 544 is an amendment to the Louisiana Coastal Zone Management law, La. R.S. §§ 49:214.21 *et seq.*, which specifically defines "local government" to only include parish governments. La. R.S. § 49:214.23(8). That suffices to end the debate; neither SLFPA-E nor the Levee Districts are units of general-jurisdiction parish government and so the terms of

1

Act 544 do not apply to them. But as further support, the Louisiana Constitution similarly defines "local governmental subdivision" to only include municipalities and parishes, with other Article VI entities, which includes SLFPA-E and the Levee Districts, defined to fall within the broader grouping of "political subdivisions." La. Const. Art. VI, § 44(1), (2). Accordingly, under Louisiana law the phrase "state or local governmental entity" does not include regional flood protection authorities or their constituent levee districts.

Moreover, even if this Court were to look past the unambiguous language of Act 544 and conclude that Act 544 does include the plaintiffs within its prohibitory scope, it must then look to Act 544's constitutionality. Act 544 violates the Louisiana Constitution five independent ways:

1. Act 544 violates constitutional **separation of powers** under La. Const. Art. II, § 2, by seeking to retroactively apply a legislative interpretation of an existing law in a matter over which the judiciary had already asserted jurisdiction;

2. Act 544 violates the constitutional prohibition against **improper special or local laws** under La. Const. Art. III, § 12(A)(3), by excepting from its savings provision only "local and regional flood protection authorities," a classification limited to localities within the territorial jurisdiction of SLFPA-E and SLFPA-West;

3. Act 544 violates the constitutional requirement under La. Const. Art. III, § 13(A), to **properly advertise** otherwise permissible local or special laws, because SB 469 was not advertised prior to consideration by the Legislature as required by the constitution;

4. Act 544 violates the constitutional **public trust doctrine** under La. Const. Art. IX, § 1, because under that doctrine the state may not take away claims from governmental entities that enable them to redress issues of coastal restoration, particularly insofar as those issues are related to hurricane protection; and

5. Act 544 violates the **public-notice-related procedural protections** of La. Const. Art. III, § 15(A), (C), and (D), because the legislative sleight of hand that replaced the title and operative of SB 469 with a new title and provisions—borrowed liberally from the stalled SB 531—violated the single-object, amendment-germaneness, and three-readings requirements of the constitution.

Lastly, even if this Court finds that the Act includes the plaintiff entities within its prohibitory scope and is not unconstitutional in any of the above-enumerated ways, the specific causes of action included by the plaintiffs in their Petition do not trigger the Act's prohibitions.

For these reasons, the plaintiffs request that this Court enter partial summary judgment finding that, as a matter of law, any defense based on Act 544 is foreclosed.

## I.    Background

### A.    Plaintiffs' Claims

On July 24, 2013, the plaintiffs filed their Petition for Damages and Injunctive Relief in the Civil District Court for the Parish of Orleans.[1] That Petition was removed to this Court on August 13, 2013,[2] and this Court recently denied the plaintiffs' motion to remand.[3] The Petition was filed on behalf of SLFPA-E and the Levee Districts.[4] The plaintiffs are charged with operating and maintaining a flood and hurricane protection system that guards millions of people and billions of dollars' worth of property in five parishes in and around the metropolitan New Orleans area. As stated in the Petition's introductory section, the state constitutional public trust doctrine, La. Const. Art. IX, § 1, vests SLFPA-E with the duty of "monitoring the integrity of Louisiana's coastal lands, which are an essential complement to the Authority's flood protection system and which assist the Authority in protecting the people and properties behind the flood walls and levees."[5]

The plaintiffs allege that acts and omissions of each of the oil, gas, and pipeline defendants caused (and continue to cause) the weakening of coastal lands and loss of lands in a

---

[1] R. Doc. 1-2 ("Petition").
[2] R. Doc. 1.
[3] R. Doc. 363.
[4] R. Doc. 1-2, at 4 (¶¶ 1.1, 1.2). As discussed below, the Board of Commissioners of SLFPA-E is empowered to act both on behalf of SLFPA-E and on behalf of the constituent Levee Districts, and filed this lawsuit in both distinct capacities. In recognition of these distinct entities' roles in this litigation, throughout this memorandum they are referred to as "the plaintiffs," though all act through the same Board.
[5] R. Doc. 1-2, at 2.

defined "Buffer Zone" that serves as a first line of defense in front of the levees and hurricane protection system operated and maintained by the plaintiffs, leading to an increased burden of storm surge against that protection system. Accordingly, the plaintiffs assert six causes of action against the defendants: (1) negligence, based on the defendants' failure to abide by a standard of care defined in part by various permits, rights-of-way, and federal and state statutory and regulatory regimes; (2) strict liability, based on the defendants' custody and garde over the canals in the Buffer Zone and the defendants' knowledge of the defects in the canals caused by their failure to exercise reasonable care; (3) natural servitude of drain, based on the defendants' actions to make the flow of water onto the plaintiffs' servient estate more burdensome, in violation of La. C.C. art. 656; (4) public nuisance, because the defendants' actions constitute an unreasonable interference with the health, safety, peace, and comfort of the southeast Louisiana communities protected by the plaintiffs' levees and flood protection systems; (5) private nuisance, based on the defendants' actions violating the limitations on use of property and the continuing duty not to aggravate the servient estate as set forth in La. C.C. art. 667, *et seq.*; and (6) a third party beneficiary claim of breach of contract based on the defendants' breaches of express obligations in their permits and rights-of-way.

Notably, none of the plaintiffs' claims seek to enforce the permitting requirements under Louisiana's Coastal Zone Management program, an enforcement process that is contained at La. R.S. § 49:214.36. As discussed further below, only this specific enforcement mechanism was amended by Act 544. The plaintiffs neither rely on nor invoke § 214.36 as the source for any of their causes of action. In this Court's analysis of the motion to remand and whether the plaintiffs' claims raised a substantial issue of federal law, the Court observed the insignificance of the Petition's reference to Louisiana's Coastal Zone laws: After laying out the Petition's references

4

to the Rivers and Harbors Act, the Clean Water Act, and the federal Coastal Zone Management Act, this Court noted, "The Petition also mentions '[r]egulations related to rights-of-way granted across state-owned lands and water bottoms administered by the Louisiana Office of State Lands' as well as 'Louisiana coastal zone regulations.' However, aside from these general references, the Petition never points to any specific Louisiana statutes or regulations."[6] The Court then held, "These three federal statutes do not merely present 'one of multiple theories' that could support Plaintiff's negligence claims. Rather, *they are the only specific source of the duty Plaintiff must establish in order to prevail*."[7]

## B. LOGA's Unsuccessful Lawsuit

After this lawsuit was removed to this Court and the parties had fully briefed the motion to remand, the opponents of the lawsuit were not satisfied to leave disposition of the plaintiffs' claims solely in the hands of this forum. Their first step was to file a second lawsuit in state court in Baton Rouge. On December 13, 2013, LOGA brought suit in the 19th JDC against the Louisiana Attorney General.[8] While ostensibly challenging the Attorney General's approval of the SLFPA-E Board's resolution to hire special counsel to prosecute the claims in this action, the LOGA Petition clearly was aimed at attacking SLFPA-E's right of action in this lawsuit, raising arguments that SLFPA-E was not to be treated as other levee districts but as a state agency without independent legal rights. LOGA's Petition urged the 19th JDC to, among other things, (1) declare that La. R.S. § 42:263, the special counsel law applicable to levee boards, did not apply to SLFPA-E; (2) declare that any money received by SLFPA-E pursuant to resolution of this action would be state funds because SLFPA-E should be treated as a state agency; and (3)

---

[6] R. Doc. 363, at 66-67.
[7] R. Doc. 363, at 67 (emphasis added).
[8] Petition for Declaratory Judgment and Injunctive Relief, Case No. 626798 (19th JDC) ("LOGA Petition" or, more generally, "LOGA lawsuit") (Petition attached as Exh. 1 hereto).

enjoin implementation and performance of SLFPA-E's contract with the undersigned counsel because that performance (i.e., the prosecution of this lawsuit) "will result in irreparable injury to [LOGA and its members, many of whom are defendants in this lawsuit] as a result of its chilling effect on the exploration, production, development and transportation of the oil and gas resources of the State[.]"[9] SLFPA-E subsequently intervened in the LOGA Lawsuit.

By Judgment in open court, reflected in the minute entries for proceedings on March 10, 2014, Judge Janice Clarke of the 19th JDC adopted Findings of Fact and Conclusions of Law rejecting LOGA's claims, finding that "LOGA's request for injunctive relief was frivolous and a waste of the Court's and the Attorney General's time and resources."[10] Among other conclusions, that court held that "SLFPA-E is a political subdivision, not a state agency," and that, "[b]ecause SLFPA-E is a political subdivision and not a state agency, any funds that will be recovered by SLFPA-E will not be state funds."[11] That court also held that the Attorney General's treatment of SLFPA-E as a levee board was correct, and that the SLFPA-E resolution, including its statement of a "real necessity" to hire special counsel to pursue this lawsuit, was appropriate.[12] Accordingly, the LOGA lawsuit failed to kill this lawsuit.

### C.    2014 Louisiana Act No. 544

Opponents of this lawsuit then turned to the Louisiana legislature, where they filed almost a dozen bills in reaction to the plaintiffs' lawsuit, aimed at retroactively killing this lawsuit either through altering the ability of the plaintiffs to hire counsel, removing the SLFPA-E Board's political independence by changing the appointment process for that Board, stripping away the plaintiffs' standing to bring certain types of claims, or limiting the causes of action

---

[9] *Id.*
[10] LOGA Lawsuit, Findings of Fact and Conclusions of Law, at Finding of Fact ¶ XX (with the attendant minute entry, *in globo* Exh. 2 hereto).
[11] *Id.*, Conclusions of Law ¶¶ III-V.
[12] *Id.*, Conclusions of Law ¶¶ I-II.

available under Louisiana law.[13] One of these bills, SB 469, ultimately made it through the session to be enacted as Act 544, but its path through the legislature involves another bill, SB 531, and the interplay between those two bills is informative.

SB 531, by Senator R.L. "Bret" Allain, sought to add a new section to the Louisiana Coastal Zone Management law, at La. R.S. § 49:214.36.1. According to its title, this new section was

> relative to the authority of certain state and local government entities to bring causes of action arising from or related to certain permits issued in the coastal area; to provide relative to causes of action relating to certain permits issued in the coastal area against state or local governmental entities; and to provide for related matters.[14]

Under the proposed new § 49:214.36.1(A)(1) provided in SB 531,

> No state or local governmental entity, except the Department of Natural Resources, the attorney general, or the Coastal Protection and Restoration Authority, shall have, nor may pursue, any right or cause of action arising from or related to a state of federal permit … in the coastal area …, violation thereof, or enforcement thereof, or for damages or other relief arising from or related to any of the foregoing.[15]

SB 531 was pre-filed on February 28, 2014 and provisionally referred to the Senate Committee on Natural Resources.[16] On March 10, it was read by title on the Senate floor twice, then referred to the Senate Committee on Judiciary A instead of the Natural Resources Committee.[17] Lacking the votes for passage in that committee, action on SB 531 was deferred from its original committee hearing date on Tuesday, April 29, and no further action was taken on that bill.[18]

---

[13] *See, e.g.*, 2014 SB 79, SB 342, SB 469, SB 531, SB 546, SB 547, SB 553, SB 629, HB 799, HB 855, HB 862.
[14] Original SB 531, SLS 14RS-840 (Exhibit 3 hereto).
[15] *Id*.
[16] La. Legislature website, 2014 Regular Legislative Session, SB 531 Bill Information (http://www.legis.la.gov/legis/BillInfo.aspx?s=14RS&b=SB531&sbi=y) (last visited August 2, 2014).
[17] *Id*.; *see also* La. Sen. J., 2014 Reg. Sess. No. 1, at 50 (March 10, 2014).
[18] Senate Committee on Judiciary A, Agenda, April 29, 2014; and report of Final Disposition of Senate Bills, 2014 Regular Session, noting SB 531 "Died in House/Senate Committee") (*in globo* Exh. 4 hereto).

SB 469, in its original form, was pre-filed on February 28, 2014, and provisionally referred to the Senate Committee on Natural Resources.[19] It was read twice by its original title on the Senate floor on March 10 and referred to the Natural Resources committee.[20] The ***original*** version of SB 469 was authored by Senator Robert Adley.[21] Original SB 469, unlike SB 531, did not seek to add a new section to the Louisiana Coastal Zone Management law, but sought to amend the existing enforcement section at La. R.S. § 49:214.36.[22] By title, original SB 469 was

> to provide relative to the initiation or continuation of enforcement actions under the coastal zone management program by local governmental subdivision; to provide for a process for initiation or continuation of such actions; to provide for the disposition of funds collected by such actions; and to provide for related matters.[23]

Original SB 469 changed the enforcement section of the coastal zone law by replacing enforcement of the coastal use permitting scheme by "an appropriate district attorney, or a local government with an approved program," with enforcement by "a local governmental subdivision with an approved program[.]"[24] The primary change to the enforcement section by ***original*** SB 469 was to add a new subsection (J) to the existing enforcement section, requiring investigation and specific findings by the secretary of DNR prior to any enforcement action by a local governmental subdivision.[25]

After the deferral of SB 531 in the Senate Judiciary A Committee on April 29, SB 469 was set for the agenda to be heard in the Senate Natural Resources Committee on May 1.[26] In the evening of April 30, a series of proposed committee amendments to SB 469 were circulated that

---

[19]   La. Legislature website, 2014 Regular Legislative Session, SB 469 (http://www.legis.la.gov/legis/BillInfo.aspx?s=14RS&b=SB469&sbi=y) (last visited August 2, 2014).
[20] *Id.*; *see also* La. Sen. J., 2014 Reg. Sess. No. 1, at 44 (March 10, 2014).
[21] Original SB 469, SLS 14RS-829 (Exh. 5 hereto).
[22] *Id.*
[23] *Id.*
[24] *Id.* at 1 (proposed amendments to La. R.S. § 49:214.36(D)).
[25] *Id.* at 2 (proposed new La. R.S. § 49:214.36(J)).
[26] Senate Committee on Natural Resources, Agenda, May 1, 2014 (Exh. 6 hereto).

completely replaced the provisions of Senator Adley's original SB 469 with the operative

provisions from Senator Allain's languishing SB 531.[27] Indeed, Amendment No. 1 changed the

lead author of SB 469 from Senator Adley to Senator Allain.[28] Instead of SB 531's approach of

adding an entirely new section to the coastal zone management laws, proposed Amendment No.

7 to SB 469 took the approach of adding SB 531's prohibitory language into a new subsection

(O) to the existing enforcement section, La. R.S. § 49:214.36.[29] That new subsection (O)

provides,

> Except as provided in this Subpart, no state or local governmental entity shall
> have, nor may pursue, any right or cause of action arising from any activity
> subject to permitting under R.S. 49:214.21 et seq., 33 U.S.C. 1344 or 33 U.S.C.
> 408 in the coastal area …, or arising from or related to any use as defined by R.S.
> 49:214.23(13)[.][30]

Notably, amended SB 469 also abandoned original SB 469's change of "local government" to

"local governmental subdivision."[31] The amendments also changed the title of SB 469 to read:

> to provide relative to the initiation or continuation of enforcement actions under
> the coastal zone management program; to prohibit any state or local governmental
> entity from initiating certain causes of action; to provide for the uses of certain
> monies received by any state or local governmental entity; to allow any person or
> state or local governmental entity to enforce certain rights or administrative
> remedies; to provide terms, conditions, and requirements; and to provide for
> related matters.[32]

Overnight, the complexion of SB 469 was entirely changed, and the revamped SB 469

passed out of the May 1 Senate Natural Resources Committee, less than 24 hours later,[33] with the

eleventh-hour-proposed amendments.[34] On the Senate floor, SB 469 was read by its new title

---

[27] Senate Committee Amendments, SB 469 (Exh. 7 hereto).
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] The amendments were not even available for public review in the Committee room during the hearing.
[34] Engrossed SB 469, SLS 14RS-829 (Exh. 8 hereto).

only twice, on May 6 and May 7.[35] Prior to passage from the Senate floor on May 7, the Senate adopted an amendment that added a savings clause to the new subsection (O), as La. R.S. § 49:214.36(O)(5): "Nothing in this section shall alter the rights of any governmental entity, except a local or regional flood protection authority, for claims related to sixteenth section school lands or claims for damage to property owned or leased by such governmental entity."[36] In the House Committee on Natural Resources hearing of the bill on May 21, an amendment was adopted adding a Section 2 to SB 469 providing for retroactivity: "The provisions of this Act shall be applicable to all claims existing or actions pending on the Act's effective date and all claims arising or actions filed on or after that date."[37] As enrolled and subsequently signed by the Governor on June 6, 2014, SB 469—enacted as Act 544—contained the above provisions, as well as a provision saving contract-based claims from the Act's prohibitory scope: "Nothing in this Section shall prevent or preclude any person or any state or local governmental entity from enforcing contractual rights ...."[38]

## II.    Analysis

Act 544's convoluted path through the Louisiana legislature imbued it with both textual and constitutional defects that cause it to be inapplicable as a viable defense to the plaintiffs' claims. Therefore, as a matter of law, the plaintiffs are entitled to partial summary judgment in their favor, holding that Act 544 does not provide a defense to their claims.

---

[35]    La. Legislature website, 2014 Regular Legislative Session, SB 469 (http://www.legis.la.gov/legis/BillInfo.aspx?s=14RS&b=SB469&sbi=y) (last visited August 2, 2014); *see also* La. Sen. J., 2014 Reg. Sess. No. 1, at 15 (May 6, 2014); La. Sen. J., 2014 Reg. Sess. No. 1, at 21 (May 7, 2014).

[36] Senate Floor Amendments to Engrossed SB 469, SFASB 469 THOMASC 3865 (Exh. 9 hereto).

[37] House Committee Amendments to Reengrossed SB 469, HCASB469 375 5638 (Exh. 10 hereto).

[38] Enrolled Act 544, at new La. R.S. § 49:214.36(O)(4) (Exh. 11 hereto).

## A.        Standard

Summary Judgment under Federal Rule of Civil Procedure 56 is appropriate as to "each claim or defense—or the part of each claim or defense[.]" Fed. R. Civ. P. 56(A). "Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact" and the movant is entitled to judgment as a matter of law. *Kennedy Marr Offshore Singapore Pte Ltd. v. Techcrane Intern. Inc.*, 2013 WL 3283343, *3 (E.D. La. 6/27/2013) (granting motion for partial summary judgment to plaintiff on defendant's affirmative defense); *see also* Fed. R. Civ. P. 56.

## B.        Act 544 Does Not Apply To SLFPA-E Or The Levee Districts

### 1.        Both SLFPA-E And The Levee Districts Are Political Subdivisions Outside The Scope Of "Local Governmental Entities" Under The Coastal Zone Management Laws

The prohibitory scope of Act 544, set forth in La. R.S. § 49:214.36(O)(1), applies to any "state or local governmental entity." La. R.S. § 49:214.36(O)(1) ("Except as provided in this Subpart, no state or local governmental entity shall have, nor may pursue, any right or cause of action …"). As a threshold matter, neither SLFPA-E nor its constituent Levee Districts are "state" entities, a point recognized already by the 19th JDC in the LOGA lawsuit, where that court concluded that "SLFPA-E is a political subdivision, not a state agency[.]"[39] In particular, that court recognized that "La. R.S. § 38:330.1(A)(1) defines SLFPA-E as a levee board, which is statutorily defined as a political subdivision pursuant to La. R.S. § 38:281(6)."[40] Accordingly,

---

[39] LOGA Lawsuit, Findings of Fact and Conclusions of Law, at Conclusions of Law ¶¶ III-V (with the attendant minute entry, *in globo* Exh. 2 hereto).

[40] *Id.* at Conclusion of Law ¶ IV. Moreover, the Fifth Circuit has already held that levee districts are not "arms of the State" for Eleventh Amendment purposes. *See Vogt v. Bd. of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 692-96 (5th Cir. 2002) (extensively examining the multi-factor test regarding whether a governmental entity is an "arm of the state," and determining that the levee district's status as a "political subdivision" was mutually exclusive with being found to be an arm of the state). Act 544's invocation of "state" entities was clearly contemplating the Eleventh Amendment analysis, as it added an express non-waiver provision regarding the Eleventh Amendment at

the question here is whether the phrase "local governmental entity" unambiguously excludes SLFPA-E and the Levee Districts. The answer is that Louisiana statutes, the Louisiana Constitution, and Louisiana jurisprudence demonstrate that the phrase "local governmental entity" bears a meaning that clearly excludes SLFPA-E and the Levee Districts from its ambit.

At issue is Act 544's amendment to R.S. § 49:214.36, which resides in the subpart of the revised statutes that sets forth the Louisiana Coastal Zone Management program. La. R.S. §§ 49:214.21-49:214.42. As discussed above, SB 469, the source bill for Act 544, originally sought to replace the phrase "local government" in R.S. § 49:214.36 with the phrase "local governmental subdivisions." That change to § 214.36 was abandoned in the Senate Committee amendments, and new subsection (O) of § 214.36 uses the phrase "local governmental entity." The coastal zone statute dictates a specific meaning for the phrase "local government" that applies throughout the coastal zone statute, defining the phrase to mean "the governmental body *having general jurisdiction* and *operating at the parish level*." La. R.S. § 49:214.23(8) (emphasis added). This "local government" definition includes neither SLFPA-E nor the Levee Districts because they are not governmental bodies of "general jurisdiction," nor does SLFPA-E operate "at the parish level." Act 544 did not change this definition.

The principle of *in pari materia* dictates that the phrase "local governmental entities," as used in the portions of the coastal zone statute that Act 544 amended, should be interpreted with reference to the definition of "local government" already set forth in the coastal zone statute. *See* La. C.C. art. 13 ("Laws on the same subject matter must be interpreted in reference to each other."); La. R.S. § 1:3 ("Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to

---

new subsection (O)(3): "Nothing in this Section shall constitute a waiver of sovereign immunity under the Eleventh Amendment of the United States Constitution."

such peculiar and appropriate meaning."); *see also Pociask v. Moseley*, 122 So. 3d 533, 541-42 (La. 6/28/2013) (using *in pari materia* to use law's existing definition of phrase to apply to Legislative amendment to statute). Applying the principle of *in pari materia* here, the result is that where Act 544 uses the phrase "local governmental entity," that phrase applies only to governments of general jurisdiction and operating at the parish level, not to specific-jurisdiction entities such as the Levee Districts or to regional, multi-parish entities such as SLFPA-E. Accordingly, the legislative term of art that Act 544 employs renders it inapplicable to plaintiffs, thereby preventing defendants from raising Act 544 as a defense to plaintiffs' standing and causes of action.

As further support, the state's coastal zone laws draw a distinction between purely "local" entities, such as a parish government, and the broader class of "political subdivisions," such as SLFPA-E. Indeed, they specifically recognize the unique and protected position of "political subdivisions, including flood protection authorities, and levee districts": "Further, comprehensive integrated coastal protection **must proceed in a manner that recognizes the powers and duties of** political subdivisions, **including flood protection authorities, and levee districts**, to fund and manage local activities that are consistent with the goals of a comprehensive integrated coastal protection plan." La. R.S. § 49:214.1(C) (emphasis added). Moreover, La. R.S. § 49:214.31(D) states, "The provisions of this Subpart are not intended to abridge the constitutional authority of any local governments, levee boards or other political subdivisions." Thus, it is clear throughout the state's coastal management law that levee boards and political subdivisions (such as SLFPA-E) stand in distinction to units of local government.

The state constitution bolsters this conclusion. SLFPA-E is established under Article VI of the constitution. *See* La. Const. Art. VI, § 38.1. Article VI specifically defines "local

governmental subdivisions"—the phrase used in original SB 469—to mean "any parish or municipality," an only slightly broader category than the coastal zone law's "local government." La. Const. Art. VI, § 44(1). SLFPA-E and the Levee Boards, by contrast, are part of a broader set of entities known as "political subdivisions." *Id*. § 44(2). Therefore, even under the more inclusive concept of "local governmental subdivisions" that the constitution articulates, levee districts and flood protection authorities would not be included under Act 544's prohibitory scope. La. Const. Art. VI, § 44(1)-(2); *see also* La. A.G. Op. 06-129 ("Flood Protection Authorities are levee districts.") (citing La. R.S. § 38:330.1(A)).

Louisiana courts similarly recognize the distinction between "local governmental subdivisions" and "political subdivisions." *See Bd. of Com'rs of Orleans Levee Dist. v. Dep't of Natural Resources*, 483 So. 2d 958, 967 (La. 1986) ("Article VI, § 6 restrains legislative interference in the affairs of 'any local governmental subdivision which operates under a home rule charter.' The Orleans Levee Board is not a 'local governmental subdivision,' defined in La. Const. art. VI, § 44(1) as 'any parish or municipality[.]'"); *accord* La. A.G. Op. 00-486 ("Under the reasoning of the Louisiana Supreme Court, this office must conclude that a levee district is a political subdivision of the state … rather than a local governmental subdivision.").

Louisiana statutes, likewise, consistently recognize "local governmental subdivisions" as something separate from other political subdivisions such as levee districts and flood authorities. *See* La. R.S. § 38:2(A)(3) ("Subject to the right to be reimbursed for reasonable costs associated with such service, the Coastal Protection and Restoration Authority Board shall render to local governmental subdivisions, levee districts, levee and conservation districts, flood authorities, and any other special district all engineering, economic, and other advisory services within the scope of its functions and jurisdiction …."); *see also* La. R.S. § 38:330.7(A) ("Each [flood protection]

14

authority shall not directly employ police security personnel. However, the authority may enter into cooperative endeavor agreements with appropriate local law enforcement agencies or local governmental subdivisions[.]"). Had the legislature understood "local governmental subdivision" to include levee districts or regional flood protection authorities, then such statutory language would have been superfluous.

Louisiana courts treat "local governmental entities" the same as "local governmental subdivisions." In *City of New Orleans v. Bd. of Comm'rs of Orleans Levee Dist.*, the Supreme Court examined the scope of a municipality's exercise of self-sufficiency, using the phrase "local governmental entity" to describe the City of New Orleans and in a manner clearly analogous to the constitutional understanding of "local governmental subdivision": "Local governmental autonomy or home rule is not a self-sufficient or absolute virtue. In actuality, it may exist only to the extent that the state constitution endows a local governmental entity with two interactive powers, viz., the power to initiate local legislation and the power of immunity from control by the state legislature." 640 So. 2d 237, 242 (La. 1994). This language and analysis has been cited many times by Louisiana courts and in A.G. opinions, showing a consistent approach of treating "local governmental entities" as "local governmental subdivisions" rather than as "political subdivisions" of the state. *See, e.g., New Orleans Campaign for a Living Wage v. City of New Orleans*, 825 So. 2d 1098, 1102-03 (La. 9/4/2002); La. A.G. Op. 980363(A) (2002).[41] In sum, if

---

[41] "Local governmental entities" are rarely treated differently under the law than "local governmental subdivisions." First, of course, the coastal zone law, itself, defines "local government" only as a parish-level government with general jurisdiction. La. R.S. § 49:214.23(8). The addition of the word "entity" to the end of it should not create any distinction or expansion of the term, particularly because "entity" is modified by both "state" and "local governmental" and doesn't designate something special with regard only to local governments. The only contrary statutory definition in the entire body of the revised statutes is in the unrelated La. R.S. § 38:2319.2, which provides the definitions "[a]s used *in this Part*"—that Part being Part VIII of Chapter 10 of Title 38 of the Revised Statutes, regarding Local Government Equipment Lease-Purchases—and even then the restricted definitions are subject to the exclusion of "*unless the context in which they are used clearly requires a different meaning or a different definition is prescribed for a particular provision*[.]" La. R.S. § 38:2319.2. In that statute, "local governmental entity" is defined broadly to mean "municipalities, parishes, school boards, clerks of court, levee districts, law

Act 544 had used the phrase "local government" or "local governmental subdivision" in place of "local governmental entity," the result would not differ because each phrase clearly excludes plaintiffs from its definitional reach. Therefore, the Court can rely on the unambiguous definition of "local government" in the coastal zone management law under the principle of *in pari materia*, confident that no other analogous Louisiana law would suggest a contrary result.

The defendants may seek to direct this Court's attention to various portions of the legislative history of Act 544 or to media reports that SB 469 was indeed intended to kill this lawsuit and to affect the rights of these plaintiffs. Regardless of the stated opinions of various legislator- and lobbyist-proponents of the bill, in Louisiana's civilian system it is only the language that ends up in the Act that is operative. The statutory meaning here is unambiguous that the statute does not include SLFPA-E or the Levee Districts within its prohibitory scope, and that unambiguous statutory meaning should not be broken with in order to accommodate politicians' and lobbyists' speeches that did not make it into the law. *See, e.g., Catahoula Parish Sch. Bd. v. La. Machinery Rentals, LLC*, 2013 WL 5788749, *12 (La. Oct. 15, 2013) ("The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature."); *Soileau v. Smith True Value & Rental*, 2013 WL 3305265, *7-8 (La. June 28, 2013) ("As stated in LSA C.C. art. 9, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.").

---

enforcement districts, all special service districts, port commissions, and other political subdivisions of the state of Louisiana." *Id.* Due to the express statutory limitation of the definition to that part of the law, and the express exclusion of its applicability where context or a contrary definition requires a different meaning, this single example of a contrary statutory definition is inapplicable here.

### 2.   Even If SLFPA-E Individually Is Contemplated By Act 544, The Levee Districts Are Distinct Entities Not Within The Statute's Reach

The savings clause in Act 544's new subsection 49:214.36(O)(5)—added by amendment after the prohibitory language in subsection (O)(1) had been added—is the only place where the legislature broke from use of the phrase "local governmental entity" and specifically referenced "local or regional flood protection authorities," in excluding such authorities from the statutory exception that "Nothing in this Section shall alter the rights of any governmental entity … for claims related to sixteenth section school lands or claims for damages to property owned or leased by such governmental entity." This does not affect the defined prohibitory scope in subsection (O)(1). If anything, it confirms that the drafters of Act 544 knew how to specify the "regional flood protection authority," and that in all other sub-sections of the statute where they instead specified "local governmental entities" they were lining up with the state constitution's and the coastal zone statute's standard definitions of local governments.

Regardless, the language in subsection (O)(5) only references the flood protection authorities and not their constituent levee districts, which are distinct entities. "Each board [of SLFPA-E and SLFPA-W] may enter into contracts and agreements of any nature on behalf of the authority *or on behalf of any levee districts within the territorial jurisdiction of the authority* for the purposes of this Chapter with any person or persons…." La. R.S. § 38:330.2(B) (emphasis added). Additionally, "[e]ach board may buy and sell property of the authority *or of any levee district within its territorial jurisdiction*, make and execute all contracts on behalf of the authority *or on behalf of any such levee district*, and perform any and all things necessary to carry out the objects of this Chapter[.]" La. R.S. § 38:330.2(E) (emphasis added). The levee districts are specifically and individually included within the obligations regarding flood control and protection: "The authority *and each levee district* within the territorial jurisdiction of the

17

authority shall comply with all applicable federal and state law and regulations, particularly regarding federal rehabilitation assistance for flood control works damaged by flood or coastal storm." La. R.S. § 38:330.2(H) (emphasis added).

La. R.S. § 38:330.3 requires that obligations of any constituent levee district within the authority remain just with that levee district, and provides similarly with regard to revenues of any particular levee district, with the authority only managing such funds and acting on behalf of such particular levee district. The provisions of § 330.3 make clear that the levee districts retain individual identities and that they are merely managed in common by the authority. The state constitutional authorization for the regional flood protection authorities provides that "[e]ach authority shall be governed by a board of commissioners which shall *also be the governing authority of each levee district within the territorial jurisdiction of the authority*." La. Const. Art. VI, § 38.1(A)(1) (emphasis added); *see also* La. R.S. § 38:330.10(B) ("Subject to the limitations of liability as set forth in R.S. 38:330.3, whenever a reference to the 'board of commissioners,' 'levee board' or 'board of levee commissioners' or 'levee district' appears in any statute, that reference shall be deemed to include the board of commissioners of the [SLFPA-E] and [SLFPA-W]."). Accordingly, the phrase "local governmental entity" cannot be expanded to include the distinct political subdivisions of the Levee Districts, even if that phrase were expanded to include the flood protection authorities due to the language in the savings clause at subsection (O)(5), because the Levee Districts are distinct entities under the law.

The Petition here recognizes the distinct legal personalities of SLFPA-E and the Levee Districts and is styled accordingly, designating the plaintiff as "Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East, Individually and as the Board Governing the Orleans Levee District, the Lake Borgne Basin Levee District, and the East Jefferson Levee

District." The Introduction section of the Petition begins, "The Authority is a public entity that governs the levee districts of Orleans, the Lake Borgne Basin, and East Jefferson." The "Parties" section of the allegations separately delineates as plaintiffs the Board of SLFPA-E, and the Authority "as the board governing certain levee districts," then specifically separating out each of the three levee districts. Petition ¶¶ 1.1-1.2.3.

For these reasons, the text of Act 544 does not contain SLFPA-E or the Levee Districts within its prohibitory scope, and Act 544, as a matter of law, is not a viable defense against the claims brought by SLFPA-E and the Levee Districts.

### C.     Act 544 Violates The Louisiana State Constitution

Even if Act 544 were to include SLFPA-E and the Levee Districts within its prohibitory scope, Act 544 is not a viable defense because it violates the Louisiana Constitution in five independent ways.

#### 1.     Act 544 Violates Separation Of Powers

Article II, § 2 of the Louisiana Constitution provides, "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." The Louisiana Supreme Court has held that this means, in particular, that "[t]he function of statutory interpretation and the construction to be given legislative acts rests with the judicial branch of government." *Burnette v. Stalder*, 2000-2167 (La. 6/29/2001), 789 So. 2d 573, 577. While legislative history may not be turned to for purposes of statutory construction where the terms of the statute are unambiguous, for this limited purpose of examining whether the legislature was intending to step into the shoes of a co-equal branch of government, that legislative history is helpful. Here, the legislative history of SB 469 is replete with references to the "illegal" hiring of SLFPA-E's attorneys, which was already

19

the subject of a decision to the contrary by the 19th JDC in the LOGA lawsuit[42]; to SLFPA-E being a rogue "state agency," another premise already presented to and rejected by a court in the LOGA lawsuit[43]; and to the idea that SB 469 was merely an interpretation of existing law under the coastal zone management law.[44]

The Louisiana Supreme Court has long recognized the unconstitutionality of a legislative act that purports to interpret existing law, under the separation of powers—specifically as a violation that may be complained of by a political subdivision. *See City of New Orleans v. La. Mut. Ins. Co.*, 26 La. Ann. 499, 499 (La. 1874). In *City of New Orleans*, the city brought a suit to collect taxes levied in 1872 for 1873, and the defendant insurance company had sought protection under a legislative act passed in 1874. The Court held:

> If the act of 1874 was to interpret the acts of 1871 and 1872, as seems to be its purpose, it is unconstitutional, because trenching upon the jurisdiction of the judiciary. To interpret laws is not within the powers of the General Assembly; it is not a legislative, but a judicial function.

*Id*. at 499; *see also State Licensing Bd. for Contractors v. State Civil Serv. Comm'n*, 123 So. 2d 76, 78-79 & nn. 4-5 (La. 1960) ("To interpret laws is not a legislative, but a judicial function,

---

[42] *See, e.g.*, Sen. Adley, Senate Floor Debate on SB 469 (May 7, 2014), La. Senate Video Archives, http://senate.la.gov/video/2014/May.htm#7 (last visited Aug. 4, 2014) ("They are an agency of the state suing on behalf of the state taking our money, spending it as they see fit with a contract that's illegal.").

[43] *See, e.g.*, Sen. Adley, Senate Natural Resources Committee Testimony on SB 469 (May 1, 2014), La. Senate Natural Resources Committee, Broadcast Archives, http://senate.la.gov/NaturalResources/Archives/2014/viseo.htm (last visited Aug. 4, 2014) ("My goal, as I have tried to pass these bills, is to do what I believe is in the best interest of Louisiana when we have an agency of the state, and it is my view that the flood protection authority is just that, has gone out and filed these particular suits in violation of the law.").

[44] *See, e.g.*, Testimony of James Faircloth on SB 469 to the House Natural Resources Committee (May 21, 2014), La. House of Representatives, Natural Resources Committee, Archived Video, http://house.louisiana.gov/H_Video/2014/May2014.htm (last visited Aug. 4, 2014) ("So all this bill does is—this bill very clearly makes what I think is already clear in the law. I don't believe they have authority to bring claims in the coastal zone but this makes it very, very clear that from this day forward if you pass this legislation only the entities who are identified in the Coastal Zone Management Act have authority to bring claims arising out of uses and activities in the coastal zone as those terms are defined."); *see also* Sen. Adley, Senate Natural Resources Committee Testimony on SB 469 (May 1, 2014), La. Senate Natural Resources Committee, Broadcast Archives, http://senate.la.gov/NaturalResources/Archives/2014/viseo.htm (last visited Aug. 4, 2014) ("What I believe you have in front of you is a—it is simply clarification of language of who has what rights, what state governments, what local governments, and what rights they have under—the under the coastal use plan that we've adopted and it also—that—the first section of it I think is just for clarity so that the legislature can more clearly state who we think has authority and what authorities they have.").

and this fundamental rule of constitutional law has not only been uniformly observed in the pronouncements of the courts of this State but has been ennunciated [sic] by the highest tribunals in numerous other States of the Union; and the rationale of the principle, based on the separation of powers, *is the more compelling where, as in the case at bar, the earlier enactment is not couched in doubtful phraseology and is at the time of the Legislature's declaration of intent involved in litigation*.") (emphasis added); *State v. Sissons*, 292 So. 2d 523, 527 (La. 1974).

This constitutional analysis by the state supreme court has been consistent, with no distinction made for cases with political subdivisions as parties, until the decision in *Morial v. Smith & Wesson Corp.*, 2000-1132 (La. 4/3/2001), 785 So. 2d 1. In *Morial*, after extensive discussion of retroactivity in terms of an impairment of individual rights involving contract, due process, and bills of attainder, in a single paragraph the Court rejected the City's argument that a legislative act regarding political subdivisions' right to bring product liability actions against firearm manufacturers was a violation of separation of powers. 785 So. 2d at 25. "The legislature has always enjoyed the power to create new rights and abolish old ones as long as it does not interfere with vested rights. As we have already explained, the legislature's decision [to pass the legislation at issue] … did not interfere with any vested rights belonging to the City." *Id*. The Court's separation of powers analysis in *Morial* cited to none of the cases in the extensive body of previous separation of powers decisions, nor engaged in any analysis regarding whether the legislation at issue infringed on a judicial function. The two cases cited by the *Morial* Court both concerned the individual's right to access to courts under La. Const. art. I § 22, and were not separation of powers cases. *Id*. (citing *Reeder v. North*, 97-239 (La. 10/21/1997), 701 So. 2d 1291, 1296; *Crier v. Whitecloud*, 496 So. 2d 305, 310 (La. 1986)).

21

Therefore, the *Morial* Court's insertion of the vested rights analysis into the question of separation of powers is an aberration from a long line of *jurisprudence constante* that the separation of powers question is analyzed only through looking at the infringement of the judicial function by the legislature and not focusing on the question of vested rights. *See In re Orso*, 283 F.3d 686, 695 n.29 (5th Cir. 2002) (explaining Louisiana's system of *jurisprudence constante*). Indeed, no court has cited *Morial* for its separation of powers decision. Instead, separation of powers decisions after *Morial* have returned to the pre-*Morial* separation of powers analysis, not focused on whether there is a vested individual right being disturbed. In *Unwired Telecom Corp. v. Parish of Calcasieu*, 2003-732 (La. 1/19/2005), 903 So. 2d 392, the Court examined whether a political subdivision, the tax collector of Calcasieu Parish, could have rights it was asserting in litigation changed by purportedly "interpretive" law passed by the legislature after the litigation was commenced. The *Unwired* Court observed that, "even when the Legislature has expressed its intent to give a substantive law retroactive effect, the law many not be applied retroactively if it would impair contractual obligations or disturb vested rights. ***In a like vein, interpretative legislation may also not be applied retroactively if the legislative change violates the principles of separation of powers*** and independence of the judiciary." *Id*. at 404 (emphasis added) (citations omitted).

> The Legislature may enact remedial legislation shortly following a court's decision that highlights an ambiguity or conflict in a statutory provision. That is, it is the province of the Legislature to clarify the law when the courts indicate the necessity of doing so. See, *Grubbs v. Gulf International,* 625 So.2d 495 (La.1993). However, interpreting the law is the designated function of the judiciary, not the Legislature.
>
> As a court we have never entirely resolved the issue of whether legislation designated from the outset as interpretive violates the principles of separation of powers and independence of the judiciary. However, this Court has noted that arguably an "interpretive enactment begins to give the legislature judicial power." *St. Paul,* 609 So. 2d at 818. Inherent problems with interpretive legislation are

> particularly brought to the fore in a situation like the one before this Court where the Legislature has expressly targeted an appellate court decision by professing to explain and interpret a statute and thus reach its "original" meaning, that is, the one the authors of the revised statute intended. Such legislation effectively constitutes the adjudication of cases in contravention of La. Const. art. II § 2.

*Id*. at 404-05. The *Unwired* Court held that such changes to law by the legislature could therefore be prospective only, and any retroactive application would be unconstitutional as a violation of separation of powers. The Court did not engage in any vested rights analysis in the context of separation of powers. *Id*. at 406; *see also Mallard Bay Drilling, Inc. v. Kennedy*, 2004-1089 (La. 6/29/2005), 914 So. 2d 533, 542-43.

Here, SLFPA-E's claims were already within the jurisdiction of the courts (both this Court and the 19th JDC, which had already issued rulings contrary to bases articulated for SB 469) before Act 544's enactment. Where SB 469/Act 544 was intended to clarify or interpret existing law regarding what entities may bring claims related to the coastal zone laws, Act 544 fits precisely within the *Unwired/Mallard Bay Drilling* analysis, and therefore is unconstitutional as a violation of separation of powers.

### 2. Act 544 Violates The Ban On Local Or Special Laws

Article III, § 12(A) of the Louisiana Constitution provides, "Except as otherwise provided in this constitution, the legislature shall not pass a local or special law … (3) [c]oncerning any civil or criminal actions …." This prohibition "'is intended to reflect a policy decision that legislative resources and attention should be concentrated upon matters of general interest, and that purely local matters should be left to local governing authorities.'" *Kimball v. Allstate Ins. Co.*, 97-2885 (La. 4/14/98), 712 So. 2d 46, 50 (quoting H. Alston Johnson III, *Legislative Process*, 36 La. L.Rev. 549, 549 (La.1976)). "The terms 'local' and 'special' are used in contradistinction to the term 'general.'" *Deer Enters., LLC v. Parish Council of Washington Parish*, 2010-671 (La. 1/19/2011), 56 So. 3d 936, 942 (citing *La. Paddlewheels v. La. Riverboat*

*Gaming Comm'n*, 94-2015 (La. 11/30/1994), 646 So. 2d 885, 889). "When the operation of a law is limited to certain parishes, it is immediately suspect as a local law. A statute is generally considered to be local if it operates only in a particular locality or localities without the possibility of extending its coverage to other areas should the requisite criteria exist or come to exist there." *La. High Sch. Athletics Ass'n v. State*, 2012-1471 (La. 1/29/2013), 107 So. 3d 583, 599-600 ("*LHSAA*").

Act 544's savings clause at § 49:214.36(O)(5), saving property damage claims to all governmental entities except specifically "local or regional flood protection authorities," constitutes a prohibited local or special law concerning civil actions. Under Louisiana law, there are only two "flood protection authorities," SLFPA-E and SLFPA-W, which are focused in a discrete and defined set of localities in southeast Louisiana. Therefore, Act 544 is "immediately suspect as a local law." *LHSAA*, 107 So. 3d at 599-600. In some cases, a seemingly specific and local designation is deemed by the courts to be flexible because the designation contains "the possibility of extending its coverage to other areas should the requisite criteria exist or come to exist there." *See Deer Enters.*, 56 So. 3d at 942. However, in such cases the designation is one that could be extended without further legislative action; that is, where the possibility of extension is inherent to the original statute. This typically arises where a statute's scope is triggered when a parish or city population exceeds a statutorily defined threshold according to the most recent census, such that a new parish could be brought within the statute's scope with changes reflected in a new census. *See Deer Enters.*, 56 So. 3d at 942-43. Here, however, the expansion of Act 544's § (O)(5) would require further legislative action to create new local or regional flood protection authorities, as the creation of SLFPA-E and SLFPA-W is restricted to a

24

non-flexible territorial jurisdiction. Therefore, the savings clause in § (O)(5) should be viewed as a prohibited local law.

As a separate issue, § (O)(5) should also be held to be a prohibited special law. "Even though a statute may not constitute a **local** law under the above considerations, it may still be prohibited under La. Const. art. III § 12 if it is a **special** law dealing with an enumerated topic." *Kimball*, 712 So. 2d at 51-52 (emphasis in original). "A special law is generally one that 'operates on and affects only a fraction of the persons or a portion of the property encompassed by a classification, granting privileges to some persons while denying them to others.'" *Deer Enters.*, 56 So. 3d at 944 (quoting *Kimball*, 712 So. 2d at 52). For example, in a challenge by the LHSAA to a statute that imposed certain regulations requiring athletic participation in LHSAA schools by home-schooled students, the Court held that the statute was a constitutionally prohibited "special" law because there were other organizations governing interscholastic athletics in Louisiana, albeit significantly smaller than the LHSAA. 107 So. 3d at 601 ("While these other organizations are smaller than the LHSAA, they perform the same function of regulating interscholastic athletic competitions involving Louisiana high schools.").

Here, subsection (O)(5) likewise is a prohibited "special" law. On its face, it unambiguously carves out "local and regional flood protection authorities" from all other "governmental entit[ies]." Moreover, where the regional flood protection authorities are deemed to be "levee districts," La. Const. art. VI § 38.1(E), this designation in § (O)(5) at the very least carves out SLFPA-E and SLFPA-W from all other levee districts, similar to the distinction made between the LHSAA and the other smaller athletic organizations. *Id*. If there is no reasonable basis for the distinction, then it will be a prohibited "special" law. *See Kimball*, 712 So. 2d at 52. Here, there is no basis to allow levee districts and other governmental entities to maintain

25

property damage claims and to deny that right to SLFPA-E (and SLFPA-W) ("local or regional flood protection authorities"). Therefore, as in *Kimball*, Act 544 should be found to be a prohibited "special" law. *Id.* ("Subsection (C) is, however, a special law. It singles out the City of Baton Rouge and the Parish of East Baton Rouge, to the exclusion of all other political subdivisions, for special treatment without any suggested or apparent justification for the disparate treatment, despite the fact that all political subdivisions possess the requisite characteristics of the class. It is not a general law because its privileges, and concomitant implicit restrictions, affect only a portion of the persons, here political subdivisions, which fall within the created classification.").

### 3. Act 544 Violates The Advertising Requirement For Local Or Special Laws

It is patent on the face of § (O)(5) that it is a savings clause concerning civil actions, and thus one of the enumerated topics as to which local or special laws are prohibited under La. Const. Art. III, § 12. However, even if it were not a local or special law on one of the enumerated topics, Act 544 violates the state constitution on the independent basis that it is a local or special law that was not advertised as required under the state constitution. Article III § 13(A) of the state constitution prohibits a local or special law from being enacted "unless notice of intent to introduce a bill to enact such a law has been published on two separate days, without cost to the state, in the official journal of the locality where the matter is to be affected is situated," with the last day of such publication to "be at least thirty days prior to introduction of the bill" and stating "the substance of the contemplated law, and every such bill shall recite that notice has been given." If the proper publication procedure is not followed, the statute is unconstitutional and must be held invalid. *State v. Stirgus*, 437 So. 2d 249, 252 (La. 1983) ("Local and special

26

legislation which requires advertisement in advance of its introduction in the House or Senate is unconstitutionally enacted if such public notice of intention to introduce the bill is not given.").

Here, neither SB 469 nor the bill that originally contained the body of what became SB 469—SB 531—were advertised in the official journals of the parishes within the SLFPA-E and SLFPA-W jurisdictions thirty days prior to the introduction of the bills. This defect was exacerbated by the bait-and-switch tactics by which the original title and provisions of SB 469 were entirely replaced with a new title and the operative provisions of SB 531 the night before SB 469 was to be considered by the Senate Natural Resources Committee. Neither Act 544, SB 469, nor SB 531 even attempt to recite that the advertising requirement was followed. Accordingly, for the reasons stated above regarding the characterization of the savings clause at subsection (O)(5) being a local or special law, this failure to advertise is a fatal defect in Act 544.

### 4.    Act 544 Violates The Constitutional Public Trust Doctrine

Article IX § 1 of the Louisiana Constitution provides, "The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy." Act 544's enactment of a new subsection 49:214.36(O)(1), amending a provision of the coastal zone law, goes beyond dictating who may pursue claims under the permitting authority in that statute and proceeds to take away all rights of action by particular government entities arising from or related to any activities in the coastal zone.[45] With the limited carve-out

---

[45] The prohibitory language in § (O)(1) provides, "Except as provided in this Subpart, no state or local governmental entity shall have, nor may pursue, any right or cause of action arising from any activity subject to permitting under R.S. 49:214.21 et seq., 33 U.S.C. 1344 or 33 U.S.C. 408 in the coastal area as defined by R.S. 49:214.2, or arising from or related to any use as defined by R.S. 49:214.23(13), regardless of the date such use or activity occurred." The plaintiffs' claims are not expressly to enforce coastal use permits or to enforce the CUP requirement as to activities that should have a permit but failed to obtain one. As argued repeatedly to this Court on the motion to remand, the federal and state permitting requirements and permits are relied on by the plaintiffs not to create the

for property damage claims in § (O)(5) and for contract or administrative claims in § (O)(4), any reading of this prohibition as eliminating any government entity from pressing non-CZM-permitting claims for activities that destroy the coastal wetlands will result in an unconstitutional abdication of the public trust embodied in Article IX § 1.

In 1984, the Louisiana Supreme Court characterized the constitutional public trust doctrine as a "rule of reasonableness" that did not establish environmental protection "as an exclusive goal, but requires a balancing process in which environmental costs and benefits must be given full and careful consideration along with economic, social and other factors." *Save Ourselves, Inc. v. La. Env't Control Comm'n*, 452 So. 2d 1152, 1156-57 (La. 1984) (Dennis, J.). A Court's review of government action for compliance with this balancing test under the public trust doctrine may itself be subject to the court's own public trust duty. *See In the Matter of Rubicon, Inc.*, 95-108 (La. App. 1 Cir. 2/14/1996), 670 So. 2d 475, 481.

This balancing test has already been engaged by the Louisiana Supreme Court in the context of coastal restoration for purposes of hurricane protection, with the Court holding that both sides of the public trust balance mandate favoring coastal restoration activities instead of actions that would inhibit such activities. *See Avenal v. State*, 2003-3521 (La. 10/19/2004), 886 So. 2d 1085. In holding that the state had the duty to construct the Caernarvon diversion project in spite of impacts on an important industry—the oyster fishing industry—the Court held as follows:

> We find that the implementation of the Caernarvon coastal diversion project fits precisely within the public trust doctrine. ***The public resource at issue is our very coastline***, the loss of which is occurring at an alarming rate. ***The risks involved are not just environmental, but involve the health, safety, and welfare of our people, as coastal erosion removes an important barrier between large populations and ever-threatening hurricanes and storms.*** Left unchecked, it will

cause of action but as evidence of the standard of care applicable to those elements of the plaintiffs' claims that require an examination of reasonableness and a prevailing standard of care.

result in the loss of the very land on which Louisianians reside and work, not to mention the loss of businesses that rely on the coastal region as a transportation infrastructure vital to the region's industry and commerce. ***The State simply cannot allow coastal erosion to continue***; the redistribution of existing productive oyster beds to other areas must be tolerated under the public trust doctrine in furtherance of this goal.

*Id*. at 1101-02 (emphasis added).[46] Therefore, the legislature's action is unconstitutional under the public trust doctrine insofar as it eliminates any right to pursue claims arising from coastal

---

[46] Notably, in *Avenal*, a group of industry advocacy groups filed amicus briefs supporting the notion that coastal restoration efforts were critical to fulfilling both sides of the balance under the public trust doctrine. *See* Motion for Leave to File Amicus Brief on Behalf of Louisiana Association of Business and Industry ("LABI"), The Business Council of New Orleans and the River Region, Inc., Jefferson Business Council, Chamber of Greater Baton Rouge, and Greater Shreveport Chamber of Commerce (collectively, "the Business Amici"); and Amicus Brief of the Business Amici (*in globo* Exh. 12 hereto). The Business Amici succinctly argued, "Underlying all of these specific interests, the Business Amici are interested in doing business in a state that can afford to undertake its public trust duties and take actions to safeguard the property and infrastructure upon which business depends from the disastrous effects of coastal erosion." Motion for Leave to File Amici Brief, at 2. Further: "Moreover, this destabilization of the law will impede the State's constitutionally mandated duty to restore the state's wetlands, causing a material injustice to the Business Amici's economic development interests and significant adversity to the public interest." Amici Brief, at 1. Providing greater detail for their analysis of the public trust balancing at stake in the coastal restoration arena, the Business Amici argued further:

> This Court has held that this public trust duty properly embodies a balance between maintaining environmental values and promoting the public welfare, with consideration being given to both sides of the scale. Coastal restoration projects such as the CFDS [Caernarvon Freshwater Diversion Structure] exemplify ***a narrow category of state action that respects both sides of this public trust balance***—protecting, replenishing, and conserving the environment while also promoting the health, safety, and welfare of the people. While restoring wetlands lost to saltwater intrusion and erosion satisfies the mandate to protect, replenish, and conserve the state's resources and environment, substantial economic and safety interests also are at stake in restoring Louisiana's coastal landscape. ... The ability of the State to uphold its public trust obligation in the coastal erosion context is of particular importance to the Business Amici. Located throughout the coastal region—onshore, in the marsh, and in the protected waters adjacent to the advancing Gulf of Mexico—is a transportation infrastructure vital to the region's industry and commerce. Activities that rely on this infrastructure include, inter alia, fisheries, oil and gas exploration and development, chemical manufacturing, and agriculture. Coastal restoration efforts are required to maintain this infrastructure, which serves as a foundation for Louisiana's economic success, for three reasons. First, coastal deterioration will literally pull the ground out from under much of this infrastructure, making it far more vulnerable to hurricanes and leading to costly repairs, replacement, or obsolescence, and to the interruption of statewide business activities dependent on it reliability. Second, as marsh is replaced by open water, the very nature of some of these transportation modes—such as the protected water routes of the intracoastal waterway and other commercial navigation corridors—will be destroyed, while others will be subject to increasing interruption due to unchecked storm surges during the annual hurricane season. These transportation disruptions can be devastating to existing businesses throughout the state, and may convince future businesses to locate elsewhere. Third, Land areas now protected from storm surges by the coastal marshes will become increasingly exposed and vulnerable to storms, making those areas inhospitable to commercial activities that have been carried on for decades and for expanded and new ventures that otherwise would locate in those areas.

Amici Brief, at 11-12 (emphasis added).

land loss for purposes of hurricane protection especially where those rights rise to the level of duties imposed on the Authority by the Louisiana constitution.

### 5.    Act 544 Violates Procedural Public Notice Requirements

Article III § 15 of the Louisiana Constitution sets out several requirements for bills to proceed before the legislature. "Every bill … shall be confined to one object. Every bill shall contain a title indicative of its object." La. Const. Art. III § 15(A). "No bill shall be amended in either house to make a change not germane to the bill as introduced." La. Const. Art. III § 15(C). "Each bill shall be read at least by title on three separate days in each house." La. Const. Art. III § 15(D). Here, the sleight of hand in gutting SB 469 the night prior to its Senate committee hearing and replacing it with the operative provisions of SB 531—including changing the title of SB 469 as it had been previously read on the Senate floor, amending different portions of La. R.S. § 49:214.36, and switching the entire object of the bill—directly implicates these constitutional requirements.

The purposes of the three interrelated constitutional requirements set out above include:

- Fair notice to the legislature and public of the scope of proposed legislation, *La. Federation of Teachers v. State*, 2013-120 (La. 5/7/2013), 118 So. 3d 1033, 1065;

- limiting the joining in one act of incongruous or unrelated matters, *La. Indep. Auto Dealers Ass'n v. State*, 295 So. 2d 796, 802 (La. 1974); and

- "defeat[ing] the deceitful practice of misleading the legislature into the passage of provisions not indicated by the title of the bill," *La. Federation of Teachers*, 118 So. 3d at 1065.

"To determine whether matter is germane to the subject matter of the act or section sought to be amended, inquiry should be made to determine whether the new matter could have been incorporated in the original act, in the first instance, under its title." *A&M Pest Control Service, Inc. v. LaBurre*, 247 La. 315 (La. 1965). The court affords deference to the legislature "to determine both the overall object of a proposed amendment and the changes incidental to and

necessarily connected with the object intended." *Forum for Equality PAC v. McKeithen*, 2004-2477 (La. 1/19/2005), 893 So. 2d 715, 732-33. The one-object requirement "identif[ies] the main purpose or object of the bill, and then … examine[s] each provision thereof to determine whether its parts have a natural connection and reasonably relate, directly or indirectly, to that purpose." *La. Federation of Teachers*, 118 So. 3d at 1065. Here, the original SB 469 that was initially read on the Senate floor and the new version of SB 469 that appeared during the Senate Natural Resources Committee hearing (substituting the operative provisions of SB 531) engaged in entirely separate mechanisms and objects. In the original SB 469, Senator Adley proposed a mechanism applicable to the enforcement provisions of existing § 49:214.36, proposing to create an entirely new administrative scheme whereby potential claims were required to be submitted to the secretary of the DNR for investigation and findings. In the amended SB 469, Senator Allain ditched this new administrative scheme and instead proposed a sledge-hammer obliteration of the right of action to bring claims in a court.

Where the original SB 469 created new administrative procedures, substituted SB 469 instead destroyed rights of action. Under *A&M Pest Control* test, the amendments could not have been included in the originally titled SB 469; in fact, part of the amendments were to re-title SB 469 to account for the substituted matter in the bill. Hence, this set of amendments at the Senate Natural Resources Committee stage violated the germaneness requirement of the state constitution. *See In the Matter of Rubicon*, 670 So. 2d at 479-80 (finding two provisions in an environmental law bill to be on different objects, though both could have been argued to generally concern administrative review actions, where one section concerned witness fees for

law enforcement officers subpoenaed by the DEQ and one section concerned which court had jurisdiction over review of DEQ final decisions).[47]

This germaneness violation leads into the conclusion that Act 544 also violated the three-readings requirement. Because the amendments were so extensive that they necessitated a change in the title of the bill, the title of SB 469 was different when read on the Senate floor after the committee hearing than it was when read on the Senate floor prior to the committee hearing. Therefore, the title of the bill—as it was eventually enacted as Act 544—was never read three times on the Senate floor prior to initial passage by that house, in plain violation of the state constitutional requirements.

### D.     Act 544 Does Not Prohibit The Plaintiffs' Causes Of Action

Returning to non-constitutional arguments on the facial inapplicability of Act 544, even if Act 544 were found to be in compliance with the Louisiana Constitution, and even if SLFPA-E and the Levee Districts were held to be within the prohibitory scope of the statute, the causes of action asserted in the plaintiffs' Petition are not barred by the statute.

As an initial matter, Act 544 is an amendment to the section containing the enforcement provision for the Louisiana Coastal Zone Management law, amending La. R.S. § 49:214.36. Subsection (D) of that section sets forth the basic enforcement prerogative in the enforcement provision:

> The secretary [of DNR], the attorney general, an appropriate district attorney, or a local government with an approved program may bring such injunctive, declaratory, or other actions as are necessary to ensure that no uses are made of the coastal zone for which a coastal use permit has not been issued when required

---

[47] Here, the "continuity" between original SB 469 and amended SB 469 is limited to a mere three consecutive words being the same from one version to the next. Amended SB 469 was an entirely new bill. Such legislative shenanigans should not be given the patina of approval that might result in giving legislators grossly expanded power to tinker with bills throughout the legislative process in a manner that violates the constitutional guarantees of public notice and input.

> or which are not in accordance with the terms and conditions of a coastal use
> permit.

La. R.S. § 49:214.36(D). This subsection is not amended by Act 544.

Instead, Act 544 adds a new subsection (O), still within the confines of this enforcement

section; at subsection (O)(1), Act 544 adds:

> Except as provided in this Subpart, no state or local governmental entity shall
> have, nor may pursue, any right or cause of action arising from any activity
> subject to permitting under R.S. 49:214.21 et seq., 33 U.S.C. 1344 or 33 U.S.C.
> 408 in the coastal area as defined by R.S. 49:214.2, or arising from or related to
> any use as defined by R.S. 49:214.23(13), regardless of the date such use or
> activity occurred.

La. R.S. § 49:214.36(O)(1). Therefore, Act 544 should be read as merely providing the corollary

to the enforcement authority provided already in subsection (D) of § 214.36. Subsection (D)

provides for what entities may bring enforcement actions, while the new subsection (O) clarifies

which entities may ***not*** bring such enforcement actions. To read new subsection (O) as being a

broader prohibition—one that would be entirely outside the scope of the remainder of the

existing (and unamended) § 214.36—would be to implicate, and violate, the constitutional public

trust doctrine, as discussed above. *See In re U.S. for Historical Cell Site Data*, 724 F.3d 600,

621-22 (5th Cir. 2013) (applying the maxim that a statute must be interpreted to avoid serious

constitutional problems) (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr.

Trades Council*, 485 U.S. 568, 575 (1988)). Indeed, while the prohibitory language in subsection

(O) could have been provided for in a separate and distinct section of the coastal zone law, apart

from the enforcement section—as it was proposed to be in SB 531—the legislature chose instead

to couch it within the confines of the enforcement section.

Here, as this Court already found in its order denying the remand motion, the plaintiffs'

claims are not based on any invocation of any specific state coastal zone laws or regulations—

much less on the specific enforcement provisions in § 49:214.36. *See* R. Doc. 363, at 66-67.[48] Because Act 544's amendment of that specific enforcement section should be limited to the reach of that section, Act 544 is inapplicable to any of the plaintiffs' claims here.

Furthermore, as noted above, Act 544 also contains a savings clause for claims to enforce contractual rights: "Nothing in this Section shall prevent or preclude any person or any state or local governmental entity from enforcing contractual rights[.]" La. R.S. § 49:214.36(O)(4). Here, of course, the plaintiffs' third-party beneficiary cause of action is a contractual claim, and is therefore excepted from Act 544's prohibitory reach. *See Gardner v. Zulu Social Aid & Pleasure Club, Inc.*, 98-1040 (La. App. 4 Cir. 2/10/99), 729 So. 2d 675, 680 (Plotkin, J., dissenting) (recognizing that the theory of stipulation pour autrui gives rise to an action in contract under La. C.C. art. 1978).

Finally, as discussed above, Act 544 also contains the savings clause for "any governmental entity, except a local or regional flood protection authority, for claims related to sixteenth section school lands or claims for damage to property owned or leased by such governmental entity." La. R.S. § 49:214.36(O)(5). While SLFPA-E is excepted from this savings clause, the distinct Levee Districts are not, and therefore their claims for damage to the levee systems and flood control structures are within the scope of the savings clause and not prohibited by Act 544. The Levee Districts' claims are that the utility and intended performance and function of the levees and flood control structures have been diminished and damaged by the actions of the defendants in destroying the coastal lands in the Buffer Zone, which has also resulted in damage to the plaintiffs' property-related rights under Civil Code articles 656 and

---

[48] By way of comparison, this Court may reference the petitions in the parish enforcement actions filed in various Louisiana state courts by Jefferson Parish and Plaquemines Parish, which have been removed to this District. *See, e.g.*, Petition for Damages to the Jefferson Parish Coastal Zone, *The Parish of Jefferson v. Equitable Petroleum Corp., et al.*, Case No. 13-6714 (E.D. La.), R. Doc. 1-1, at ¶¶ 9-13, 24 (specifically invoking the enforcement procedures under La. R.S. § 49:214.36).

667. Therefore, even if SLFPA-E's rights are found to be impacted by Act 544, the savings clause of subsection (O)(5) preserves the distinct rights of the constituent Levee Districts.

## III.  Conclusion

For these reasons, the plaintiffs request that this Court enter partial summary judgment, finding that their claims are not subject to any viable defense under Act 544.

Respectfully Submitted,

*/s/ Emma Elizabeth Antin Daschbach*_____
Gladstone N. Jones, III
(gjones@jonesswanson.com)
Attorney Identification No. 22221
Eberhard D. Garrison
(egarrison@jonesswanson.com)
Attorney Identification No. 22058
Kevin E. Huddell
(khuddell@jonesswanson.com)
Attorney Identification No. 26930
Emma Elizabeth Antin Daschbach
(edaschbach@jonesswanson.com)
Attorney Identification No. 27358
**Jones, Swanson, Huddell & Garrison, L.L.C.**
601 Poydras St., Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

James R. Swanson
(jswanson@fishmanhaygood.com)
Attorney Identification No. 18455
Brent B. Barriere
(bbarriere@fishmanhaygood.com)
Attorney Identification No. 2818
Benjamin D. Reichard
(breichard@fishmanhaygood.com)
Attorney Identification No. 31933
**Fishman, Haygood, Phelps, Walmsley
Willis & Swanson, L.L.P.**
201 St. Charles Ave.
Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250

J. Michael Veron
(mike@veronbice.com)
Attorney Identification No. 7570
J. Rock Palermo III
(rock@veronbice.com)
Attorney Identification No. 21793
Alonzo P. Wilson
(lon@veronbice.com)
Attorney Identification No. 13547
Turner D. Brumby
(turner@veronbice.com)
Attorney Identification No. 33519
Ashley E. Philen
(ashleyphilen@gmail.com)
Attorney Identification No. 31285

35

**Veron, Bice, Palermo & Wilson, L.L.C.**
721 Kirby St. (70601)
P.O. Box 2125
Lake Charles, Louisiana 70602
Telephone: (337) 310-1600
Facsimile: (337) 310-1601

*Counsel for the Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 5, 2014, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system, which will send a notice of the electronic filing to the counsel of record for Defendants.

*/s/ Emma Elizabeth Antin Daschbach*