| | |
|---|---|
| THE LOUISIANA OIL & GAS ASSOCIATION, INC. | * 19TH JUDICIAL DISTRICT COURT |
| | * |
| | * DOCKET NO. _C 26798_ |
| VERSUS | * |
| | * EAST BATON ROUGE PARISH |
| HONORABLE JAMES D. "BUDDY" CALDWELL, IN HIS CAPACITY AS ATTORNEY GENERAL OF THE STATE OF LOUISIANA | * STATE OF LOUISIANA |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PETITION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

NOW INTO COURT, through undersigned counsel, comes petitioner, Louisiana Oil & Gas Association, Inc. ("LOGA"), who, in seeking a declaratory judgment and injunctive relief, respectfully avers as follows:

1.

Made defendant herein is Honorable James D. "Buddy" Caldwell, in his capacity as Attorney General of the State of Louisiana, (hereinafter "Attorney General"), domiciled in Baton Rouge, Louisiana, and executive and chief administrative officer of the Department of Justice of the State of Louisiana.

2.

Louisiana Oil and Gas Association ("LOGA") is a non-profit trade association whose membership includes individuals and independent oil and gas exploration, development, production and transportation companies conducting oil and gas activities in Louisiana and on public lands owned by the State of Louisiana. The functions of LOGA include the promotion of the interests of its members with respect to environmental compliance and natural resource conservation. LOGA has a substantial interest in the execution and validity of the Attorney General's approval of "Resolution No. 06-06-13-04 – Engagement of Jones, Swanson, Huddell & Garrison, LLC" submitted by the Southeast Louisiana Flood Protection Authority-East ("SLFPA-E") and, thereby, the Attorney General's approval of the "Contingency Fee Agreement and Authority to Represent" executed by the SLFPA-E.

3.

Venue is proper in East Baton Rouge Parish pursuant to La. R.S. 13:5104.

-1-

EXHIBIT 1

<u>BACKGROUND</u>

4.

Under Louisiana Constitution Article VI, § 38.1, "[t]he legislature by law may establish regional flood protection authorities ... for the purpose of constructing and maintaining levees, levee drainage, flood protection, and hurricane flood protection within the territorial jurisdiction of [such] authorit[ies]."  The legislature thereby created the Southeast Louisiana Flood Protection Authority – East ("SLFPA-E") in Louisiana Revised Statutes §§ 38:330.1 – 38:330.13, effective January 1, 2007.  The SLFPA-E was established as a "levee district.[1]  A levee district is "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits."[2]  The statute states that the specific purpose of SLFPA-E is "regional coordination of flood protection in order to promote such coordination over parochial concerns."[3]  Pursuant to that purpose, the SLFPA-E governs certain levee districts, namely: Orleans Levee District, Lake Borgne Basin Levee District, and East Jefferson Levee District.[4]

5.

On July 24, 2013, Civil Action No. 13-6911 was filed in the Civil District Court of the Parish of Orleans, State of Louisiana, entitled "Board of Commissioners of the Southeast Louisiana Flood Protection Authority – East, Individually and as the Board Governing the Orleans Levee District, the Lake Borgne Basin Levee District and the East Jefferson Levee District v. Tennessee Gas Pipeline Company, LLC, et al."  The suit was filed by SLFPA-E against 97 oil, gas, and pipeline companies to require those companies to repair and pay for damages to wetlands caused by oil, gas, and pipeline operations.

6.

SLFPA-E's Petition for Damages and Injunctive Relief is herein referred to as the "Original Petition" and attached as **Exhibit 1**.  The Original Petition alleges that SLFPA-E's "mission of protecting the communities within its jurisdiction from catastrophic storm surge and consequent

---

[1]  La. R.S. 38:330.1(A)(1)  ("The [SLFPA-E and SLFPA-W], referred to herein as 'flood protection authority' or 'authority,' are **established as levee districts** pursuant to Article VI, Sections 38 and 38.1 of the Constitution of Louisiana.") (emphasis added).

[2]  La. R.S. § 38:281(6).

[3]  La. R.S. § 38:330.1(F)(2)(a).

[4]  La. R.S. § 38:330.1(B)(1)(a)(i)-(iii).

flooding is increasingly impracticable as a direct result of Defendants' acts and omissions."[5]
Specifically, SLFPA-E alleges that a network of canals dredged along the state's coastal lands to
access oil and gas wells and transport products of oil and gas production has caused direct land loss
and increased erosion, resulting in increased storm surge risk and increased flood protection costs.
SLFPA-E claims that the oil and gas companies exacerbated the land loss by failing to maintain the
canal network and banks of the canals.  The petition demands damages for the increased flood
protection costs that have been and will further be imposed on the SLFPA-E as well as "injunctive
relief in the form of abatement and restoration of the coastal land loss at issue."[6]

7.

Prior to filing suit, the SLFPA-E sought employment of special counsel to represent them in
the suit.  On June 14, 2013, the SLFPA-E adopted "Resolution No. 06-06-13-04 – Engagement of
Jones, Swanson, Huddell & Garrison, LLC" – hereinafter referred to as the "Resolution" and
attached as **Exhibit 2**.  In the one-page Resolution, the SLFPA-E claimed that the recovery of
"damages due to land loss and erosion caused by third parties" would require "a law firm with
special expertise and experience."  The SLFPA-E authorized its President or Vice President "to
engage Jones, Swanson, Huddell & Garrison, LLC, on behalf of itself and the levee districts within
its jurisdictions." The Resolution further stipulates that Jones, Swanson, Huddell & Garrison, LLC,
would be compensated "on a contingency basis ranging from 32.5 percent to 22.5 percent of any
gross recovery depending on the amount of the recovery."

8.

The Attorney General, acting in his official capacity, approved the Resolution by letter dated
July 16, 2013 - hereinafter referred to as the "Approval" and attached as **Exhibit 3**.  In the Approval,
the Attorney General states: "[W]e find that the employment of counsel and the fee arrangements
set forth therein conform to Louisiana law and are hereby approved."

9.

Pursuant to the Attorney General's approval, the SLFPA-E entered into a contract with Jones,
Swanson, Huddell & Garrison, LLC entitled "Contingency Fee Agreement and Authority on July 17,
2013 – hereinafter referred to as the "Contract" and attached as **Exhibit 4**.

---

[5] Original Peition, p. 6, ¶ 4.6.
[6] Original Petition, p. 23.

<u>COUNT ONE</u>

10.

The Attorney General improperly approved the Resolution for SLFPA-E to hire and compensate special counsel because under La. R.S. § 38:330.6, hiring special counsel for the SLFPA-E is solely the responsibility of the Attorney General.

11.

Generally, "the district attorneys of the several judicial districts ... shall ... be the regular attorneys and counsel for ... every state board or commission domiciled therein."[7] Levee boards, however, "may employ one or more attorneys to represent it and to offer advice and assistance of a legal nature."[8] In the event a levee board retains special counsel other than the district attorney, the levee board must comply with the requirements under La. R.S. §§ 42:261 *et seq.* regarding the necessity of employing special counsel and the approval of compensation for such special counsel.

12.

SLFPA-E differs from other levee boards in terms of counsel. The statutory provisions establishing the SLFPA-E specifically provide that the Attorney General, rather than any district attorney, will serve as counsel for the SLFPA-E. La. R.S. § 38:330.6, which pertains specifically to the SLFPA-E, provides:

> The state attorney general and his assistants shall be and are hereby designated as counsel for each flood protection authority in the execution of the purposes of this Chapter and are hereby charged with the responsibility of representing each authority in any and all matters when called upon to do so.

13.

La. R.S. § 38:330.6 was added by Acts 2006, 1st Ex. Sess., No. 1, Section 1; however, La. R.S. § 42:263, which allows levee boards other than the SLFPA-E to obtain special counsel with approval, was amended by Acts 1979, No. 78, Section 1 and Acts 1982, No. 570, Section 2. Therefore, La. R.S. § 38:330.6 supersedes the provisions of La. R.S. § 42:263 as being the later expression of legislative intent.

---

[7] La. R.S. § 42:261(A).

[8] La. R.S. § 38:305.

14.

In the statutory provisions that establish the SLFPA-E, La. R.S. § 36:330.1 *et seq.*, the Legislature did not provide any authority for the SLFPA-E to retain and compensate its own general or special counsel.  In contrast, the Legislature granted other levee boards authority to employ counsel through La. R.S. § 38:305 and La. R.S. § 42:261 *et seq.*  La. R.S. § 38:330.6, establishing the Attorney General as counsel for the SLFPA-E, supersedes those provisions regarding other levee boards, and the Legislature did not expressly grant the SLFPA-E any similar authority to retain or compensate counsel within La. R.S. § 38:330.1 *et seq.*

15.

Without express Legislative authority to hire special counsel, the SLFPA-E must rely solely on the Attorney General as counsel under La. R.S. § 38:330.6.  If the Attorney General and his assistants are unable to represent the flood protection authority because of the need for special expertise and experience, the Attorney General would hire the special counsel, and the special counsel would be paid on an hourly rate rather than under a contingency fee basis.

COUNT TWO

16.

In the event that SLFPA-E *can* hire its own special counsel other than the Attorney General, the SLFPA-E and the Attorney General must still comply with La. R.S. § 42:261 *et seq.* for the approval of hiring and compensating such counsel.

17.

The Attorney General acted outside his authority in approving the Resolution that did not provide a "real necessity" for special counsel or "stat[e] fully the reasons for the action and the compensation to be paid" as required under La. R.S. § 42:263.

18.

La. R.S. § 42:262 addresses the approval of hiring and compensating special counsel "in the event it should be necessary" to retain such special counsel.  La. R.S. § 42:263 further provides the procedure for how such "necessity" may be established.   La. R.S. § 42:263, entitled "Resolution requesting special counsel," provides, in pertinent part:

> No parish governing authority, **levee board … or other local or state board** shall retain or employ any special attorney or counsel to represent it in any special matter or pay any compensation for any

legal services whatever **unless a _real necessity_ exists**, made to appear by a resolution thereof **stating _fully_ the reasons for the action and the compensation to be paid**. The resolution then shall be subject to the approval of the attorney general and, if approved by him, shall be spread upon the minutes of the body and published in the official journal of the parish. (emphasis added).

19.

La. R.S. § 42:263 applies to the SLFPA-E as a levee board created under La. R.S. § 38:330.1 with special authority over numerous levee districts.

20.

Under La. R.S. § 42:263, the Attorney General approved an improper resolution that did not "stat[e] fully the reasons for the action." The Resolution submitted by SLFPA-E set forth the following:

> **WHEREAS**, the levee districts within jurisdiction of the Southeast Louisiana Flood Protection Authority-East (SLFPA-E) have experienced damages due to land loss and erosion caused by third parties; and
> **WHEREAS**, retaining counsel to represent SLFPA-E in this matter will require a law firm with special expertise and experience.
> **BE IT HEREBY RESOLVED**, that the SLFPA-E authorizes its President or Vice President to engage Jones, Swanson, Huddell & Garrison, LLC, on behalf of itself and the levee districts within its jurisdictions, regarding claims for damages due to land loss and erosion, for the benefit of and on behalf of the residents within its jurisdiction.
> **BE IT FURTHER RESOVLED**, that Jones, Swanson, Huddell & Garrison, LLC, shall be paid on a contingency basis ranging from 32.5 percent to 22.5 percent of any gross recovery depending on the amount in controversy.[9]

The Resolution states that the reason for the action will be "land loss and erosion caused by a third party." However, the Resolution does not indicate the type of damages sought by the SLFPA-E and does not identify from whom the damages will be sought. The Resolution provides only vague, imprecise, and unspecified allegations without providing sufficient information to establish whether a "real necessity" exists for hiring special counsel.

21.

Additionally, under La. R.S. § 42:263, the Attorney General approved an improper resolution that did not "stat[e] fully ... the compensation to be paid." The Resolution submitted by SLFPA-E provided only a range of percentages under the contingency fee agreement. The day after the Attorney General approved the Resolution, SLFPA-E entered into a contingency fee contract with

---

[9] _See_ Exhibit 2, Resolution No. 06-06-13-04.

Jones, Swanson, Huddell & Garrison, LLC ("JSHG") that contained not only the percentages stated

in the Resolution but also a significant "poison pill' provision that provided:

> Client understands that, in the event that JSHG's representation under
> this agreement is terminated prior to full and final recovery and
> payment of attorney's fees, costs and expenses owed to JSHG under
> this agreement, Client will be responsible for any attorney fees or
> costs incurred prior to such discharge or termination, whether such
> discharge or termination is at Client's impetus or that of third parties.
> In such circumstances, fees shall be based on all of the facts and
> circumstances deemed relevant by Louisiana statutory law and/or
> jurisprudence, including JSHG's prevailing standard hourly rates and
> the risk taken by JSHG ...

The Contract does not provide the exact hourly rates to be considered in assessing costs and fees,

and the Resolution also fails to mention or provide these provisions of the contingent fee agreement.

The Attorney General's Approval of the Resolution allows for a vague and imprecise compensation

agreement in violation of La. R.S. § 42:263.

22.

Under La. R.S. § 42:263, the Attorney General approved an improper resolution that did not

establish a "real necessity" for the hiring and compensation of special counsel.  In his Approval, the

Attorney General noted the following:

> [T]his office is not involved in deciding which claims the Board may
> or may not pursue. Neither is this office involved in deciding which
> party or parties the Board wishes to pursue, if the Board decided to
> move forward with a claim. Under Louisiana law, the role of this
> office includes a review of the resolution the Board has submitted and
> a determination that counsel chosen by the Board is in good standing
> and is licensed to practice law in Louisiana and that the fee to be paid
> to counsel by the Board is reasonable under the circumstances.

Any finding of "real necessity" for retaining special counsel logically requires some knowledge of

the claims the SLFPA-E intended to bring and against whom the SLFPA-E intended to bring them.

Generally, the Attorney General would serve as counsel for the SLFPA-E.[10]  Therefore, the hiring

of special counsel would require special skill, expertise, or other need beyond that which the

Attorney General and his assistants may provide.[11] The Resolution stated *only* that SLFPA-E "will

require a law firm with special expertise and experience" but did not indicate or explain what area

---

[10] La. R.S. § 38:330.6.

[11] *Compare Bd. of Comm'rs of Buras Levee Dist. v. Perez*, 12 So.2d 670 (La. 1943) (held that a levee
board did not show "real necessity" for special counsel when they "were ably represented by the
Attorney General ... without added expense"), *with Cortina v. Gulf States Utilities-Cajun Elec. Power
Co-op., Inc.*, 594 So.2d 1326 (La. App. 1 Cir. 1991) (held "real necessity" existed for a school board to
hire special counsel to pursue delinquent taxpayer because evidence of the volume and technical aspects
of the tax litigation supported that an attorney specializing in taxes was needed).

of expertise would be required or how general representation by the Attorney General would otherwise be unsuitable.

<u>COUNT THREE</u>

23.

The approval of the Resolution results in an unconstitutional diversion and appropriation of state funds and usurpation of legislative power by the Attorney General.

24.

Article VII, § 9 of the Louisiana Constitution provides: "All money received by the state or by any state board, agency, or commission shall be deposited immediately upon receipt in the state treasury . . ."

25.

Funds received in settlement or judgment of the suit must be deposited into the state treasury due to the state-wide environmental nature of SLFPA-E's claims.  SLFPA-E asserts that the oil companies are liable for the following "highly costly but necessary remedial measures" that have been or will be taken to reduce the risk to the coastal lands, with SLFPA-E and the levee districts it governs bearing the costs:

1) Abatement and restoration including backfilling and re-vegetating the canals, wetlands creation, reef creation, land bridge construction, hydrologic restoration, shoreline protection, structural protection, bank stabilization, ridge restoration, and diversion projects.
2) Managing the Hurricane and Storm Damage Risk Reduction System, which was developed by the Federal Government and designed by the Corps of Engineers to provide 100-year level storm protection. The system is being turned over to the State of Louisiana and shifting future costs to the State and the flood protection authorities or operation, maintenance, repair, rehabilitation, and replacement.
3) Mandatory levee certification costs for components of the flood protection systems other than the Risk Reduction System that the flood protection authorities are responsible.
4) Additional flood protection expenses including more safe houses for employees.

Many of these restoration and flood protection costs are shared by the state and the flood protection authorities, and therefore, some, if not all, funds received in damages for SLFPA-E's claims should be deposited into the state treasury then appropriated to the flood authorities at the direction of the Legislature.

26.

Additionally, some or potentially all of the funds received in settlement or judgment of these claims must be deposited into the state treasury due to the position of the SLFPA-E as merely a component of a comprehensive state-managed and established system for coastal and flood protection.

27.

The SLFPA-E is part of a hierarchy for comprehensive management over coastal affairs meant to operate as one collaborative state effort. Under Louisiana Revised Statutes Title 49, the legislature declared a public policy of the state "to develop and implement, on a comprehensive and coordinated basis, an integrated coastal protection program in order to reduce if not eliminate the catastrophic rate of coastal land loss in Louisiana."[12] In furtherance of this public policy, the legislature created the Coastal Protection and Restoration Authority ("CPRA") as "a single agency with authority to articulate a clear statement of priorities and to focus development and implantation of efforts to achieve comprehensive integrated coastal protection."[13] The legislature created the CPRA within the office of the governor and mandated "joint coordinat[ion]" among the CPRA, flood authorities, levee districts, and other agencies for implementing the state's coastal protection plan.[14] The SLFPA-E and the levee districts encompassed therein remain "subject to Part II of Chapter 2 of Title 49 of the Louisiana Revised Statutes."[15]

28.

Article VII, § 10 of the Louisiana Constitution governs the expenditure of all state funds deposited into the state treasury: "[M]oney shall be drawn from the state treasury only pursuant to an appropriation made in accordance with law."

---

[12] La. R.S. § 49:214.1(D).

[13] La. R.S. § 49:214.1(B).

[14] La. R.S. § 49:214.1(E) ("[T]he legislature places responsibility for the direction and development of the state's comprehensive master coastal protection plan with the Coastal Protection and Restoration Authority Board within the office of the governor. In order to maximize the effectiveness of integrated coastal protection efforts, the Coastal Protection and Restoration Authority Board shall use an integrated effort to jointly coordinate master plan and annual plan development with the Coastal Protection and Restoration Authority, state agencies, political subdivisions, including flood protection authorities, levee districts, and federal agencies.").

[15] La. R.S. § 38:330.1(A)(2).

29.

Appropriation of state money is vested in the legislative branch of government. Article III, § 16 of the Louisiana Constitution states that "no money shall be withdrawn from the state treasury except through specific appropriation."

30.

The Attorney General approved the SLFPA-E's statement in the Resolution that special counsel "shall be paid on a contingency basis ranging from 32.5 percent to 22.5 percent of any gross recovery depending on the amount of the recovery."

31.

Pursuant to the Attorney General's approval, the SLFPA-E entered into a contract with Jones, Swanson, Huddell & Garrison, LLC, entitled "Contingency Fee Agreement and Authority to Represent." The Contact provides that the firm will represent SLFPA-E "in connection with Client's and the Levee Districts' claims for damages, including but not limited to increased costs and property damages, sustained as a consequence of the ongoing land loss and erosion." As compensation for such representation, SLFPA-E contracted to pay the firm as follows:

a) Thirty-two and a half percent (32.5%) on any gross recovery totalling up to and including one hundred million dollars ($100,000,000);
b) Twenty-seven and a half percent (27.5%) on any gross recovery totalling more than one hundred million dollars ($100,000,000) up to and including three hundred million dollars ($300,000,000); and
c) Twenty-two and a half percent (22.5%) on any gross recovery totalling more than three hundred million dollars ($300,000,000).

32.

The Contract provides that the contingency fee be deducted from all amounts collected; therefore, the Contract deducts from funds that are, in part, due to the State.

33.

The Attorney General's approval of such a contingency fee arrangement by his approval of the Resolution that proposed the Contract amounts to an unconstitutional usurpation of the power vested in the Legislature to appropriate state monies, pursuant to Article III, § 16, in violation of the Article VII, § 10.[16]

---

[16] *Meredith v. Ieyoub*, 96-C-1110 (La. 9/9/97); 700 So.2d 478 (held that the Attorney General acted without express grant of power in contracting with private firms, and thus violated separation of powers doctrine).

INJUNCTIVE RELIEF

34.

The matters set forth in Counts One through Three constitute direct violation of prohibitory law entitling petitioners to injunctive relief without the necessity of demonstrating irreparable injury.

35.

Implementation and performance of said Contract pursuant to the Attorney General's invalid approval of the Resolution will result in irreparable injury to the Petitioner as a result of its chilling effect on the exploration, production, development and transportation of the oil and gas resources of the State, and the resulting diminution in sales taxes, severance taxes, royalties on state leases, and other funds that would otherwise be available for public use.

WHEREFORE, petitioner, Louisiana Oil & Gas Association, Inc., prays for judgment against the defendant, the Honorable James D. "Buddy" Caldwell, as follows:

1.    For a declaration that the Attorney General's approval of SLFPA-E's Resolution for retaining and compensating special counsel is invalid under Louisiana Law;

2.    For a preliminary and permanent injunction for the withdrawal of the Attorney General's approval of SLFPA-E's Resolution for retaining and compensating special counsel;

3.    For all costs of suit incurred herein; and

4.    For all other general and equitable relief.

Respectfully submitted,

MAHTOOK & LAFLEUR, L.L.C.

*[signature]*

ROBERT A. MAHTOOK, JR., #17034
AMY J. GOODE, #35150
600 Jefferson Street, Suite 1000 (70501)
Post Office Box 3089
Lafayette, Louisiana 70502-3089
TEL:  (337) 266-2189
FAX:  (337) 266-2303

Attorneys for Petitioner,
LOUISIANA OIL AND GAS
ASSOCIATION

**PLEASE SERVE:**
Honorable James D. Buddy Caldwell
Attorney General for the State of Louisiana
Office of the Attorney General
1885 North Third Street
Baton Rouge, Louisiana

THE LOUISIANA OIL & GAS
ASSOCIATION, INC.

VERSUS

HONORABLE JAMES D. "BUDDY"
CALDWELL, IN HIS CAPACITY AS
ATTORNEY GENERAL OF THE STATE
OF LOUISIANA

NUMBER: C626798 SEC: 21 DIV: D

19TH JUDICIAL DISTRICT COURT

EAST BATON ROUGE PARISH

STATE OF LOUISIANA

### DEFENDANT/PLAINTIFF-IN-RECONVENTION'S
### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MAY IT PLEASE THE COURT:

Defendant/Plaintiff-in-Reconvention, James D. "Buddy" Caldwell, in his capacity as

Attorney General for the State of Louisiana ("*Mr. Caldwell*" or "*the Attorney General*"),

respectfully submits these Findings of Fact and Conclusions of Law in accordance with the

Court's instructions given at the February 24, 2013, trial on the above-captioned matter.

### FINDINGS OF FACT

I. THE ATTORNEY GENERAL NEVER POSSESSED A COPY OF THE CONTRACT BETWEEN SLFPA-E AND JONES, SWANSON, HUDDELL & GARRISON, L.L.C. PRIOR TO HIS APPROVAL OF THE RESOLUTION.

II. THE ATTORNEY GENERAL WAS NOT CALLED UPON TO REPRESENT SLFPA-E IN ITS LAWSUIT AGAINST THE OIL COMPANIES.

III. THE ATTORNEY GENERAL NEVER RECOMMENDED ANY LAW FIRM TO SLFPA-E REGARDING SLFPA-E'S LAWSUIT AGAINST THE OIL COMPANIES.

IV. THE ATTORNEY GENERAL NEVER SANCTIONED THE BRINGING OF THE LAWSUIT AGAINST THE OIL COMPANIES.

V. THE ATTORNEY GENERAL MERELY APPROVED SLFPA-E'S RESOLUTION REQUESTING LEGAL REPRESENTATION BY JONES, SWANSON, HUDDELL & GARRISON, L.L.C.

VI. THE RESOLUTION CONTAINED LANGUAGE DEMONSTRATING THE REAL NECESSITY FOR SLFPA-E TO HIRE PRIVATE COUNSEL.

VII. THE RESOLUTION CONTAINED A DESCRIPTION OF THE FEE ARRANGEMENT BETWEEN SLFPA-E AND ITS PRIVATE COUNSEL.

VIII. UPON RECEIVING SLFPA-E'S RESOLUTION, THE ATTORNEY GENERAL VERIFIED THAT THE RESOLUTION CONTAINED A STATEMENT OF REAL NECESSITY AND A DESCRIPTION OF THE FEE ARRANGEMENT BETWEEN SLFPA-E AND ITS PRIVATE COUNSEL.

IX. UPON RECEIVING SLFPA-E'S RESOLUTION, THE ATTORNEY GENERAL CONFIRMED THAT SLFPA-E'S PRIVATE COUNSEL WERE IN GOOD STANDING WITH THE LOUISIANA STATE BAR.

1



EXHIBIT
In Globo
2

X.     SLFPA-E IS A POLITICAL SUBDIVISION, NOT A STATE AGENCY.

XI.    LOGA, THROUGH A JUDICIAL ADMISSION CONTAINED IN PARAGRAPH 4 OF ITS ORIGINAL PETITION, ADMITS THAT SLFPA-E IS A LEVEE BOARD, AND THUS, A POLITICAL SUBDIVISION.

XII.   DESPITE FILING THE LAWSUIT AGAINST THE ATTORNEY GENERAL, NOT ONE OF LOGA'S SIXTEEN HUNDRED (1600) MEMBERS HAD THE COURTESY TO APPEAR AT THE TRIAL TO SUPPORT LOGA'S CONTENTIONS.

XIII.  DESPITE FILING THE LAWSUIT AGAINST THE ATTORNEY GENERAL, NOT ONE OF LOGA'S SEVENTY (70) BOARD MEMBERS HAD THE COURTESY TO APPEAR AT THE TRIAL TO SUPPORT LOGA'S CONTENTIONS.

XIV.   DESPITE FILING THE LAWSUIT AGAINST THE ATTORNEY GENERAL, NOT ONE OF LOGA'S EIGHT (8) EXECUTIVE COMMITTEE MEMBERS HAD THE COURTESY TO APPEAR AT THE TRIAL TO SUPPORT LOGA'S CONTENTIONS.

XV.    DESPITE FILING THE LAWSUIT AGAINST THE ATTORNEY GENERAL, NEITHER LOGA'S VICE-PRESIDENT NOR ITS CHAIRMAN HAD THE COURTESY TO APPEAR AT THE TRIAL TO SUPPORT LOGA'S CONTENTIONS.

XVI.   DESPITE NOT APPEARING AT THE TRIAL TO SUPPORT LOGA'S CONTENTIONS, LOGA'S VICE-PRESIDENT WAS NEVERTHELESS COMMUNICATING WITH THE PRESS WHILE THE TRIAL WAS OCCURRING.

XVII.  LOGA HAS NEVER SET FORTH ANY EVIDENCE TO SUPPORT ITS REQUEST FOR A PRELIMINARY AND PERMANENT INJUNCTION.

XVIII. WHEN LOGA FILED ITS REQUEST FOR A PRELIMINARY INJUNCTION, IT FAILED TO ATTACH AN ORDER SETTING THE PRELIMINARY INJUNCTION FOR HEARING.

XIX.   WHEN ONE FILES A LAWSUIT, HE MUST HAVE A GOOD-FAITH BELIEF THAT HE WILL PREVAIL ON THE MERITS; HOWEVER, WHEN ONE REQUESTS PRELIMINARY INJUNCTIVE RELIEF, HE MUST ALSO MAKE A PRIMA FACIE SHOWING THAT HE WILL PREVAIL ON THE MERITS. FURTHERMORE, WHEN ONE REQUESTS PERMANENT INJUNCTIVE RELIEF, HE MUST PROVE HIS CASE BY A PREPONDERANCE OF THE EVIDENCE. LOGA HAS FAILED TO PROVE THE ALLEGATIONS CONTAINED IN PARAGRAPH 35 OF ITS ORIGINAL PETITION REGARDING THE IRREPARABLE INJURY ("CHILLING EFFECT") THAT WILL BE INFLICTED UPON THE OIL AND GAS INDUSTRY SHOULD THIS COURT NOT GRANT ITS REQUEST FOR INJUNCTIVE RELIEF. AT TRIAL, NO EVIDENCE – EITHER TESTIMONIAL OR DOCUMENTARY – WAS OFFERED BY LOGA IN SUPPORT OF ITS CONTENTIONS. AT HIS DEPOSITION, LOGA'S PRESIDENT, DON BRIGGS, ADMITTED THAT HE DID NOT KNOW HOW LOGA WAS GOING TO PROVE ITS CASE REGARDING ITS REQUEST FOR INJUNCTIVE RELIEF (SEE TRANSCRIPT, PAGE 133) AND THAT HE POSSESSES NO INFORMATION THAT WILL ALLOW LOGA TO PROVE ITS CASE REGARDING ITS REQUEST FOR INJUNCTIVE RELIEF (SEE TRANSCRIPT, PAGE 135). INSTEAD, DON BRIGGS STATED THAT HIS STATEMENTS GIVING RISE TO LOGA'S REQUEST FOR INJUNCTIVE RELIEF COME FROM HIS "HEART" (SEE TRANSCRIPT, PAGE 134). BUT THERE WAS NO EVIDENCE THAT EXISTED AT THE TIME OF

LOGA'S FILING OF ITS LAWSUIT AND THERE WAS NO SCINTILLA OF EVIDENCE PRESENTED BY LOGA AT TRIAL IN SUPPORT OF ITS CLAIMS.

XX.  FOR THE REASONS SET FORTH HEREINABOVE, LOGA'S REQUEST FOR INJUNCTIVE RELIEF WAS FRIVOLOUS AND A WASTE OF THE COURT'S AND THE ATTORNEY GENERAL'S TIME AND RESOURCES.

<u>CONCLUSIONS OF LAW</u>

I.  THE ATTORNEY GENERAL COMPLIED WITH LA. R.S. § 38.330.6 AND LA. R.S. § 42:263 IN APPROVING SLFPA-E'S RESOLUTION REQUESTING LEGAL REPRESENTATION BY JONES, SWANSON, HUDDELL & GARRISON, L.L.C.

II.  THE ATTORNEY GENERAL'S APPROVAL OF THE RESOLUTION WAS PROPER BECAUSE IT SATISFIED THE CRITERIA SET FORTH IN LA. R.S. § 42:263(A).

III.  SLFPA-E IS A POLITICAL SUBDIVISION, NOT A STATE AGENCY, AND THUS, THE ATTORNEY GENERAL'S APPROVAL OF THE RESOLUTION WAS PROPER.

IV.  LA. R.S. § 38.330.1(A)(1) DEFINES SLFPA-E AS A LEVEE BOARD, WHICH IS STATUTORILY DEFINED AS A POLITICAL SUBDIVISION PURSUANT TO LA. R.S. § 38:281(6).

V.  BECAUSE SLFPA-E IS A POLITICAL SUBDIVISION AND NOT A STATE AGENCY, ANY FUNDS THAT WILL BE RECOVERED BY SLFPA-E WILL NOT BE STATE FUNDS.

VI.  LA. R.S. § 38.330.6 REQUIRES THE ATTORNEY GENERAL AND HIS ASSISTANTS TO REPRESENT FLOOD PROTECTION AUTHORITIES ONLY WHEN CALLED UPON TO DO SO.

VII.  LA. R.S. § 38.330.6 DOES NOT MANDATE THAT THE ATTORNEY GENERAL HAS THE SOLE RESPONSIBILITY TO HIRE SPECIAL COUNSEL FOR THE FLOOD AUTHORITIES.

VIII.  SLFPA-E HAS AUTHORITY TO HIRE SPECIAL COUNSEL ON ITS OWN, UPON APPROVAL OF A RESOLUTION BY THE ATTORNEY GENERAL PURSUANT TO LA. R.S. § 42:263.

IX.  LOGA'S REQUEST FOR A PRELIMINARY INJUNCTION WAS DEFICIENT BECAUSE WHEN LOGA FILED ITS PETITION, IT FAILED TO ATTACH AN ORDER SETTING THE PRELIMINARY INJUNCTION FOR HEARING NOT LESS THAN TWO NOR MORE THAN TEN DAYS AFTER SERVICE OF THE NOTICE OF FILING, AS IS REQUIRED UNDER LA. C.C.P. ART. 3602.

X.  LOGA'S REQUEST FOR A PRELIMINARY INJUNCTION WAS FRIVOLOUS BECAUSE WHEN LOGA FILED ITS PETITION, IT COULD NOT MAKE A PRIMA FACIE SHOWING OF A THREAT OF IRREPARABLE INJURY, LOSS, OR DAMAGE, AS IS REQUIRED UNDER LA. C.C.P. ART. 3601.

XI.  LOGA'S REQUEST FOR A PERMANENT INJUNCTION IS FRIVOLOUS BECAUSE WHEN LOGA FILED ITS PETITION, IT COULD NOT PROVE BY A PREPONDERANCE OF THE EVIDENCE THE EXISTENCE OF A THREAT OF IRREPARABLE INJURY, LOSS, OR DAMAGE, AS IS REQUIRED UNDER LA. C.C.P. ART. 3601.

3

RESPECTFULLY SUBMITTED,

_____
BY: E. Wade Shows (7637)

**JAMES D. "BUDDY" CALDWELL, ATTORNEY
GENERAL FOR THE STATE OF LOUISIANA**
James D. "Buddy" Caldwell (02211)
Trey Phillips (19978)
Megan K. Terrell (29443)
Ryan M. Seidemann (28991)
1885 North 3rd Street
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6020

SHOWS, CALI & WALSH, L.L.P.
E. Wade Shows (7637)
Mary Ann M. White (29020)
Grant J. Guillot (32484)
628 St. Louis Street (70802)
P. O. Drawer 4425
Baton Rouge, LA 70821
Telephone: (225) 346-1461; Facsimile: (225) 346-1467

RUTLEDGE LAW FIRM, PC
Domoine Dante Rutledge (25230)
701 S. Acadian Thruway
P.O. Box 66551
Baton Rouge, Louisiana 70896
Telephone: (225) 388-9124; Facsimile: (888) 456-0103

*Attorneys for James D. "Buddy" Caldwell, in his capacity
as Attorney General of the State of Louisiana*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Findings of Fact and Conclusion of Law* has been

served upon counsel for LOGA by faxing, emailing and/or mailing the same to each by first class

United States mail, properly addressed and postage prepaid on this 28th day of February, 2014.

_____
**E. WADE SHOWS**

4

# East Baton Rouge Parish Clerk of Court
## Docket Report Results

**Report Selection Criteria**

Case ID:          C626798
Docket Start Date:
Docket Ending Date:

**Case Description**

Case ID:    C626798 - THE LA OIL & GAS ASS INC VS LA STATE ATTY GENERAL - *NON JURY-*
Filing Date: Friday, December 13, 2013
Type:      IN – Injunction
Status     SIGN – SIGNED

**Charges**

| No charges were found. |
| --- |

**Related Cases**

| No related cases were found. |
| --- |

**Case Event Schedule**

| Event | Date/Time | Room | Location | Judge |
| --- | --- | --- | --- | --- |
| BENCH TRIAL | 19-Jun-2014 09:30:00 AM | Division D | 10A | CLARK, JANICE |
| STATUS CONFERENCE | 11-Aug-2014 01:00:00 PM | Division D | 10A | CLARK, JANICE |

**Case Parties**

| Seq # | Assoc | End Date | Type | ID | Name | | Race | Sex | Birth Date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 4 | | Plaintiff | @916748 | THE LOUISIANA OIL AND GAS ASSOCIATION INC | | | | |
| Address: | THRU ROBERT A MAHTOOK JR ATY PO BOX 3089 LAFAYETTE LA 70502 | | | | | Aliases: *none* | | | |
| 2 | 5 | | Defendant | @916750 | LA STATE ATTORNEY GENERAL | | | | |
| Address: | THRU JAMES D CALDWELL ATTY 1885 N 3RD ST BATON ROUGE LA 70802 | | | | | Aliases: *none* | | | |
| 3 | | | Judge | SD | CLARK, HON JANICE | | | | |
| Address: | 19TH JUDICIAL DISTRICT COURT 300 NORTH BLVD, RM 10A BATON ROUGE LA 70802 (225)389-5012 | | | | | Aliases: *none* | | | |
| 4 | | | Attorney | BR17034 | MAHTOOK JR, ROBERT A | | | | |
| Address: | MAHTOOK & LAFLEUR LLC PO BOX 3605 LAFAYETTE LA 70502 (337)266-2189 | | | | | Aliases: *none* | | | |
| 5 | | | Attorney | BR29443 | TERRELL, MEGAN K | | | | |
| Address: | STATE OF LA DEPT OF JUSTICE PO BOX 94005 BATON ROUGE LA 70804 (225)326-6099 | | | | | Aliases: *none* | | | |
| 6 | 2 | | Attorney | BR7637 | SHOWS, E WADE | | | | |
| Address: | SHOWS CALI BERTHELOT & WALSH PO DRAWER 4425 BATON ROUGE LA 70821 (225)346-1461 | | | | | Aliases: *none* | | | |
| 7 | | | Attorney | BR25230 | RUTLEDGE, DOMOINE | | | | |
| Address: | ATTORNEY AT LAW PO BOX 66551 BATON ROUGE LA 70896 | | | | | Aliases: *none* | | | |
| 8 | | | Intervenor | @934755 | SOUTHEAST LA FLOOD PROTECTION AUTHORITY COMM BOARD | | | | |

| Address: | THRU ATTY BENJAMIN REICHARD<br>201 ST CHARLES AVE<br>SUITE 4600<br>NEW ORLEANS LA 70170<br>(504)586-5252 | | | | Aliases: | none | |
|---|---|---|---|---|---|---|---|

| 9 | 8 | | Attorney | BR31933 | REICHARD, BENJAMIN D | | |
|---|---|---|---|---|---|---|---|
| Address: | FISHMAN HAYGOOD PHELPS<br>201 ST CHARLES AVE 46TH FL<br>NEW ORLEANS LA 70170<br>(504)586-5252 | | | | Aliases: | none | |

| 10 | 2 | | Attorney | BR29020 | WHITE, MARY ANN M | | |
|---|---|---|---|---|---|---|---|
| Address: | SHOWS CALI BERTHELOT LLP<br>PO DRAWER 4425<br>BATON ROUGE LA 70821<br>(225)346-1461 | | | | Aliases: | none | |

| 15 | 2 | | Attorney | BR32484 | GUILLOT, GRANT J | | |
|---|---|---|---|---|---|---|---|
| Address: | SHOWS CALI & WALSH LLP<br>PO DRAWER 4425<br>BATON ROUGE LA 70821<br>(225)346-1461 | | | | Aliases: | none | |

| 19 | 8 | | Attorney | BR25796 | MINCE, LORETTA G | | |
|---|---|---|---|---|---|---|---|
| Address: | CORRERO FISHMAN HAYGOOD ET AL<br>201 ST CHARLES AVE 46TH FL<br>NEW ORLEANS LA 70170-4600 | | | | Aliases: | none | |

**Docket Entries**

| Filing Date | Description | Name | Party Association |
|---|---|---|---|
| 13-Dec-2013 10:01 AM | LETTER FROM ATTORNEY | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| Entry: | none | | |
| Image: | Image Available - 📄 | Microfilm #: | S/R 12/23/13 |
| 13-Dec-2013 10:03 AM | PET/INJUNCTION | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| Entry: | none | | |
| Image: | Image Available - 📄 | Microfilm #: | S/R 12/23/13 |
| 13-Dec-2013 10:04 AM | ATTACH/EXHIBITS(W/COST) | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| Entry: | none | | |
| Image: | Image Available - 📄 | Microfilm #: | S/R 12/23/13 |
| 17-Dec-2013 02:32 PM | NOTICE | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |
| Entry: | NOTICE OF APPEARANCE AND REQUEST FOR WRITTEN NOTICE | | |
| Image: | Image Available - 📄 | Microfilm #: | S/R 12/19/13 |
| 23-Dec-2013 05:03 PM | CITATION | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| Entry: | none | | |
| Image: | Image Available - 📄 | Microfilm #: | |
| 09-Jan-2014 03:56 PM | LETTER FROM ATTORNEY | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |
| Entry: | none | | |
| Image: | Image Available - 📄 | Microfilm #: | S/R 01/15/14 |
| 09-Jan-2014 03:56 PM | ANSWER & RECONV DEMAND | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |
| Entry: | none | | |
| Image: | Image Available - 📄 | Microfilm #: | S/R 01/13/14 |
| 09-Jan-2014 04:57 PM | PET/RECONVENTIONAL DEMAND | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |
| Entry: | SUPPLEMENTAL | | |
| Image: | Image Available - 📄 | Microfilm #: | S/R 01/15/14 |
| 09-Jan-2014 04:58 PM | ATTACH/EXHIBITS(W/COST) | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |
| Entry: | none | | |
| Image: | Image Available - 📄 | Microfilm #: | S/R 01/15/14 |
| 09-Jan-2014 05:20 PM | SERVICE INFORMATION | | |
| Entry: | Citation/MS/EBR DATE_SERVED: 1/8/2014 12:00:00 AM SERVICE TYPE: Personal Service PARTY SERVED: LA STATE ATTORNEY GENERAL SERVED BY: EAST BATON ROUGE PARISH SHERIFFS OFFICE | | |
| Image: | Image Available - 📄 | Microfilm #: | |

| | | | |
|---|---|---|---|
| **Entry:** | MOTION TO STRIKE | | |
| **Image:** | | **Microfilm #:** S/R 3-20 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:32 PM | Hearing Held | | |
| **Entry:** | This matter came before the Court for Continuation of Motions and Trial. Present in Court: Robert Mahtook, Jr., Amy Goode, and Cliff LaBorde, counsel for plaintiffs; E. Wade Shows, Demoine Rutledge, and Grant Guillot, counsel for LA State Attorney General; Lori Mince and Rock Palermo, counsel for Southeast LA Flood Protection Authority Commission Board. The Court, ex proprio motu, strikes all the provisions with respect to the argument of counsel in the briefs concerning the constitutionality vel non of any provision not pled and served and noticed. Therefore, the remaining issues should be completed on this date. On the issue of the reconventional demand, testimony was taken. The matter was argued by counsel and submitted to the Court. Whereupon, the Court ruled that the attorney general to hire people in a legacy case and to be able to recoup attorney?s fees, and it does not violate Merdith vs. Ieyoub. Judgment to be signed accordingly. In regards to the principle demand, the Court deferred its ruling to after hearing its docket of Monday, March 10, 2014. The Court ruled as follows: "The Court has reviewed the memoranda together with the proposed findings of fact and conclusion of law. The Court has therefore signed the judgment and will file it with the Clerk of Court forthwith. The judgment was presented to the Court in accordance therewith. Unless there is any objection, the Court will proceed as outlined. Moreover, the Court has reviewed findings of fact, conclusion of law of the plaintiff in reconvention. It is firmly of the opinion that the facts and law comport with the presentation thereof. The Court therefore finds in favor of the defendant and plaintiff in reconvention. Judgment will be signed accordingly as long as it presented in accordance with the minute entry the Court is not spreading upon the minutes." All counsel were present when the Court made its ruling. (Lori Achee, Monday, March 10, 2014) | | |
| **Image:** | | **Microfilm #:** | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:37 PM | FAX FEE/PLEADING | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | OPPOSITION | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 3-20 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:37 PM | LTR / FAX RECT | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | OPPOSITION | | |
| **Image:** | | **Microfilm #:** S/R 3-20 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:37 PM | LETTER FROM ATTORNEY | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/17/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:37 PM | MOTION FOR LEAVE | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/17/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:38 PM | MEMORANDUM/SUPPLEMENTAL | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/17/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:38 PM | ATTACH/EXHIBITS(W/COST) | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/17/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:40 PM | LETTER FROM ATTORNEY | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/17/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:40 PM | OPPOSITION | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/17/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:41 PM | ATTACH/EXHIBITS(W/COST) | MAHTOOK JR, ROBERT A | THE LOUISIANA OIL AND GAS ASSOCIATION INC |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/17/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:54 PM | LETTER FROM ATTORNEY | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |
| **Entry:** | *none* | | |
| **Image:** | | **Microfilm #:** S/R 03/12/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:55 PM | MOTION TO STRIKE W/ORDER | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/12/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:55 PM | MEMORANDUM IN SUPPORT | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |
| **Entry:** | *none* | | |
| **Image:** | Image Available - 📄 | **Microfilm #:** S/R 03/12/14 | |

| | | | |
|---|---|---|---|
| 10-Mar-2014 03:55 PM | ATTACH/EXHIBITS(W/COST) | SHOWS, E WADE | LA STATE ATTORNEY GENERAL |

SLS 14RS-840                                         <u>**ORIGINAL**</u>

Regular Session, 2014

SENATE BILL NO. 531

BY SENATOR ALLAIN

FEES/LICENSES/PERMITS. Provides relative to the authority of certain state and local
government entities to bring causes of action arising from or related to certain permits issued
in the coastal area. (gov sig)

| | |
|---|---|
| 1 | AN ACT |
| 2 | To enact R.S. 49:214.36.1, relative to the authority of certain state and local government |
| 3 | entities to bring causes of action arising from or related to certain permits issued in |
| 4 | the coastal area; to provide relative to causes of action relating to certain permits |
| 5 | issued in the coastal area against state or local governmental entities; and to provide |
| 6 | for related matters. |
| 7 | Be it enacted by the Legislature of Louisiana: |
| 8 | Section 1.  R.S. 49:214.36.1 is hereby enacted to read as follows: |
| 9 | **§214.36.1. Causes of action arising from or related to permits issued in the** |
| 10 | **coastal area pursuant to R.S. 49:214.21 et seq., 33 U.S.C. 1344 or** |
| 11 | **33 U.S.C. 408** |
| 12 | **A.(1)  No state or local governmental entity, except the Department of** |
| 13 | **Natural Resources, the attorney general, or the Coastal Protection and** |
| 14 | **Restoration Authority, shall have, nor may pursue, any right or cause of action** |
| 15 | **arising from or related to a state or federal permit issued pursuant to R.S.** |
| 16 | **49:214.21 et seq., 33 U.S.C. 1344 or 33 U.S.C. 408 in the coastal area as defined** |
| 17 | **by R.S. 49:214.2(4), violation thereof, or enforcement thereof, or for damages** |

Page 1 of 5

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.



EXHIBIT
3

**ORIGINAL**
SB NO. 531

1    or other relief arising from or related to any of the foregoing. Notwithstanding

2    the foregoing, any contractual claims that any state or local governmental entity

3    may possess against the permittee are preserved.

4           (2) Nothing in this Section shall impair any authority under R.S.

5    49:214.36 of the secretary of the Department of Natural Resources, the attorney

6    general, an appropriate district attorney, or a local government with a coastal

7    management program approved under R.S. 49:214.21 et seq., the State and

8    Local Coastal Resources Management Act of 1978.

9           B.  No person shall have, nor may pursue, any right or cause of action

10   against any state or local governmental entity for or relating to any violation of,

11   enforcement of, or damages or other relief arising from or related to any action

12   or inaction in relation to a permit issued pursuant to R.S. 49:214.21 et seq., 33

13   U.S.C. 1344 or 33 U.S.C. 408.

14          C.  Any monies received by any state or local governmental entity except

15   the Department of Natural Resources arising from or related to a state or

16   federal permit issued pursuant to R.S. 49:214.21 et seq., 33 U.S.C. 1344 or 33

17   U.S.C. 408, violation thereof, or enforcement thereof, or for damages or other

18   relief arising from or related to any of the foregoing shall be deposited and

19   credited by the treasurer to the Coastal Protection and Restoration Fund for

20   integrated coastal protection, including coastal restoration, hurricane

21   protection and improving the resiliency of the coastal area.

22          D.  Nothing in this Section shall constitute a waiver of sovereign

23   immunity under the Eleventh Amendment of the United States Constitution.

24          E.  Nothing in this Section shall prevent or preclude any state or local

25   governmental entity or any other person from pursuing any remedy otherwise

26   authorized pursuant to C.C.P. Art. 3861 et seq. or any administrative remedy

27   otherwise authorized by law arising from or related to a state or federal permit

28   issued in the coastal area pursuant to R.S. 49:214.21 et seq., 33 U.S.C. 1344 or

29   33 U.S.C. 408.

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

SLS 14RS-840

1       Section 2. Where litigation asserting a right or cause of action as set forth in R.S.

2     49:214.36.1(A) has been filed as of the effective date of this Act, the state or local

3     governmental entity which has filed such litigation shall provide written notice via certified

4     mail, return receipt requested, to the three agencies identified in R.S. 49:214.36.1(A) within

5     thirty days of the effective date of this Act. Upon motion of the secretary of the Department

6     of Natural Resources, the executive director of the Coastal Protection and Restoration

7     Authority, or the attorney general, the moving parties shall be made parties and shall be

8     substituted for the person who brought the suit. If none of the foregoing moves to be made

9     party to the suit and substituted for the person who brought the suit within ninety days of

10    issuance of such notice, the court on its own motion or on the motion of any party or

11    interested person shall dismiss the litigation without prejudice as to any state or local

12    governmental entity.

13       Section 3. Where litigation asserting a right or cause of action as set forth in R.S.

14    49:214.36.1(B) has been filed as of the effective date of this Act, the court on its own motion

15    or on the motion of any party or interested person shall dismiss the litigation without

16    prejudice as to any state or local governmental entity.

17       Section 4. It is the intent of the legislature that the provisions of R.S. 49:214.36.1(A)

18    are procedural and interpretive in nature and intended to clarify existing law, and that they

19    shall be applicable to all claims existing or actions pending on its effective date and all

20    claims arising or actions filed on and after its effective date. It is further the intent of the

21    legislature to clarify that attempted enforcement of the claims described in R.S.

22    49:214.36.1(A) by any person other than those entities named therein is and has always been

23    contrary to the public policy of this state and ultra vires.

24       Section 5. It is the intent of the legislature that the provisions of R.S. 49:214.36.1(B)

25    shall be applicable to all claims existing or actions pending on its effective date and all

26    claims arising or actions filed on and after its effective date, as authorized by Article XII,

27    Section 10(C) of the Louisiana Constitution. It is further the intent of the legislature to

28    declare that the claims described in R.S. 49:214.36.1(B) are and have always been contrary

29    to the public policy of this state.

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

SLS 14RS-840                                                  <u>**ORIGINAL**</u>
                                                             SB NO. 531

1          Section 6. This Act shall become effective upon signature by the governor or, if not

2   signed by the governor, upon expiration of the time for bills to become law without signature

3   by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana. If

4   vetoed by the governor and subsequently approved by the legislature, this Act shall become

5   effective on the day following such approval.

---

The original instrument and the following digest, which constitutes no part
of the legislative instrument, were prepared by Jerry J. Guillot.

---

DIGEST

Allain (SB 531)

<u>Proposed law</u> provides that no state or local governmental entity, except the Department of
Natural Resources (DNR), the attorney general, or the Coastal Protection and Restoration
Authority (CPRA), shall have, nor may pursue, any right or cause of action arising from or
related to a state or federal permit issued pursuant to R.S. 49:214.21 et seq., 33 U.S.C. 1344
or 33 U.S.C. 408 in the coastal area as defined by R.S. 49:214.2(4), violation thereof, or
enforcement thereof, or for damages or other relief arising from or related to any of the
foregoing. However, preserves any contractual claims that any state or local governmental
entity may possess against the permittee.

Provides that nothing in <u>proposed law</u> shall impair any authority under R.S. 49:214.36 of the
DNR secretary, the attorney general, an appropriate district attorney, or a local government
with a coastal management program approved under R.S. 49:214.21 et seq., the State and
Local Coastal Resources Management Act of 1978.

Provides that no person shall have, nor may pursue, any right or cause of action against any
state or local governmental entity for or relating to any violation of, enforcement of, or
damages or other relief arising from or related to any action or inaction in relation to a
permit issued pursuant to R.S. 49:214.21 et seq., 33 U.S.C. 1344 or 33 U.S.C. 408.

Provides that any monies received by any state or local governmental entity except DNR
arising from or related to a state or federal permit issued pursuant to R.S. 49:214.21 et seq.,
33 U.S.C. 1344 or 33 U.S.C. 408, violation thereof, or enforcement thereof, or for damage
or other relief arising from or related to any of the foregoing shall be deposited and credited
by the treasurer to the Coastal Protection and Restoration Fund for integrated coastal
protection, including coastal restoration, hurricane protection and improving the resiliency
of the coastal area.

Provides that nothing in <u>proposed law</u>:

(1)     Shall constitute a waiver of sovereign immunity under the Eleventh Amendment of
        the US Constitution.

(2)     Shall prevent or preclude any state or local governmental entity or any other person
        from pursuing any remedy otherwise authorized pursuant to C.C.P. Art. 3861 et seq.
        or any administrative remedy otherwise authorized by law arising from or related to
        a state or federal permit issued in the coastal area pursuant to R.S. 49:214.21 et seq.,
        33 U.S.C. 1344 or 33 U.S.C. 408.

Provides that where litigation asserting a right or cause of action as set forth in R.S.
49:214.36.1(A) has been filed as of the effective date of <u>proposed law</u>, the state or local
governmental entity which has filed such litigation shall provide written notice via certified

Page 4 of 5
Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **<u>boldface type and underscored</u>** are additions.

SLS 14RS-840                                          **ORIGINAL**
                                                     SB NO. 531

mail, return receipt requested, to the three agencies identified in R.S. 49:214.36.1(A) within thirty days of the effective date of proposed law. Upon motion of the DNR secretary, the CPRA executive director, or the attorney general, the moving parties shall be made parties and shall be substituted for the person who brought the suit. However, if none of the foregoing moves to be made party to the suit and substituted for the person who brought the suit within 90 days of issuance of such notice, the court on its own motion or on the motion of any party or interested person shall dismiss the litigation without prejudice as to any state or local governmental entity.

Provides that where litigation asserting a right or cause of action as set forth in R.S. 49:214.36.1(B) has been filed as of the effective date of proposed law, the court on its own motion or on the motion of any party or interested person shall dismiss the litigation without prejudice as to any state or local governmental entity.

States that it is the intent of the legislature that the provisions of R.S. 49:214.36.1(A) are procedural and interpretive in nature and intended to clarify existing law, and that they shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date. Provides that it is further the intent of the legislature to clarify that attempted enforcement of the claims described in R.S. 49:214.36.1(A) by any person other than those entities named therein is and has always been contrary to the public policy of this state and ultra vires.

States that it is the intent of the legislature that the provisions of R.S. 49:214.36.1(B) shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date, as authorized by Article XII, Section 10(C) of the La. Constitution.  Provides that it is further the intent of the legislature to declare that the claims described in R.S. 49:214.36.1(B) are and have always been contrary to the public policy of this state.

Effective upon signature of the governor or lapse of time for gubernatorial action.

(Adds R.S. 49:214.36.1)

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

# LOUISIANA STATE SENATE

**Committee Members**

Senator Ben W. Nevers
  *Chairman*
Senator Dan Claitor
  *Vice Chair*
Senator Conrad Appel
Senator Jack Donahue
Senator Daniel R. Martiny
Senator Edwin R. Murray
Senator Rick Ward, III



Post Office Box 94183
Baton Rouge, LA 70804
Telephone: (225) 342-6192

**Committee Staff**

Julie J. Baxter
Attorney

Cathy Ortego
Administrative Secretary

**Committee on**
**JUDICIARY A**

NOTICE OF MEETING
April 29, 2014
9:00 a.m
John J. Hainkel, Jr. Room

A G E N D A

I.     CALL TO ORDER

II.    ROLL CALL

III.   APPROVAL OF MINUTES  ( April 22, 2014 )

IV.   LEGISLATION TO BE CONSIDERED

    **SB 233**    **BROOME**    **HOUSING**   Provides relative to the Louisiana Equal Housing Opportunity Act. (8/1/14)

    **SB 382**    **LAFLEUR**    **PRIVILEGES/LIENS**    Provides with respect to privileges for health care providers. (8/1/14)

    **SB 531**    **ALLAIN**    **FEES/LICENSES/PERMITS**  Provides relative to the authority of certain state and local government entities to bring causes of action arising from or related to certain permits issued in the coastal area. (gov sig)

Page 1



EXHIBIT
In Globo
4

| | | |
|---|---|---|
| **SB 562** | **WALSWORTH** | **CIVIL PROCEDURE**  Provides disclosure procedures for asbestos and silica claims. |
| **SB 589** | **WALSWORTH** | **CHILDREN**   Extends the termination date of the Children's Cabinet. (gov sig) |
| **SB 607** | **GALLOT** | **DIVORCE** Provides relative to the effect of a divorce or pending divorce on the designation by an individual of the individual's spouse or former spouse as beneficiary in certain agreements upon the death of the individual. |
| **HB 9** | **EDWARDS** | **INSURANCE/AUTOMOBILE**   Provides for liability for damages caused by an excluded driver. |
| **HB 11** | **EDWARDS** | **HOLIDAYS**  Designates the seventh day of August as "Purple Heart Recognition Day". |
| **HB 102** | **FOIL** | **CIVIL/PROCEDURE**  Provides relative to the title of proceedings for continuing tutorships. |
| **HB 123** | **SEABAUGH** | **CIVIL/MOTIONS**   Provides relative to service of motions for summary judgment. |
| **HB 187** | **LOPINTO** | **CHILDREN**   Provides for surrogacy regulation in Louisiana. |
| **HB 478** | **MILLER** | **PROPERTY/EXPROPRIATION**  Provides relative to procedures in certain expropriation proceedings. |
| **HB 599** | **ABRAMSON** | **CIVIL/MOTIONS**   Provides relative to motions for summary judgment. |
| **HB 607** | **ABRAMSON** | **CIVIL/PROCEDURE** Provides for continuous revision of the Code of Civil Procedure. |
| **HB 619** | **ABRAMSON** | **CIVIL/PROCEDURE** Provides relative to the Uniform Interstate Deposition and Discovery Act. |
| **HB 620** | **ABRAMSON** | **TRUSTS** Provides relative to the delegation of authority of a trustee. |

| | | |
|---|---|---|
| **HB 622** | **ABRAMSON** | **CHILDREN/TUTORSHIP**   Provides relative to tutorship proceedings. |
| **HB 882** | **CHAMPAGNE** | **CLERKS OF COURT**   Provides relative to legal holidays in Iberia Parish. |
| **HB 940** | **ABRAMSON** | **ADMINISTRATIVE PROCEDURE** Provides relative to nuisance ordinances in the city of New Orleans. |

V.  CONSIDERATION OF ANY OTHER MATTERS THAT MAY COME BEFORE THE COMMITTEE

VI.  ADJOURNMENT


THIS NOTICE CONTAINS A TENTATIVE AGENDA AND MAY BE REVISED PRIOR TO THE MEETING.  REVISED NOTICES CAN BE CHECKED ON THE WALL OUTSIDE THE COMMITTEE ROOM IN WHICH THE MEETING IS TO BE HELD, ON THE BULLETIN BOARDS OUTSIDE THE HOUSE AND SENATE CHAMBERS (MEMORIAL HALLS), AT THE BILL ROOM IN THE BASEMENT, OR BY CALLING THE PULS LINE 342-2456.


Senator Ben W. Nevers, Chairman

Login    Sign-Up

| Home | Laws | Bills | Sessions | House | Senate | Committees | Legislators | My Legis |
|------|------|-------|----------|-------|--------|------------|-------------|----------|

# FINAL DISPOSITION OF SENATE BILLS

## 2014 Regular Session

**The following notations are used to indicate final dispositions:**

| | |
|---|---|
| ACT AND THE ASSIGNED NUMBER | The bill became law. |
| BY SUBSTITUTE (Substitute Bill #) | Bill reported from committee by substitute. |
| CALENDAR/HOUSE, SENATE | Died on House or Senate calendar |
| COMMITTEE/HOUSE, SENATE | Died in House or Senate committee |
| CONFERENCE COMMITTEE | Conference committee failed to report. |
| CONFERENCE REPORT/HOUSE, SENATE | Failed to act on conference committee report. |
| INDEF. POSTPONED/HOUSE, SENATE | Indefinitely postponed in House or Senate |
| VETOED | Vetoed by the govenor. |
| VOTE-FINAL PASSAGE/HOUSE, SENATE | Failed to pass 3rd reading in House/Senate |
| WITHDRAWN | The bill was withdrawn. |

| Bill No. | Final Disposition | Bill No. | Final Disposition |
|----------|-------------------|----------|-------------------|
| 1 | COMMITTEE/HOUSE | 344 | ACT 577 |
| 2 | ACT 851 | 345 | COMMITTEE/SENATE |

| | |
|---|---|
| **3**<br>COMMITTEE/SENATE | **346**<br>COMMITTEE/SENATE |
| **4**<br>COMMITTEE/HOUSE | **347**<br>COMMITTEE/SENATE |
| **5**<br>WITHDRAWN | **348**<br>COMMITTEE/SENATE |
| **6**<br>COMMITTEE/HOUSE | **349**<br>WITHDRAWN |
| **7**<br>ACT 131 | **350**<br>WITHDRAWN |
| **8**<br>COMMITTEE/SENATE | **351**<br>ACT 139 |
| **9**<br>COMMITTEE/SENATE | **352**<br>COMMITTEE/SENATE |
| **10**<br>COMMITTEE/SENATE | **353**<br>ACT 705 |
| **11**<br>COMMITTEE/HOUSE | **354**<br>CALENDAR/SENATE |
| **12**<br>ACT 278 | **355**<br>CALENDAR/SENATE |
| **13**<br>ACT 571 | **356**<br>COMMITTEE/HOUSE |
| **14**<br>ACT 478 | **357**<br>COMMITTEE/SENATE |
| **15**<br>COMMITTEE/SENATE | **358**<br>ACT 749 |
| **16**<br>ACT 101 | **359**<br>ACT 750 |
| **17**<br>COMMITTEE/SENATE | **360**<br>ACT 751 |
| **18**<br>ACT 102 | **361**<br>ACT 603 |
| **19**<br>ACT 103 | **362**<br>ACT 125 |
| **20**<br>ACT 727 | **363**<br>ACT 304 |

| | |
|---|---|
| **21**<br>ACT 104 | **364**<br>COMMITTEE/SENATE |
| **22**<br>COMMITTEE/SENATE | **365**<br>COMMITTEE/SENATE |
| **23**<br>COMMITTEE/SENATE | **366**<br>ACT 752 |
| **24**<br>ACT 679 | **367**<br>COMMITTEE/SENATE |
| **25**<br>ACT 680 | **368**<br>ACT 860 |
| **26**<br>COMMITTEE/SENATE | **369**<br>ACT 389 |
| **27**<br>COMMITTEE/SENATE | **370**<br>COMMITTEE/SENATE |
| **28**<br>ACT 681 | **371**<br>WITHDRAWN |
| **29**<br>COMMITTEE/SENATE | **372**<br>ACT 489 |
| **30**<br>ACT 852 | **373**<br>COMMITTEE/HOUSE |
| **31**<br>ACT 728 | **374**<br>COMMITTEE/SENATE |
| **32**<br>ACT 105 | **375**<br>COMMITTEE/SENATE |
| **33**<br>WITHDRAWN | **376**<br>COMMITTEE/SENATE |
| **34**<br>WITHDRAWN | **377**<br>ACT 753 |
| **35**<br>WITHDRAWN | **378**<br>COMMITTEE/SENATE |
| **36**<br>ACT 729 | **379**<br>COMMITTEE/SENATE |
| **37**<br>ACT 363 | **380**<br>COMMITTEE/SENATE |
| **38**<br>ACT 593 | **381**<br>COMMITTEE/SENATE |

| | | | |
|---|---|---|---|
| **39** | **382** | | |
| ACT 279 | COMMITTEE/HOUSE | | |
| **40** | **383** | | |
| ACT 730 | ACT 126 | | |
| **41** | **384** | | |
| WITHDRAWN | ACT 463 | | |
| **42** | **385** | | |
| COMMITTEE/SENATE | COMMITTEE/HOUSE | | |
| **43** | **386** | | |
| ACT 444 | ACT 706 | | |
| **44** | **387** | | |
| WITHDRAWN | ACT 707 | | |
| **45** | **388** | | |
| ACT 364 | ACT 140 | | |
| **46** | **389** | | |
| COMMITTEE/SENATE | COMMITTEE/SENATE | | |
| **47** | **390** | | |
| COMMITTEE/SENATE | COMMITTEE/SENATE | | |
| **48** | **391** | | |
| ACT 365 | COMMITTEE/SENATE | | |
| **49** | **392** | | |
| ACT 366 | COMMITTEE/SENATE | | |
| **50** | **393** | | |
| COMMITTEE/SENATE | COMMITTEE/SENATE | | |
| **51** | **394** | | |
| ACT 106 | ACT 754 | | |
| **52** | **395** | | |
| ACT 367 | ACT 755 | | |
| **53** | **396** | | |
| ACT 731 | COMMITTEE/SENATE | | |
| **54** | **397** | | |
| ACT 479 | COMMITTEE/SENATE | | |
| **55** | **398** | | |
| ACT 280 | ACT 604 | | |
| **56** | **399** | | |
| ACT 480 | ACT 127 | | |

**57**
ACT 445

**400**
COMMITTEE/SENATE

**58**
ACT 107

**401**
ACT 490

**59**
ACT 132

**402**
ACT 390

**60**
ACT 594

**403**
ACT 491

**61**
ACT 853

**404**
COMMITTEE/SENATE

**62**
ACT 732

**405**
COMMITTEE/SENATE

**63**
ACT 682

**406**
COMMITTEE/SENATE

**64**
ACT 595

**407**
COMMITTEE/SENATE

**65**
COMMITTEE/SENATE

**408**
COMMITTEE/SENATE

**66**
ACT 572

**409**
ACT 708

**67**
WITHDRAWN

**410**
ACT 391

**68**
COMMITTEE/SENATE

**411**
COMMITTEE/SENATE

**69**
CALENDAR/SENATE

**412**
ACT 756

**70**
CALENDAR/SENATE

**413**
ACT 578

**71**
ACT 481

**414**
COMMITTEE/SENATE

**72**
ACT 133

**415**
COMMITTEE/SENATE

**73**
COMMITTEE/SENATE

**416**
COMMITTEE/SENATE

**74**
WITHDRAWN

**417**
ACT 464

| | |
|---|---|
| **75** ACT 573 | **418** VETOED |
| **76** WITHDRAWN | **419** COMMITTEE/SENATE |
| **77** COMMITTEE/SENATE | **420** COMMITTEE/SENATE |
| **78** COMMITTEE/SENATE | **421** WITHDRAWN |
| **79** CALENDAR/SENATE | **422** ACT 392 |
| **80** COMMITTEE/SENATE | **423** CALENDAR/SENATE |
| **81** COMMITTEE/SENATE | **424** WITHDRAWN |
| **82** ACT 108 | **425** ACT 861 |
| **83** WITHDRAWN | **426** CALENDAR/SENATE |
| **84** CALENDAR/SENATE | **427** WITHDRAWN |
| **85** ACT 134 | **428** COMMITTEE/SENATE |
| **86** COMMITTEE/SENATE | **429** COMMITTEE/SENATE |
| **87** ACT 368 | **430** ACT 393 |
| **88** ACT 446 | **431** COMMITTEE/SENATE |
| **89** ACT 281 | **432** ACT 492 |
| **90** CALENDAR/SENATE | **433** ACT 128 |
| **91** ACT 574 | **434** CALENDAR/SENATE |
| **92** COMMITTEE/SENATE | **435** ACT 757 |

| | |
|---|---|
| **93** <br> ACT 109 | **436** <br> ACT 129 |
| **94** <br> COMMITTEE/SENATE | **437** <br> BY SUBSTITUTE (SB683) |
| **95** <br> COMMITTEE/SENATE | **438** <br> COMMITTEE/SENATE |
| **96** <br> COMMITTEE/SENATE | **439** <br> COMMITTEE/SENATE |
| **97** <br> ACT 369 | **440** <br> COMMITTEE/SENATE |
| **98** <br> ACT 733 | **441** <br> ACT 709 |
| **99** <br> ACT 135 | **442** <br> ACT 465 |
| **100** <br> WITHDRAWN | **443** <br> COMMITTEE/HOUSE |
| **101** <br> ACT 282 | **444** <br> WITHDRAWN |
| **102** <br> WITHDRAWN | **445** <br> ACT 466 |
| **103** <br> ACT 370 | **446** <br> ACT 710 |
| **104** <br> ACT 447 | **447** <br> ACT 862 |
| **105** <br> ACT 448 | **448** <br> WITHDRAWN |
| **106** <br> ACT 283 | **449** <br> COMMITTEE/SENATE |
| **107** <br> BY SUBSTITUTE (SB682) | **450** <br> COMMITTEE/SENATE |
| **108** <br> ACT 854 | **451** <br> WITHDRAWN |
| **109** <br> COMMITTEE/SENATE | **452** <br> WITHDRAWN |
| **110** <br> ACT 734 | **453** <br> COMMITTEE/SENATE |

| | |
|---|---|
| **111**<br>ACT 596 | **454**<br>COMMITTEE/SENATE |
| **112**<br>ACT 575 | **455**<br>COMMITTEE/SENATE |
| **113**<br>COMMITTEE/SENATE | **456**<br>ACT 863 |
| **114**<br>COMMITTEE/SENATE | **457**<br>COMMITTEE/SENATE |
| **115**<br>COMMITTEE/SENATE | **458**<br>COMMITTEE/SENATE |
| **116**<br>ACT 449 | **459**<br>ACT 711 |
| **117**<br>COMMITTEE/SENATE | **460**<br>ACT 467 |
| **118**<br>ACT 735 | **461**<br>ACT 758 |
| **119**<br>ACT 110 | **462**<br>ACT 394 |
| **120**<br>COMMITTEE/SENATE | **463**<br>COMMITTEE/SENATE |
| **121**<br>ACT 736 | **464**<br>WITHDRAWN |
| **122**<br>CONFERENCE<br>COMMITTEE REPORT | **465**<br>ACT 579 |
| **123**<br>COMMITTEE/SENATE | **466**<br>COMMITTEE/SENATE |
| **124**<br>WITHDRAWN | **467**<br>COMMITTEE/SENATE |
| **125**<br>ACT 450 | **468**<br>ACT 759 |
| **126**<br>ACT 737 | **469**<br>ACT 544 |
| **127**<br>COMMITTEE/SENATE | **470**<br>ACT 760 |
| **128**<br>ACT 136 | **471**<br>WITHDRAWN |

| | |
|---|---|
| **129**<br>ACT 1 | **472**<br>ACT 305 |
| **130**<br>CALENDAR/SENATE | **473**<br>ACT 306 |
| **131**<br>ACT 284 | **474**<br>COMMITTEE/SENATE |
| **132**<br>ACT 683 | **475**<br>COMMITTEE/SENATE |
| **133**<br>ACT 738 | **476**<br>ACT 307 |
| **134**<br>ACT 739 | **477**<br>ACT 468 |
| **135**<br>ACT 855 | **478**<br>ACT 308 |
| **136**<br>WITHDRAWN | **479**<br>COMMITTEE/SENATE |
| **137**<br>COMMITTEE/SENATE | **480**<br>ACT 864 |
| **138**<br>ACT 451 | **481**<br>ACT 712 |
| **139**<br>ACT 111 | **482**<br>ACT 761 |
| **140**<br>ACT 597 | **483**<br>CONFERENCE COMMITTEE |
| **141**<br>ACT 285 | **484**<br>COMMITTEE/SENATE |
| **142**<br>ACT 371 | **485**<br>WITHDRAWN |
| **143**<br>VETOED | **486**<br>COMMITTEE/SENATE |
| **144**<br>COMMITTEE/SENATE | **487**<br>COMMITTEE/SENATE |
| **145**<br>COMMITTEE/SENATE | **488**<br>COMMITTEE/SENATE |
| **146**<br>COMMITTEE/SENATE | **489**<br>ACT 713 |

| | |
|---|---|
| **147**<br>ACT 112 | **490**<br>COMMITTEE/SENATE |
| **148**<br>ACT 372 | **491**<br>COMMITTEE/SENATE |
| **149**<br>ACT 452 | **492**<br>CALENDAR/SENATE |
| **150**<br>COMMITTEE/SENATE | **493**<br>COMMITTEE/SENATE |
| **151**<br>COMMITTEE/SENATE | **494**<br>COMMITTEE/SENATE |
| **152**<br>ACT 373 | **495**<br>WITHDRAWN |
| **153**<br>COMMITTEE/SENATE | **496**<br>ACT 865 |
| **154**<br>ACT 286 | **497**<br>COMMITTEE/SENATE |
| **155**<br>ACT 740 | **498**<br>ACT 493 |
| **156**<br>COMMITTEE/SENATE | **499**<br>CALENDAR/SENATE |
| **157**<br>ACT 137 | **500**<br>ACT 762 |
| **158**<br>COMMITTEE/SENATE | **501**<br>COMMITTEE/SENATE |
| **159**<br>COMMITTEE/SENATE | **502**<br>ACT 714 |
| **160**<br>COMMITTEE/SENATE | **503**<br>ACT 494 |
| **161**<br>ACT 684 | **504**<br>COMMITTEE/SENATE |
| **162**<br>COMMITTEE/SENATE | **505**<br>CALENDAR/SENATE |
| **163**<br>COMMITTEE/SENATE | **506**<br>CONFERENCE<br>COMMITTEE REPORT |
| **164**<br>COMMITTEE/SENATE | **507**<br>ACT 866 |

**165**
ACT 453

**166**
COMMITTEE/SENATE

**167**
ACT 856

**168**
ACT 113

**169**
ACT 374

**170**
ACT 287

**171**
COMMITTEE/SENATE

**172**
ACT 741

**173**
WITHDRAWN

**174**
ACT 288

**175**
COMMITTEE/SENATE

**176**
WITHDRAWN

**177**
ACT 454

**178**
ACT 20

**179**
ACT 482

**180**
ACT 598

**181**
ACT 114

**182**
COMMITTEE/SENATE

**508**
WITHDRAWN

**509**
WITHDRAWN

**510**
ACT 309

**511**
ACT 469

**512**
CALENDAR/SENATE

**513**
ACT 580

**514**
ACT 581

**515**
COMMITTEE/SENATE

**516**
ACT 867

**517**
COMMITTEE/SENATE

**518**
COMMITTEE/HOUSE

**519**
COMMITTEE/SENATE

**520**
CALENDAR/SENATE

**521**
COMMITTEE/SENATE

**522**
ACT 715

**523**
ACT 395

**524**
ACT 868

**525**
ACT 310

| | |
|---|---|
| **183**<br>ACT 742 | **526**<br>COMMITTEE/SENATE |
| **184**<br>ACT 576 | **527**<br>ACT 470 |
| **185**<br>ACT 685 | **528**<br>ACT 471 |
| **186**<br>ACT 686 | **529**<br>WITHDRAWN |
| **187**<br>ACT 289 | **530**<br>CALENDAR/SENATE |
| **188**<br>COMMITTEE/SENATE | **531**<br>COMMITTEE/SENATE |
| **189**<br>ACT 290 | **532**<br>ACT 716 |
| **190**<br>COMMITTEE/SENATE | **533**<br>ACT 717 |
| **191**<br>ACT 483 | **534**<br>COMMITTEE/SENATE |
| **192**<br>ACT 291 | **535**<br>COMMITTEE/HOUSE |
| **193**<br>COMMITTEE/SENATE | **536**<br>BY SUBSTITUTE (SB685) |
| **194**<br>ACT 484 | **537**<br>ACT 311 |
| **195**<br>COMMITTEE/SENATE | **538**<br>ACT 312 |
| **196**<br>COMMITTEE/SENATE | **539**<br>ACT 582 |
| **197**<br>COMMITTEE/SENATE | **540**<br>COMMITTEE/SENATE |
| **198**<br>ACT 375 | **541**<br>COMMITTEE/SENATE |
| **199**<br>ACT 687 | **542**<br>ACT 130 |
| **200**<br>COMMITTEE/SENATE | **543**<br>VETOED |

201
COMMITTEE/SENATE

202
COMMITTEE/SENATE

203
ACT 376

204
ACT 688

205
COMMITTEE/SENATE

206
ACT 377

207
ACT 689

208
ACT 690

209
ACT 691

210
COMMITTEE/SENATE

211
COMMITTEE/SENATE

212
ACT 378

213
CALENDAR/SENATE

214
COMMITTEE/HOUSE

215
COMMITTEE/SENATE

216
VOTE - FINAL
PASSAGE/HOUSE

217
CALENDAR/HOUSE

544
ACT 763

545
ACT 396

546
COMMITTEE/SENATE

547
COMMITTEE/HOUSE

548
COMMITTEE/SENATE

549
ACT 869

550
COMMITTEE/SENATE

551
COMMITTEE/SENATE

552
BY SUBSTITUTE (SB680)

553
COMMITTEE/HOUSE

554
ACT 718

555
COMMITTEE/SENATE

556
ACT 472

557
ACT 313

558
COMMITTEE/SENATE

559
COMMITTEE/SENATE

560
CONFERENCE
COMMITTEE

| | |
|---|---|
| **218**<br>COMMITTEE/SENATE | **561**<br>COMMITTEE/SENATE |
| **219**<br>COMMITTEE/SENATE | **562**<br>COMMITTEE/SENATE |
| **220**<br>ACT 692 | **563**<br>WITHDRAWN |
| **221**<br>CALENDAR/SENATE | **564**<br>ACT 583 |
| **222**<br>ACT 379 | **565**<br>COMMITTEE/SENATE |
| **223**<br>COMMITTEE/SENATE | **566**<br>ACT 584 |
| **224**<br>ACT 693 | **567**<br>ACT 314 |
| **225**<br>COMMITTEE/SENATE | **568**<br>CALENDAR/SENATE |
| **226**<br>COMMITTEE/SENATE | **569**<br>WITHDRAWN |
| **227**<br>COMMITTEE/SENATE | **570**<br>ACT 473 |
| **228**<br>ACT 380 | **571**<br>COMMITTEE/HOUSE |
| **229**<br>ACT 599 | **572**<br>ACT 585 |
| **230**<br>COMMITTEE/SENATE | **573**<br>ACT 719 |
| **231**<br>COMMITTEE/SENATE | **574**<br>COMMITTEE/SENATE |
| **232**<br>ACT 381 | **575**<br>ACT 764 |
| **233**<br>VOTE - FINAL PASSAGE/HOUSE | **576**<br>COMMITTEE/SENATE |
| **234**<br>ACT 382 | **577**<br>COMMITTEE/SENATE |
| **235**<br>ACT 694 | **578**<br>ACT 586 |

| | |
|---|---|
| **236** COMMITTEE/SENATE | **579** COMMITTEE/SENATE |
| **237** WITHDRAWN | **580** ACT 720 |
| **238** WITHDRAWN | **581** COMMITTEE/SENATE |
| **239** ACT 292 | **582** ACT 765 |
| **240** ACT 600 | **583** ACT 495 |
| **241** ACT 293 | **584** CALENDAR/SENATE |
| **242** CONFERENCE COMMITTEE | **585** ACT 766 |
| **243** ACT 115 | **586** ACT 721 |
| **244** ACT 695 | **587** ACT 767 |
| **245** ACT 696 | **588** CONFERENCE COMMITTEE REPORT |
| **246** ACT 294 | **589** ACT 496 |
| **247** ACT 116 | **590** ACT 474 |
| **248** ACT 383 | **591** CONFERENCE COMMITTEE |
| **249** WITHDRAWN | **592** ACT 722 |
| **250** ACT 697 | **593** ACT 768 |
| **251** ACT 295 | **594** ACT 497 |
| **252** ACT 296 | **595** COMMITTEE/SENATE |

| | |
|---|---|
| **253**<br>ACT 455 | **596**<br>COMMITTEE/SENATE |
| **254**<br>ACT 117 | **597**<br>COMMITTEE/SENATE |
| **255**<br>ACT 297 | **598**<br>ACT 498 |
| **256**<br>COMMITTEE/SENATE | **599**<br>ACT 587 |
| **257**<br>COMMITTEE/SENATE | **600**<br>ACT 769 |
| **258**<br>ACT 456 | **601**<br>ACT 605 |
| **259**<br>COMMITTEE/SENATE | **602**<br>BY SUBSTITUTE (SB684) |
| **260**<br>ACT 118 | **603**<br>ACT 588 |
| **261**<br>ACT 485 | **604**<br>COMMITTEE/HOUSE |
| **262**<br>ACT 457 | **605**<br>ACT 770 |
| **263**<br>BY SUBSTITUTE (SB575) | **606**<br>ACT 606 |
| **264**<br>COMMITTEE/SENATE | **607**<br>COMMITTEE/HOUSE |
| **265**<br>ACT 119 | **608**<br>ACT 723 |
| **266**<br>ACT 298 | **609**<br>COMMITTEE/SENATE |
| **267**<br>COMMITTEE/SENATE | **610**<br>ACT 475 |
| **268**<br>ACT 384 | **611**<br>COMMITTEE/SENATE |
| **269**<br>ACT 743 | **612**<br>COMMITTEE/SENATE |
| **270**<br>ACT 744 | **613**<br>ACT 771 |

| | |
|---|---|
| **271** CALENDAR/HOUSE | **614** ACT 724 |
| **272** ACT 857 | **615** COMMITTEE/SENATE |
| **273** COMMITTEE/SENATE | **616** COMMITTEE/SENATE |
| **274** ACT 745 | **617** ACT 499 |
| **275** COMMITTEE/SENATE | **618** ACT 397 |
| **276** ACT 299 | **619** CALENDAR/SENATE |
| **277** ACT 385 | **620** ACT 500 |
| **278** WITHDRAWN | **621** COMMITTEE/SENATE |
| **279** ACT 120 | **622** ACT 772 |
| **280** ACT 698 | **623** COMMITTEE/SENATE |
| **281** ACT 121 | **624** ACT 501 |
| **282** ACT 858 | **625** COMMITTEE/SENATE |
| **283** COMMITTEE/SENATE | **626** COMMITTEE/SENATE |
| **284** COMMITTEE/SENATE | **627** COMMITTEE/HOUSE |
| **285** COMMITTEE/SENATE | **628** CALENDAR/SENATE |
| **286** COMMITTEE/SENATE | **629** COMMITTEE/SENATE |
| **287** ACT 122 | **630** CALENDAR/HOUSE |
| **288** ACT 123 | **631** COMMITTEE/SENATE |

| | |
|---|---|
| **289**<br>ACT 458 | **632**<br>WITHDRAWN |
| **290**<br>ACT 486 | **633**<br>ACT 476 |
| **291**<br>ACT 315 | **634**<br>COMMITTEE/SENATE |
| **292**<br>ACT 316 | **635**<br>ACT 725 |
| **293**<br>ACT 386 | **636**<br>VOTE - FINAL<br>PASSAGE/HOUSE |
| **294**<br>ACT 859 | **637**<br>ACT 773 |
| **295**<br>COMMITTEE/SENATE | **638**<br>COMMITTEE/SENATE |
| **296**<br>ACT 124 | **639**<br>ACT 589 |
| **297**<br>ACT 746 | **640**<br>COMMITTEE/SENATE |
| **298**<br>COMMITTEE/SENATE | **641**<br>WITHDRAWN |
| **299**<br>CONFERENCE<br>COMMITTEE REPORT | **642**<br>ACT 774 |
| **300**<br>COMMITTEE/SENATE | **643**<br>COMMITTEE/SENATE |
| **301**<br>CALENDAR/SENATE | **644**<br>COMMITTEE/SENATE |
| **302**<br>ACT 601 | **645**<br>CALENDAR/SENATE |
| **303**<br>ACT 747 | **646**<br>COMMITTEE/SENATE |
| **304**<br>COMMITTEE/SENATE | **647**<br>WITHDRAWN |
| **305**<br>ACT 387 | **648**<br>ACT 775 |

| 306 COMMITTEE/SENATE | 649 COMMITTEE/HOUSE |
|---|---|
| 307 ACT 388 | 650 ACT 726 |
| 308 COMMITTEE/SENATE | 651 ACT 776 |
| 309 ACT 459 | 652 WITHDRAWN |
| 310 ACT 460 | 653 COMMITTEE/SENATE |
| 311 COMMITTEE/SENATE | 654 ACT 777 |
| 312 ACT 699 | 655 ACT 778 |
| 313 ACT 300 | 656 ACT 779 |
| 314 COMMITTEE/SENATE | 657 ACT 780 |
| 315 ACT 700 | 658 COMMITTEE/SENATE |
| 316 ACT 487 | 659 COMMITTEE/SENATE |
| 317 ACT 301 | 660 BY SUBSTITUTE (SB681) |
| 318 VETOED | 661 ACT 781 |
| 319 ACT 461 | 662 ACT 477 |
| 320 ACT 748 | 663 COMMITTEE/SENATE |
| 321 ACT 701 | 664 ACT 590 |
| 322 ACT 702 | 665 CALENDAR/SENATE |
| 323 COMMITTEE/SENATE | 666 COMMITTEE/HOUSE |

| | |
|---|---|
| **324** COMMITTEE/SENATE | **667** ACT 400 |
| **325** COMMITTEE/SENATE | **668** COMMITTEE/SENATE |
| **326** ACT 138 | **669** COMMITTEE/SENATE |
| **327** ACT 302 | **670** COMMITTEE/SENATE |
| **328** COMMITTEE/SENATE | **671** WITHDRAWN |
| **329** COMMITTEE/SENATE | **672** CALENDAR/SENATE |
| **330** COMMITTEE/HOUSE | **673** COMMITTEE/SENATE |
| **331** ACT 703 | **674** CALENDAR/HOUSE |
| **332** COMMITTEE/HOUSE | **675** ACT 591 |
| **333** ACT 602 | **676** COMMITTEE/SENATE |
| **334** CALENDAR/SENATE | **677** COMMITTEE/SENATE |
| **335** COMMITTEE/SENATE | **678** COMMITTEE/SENATE |
| **336** VOTE - FINAL PASSAGE/HOUSE | **679** COMMITTEE/SENATE |
| **337** ACT 462 | **680** ACT 782 |
| **338** ACT 704 | **681** ACT 592 |
| **339** COMMITTEE/SENATE | **682** ACT 783 |
| **340** CALENDAR/SENATE | **683** CONFERENCE COMMITTEE |

**341**
ACT 488

**684**
ACT 784

**342**
ACT 303

**685**
COMMITTEE/HOUSE

**343**
COMMITTEE/SENATE

If you experience any technical difficulties navigating this website, **click here** to contact the webmaster.
P.O. Box 94062 (900 North Third Street) Baton Rouge, Louisiana 70804-9062

SLS 14RS-829                                              **ORIGINAL**

Regular Session, 2014

SENATE BILL NO. 469

BY SENATOR ADLEY

COASTAL RESOURCES. Provides relative to the enforcement of the coastal management program. (gov sig)

1                               AN ACT

2   To amend and reenact R.S. 49:214.36(D), (J), (K), (L), (M), and (N) and to enact R.S.

3           49:214.36(O), relative to the coastal zone management program; to provide relative

4           to the initiation or continuation of enforcement actions under the coastal zone

5           management program by local governmental subdivision; to provide for a process

6           for initiation or continuation of such actions; to provide for the disposition of funds

7           collected by such actions; and to provide for related matters.

8   Be it enacted by the Legislature of Louisiana:

9           Section 1.  R.S. 49:214.36(D), (J), (K), (L), (M), and (N) are hereby amended and

10  reenacted and R.S. 49:214.36(O) is hereby enacted to read as follows:

11          §214.36.  Enforcement; injunction; penalties and fines

12                               *     *     *

13          D.  The secretary, **through** the attorney general, ~~an appropriate district~~

14  ~~attorney,~~ or a local ~~government~~ **governmental subdivision** with an approved

15  program may bring such injunctive, declaratory, or other actions as are necessary to

16  ensure that no uses are made of the coastal zone for which a coastal use permit has

17  not been issued when required or which are not in accordance with the terms and

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.


EXHIBIT
5

SLS 14RS-829                                                ORIGINAL
                                                           SB NO. 469

1      conditions of a coastal use permit.

2                              *        *        *

3              J. **Prior to a local governmental subdivision initiating or continuing any**

4      **previously initiated judicial action to enforce any provisions of this Subpart, or**

5      **rules, regulations, or permits issued pursuant thereto, including any judicial**

6      **actions to impose civil liability, assess damages, order the payment of**

7      **restoration damages, require actual restoration or impose sanctions, a notice of**

8      **violation describing with specificity any alleged violation and the actions**

9      **required to achieve compliance, shall be served upon the secretary and the**

10     **person alleged to be in violation of this Subpart, or rules, regulations or permits**

11     **issued pursuant thereto. Upon receipt of the notice of violation, the person**

12     **alleged to be in violation of this Subpart, or regulations or permits issued**

13     **pursuant thereto, shall have sixty days to submit a response to the secretary and**

14     **the local governmental subdivision. A judicial action by the local governmental**

15     **subdivision to enforce any provisions of this Subpart, or rules, regulations or**

16     **permits issued pursuant thereto, shall not be initiated nor allowed to continue**

17     **until the secretary conducts an investigation, and upon the conclusion of such**

18     **investigation, but not later than one hundred twenty days after issuance of the**

19     **notice of violation, the secretary determines in writing that all of the following**

20     **are true:**

21             **(1)  A violation of this Subpart, or rules, regulations or permits, as set**

22     **forth in the notice of violation, has occurred.**

23             **(2)  The violation is under the territorial jurisdiction of the local**

24     **governmental subdivision initiating the enforcement action as provided by its**

25     **approved local program.**

26             **(3)  The proposed enforcement action by the local governmental**

27     **subdivision is consistent with this Subpart, including the coastal management**

28     **program authorized herein.**

29             **(4) The proposed enforcement action is consistent with the state's master**

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

SLS 14RS-829                                                    **ORIGINAL**
                                                               SB NO. 469

1          **plan for integrated coastal protection.**

2                  **(5)  The proposed enforcement action is reasonable and appropriate**

3          **under the circumstances.**

4                  ~~J.~~  **K.**  The monies collected by the state **and local governmental**

5          **subdivisions** under the provisions of this Section shall be deposited as follows:

6                  (1) The monies collected by the secretary for violations relating to use of

7          state concern shall be used for the following purposes only in the proportions stated:

8                  (a)  Fifty percent of the monies collected shall be used to reimburse the

9          Department of Natural Resources for the cost of enforcing the provisions of this

10         Subpart, and shall be deposited in the Coastal Resources Trust Fund, as provided in

11         R.S. 49:214.40.

12                 (b)  Twenty-five percent of the monies collected shall be placed in local

13         government mitigation banks established in accordance with R.S. 49:214.41 and the

14         rules and regulations adopted thereunder.

15                 (c)  Twenty-five percent of the monies collected shall be placed in the

16         Wetlands Conservation and Restoration Fund established in Article 7, Section 10.2

17         of the Louisiana Constitution.

18                 (2)  The monies collected by the secretary **or a local governmental**

19         **subdivision** for violations relating to a use of local concern shall be placed in ~~local~~

20         ~~government mitigation banks established in accordance with R.S. 49:214.41 and the~~

21         ~~rules and regulations adopted thereunder.  Each local government's mitigation bank~~

22         ~~shall be credited one hundred percent of the monies collected for violations relating~~

23         ~~to a use of local concern occurring within its geographic borders, except that for~~

24         ~~violations occurring within the geographic borders of two or more local governments~~

25         ~~the monies shall be divided on a pro rata basis and deposited accordingly in the local~~

26         ~~government's mitigation banks.  In the event there is no local government mitigation~~

27         ~~bank in the parish in which the adverse impact is located, the monies shall be~~

28         ~~deposited in the Wetlands Conservation and Restoration Fund established in Article~~

29         ~~7, Section 10.2 of the Louisiana Constitution,~~ **the Coastal Resources Trust Fund,**

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

1    **as provided in R.S. 49:214.41,** and can only be used for mitigation projects within

2    the geographic borders of that local ~~government~~ **governmental subdivision**.

3         ~~K.~~ **L.** In determining whether to assess, pursuant to Subsection I of this

4    Section, costs or penalties, and the amounts of such assessments, the secretary shall

5    consider the following factors:

6              (1) The monetary benefits realized by the violator due to the noncompliance.

7              (2) The history of previous violations or repeated noncompliance for the last

8    five years.

9              (3) The nature and gravity of the violation, including the adverse impact on

10   the coastal zone.

11             (4) The degree of culpability, recalcitrance, defiance, or indifference of the

12   violator to the laws, regulations, or orders of the secretary or regulations of the local

13   government.

14             (5) The cost to the department or state of bringing and prosecuting an

15   enforcement action against the violator.

16             (6) Whether the person charged has failed to mitigate or to make a

17   reasonable attempt to mitigate the damages caused by his noncompliance or

18   violation.

19        ~~L.~~ **M.** No penalties or costs shall be assessed without the person charged

20   being given notice and an opportunity for an adjudicatory hearing, pursuant to the

21   Administrative Procedure Act. The secretary shall appoint an independent hearings

22   officer. The person charged may waive the adjudicatory hearing upon payment of

23   the amount demanded by the secretary, and will be liable for all costs associated with

24   the adjudicatory hearing.

25        ~~M.~~ **N.** Nothing in this Section, shall prohibit any local political subdivision,

26   without a local coastal use permit program approved as provided for in R.S.

27   49:214.30 from enforcing any ordinance or regulation relating to wetlands protection

28   or restoration.

29        ~~N.~~ **O.**(1) In addition to the other enforcement actions authorized by the

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

SLS 14RS-829                                                    **ORIGINAL**
                                                               SB NO. 469

1    provisions of this Section, for each incident resulting in an administrative penalty

2    being assessed, the secretary shall issue an after-the-fact coastal use permit or permit

3    modification specifying terms and conditions that must be adhered to for the

4    unauthorized activity to remain in place.  In determining the terms and conditions to

5    be placed on the after-the-fact permit, the secretary shall consider the following

6    factors:

7            (a)  The degree to which the activity complies, or fails to comply, with the

8    coastal use guidelines.

9            (b)  The need for compensatory mitigation to be carried out when the activity

10   altered wetlands of the coastal zone.

11           (c)  The need for partial restoration of the site if the coastal use could be

12   carried out with lesser impact to coastal waters or wetlands.

13           (d)  The need for restoration of the site upon abandonment or completion of

14   the coastal use.

15           (2)  Prior to issuing a final after-the-fact permit, the secretary shall provide

16   to the person conducting the activity and to the owner of the property on which the

17   activity occurred, a draft after-the-fact coastal use permit.  The secretary shall also

18   cause the draft after-the-fact coastal use permit to be published one time in the

19   official state journal and allow the public time to offer comments on the proposed

20   after-the-fact coastal use permit to the secretary.  All comments must be received by

21   the secretary within fifteen calendar days following the date of publication in the

22   state journal.  The secretary shall fully consider all comments received and issue a

23   final after-the-fact coastal use permit five days following the end of the public

24   comment period.

25           Section 2.  This Act shall become effective upon signature by the governor or, if not

26   signed by the governor, upon expiration of the time for bills to become law without signature

27   by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana.  If

28   vetoed by the governor and subsequently approved by the legislature, this Act shall become

29   effective on the day following such approval.

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

SLS 14RS-829                                                    **ORIGINAL**
                                                               SB NO. 469

---

The original instrument and the following digest, which constitutes no part
of the legislative instrument, were prepared by Jerry J. Guillot.

---

DIGEST

Adley (SB 469)

Present law creates a coastal zone management program in the Dept. of Natural Resources.
Provides generally for the development of a state program aimed at protecting, developing,
and managing the coastal zone of the state.  The program defines the coastal zone and
delineates the types of uses approved for the coastal zone.  Further provides for the
development of state and local coastal management plans.

Coastal use permits issued by the DNR are used to control the development and activities
in the coastal zone.  Present law provides for enforcement of the coastal use permits (CUP)
and the activities permitted under the CUPs.

Present law specifies that the secretary, the attorney general, an appropriate district attorney,
or a local government may bring injunctive, declaratory, or other actions to ensure that only
permitted activities may be conducted in the coastal zone.  Proposed law specifies that the
secretary through the attorney general and a local governmental subdivision may bring such
actions.

Proposed law also requires that prior to initiating or continuing an action to enforce the
coastal management laws or rules, a local governmental subdivision must serve notice of a
violation, including specific information about the alleged violation, to the DNR secretary
and the person alleged to be in violation.  The person alleged to be in violation must respond
to the secretary and the local governmental subdivision within 60 days.  No action may be
initiated or continued by the local governmental subdivision until the secretary conducts an
investigation into the allegations, which investigation must be concluded within 120 days
after the issuance of the notice of violation, and finds that a violation has occurred, the
violator is under the territorial jurisdiction of the local governmental subdivision desiring
to bring action, the enforcement action is consistent with the coastal management program
and the state's master plan for integrated coastal protection, and the enforcement action is
reasonable and appropriate.

Present law provides for monies collected pursuant to enforcement actions taken by the
department to be placed in local government mitigation banks of the parish where the
violation took place or the Wetlands Conservation and Restoration Fund if there is no local
governmental mitigation bank and used only for mitigation projects within the geographic
boundaries of the local government where the violation took place.

Proposed law provides for the funds to be deposited to the Coastal Resources Trust Fund to
by used only for mitigation projects within the geographic boundaries of the local
governmental subdivision where the violation took place.

Effective upon signature by governor or lapse of time for gubernatorial action.

(R.S. 49:214.36(D), (J), (K), (L), (M), and (N); adds R.S. 49:214.36(O))

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

# LOUISIANA STATE SENATE

**Committee Members**

Senator Gerald Long
*Chairman*
Senator Rick Ward, III
*Vice Chair*
Senator Jean-Paul "JP" Morrell
Senator Norbèrt N. "Norby" Chabert
Senator R. L. Bret Allain, II
Senator Dan W. "Blade" Morrish
Senator Lee "Jody" Amedee



P. O. Box 94183
Baton Rouge, LA 70804
Telephone: (225) 342-9703

**Committee Staff**

McHenry Lee
Analyst

Yvette Guilbeau
Secretary

Committee on
## NATURAL RESOURCES

NOTICE OF MEETING
May 1, 2014
Upon Adjournment
Room A-B

A G E N D A

I.    CALL TO ORDER

II.   ROLL CALL

III.  APPROVAL OF MINUTES

    April 9, 2014 and April 24, 2014

IV.   LEGISLATION TO BE CONSIDERED

| | | |
|---|---|---|
| **SCR 100** | **CROWE** | **WILDLIFE RESOURCES** Creates the Lower Pearl River Basin Ecosystem Study Commission. |
| **SB 184** | **MILLS** | **PUBLIC LANDS** Authorizes the commissioner of administration to convey or lease certain lands in St. Martin Parish. (gov sig) |
| **SB 469** | **ADLEY** | **COASTAL RESOURCES** Provides relative to the enforcement of the coastal management program. (gov sig) |
| **HCR 10** | **CONNICK** | **COASTAL RESOURCES** Approves the 2014-2015 annual plan for integrated coastal protection and restoration |

Page 1



**EXHIBIT**

6

| HCR 49 | CHAMPAGNE | **COASTAL RESOURCES**  Urges and requests the Coastal Protection and Restoration Authority to create a body of coastal parishes to aid in compliance with the RESTORE Act |
| HCR 50 | CHAMPAGNE | **COASTAL RESOURCES** Memorializes congress to provide for certain aspects of the RESTORE Act |
| HB 311 | ST. GERMAIN | **PUBLIC LANDS/STATE**  Removes lands located in the Atchafalaya Basin from certain state lease requirements |
| HB 416 | LAMBERT | **FISHING**  Assigns to the Wildlife and Fisheries Commission management responsibility for sustainability of freshwater and saltwater fisheries |
| HB 523 | LAMBERT | **FISHING/RECREATIONAL**  Provides for possession limits for certain species of bass caught in saltwater areas of the state |
| HB 782 | THOMPSON, J | **WATER/RESOURCES**  Deposits proceeds collected by the state from the use or withdrawal of surface water into the Aquatic Plant Control Fund for aquatic weed control and eradication |
| HB 1071 | CHANEY | **HUNTING/LICENSES**  Reduces the time required to qualify as a resident for hunting and fishing licenses |
| HB 1085 | SCHEXNAYDER | **PROPERTY/PUBLIC**  Provides for the lease of certain state property in Iberville Parish |

V.   CONSIDERATION OF ANY OTHER MATTERS THAT MAY COME BEFORE THE COMMITTEE

VI.   ADJOURNMENT

THIS NOTICE CONTAINS A TENTATIVE AGENDA AND MAY BE REVISED PRIOR TO THE MEETING.  REVISED NOTICES CAN BE CHECKED ON THE WALL OUTSIDE THE COMMITTEE ROOM IN WHICH THE MEETING IS TO BE HELD, ON THE BULLETIN BOARDS OUTSIDE THE HOUSE AND SENATE CHAMBERS (MEMORIAL HALLS), AT THE BILL ROOM IN THE BASEMENT, OR BY CALLING THE PULS LINE 342-2456.

Gerald Long

Page 2

SCASB469 WILEYJW 3412

## SENATE COMMITTEE AMENDMENTS

Amendments proposed by Senate Committee on Natural Resources to Original Senate Bill No. 469 by Senator Adley

1   AMENDMENT NO. 1

2   Change the lead author from Adley to Allain.

3   AMENDMENT NO. 2

4   On page 1, line 2, delete ", (J), (K), (L), (M), and (N)"

5   AMENDMENT NO. 3

6   On page 1, delete lines 5 through 7, and insert "management program; to prohibit certain
7   state or local governmental entities from initiating certain causes of action; to provide for
8   the uses of certain monies received by any state or local governmental entity; to allow any
9   person or state or local governmental entity to enforce certain rights or administrative
10  remedies; to provide terms, conditions, and requirements; and to provide for related matters."

11  AMENDMENT NO. 4

12  On page 1, line 9, delete ", (J), (K), (L), (M), and (N) are" and insert "is"

13  AMENDMENT NO. 5

14  On page 1, line 13, delete "**through**"

15  AMENDMENT NO. 6

16  On page 1, line 14, after "attorney," delete the remainder of the line and insert "**a district**
17  **attorney for a local government without an approved program,** or a local government
18  with an approved"

19  AMENDMENT NO. 7

20  On page 2, delete lines 3 through 29 and delete pages 3 and 4 and insert the following:

21      "**O.(1) Except as provided in this Subpart, no state or local governmental**
22  **entity shall have, nor may pursue, any right or cause of action arising from any**
23  **activity subject to permitting under R.S. 49:214.21 et seq., 33 U.S.C. 1344 or 33**
24  **U.S.C. 408 in the coastal area as defined by R.S. 49:214.24, or arising from or**
25  **related to any use as defined by R.S. 49:214.23(13), regardless of the date such**
26  **use or activity occurred.**
27      **(2) Any monies received by any state or local governmental entity arising**
28  **from or related to a state or federal permit issued pursuant to R.S. 49:214.21 et**
29  **seq., 33 U.S.C. 1344 or 33 U.S.C. 408, a violation thereof, or enforcement**
30  **thereof, or for damages or other relief arising from or related to any of the**
31  **foregoing, or for damages or other relief arising from or related to any use as**
32  **defined by R.S. 49:214.23(13) shall be used for integrated coastal protection,**
33  **including coastal restoration, hurricane protection and improving the resiliency**
34  **of the coastal area.**
35      **(3) Nothing in this Section shall constitute a waiver of sovereign**
36  **immunity under the Eleventh Amendment of the United States Constitution.**
37      **(4) Nothing in this Section shall prevent or preclude any person or any**
38  **state or local governmental entity from enforcing contractual rights or from**
39  **pursuing any administrative remedy otherwise authorized by law arising from**

EXHIBIT

7

SCASB469 WILEYJW 3412

1    or related to a state or federal permit issued in the coastal area pursuant to R.S.
2    49:214.21 et seq., 33 U.S.C. 1344 or 33 U.S.C. 408.
3         (5) Nothing in this Subsection shall alter the rights of any governmental
4    entity for claims related to sixteenth section school lands."

5    AMENDMENT NO. 8

6    On page 5, delete lines 1 through 24

SLS 14RS-829                                      **ENGROSSED**

Regular Session, 2014

SENATE BILL NO. 469

BY SENATORS ALLAIN AND ADLEY

COASTAL RESOURCES.  Provides relative to the enforcement of the State and Local
Coastal Resources Management Act of 1978.  (gov sig)

| | |
|---|---|
| 1 | AN ACT |
| 2 | To amend and reenact R.S. 49:214.36(D) and to enact R.S. 49:214.36(O), relative to the |
| 3 | coastal zone management program; to provide relative to the initiation or |
| 4 | continuation of enforcement actions under the coastal zone management program; |
| 5 | to prohibit certain state or local governmental entities from initiating certain causes |
| 6 | of action; to provide for the uses of certain monies received by any state or local |
| 7 | governmental entity; to allow any person or state or local governmental entity to |
| 8 | enforce certain rights or administrative remedies; to provide terms, conditions, and |
| 9 | requirements; and to provide for related matters. |
| 10 | Be it enacted by the Legislature of Louisiana: |
| 11 | Section 1.  R.S. 49:214.36(D) is hereby amended and reenacted and R.S. |
| 12 | 49:214.36(O) is hereby enacted to read as follows: |
| 13 | §214.36.  Enforcement; injunction; penalties and fines |
| 14 | *     *     * |
| 15 | D. The secretary, the attorney general, ~~an appropriate district attorney, or a~~ |
| 16 | ~~local government with an approved~~ **a district attorney for a local government** |
| 17 | **without an approved program,** or a local government with an approved program |

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.



1    may bring such injunctive, declaratory, or other actions as are necessary to ensure

2    that no uses are made of the coastal zone for which a coastal use permit has not been

3    issued when required or which are not in accordance with the terms and conditions

4    of a coastal use permit.

5                          *        *        *

6          **O.(1) Except as provided in this Subpart, no state or local governmental**

7    **entity shall have, nor may pursue, any right or cause of action arising from any**

8    **activity subject to permitting under R.S. 49:214.21 et seq., 33 U.S.C. 1344 or 33**

9    **U.S.C. 408 in the coastal area as defined by R.S. 49:214.24, or arising from or**

10   **related to any use as defined by R.S. 49:214.23(13), regardless of the date such**

11   **use or activity occurred.**

12         **(2) Any monies received by any state or local governmental entity arising**

13   **from or related to a state or federal permit issued pursuant to R.S. 49:214.21 et**

14   **seq., 33 U.S.C. 1344 or 33 U.S.C. 408, a violation thereof, or enforcement**

15   **thereof, or for damages or other relief arising from or related to any of the**

16   **foregoing, or for damages or other relief arising from or related to any use as**

17   **defined by R.S. 49:214.23(13) shall be used for integrated coastal protection,**

18   **including coastal restoration, hurricane protection and improving the resiliency**

19   **of the coastal area.**

20         **(3) Nothing in this Section shall constitute a waiver of sovereign**

21   **immunity under the Eleventh Amendment of the United States Constitution.**

22         **(4) Nothing in this Section shall prevent or preclude any person or any**

23   **state or local governmental entity from enforcing contractual rights or from**

24   **pursuing any administrative remedy otherwise authorized by law arising from**

25   **or related to a state or federal permit issued in the coastal area pursuant to R.S.**

26   **49:214.21 et seq., 33 U.S.C. 1344 or 33 U.S.C. 408.**

27         **(5) Nothing in this Subsection shall alter the rights of any governmental**

28   **entity for claims related to sixteenth section school lands.**

29   Section 2.  This Act shall become effective upon signature by the governor or, if not

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

SLS 14RS-829                                                    **ENGROSSED**
                                                               SB NO. 469

1    signed by the governor, upon expiration of the time for bills to become law without signature

2    by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana.  If

3    vetoed by the governor and subsequently approved by the legislature, this Act shall become

4    effective on the day following such approval.

---

> The original instrument was prepared by Jerry J. Guillot. The following
> digest, which does not constitute a part of the legislative instrument, was
> prepared by J. W. Wiley.

---

DIGEST

Allain (SB 469)

Present law creates a coastal zone management program in the Dept. of Natural Resources.
Provides generally for the development of a state program aimed at protecting, developing,
and managing the coastal zone of the state.  The program defines the coastal zone and
delineates the types of uses approved for the coastal zone.  Further provides for the
development of state and local coastal management plans.

Coastal use permits issued by the DNR are used to control the development and activities
in the coastal zone.  Present law provides for enforcement of the coastal use permits (CUP)
and the activities permitted under the CUPs.

Present law specifies that the secretary, the attorney general, an appropriate district attorney,
or a local government may bring injunctive, declaratory, or other actions to ensure that only
permitted activities may be conducted in the coastal zone.  Proposed law specifies that the
secretary through the attorney general and a local governmental subdivision may bring such
actions.

Proposed law changes "an appropriate district attorney" to "a district attorney for a local
government without an approved program".

Proposed law provides that except as provided in present law, no state or local governmental
entity may have, nor may pursue, any right or cause of action arising from any activity
subject to permitting under present law or certain federal statutes in the coastal area, or
arising from or related to any use as defined by present law, regardless of the date such use
or activity occurred.

Proposed law requires any monies received by any state or local governmental entity arising
from or related to a certain state or federal permit, a violation thereof, or enforcement
thereof, or for damages or other relief arising from or related to any of the foregoing, or for
damages or other relief arising from or related to any use as defined by present law be used
for integrated coastal protection, including coastal restoration, hurricane protection and
improving the resiliency of the coastal area.

Proposed law provides that nothing in the present law and proposed law will constitute a
waiver of sovereign immunity under the 11th Amendment of the United States Constitution.

Proposed law provides that nothing in the present law and proposed law will prevent or
preclude any person or any state or local governmental entity from enforcing contractual
rights or from pursuing any administrative remedy otherwise authorized by law arising from
or related to certain state or federal permit issued in the coastal area.

Proposed law provides that nothing in proposed law will alter the rights of any governmental
entity for claims related to 16th school lands.

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

SLS 14RS-829                                          **ENGROSSED**
                                                     SB NO. 469

Effective upon signature by governor or lapse of time for gubernatorial action.

(Amends R.S. 49:214.36(D); adds R.S. 49:214.36(O))

<u>Summary of Amendments Adopted by Senate</u>

   <u>Committee Amendments Proposed by Senate Committee on Natural Resources to the original bill</u>

1.   Changes "an appropriate district attorney" to "a district attorney for a local government without an approved program".

2.   Removes certain provisions of <u>proposed law</u>.

3.   Prohibits certain state or local governmental entities from initiating certain causes of action arising from certain activities subject to permitting.

4.   Provides for the uses of certain monies.

5.   Provides that sovereign immunity is not waived.

6.   Retains certain rights or remedies of persons or state or local governmental entities.

7.   Retains rights related to 16th section school lands.

Coding: Words which are ~~struck through~~ are deletions from existing law; words in **boldface type and underscored** are additions.

SFASB469 THOMASC 3865

**SENATE FLOOR AMENDMENTS**

Amendments proposed by Senator Allain to Engrossed Senate Bill No. 469 by Senator Allain

1    <u>AMENDMENT NO. 1</u>

2    On page 2, delete lines 27 and 28 and insert the following:

3        "**<u>(5) Nothing in this Section shall alter the rights of any governmental entity,</u>**
4    **<u>except a local or regional flood protection authority, for claims related to sixteenth</u>**
5    **<u>section school lands or claims for damage to property owned or leased by such</u>**
6    **<u>governmental entity.</u>**"

EXHIBIT
9

HCASB469 375 5638

## HOUSE COMMITTEE AMENDMENTS

Amendments proposed by House Committee on Natural Resources and Environment to Reengrossed Senate Bill No. 469 by Senator Allain

1   AMENDMENT NO. 1

2   On page 1, line 2, after "To" delete "amend and reenact R.S. 49:214.36(D) and to"

3   AMENDMENT NO. 2

4   On page 1, line 11, after "Section 1. R.S." delete the remainder of the line

5   AMENDMENT NO. 3

6   On page 1, delete line 14 through 17 in their entirety and on page 2, delete lines 1 through
7   4 in their entirety

8   AMENDMENT NO. 4

9   On page 3, between line 1 and 2, insert the following:

10          "Section 2. The provisions of this Act shall be applicable to all claims
11      existing or actions pending on the Act's effective date and all claims arising or
12      actions filed on or after that date."

13   AMENDMENT NO. 5

14   On page 3, at the beginning of line 2, change "Section 2." to "Section 3."

CODING: Words in ~~struck through~~ type are deletions from existing law; words <u>underscored</u> are additions.

EXHIBIT
10

Regular Session, 2014     **ACT No. 544**     <u>**ENROLLED**</u>

SENATE BILL NO. 469

BY SENATORS ALLAIN AND ADLEY

1                           AN ACT

2   To enact R.S. 49:214.36(O), relative to the coastal zone management program; to provide

3          relative to the initiation or continuation of enforcement actions under the coastal

4          zone management program; to prohibit certain state or local governmental entities

5          from initiating certain causes of action; to provide for the uses of certain monies

6          received by any state or local governmental entity; to allow any person or state or

7          local governmental entity to enforce certain rights or administrative remedies; to

8          provide terms, conditions, and requirements; and to provide for related matters.

9   Be it enacted by the Legislature of Louisiana:

10          Section 1.  R.S. 49:214.36(O) is hereby enacted to read as follows:

11          §214.36.  Enforcement; injunction; penalties and fines

12                     \*       \*       \*

13          **<u>O.(1) Except as provided in this Subpart, no state or local governmental</u>**

14          **<u>entity shall have, nor may pursue, any right or cause of action arising from any</u>**

15          **<u>activity subject to permitting under R.S. 49:214.21 et seq., 33 U.S.C. 1344 or 33</u>**

16          **<u>U.S.C. 408 in the coastal area as defined by R.S. 49:214.2, or arising from or</u>**

17          **<u>related to any use as defined by R.S. 49:214.23(13), regardless of the date such</u>**

18          **<u>use or activity occurred.</u>**

19          **<u>(2) Any monies received by any state or local governmental entity arising</u>**

20          **<u>from or related to a state or federal permit issued pursuant to R.S. 49:214.21 et</u>**

21          **<u>seq., 33 U.S.C. 1344 or 33 U.S.C. 408, a violation thereof, or enforcement</u>**

22          **<u>thereof, or for damages or other relief arising from or related to any of the</u>**

23          **<u>foregoing, or for damages or other relief arising from or related to any use as</u>**

24          **<u>defined by R.S. 49:214.23(13) shall be used for integrated coastal protection,</u>**

25          **<u>including coastal restoration, hurricane protection, and improving the resiliency</u>**

26          **<u>of the coastal area.</u>**

27          **<u>(3) Nothing in this Section shall constitute a waiver of sovereign</u>**

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

**EXHIBIT**

_11_

SB NO. 469                                                       **ENROLLED**

1          **immunity under the Eleventh Amendment of the United States Constitution.**

2                   **(4) Nothing in this Section shall prevent or preclude any person or any**

3          **state or local governmental entity from enforcing contractual rights or from**

4          **pursuing any administrative remedy otherwise authorized by law arising from**

5          **or related to a state or federal permit issued in the coastal area pursuant to R.S.**

6          **49:214.21 et seq., 33 U.S.C. 1344 or 33 U.S.C. 408.**

7                   **(5) Nothing in this Section shall alter the rights of any governmental**

8          **entity, except a local or regional flood protection authority, for claims related**

9          **to sixteenth section school lands or claims for damage to property owned or**

10          **leased by such governmental entity.**

11                  Section 2. The provisions of this Act shall be applicable to all claims existing or

12          actions pending on the Act's effective date and all claims arising or actions filed on or after

13          that date.

14                  Section 3. This Act shall become effective upon signature by the governor or, if not

15          signed by the governor, upon expiration of the time for bills to become law without signature

16          by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana.  If

17          vetoed by the governor and subsequently approved by the legislature, this Act shall become

18          effective on the day following such approval.


                        _____

                        PRESIDENT OF THE SENATE


                        _____

                        SPEAKER OF THE HOUSE OF REPRESENTATIVES


                        _____

                        GOVERNOR OF THE STATE OF LOUISIANA


APPROVED: _____

Coding: Words which are ~~struck through~~ are deletions from existing law;
words in **boldface type and underscored** are additions.

**DUPLICATE**

SUPREME COURT OF LOUISIANA

**03  C  3521**

DOCKET NO. 2003-C-3521

ALBERT J. AVENAL, JR., ET AL.,

Plaintiffs-Respondents

VERSUS

THE STATE OF LOUISIANA and
THE DEPARTMENT OF NATURAL RESOURCES

Defendants-Petitioners

CIVIL ACTION

ON WRIT OF CERTIORARI AND/OR REVIEW TO THE
COURT OF APPEAL, FOURTH CIRCUIT, NO. 2001-CA-0843

MOTION FOR LEAVE TO FILE AMICI CURIAE BRIEF
IN SUPPORT OF THE PETITIONERS

Respectfully submitted,

Gene Lafitte, Lead Counsel (Bar #8091)
S. Gene Fendler (Bar #5510)
H.S. Bartlett (Bar #26795)
Liskow & Lewis
One Shell Square, 50th Floor
701 Poydras Street
New Orleans, LA  70139-5099

Attorneys for Amici Curiae, The Business Council
of New Orleans and the River Region, Inc.,
Jefferson Business Council, Louisiana Association
of Business and Industry, Chamber of Greater Baton
Rouge, and Greater Shreveport Chamber of
Commerce

DELIVERED BY HAND

SUPREME COURT
OF LOUISIANA

2004 MAR 12  P 2: 31

CLERK
OF COURT



EXHIBIT

In Globo
12

MAY IT PLEASE THE COURT:

Pursuant to Supreme Court Rule VII, § 12, the Business Council of New Orleans and the River Region, Inc. ("BCNO"), the Jefferson Business Council ("JBC"), the Louisiana Association of Business and Industry ("LABI"), the Chamber of Greater Baton Rouge ("the Baton Rouge Chamber"), and the Greater Shreveport Chamber of Commerce ("the Shreveport Chamber") (collectively, "Business Amici") respectfully request leave of Court to file an amici curiae brief in support of the Petitioners, the State of Louisiana and the Department of Natural Resources (collectively, "the State"), in this matter.

## I.     Introduction

BCNO and JBC are composed of the senior executives of many of the most significant businesses operating in Orleans and Jefferson Parishes and the surrounding region.  They cover a broad range of concerns from banking to healthcare and from shipping and manufacturing to restaurants and construction.  The purpose of BCNO and JBC is to promote the economic welfare of the Greater New Orleans region and to help foster an environment conducive to business operation.  The Baton Rouge and Shreveport Chambers consist of leaders from a similarly broad range of businesses in East-Central and Northwestern Louisiana, respectively. The Baton Rouge and Shreveport Chambers strive to represent the economic development interests common to their members.  LABI is the largest business-advocacy group in Louisiana. Its membership includes more than 3,500 businesses and 117 local chambers and trade associations.  More than eighty percent of LABI's members are small businesses, with seventy-five or fewer employees.  LABI's mission is to foster a climate of economic growth by representing the general interests of the business community in legislative, regulatory, and judicial processes.

The Business Amici support the State in this proceeding because of their interest in promoting a stable legal environment in which businesses can operate in fairness and with the degree of economic predictability necessary for rational business decisionmaking.  Specifically, the Business Amici have four primary "substantial, legitimate interests that will likely be affected by the outcome" of this case[1]: (1) an interest in managing leases and property ownership within a

---

[1]       La. S. Ct. R. VII, § 12(3).

regime where property damage awards are allocated properly between the parties to a lease; (2) an interest in operating within a stable litigation environment where calculation of property damages is subject to a rational and predictable interplay between use of fair market valuation and restoration cost valuation; (3) an interest in managing assets in a state with a uniform distinction between property "taking" and property "damage"; and (4) an interest in operating within a litigation environment wherein property damage may not be subject to calculations based on "general" or speculative proof.  Underlying all of these specific interests, the Business Amici are interested in doing business in a state that can afford to undertake its public trust duties and take actions to safeguard the property and infrastructure upon which business depends from the disastrous effects of coastal erosion.

## II.     Interests of the Amici

### A.     Interest in Proper Allocation of Restoration Damages

Stripped to its essence, the decision of the Court of Appeal in this case has upheld a jury verdict and judgment awarding to a lessee the costs to restore the lessor's property.  While many cases have examined a *lessee's responsibility* to the lessor to either restore the lessor's property or pay fair market value when the lessee's activities have damaged the lessor's property,[2] what the Court of Appeal has sanctioned is the inverse – putting the responsibility on the *lessor* to pay the lessee the cost of restoring the lessor's property.  Indeed, here, the lessee would be awarded the costs of restoring the lessor's property, but without any responsibility for doing so.  This type of damage allocation has already been prohibited by this Court in *Inabnett v. Exxon Corp.*, wherein the Court held that the damage to an oyster lessee's leasehold interest by a third party could not be remedied by awarding the lessee the cost to restore the lessor's (*i.e.*, the State's) property.  93-0681 (La. 09/06/94), 642 So. 2d 1243, 1256; *see also* La. Civ. Code art. 2697.

If the Court of Appeal's decision is allowed to stand, then businesses in the state will be subject to an irrational and inconsistent regime of damages allocation, where lessees are the beneficiaries of fortuitous windfalls.

---

[2]     *Cf. Corbello v. Iowa Prod.*, 2002-0826 (La. 02/25/03), 850 So. 2d 686, 694-95 (assessing restoration costs against the lessee for damage to lessor's property, based on contractual obligation); *Magnolia Coal Term. v. Phillips Oil Co.*, 576 So. 2d 475, 477 (La. 1991); *Ashby v. IMC Expl. Co.*, 506 So. 2d 1193, 1196-97 (La. 1987).

**B.**   **Interest in Rational Interplay Between Fair Market Valuation and Reliance on Restoration Costs**

Not only does the Court of Appeal's decision allocate damages to a lessee in an unprecedented fashion, but its resort to restoration costs as the basis for damages contravenes the direction of this Court that the preferred valuation method should rely on the fair market value of the property interest at stake. *See Roman Catholic Church v. La. Gas Serv. Co.*, 618 So. 2d 874 (La. 1993); *see also Inabnett*, 642 So. 2d at 1256. The Fourth Circuit's decision ignores this Court's holding in *Roman Catholic Church* that the fair market value of the property interest at stake — which here should only involve an examination of the fair market value of the *leasehold interest* – should be used unless a particular showing of personal interest in restoration has been made and it can be shown that restoration costs are not disproportionate to fair market value.

The Fourth Circuit decision fails to account for fair market value of the leasehold interest or to compare that interest to the value of restoration. In doing so, the decision creates a new category of cases where restoration damages far in excess of market value of the leasehold interests may be awarded. The Business Amici have an intense interest in ensuring that businesses' operations are not subject to such an irrational and shifting liability structure.

**C.**   **Interest in Uniform Takings Analysis**

Moreover, the Court of Appeal's decision throws the state's takings law into disarray by finding that this case involves more than mere property damage in the first place. The decision contradicts an extensive body of Louisiana law distinguishing damage to property from a taking of property,[3] and applies the longer prescriptive period for "takings" to the plaintiffs' claims, which otherwise would have prescribed under the two-year period applicable to property damage. In doing so, the decision has created an environment in which businesses no longer have certainty over their property rights in numerous contexts.

**D.**   **Interest in Requiring More Than Speculative Proof in Property Damage or Takings Cases**

Many members of the Business Amici are authorized to engage in expropriation actions under state law,[4] and all of the members of the Business Amici may themselves be subject to

---

[3]   *See Sanchez v. Bd. of Zoning Adjustments*, 488 So. 2d 1277 (La. App. 4th Cir. 1986); *Lakeshore Harbor Condo. Dev. v. New Orleans*, 603 So. 2d 192 (La. App. 4th Cir. 1993); and *Tubbs v. Shreveport*, 584 So. 2d 380 (La. App. 2nd Cir. 1991).

[4]   *See, e.g.*, La. R.S. § 30:554.

takings or expropriations by the state or to suits brought for property damages.  In such cases generally, this Court has held that speculative proof is not acceptable.  *See Exxon Corp. v. Hill*, 00-2535 (La. 05/15/01), 788 So. 2d 1154, 1160; *State v. Ross Continental Motor Lodge, Inc.*, 328 So. 2d 883, 886 (La. 1976).  In this case, each plaintiff's property was impacted, if at all, by the Caernarvon Freshwater Diversion Structure ("CFDS") in differing manner and degree, depending on its proximity to the CFDS and the development, if any, of oyster beds on the leased water-bottoms.  The Court of Appeal upheld a uniform per-acre damages award for all class members, however, based only on general and speculative proof of damage.  By doing so, the decision undermines a predictable and rational scheme, relied on by Business Amici, for awarding property damages strictly on the basis of non-speculative proof.

### III.    Conclusion

Underlying each of these interests in stability and predictability of legal environment, the Business Amici have an interest in assisting this Court to ensure that the State is able to fulfill its public trust obligation to protect the coastal resources of this state.[5]  The CFDS is one aspect of a coastal protection and restoration strategy that safeguards the property and infrastructure relied on by members of the business community in numerous ways,[6] and which relies heavily on careful use of existing funds and continued funding by the federal government.  If the Court of Appeal's decision is allowed to stand, its convolution of existing legal standards will result in depletion of coastal restoration funds to satisfy a class award with no legal basis.  In addition, this legally unjustified award will deter the federal government from providing future coastal restoration funding for fear of merely lining the pockets of opportunistic plaintiffs who operate

---

[5]     *See* La. Const. Art. IX, § 1; *Save Ourselves, Inc. v. La. Envtl. Control Comm'n*, 452 So. 2d 1152, 1157 (La. 1984).

[6]     *See* Louisiana Coastal Wetlands Conservation and Restoration Task Force and the Wetlands Conservation and Restoration Authority, *Coast 2050: Toward a Sustainable Coastal Louisiana* 51-78 (1998).

within an unpredictable legal environment.[7] Business Amici believe that this Court, by applying the proper legal standards that are missing from the Court of Appeal's decision, may help the State avoid such a result.

Respectfully submitted,

*S. Gene Fendler*

Gene Lafitte, Lead Counsel (Bar #8091)
S. Gene Fendler (Bar #5510)
H.S. Bartlett (Bar #26795)
Liskow & Lewis
One Shell Square, 50th Floor
701 Poydras Street
New Orleans, LA 70139-5099
Telephone: (504) 581-7979

Attorneys for Amici Curiae, The Business Council of New Orleans and the River Region, Inc., Jefferson Business Council, Louisiana Association of Business and Industry, Chamber of Greater Baton Rouge, and Greater Shreveport Chamber of Commerce

---

[7]  *See* Robert L. Rogers, *Turning River Water Into Gold: Why Oyster Harvesters Should Not be Permitted to Cash in on Changes in Salinity Caused by the Caernarvon Water Diversion Project*, 22 Va. Envtl. L.J. 53, 64-65 (2003).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served

upon all counsel of record by placing same in the United States mail, properly addressed and

postage prepaid, this 12th day of March, 2004.

SUPREME COURT OF LOUISIANA

**DUPLICATE**

**03   C   3521**

DOCKET NO. 2003-C-3521

ALBERT J. AVENAL, JR., ET AL.,

Plaintiffs-Respondents

VERSUS

THE STATE OF LOUISIANA and
THE DEPARTMENT OF NATURAL RESOURCES

Defendants-Petitioners

CIVIL ACTION

ON WRIT OF CERTIORARI AND/OR REVIEW TO THE COURT OF
APPEAL, FOURTH CIRCUIT, NO. 2001-CA-0843

BRIEF OF AMICI CURIAE, THE BUSINESS COUNCIL OF NEW
ORLEANS AND THE RIVER REGION, INC., JEFFERSON BUSINESS
COUNCIL, LOUISIANA ASSOCIATION OF BUSINESS AND
INDUSTRY, CHAMBER OF GREATER BATON ROUGE, AND
GREATER SHREVEPORT CHAMBER OF COMMERCE IN SUPPORT OF
PETITIONERS

Respectfully submitted,

Gene Lafitte, Lead Counsel (Bar #8091)
S. Gene Fendler (Bar #5510)
H.S. Bartlett (Bar #26795)
Liskow & Lewis
One Shell Square, 50th Floor
701 Poydras Street
New Orleans, LA 70139-5099
Telephone: (504) 581-7979

Attorneys for Amici Curiae, The Business Council of
New Orleans and the River Region, Inc.,
Jefferson Business Council, Louisiana Association
of Business and Industry, Chamber of Greater Baton
Rouge, and Greater Shreveport Chamber of
Commerce

**DELIVERED BY HAND**

SUPREME COURT
OF LOUISIANA

2004 MAR 12  P 2: 32

CLERK
OF COURT

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ..................................................................................... ii

I.      The Court Of Appeal's Decision Undermines Numerous Basic Louisiana
        Property Law Principles Upon Which The Business Amici Rely. ....................................1

        A.      The Court Of Appeal's Decision Misallocates Restoration
                Damages To The Lessees.................................................................................1

        B.      The Court Of Appeal's Decision Improperly Elevates Restoration
                Cost Over Fair Market Value...........................................................................3

        C.      The Court Of Appeal's Decision Obliterates The Distinction
                Between Takings And Property Damage. ...........................................................4

        D.      The Court Of Appeal's Reliance On Speculative And General
                Proof Of Damages Contradicts This Court's Decisions Regarding
                Property Valuation. .......................................................................................8

II.     The Consequence Of Undermining Louisiana Property Law Is A Violation
        Of The State's Public Trust Duty..................................................................................10

III.    CONCLUSION...............................................................................................................13

CERTIFICATE OF SERVICE ..............................................................................................14

## TABLE OF AUTHORITIES

Page

**Cases**

*Ashby v. IMC Expl. Co.*, 506 So. 2d 1193 (La. 1987).................................................. 1

*Avenal v. State*, 2001-CA-0843 (La. App. 4th Cir. 10/15/03) ...................................... 5

*Avenal v. United States*, 100 F.3d 933 (Fed. Cir. 1996)............................................. 7

*Banks v. N.Y. Life Ins. Co.*, 98-0551 (La. 07/02/99), 737 So. 2d 1275....................... 10

*Columbia Gulf Trans. Co. v. Hoyt*, 215 So. 2d 114 (La. 1968) ..................................... 5

*Constance v. State*, 626 So. 2d 1151 (La. 1993)................................................. 6, 7, 9

*Corbello v. Iowa Prod.*, 2002-0826 (La. 02/25/03), 850 So. 2d 686 ............................ 1

*Crutchfield v. Plaquemines Parish*, 94-1161 (La. App. 4th Cir. 06/29/95), 658 So. 2d 46.................................................................................................................... 9

*Eubanks v. Bayou D'Arbonne Lake Watershed Dist.*, 26,309 (La. App. 2d Cir. 01/25/95), 649 So. 2d 120 ............................................................................ 9, 10

*Exxon Corp. v. Hill*, 00-2535 (La. 05/15/01), 788 So. 2d 1154................................... 9

*Holland v. State DOTD*, 554 So. 2d 727 (La. Ct. App. 2d Cir. 1989)............................ 2

*Huckabay v. Red River Waterway Commission*, 27,113 (La. App. 2d Cir. 10/12/95), 663 So. 2d 414 ........................................................................... 5, 6

*Inabnett v. Exxon Corp.*, 93-0681 (La. 09/06/94), 642 So. 2d 1243....................... 2, 3, 4

*Lakeshore Harbor Condominium Dev. v. New Orleans*, 603 So. 2d 192 (La. App. 4th Cir. 1993)................................................................................................... 8

*Magnolia Coal Term. v. Phillips Oil Co.*, 576 So. 2d 475 (La. 1991)............................ 1

*Naquin v. DOTD*, 604 So. 2d 62 (La. App. 1st Cir. 1992) .......................................... 5, 6

*Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978) ............................... 7

*Pillow v. Bd. of Commissioners*, 369 So. 2d 1172 (La. Ct. App. 2d Cir. 1979) ............ 10

*Roman Catholic Church v. La. Gas Serv. Co.*, 618 So. 2d 874 (La. 1993) ................... 2, 3

*Sanchez v. Bd. of Zoning Adjustments*, 488 So. 2d 1277 (La. App. 4th Cir. 1986) ......... 8

*Save Ourselves, Inc. v. La. Envtl. Control Comm'n*, 452 So. 2d 1152 (La. 1984) ......... 11

*Simmons v. Bd. of Commisioners of the Bossier Levee Dist.*, 624 So. 2d 935 (La. App. 2d Cir. 1993) ....................................................................................... 6

*Soma Enters. v. State*, 521 So. 2d 829 (La. App. 2d Cir. 1988) ................................. 5

*State v. Chambers Invest. Co.*, 595 So. 2d 598 (La. 1992) ......................................... 6

*State v. Ross Continental Motor Lodge, Inc.*, 328 So. 2d 883 (La. 1976) ..................... 9

*Tubbs v. Shreveport*, 584 So. 2d 380, 1991 La. App. LEXIS 3607 (La. App. 2nd Cir. 1991).................................................................................................................. 8

**Statutes**

La. Civ. Code art. 2697 ............................................................................................ 2

La. R.S. § 13:5111 ................................................................................................... 5

La. R.S. § 9:5624 ..................................................................................................... 5

**Other Authorities**

La. Coastal Wetlands Conservation & Restoration Task Force, et al., *Coast
2050: Toward a Sustainable Coastal Louisiana* (1998) ...................................... 11, 12

Robert L. Rogers, *Turning River Water Into Gold: Why Oyster Harvesters
Should Not Be Permitted to Cash in on Changes in Salinity Caused by the
Caernarvon Water Diversion Project*, 22 Va. Envtl. L.J. 53 (2003)......................... 13

**Constitutional Provisions**

La. Const. Art. I, § 4 ................................................................................................. 5

La. Const. Art. IX, § 1 .......................................................................................... 10, 11

MAY IT PLEASE THE COURT:

In pursuit of the significant, legitimate interests stated in the accompanying Motion for Leave to File an Amici Curiae Brief, The Business Council of New Orleans and the River Region, Inc. ("BCNO"), Jefferson Business Council ("JBC"), Louisiana Association of Business and Industry ("LABI"), Chamber of Greater Baton Rouge, and Greater Shreveport Chamber of Commerce (collectively, "the Business Amici") urge this Court to reverse the decision of the Fourth Circuit Court of Appeal. At every level of that decision, the Court of Appeal has contravened this Court's teachings, turning Louisiana property law on its head and undermining the stable litigation environment upon which members of the business community rely. The decision contradicts law governing the relationship between lessors and lessees, providing for proper fair market valuation of property damages, distinguishing between takings and property damage, and providing for the requisite standard of proof of property damage and value. Moreover, this destabilization of the law will impede the State's constitutionally mandated duty to restore the state's wetlands, causing a material injustice to the Business Amici's economic development interests and significant adversity to the public interest.

I. **The Court Of Appeal's Decision Undermines Numerous Basic Louisiana Property Law Principles Upon Which The Business Amici Rely.**

    A. **The Court Of Appeal's Decision Misallocates Restoration Damages To The Lessees.**

Lost in the intricate factual scenario of this case, entangled in the discussions of salinity levels, land loss, and cultch currency matrices, is the basic, bare-boned fact that this decision allows a lessee to receive as damages the cost to restore the lessor's property. Generally, this turns the law of restoration damages inside-out. Specifically, the leasehold interest of an oyster lessee has already been found by this Court to not include an interest in restoration of the state lessor's water bottoms.

In decisions of this state's courts concerning the propriety of restoration damages as awarded among lessors and lessees, the issue has overwhelmingly been whether a lessee causing damage to a lessor's property owes restoration costs to the lessor. *See, e.g., Corbello v. Iowa Prod.*, 2002-0826 (La. 02/25/03), 850 So. 2d 686, 694-95 (assessing restoration costs against the lessee for damage to lessor's property, based on contractual obligation); *Magnolia Coal Term. v. Phillips Oil Co.*, 576 So. 2d 475, 477 (La. 1991); *Ashby v. IMC Expl. Co.*, 506 So. 2d 1193,

1

1196-97 (La. 1987). By attempting to make decisions that relate to damages awarded to a lessor fit a claim brought by a lessee, the Court of Appeal's decision is adrift in novel legal waters, with no basis in law or the decisions that have preceded it.

Because this Court has recognized that restoration damages – as distinguished from fair market value-based damages – occasionally may be appropriate where the property owner has a particular personal interest in restoration of the property,[8] the oyster lessees may argue that their leasehold interest here is of such a personal nature that the long-standing applicability of restoration damages to lessors should now be extended to the lessees. This Court, however, has already expressly addressed an oyster lessee's personal interest in restoration of state water-bottoms and has rejected this argument outright:

> The *Roman Catholic Church* case involved a claim by the owner *(not the lessee)* of damaged property to recover the full cost of restoration, although the cost of restoration exceeded the fair market value of the property. . . .
>
> *Here, any real and actual interest in restoring the property was in the owner and not the lessee who had little or no "personal" reason for restoring the property to its original condition.*
>
> This is not to say that Exxon's dredging did not cause plaintiff damages to his leasehold interest, in addition to the loss of seed oysters and loss of anticipated income from production from those oysters. The value of plaintiff's leasehold interest may have been reduced by destruction of or damage to the water bottoms, and plaintiff has a real and actual interest in that recovery. However, that item of damages is measured in this case by the value of the leasehold interest before and after the dredging, and not by the cost of totally rebuilding the water bottoms to their former condition.

*Inabnett v. Exxon Corp.*, 93-0681 (La. 09/06/94), 642 So. 2d 1243, 1256 (emphases added).[9]

Therefore, this Court has already barricaded the entry to the new legal path down which the Fourth Circuit seeks to tread. It is clear that an award of damages to a lessee, specifically in the oyster lease context, should be a rational and predictable product of the damage to the

---

[8]    *Roman Catholic Church v. La. Gas Serv. Co.*, 618 So. 2d 874, 879-80 (La. 1993).

[9]    *See also* La. Civ. Code art. 2697 ("If, during the lease, the thing [be] totally destroyed by an unforseen [sic] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim for damages."); *Holland v. State DOTD*, 554 So. 2d 727, 730 (La. Ct. App. 2d Cir. 1989) ("[Article 2697], governing the relationship between the lessor and the lessee, bars the lessee's damage claim *against the lessor* . . ., but does not bar the lessee's claim against the condemnor for the constitutionally mandated 'just compensation' for the taking.") (emphasis added).

lessee's leasehold interest, not to the lessor's property underlying the lease.   The Court of Appeal's decision undermines this regime, and therefore should be reversed by this Court.

**B.    The Court Of Appeal's Decision Improperly Elevates Restoration Cost Over Fair Market Value.**

Moreover, the Court of Appeal should not have even reached the point of calculating restoration costs to allocate to the lessee over the lessor, because Louisiana courts have generally provided a predictable calculation methodology centered on fair market valuation of the affected property.  In *Roman Catholic Church*, this Court explained,

> As a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm.  *If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs, damages are measured only by the difference between the value of the property before and after the harm.*

618 So. 2d at 879-80 (emphasis added).   Accordingly, this Court has acknowledged a legal presumption in favor of fair market value that can be rebutted in favor of restoration costs only upon a finding that restoration costs either (1) are not disproportionate to market value, (2) will address a reason personal to the owner, or (3) will, in fact, result in restoration.

None of these findings were made by either the district court or the Court of Appeal in this case.  The restoration cost, calculated at $21,345 per acre, was never compared against a fair market value of the leasehold interest to determine if it was "disproportionate." Indeed, there is no indication in the record that a comparison of fair market values before and after the operation of the CFDS was established.  As discussed above, this Court has already rejected the premise that oyster lessees have the requisite personal interest to receive restoration costs for the state's water-bottoms.  *Inabnett*, 642 So. 2d at 1256.  And there has been no reason provided to believe that the amount awarded will actually be used to cover all of the leased water-bottoms with six inches of cultch.[10]

---

[10]    Moreover, the damages upheld by the court could not be to "restor[e] the original condition," as allowed by *Roman Catholic Church*, because it was never established that the original condition was six inches of cultch covering every square inch of every acre of every lease (the basis for calculation of the $21,345 per acre figure).

The Court of Appeal's decision creates a new category of takings/property damage cases where the market value of the property interest and the change in market value are irrelevant, and where damages may be calculated on a restoration basis under circumstances where it is inconceivable that the damages awarded will be used for restoration.  In *Inabnett*, this Court specifically rejected such a restoration-based approach in the specific context of oyster lease damage.  In *Inabnett*, the actions of a third party caused actual damage to the water-bottom leased by the oyster lessee, by dredging up an oyster reef and depositing spoils onto other oysters. The underlying activities in *Inabnett* created outright physical damage to the leased property, such that restoration of the water-bottoms was necessary, unlike this case where the damage primarily complained of is alteration of salinity levels.   Nevertheless, when faced with the question of whether the lessee should receive compensation sufficient to restore the oyster reefs on the water bottoms to their original condition, the *Inabnett* Court reasoned that restoration damages were inappropriate.  642 So. 2d at 1256.

*Inabnett* followed *Roman Catholic Church* by applying the presumption favoring market value of the leasehold interest rather than restoration damages.  Yet the Court of Appeal, without analysis, sought to distinguish *Inabnett* merely by stating that it involved third-party tort rather than a taking by the lessor; this distinction is without a difference, however, as it does not address this Court's analysis in *Inabnett* that the oyster lessees are not entitled to receive damages for the cost to restore the state's water-bottoms.  The oyster lessees in this case do not have the right to restoration damages based on their leasehold interests, and they have no greater property rights than the oyster lessees in *Inabnett*.   Such disregard for this Court's teaching upsets the environment in which all property owners operate.

### C.   The Court Of Appeal's Decision Obliterates The Distinction Between Takings And Property Damage.

As explained above, the Business Amici believe that the Court of Appeal's decision would destabilize a settled legal environment by (1) allocating restoration-based damages to a lessee, and (2) using restoration costs as the basis for award, when fair market valuation has not been fully examined under the precepts of *Roman Catholic Church*.  Equally destabilizing, however, is the Court of Appeal's decision that the oyster lessees' claims may be brought in the first place.  While oyster lessees arguably may raise a claim that their leasehold interests were

damaged by the operation of the CFDS, here this claim – as a claim for property damage – would have prescribed because it was raised two and a half years after the CFDS was operational.  La. R.S. § 9:5624 ("When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works.").  To get around this prescriptive period, the district court and the majority opinion at the Court of Appeal held that the operation of the CFDS did not merely damage the oyster lessees' property, but actually resulted in a taking of that leasehold interest, which would have triggered a three-year prescriptive period within which the lessees' suit would have been timely.  *See* La. R.S. § 13:5111(A) ("Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.").  To apply the longer prescriptive period applicable to takings, the Court of Appeal erred when it chose to disregard a cohesive body of Louisiana law regarding the delineation between "takings" and "damages."

The Louisiana Constitution provides the foundation for the separate treatment of "taking" of property and "damage" to property by government action.  *See* La. Const. Art. I, § 4 ("Property shall not be taken *or* damaged by the state . . . except for public purposes and with just compensation paid to the owner") (emphasis added); *see also Columbia Gulf Trans. Co. v. Hoyt*, 215 So. 2d 114, 120 (La. 1968) (explaining difference between taking and damage); *Soma Enters. v. State*, 521 So. 2d 829, 831 (La. App. 2d Cir. 1988) (same).  As Justice Tobias carefully analyzed in his dissenting opinion in this case, a large body of jurisprudence has developed around the distinction between property taking and property damage.  *See Avenal v. State*, 2001-CA-0843 (La. App. 4th Cir. 10/15/03), Tobias, J., dissenting, at 47-53.

The cases examined by Judge Tobias show that several factors are important to distinguishing "takings," as separate from mere damage.  The first factor that is present in these cases is the physical invasion of the property.[11]  For example, in *Huckabay v. Red River Waterway Commission*, the Second Circuit found that a taking of a leasehold interest had

---

[11]   *Huckabay v. Red River Waterway Comm'n*, 27,113 (La. App. 2d Cir. 10/12/95), 663 So. 2d 414 (constructing dam on property leased by plaintiff for farming purposes); *Naquin v. DOTD*, 604 So. 2d 62 (La. App. 1st Cir. 1992) (construction of a road across land leased by plaintiffs for growing sugar cane).

occurred when the Waterway Commission physically invaded the property subject to the lease in the course of surveying and preparing to construct a dam on the property, destroying many of the improvements placed on the land by the lessees, and rendering futile the lessees' efforts to continue their cattle farming operation. 27,113 (La. App. 2d Cir. 10/12/95), 663 So. 2d 414, 418-20.[12] Similarly, factors that may indicate a taking has occurred include (1) that a public use on the property completely and permanently prevents a private lessee from using the property for the intended purposes,[13] and (2) that a public use adjacent to the property causes an actual physical disturbance of that property.[14] In such cases, the courts held that the state had actually acquired the property interest of the plaintiffs, thereby resulting in a taking.

Where the public use interfered with access to property, however, without being an actual physical invasion or effective confiscation of the property rights at issue, even where ascertainable financial loss resulted, this Court has found no taking to have occurred. *See Constance v. State*, 626 So. 2d 1151, 1158 (La. 1993). In *Constance*, a store owner sought takings damages because the construction of an interstate highway off-ramp, which caused access problems during construction and then permanently re-routed traffic such that access to his store was less convenient, "resulted in substantial loss of sales to the business as well as a permanent devaluation of his property." 626 So. 2d at 1154. The Court found no taking to have occurred because (1) the inconvenience and decreased access did not amount to a taking of the property interest, and (2) the same damage complained of by the store owner was generally visited upon all residents of the area and was therefore not compensable. *Id.* at 1158. *See also State v. Chambers Invest. Co.*, 595 So. 2d 598, 606 (La. 1992) (finding that a delay in the ability to develop land did not amount to a taking).

---

[12] Importantly, the *Huckabay* court was careful to examine the award to the lessee to ensure that only those property interests that coincided with the leasehold interest were included in the damages. 663 So. 2d at 421-22 (reversing portion of damages award attributable to business losses in part because there was no unique quality of the underlying property the taking of which prevented the lessees from continuing their cattle operation elsewhere). The lessees were not awarded restoration cost damages or any manner of damages related to the value of the property subject to the lease.

[13] *See Huckabay, supra; Naquin, supra.*

[14] *See Simmons v. Bd. of Commisioners of the Bossier Levee Dist.*, 624 So. 2d 935 (La. App. 2d Cir. 1993) (drainage improvement project in adjacent bayou caused failure of river bank and loss of land and trees from plaintiffs' lots).

The Court of Appeal's decision here muddies this coherent distinction between "taking" and "damage" by finding a "taking" to have occurred even though the State did not dispossess the lessees of their leasehold interest in the chance to harvest oysters and the public use was constructed on land remote from the leased water bottoms. As documented in Judge Tobias's dissent, the record shows that the oyster lessees were not actually permanently deprived of their leasehold interest, as would be required for a taking under *Huckabay*, because they have still been able to cultivate and harvest oysters in commercial quantities from the leases. Also, this case does not meet the *Huckabay* element of the public use being *on the property* claimed to have been taken. Indeed, this case is far more similar to *Constance* than the takings cases, because the uniform amount awarded assumes that all lessees in the class were similarly damaged by the operation of the CFDS. As the *Constance* Court held, such generally experienced impacts as a result of a public use fail to show the type of particularized damage that rises to the level of compensable taking. 626 So. 2d at 1158.

Moreover, the property interest of the oyster lessees – future opportunity to cultivate or harvest oysters – is not one that can be "taken" under the "distinct investment-backed expectations" test derived initially under federal takings analysis and subsequently incorporated into both Louisiana jurisprudence. *See Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). Under this test, a property owner cannot be compensated for loss due to a public use where a reasonable inquiry at the time the property interest was acquired would have revealed to the property owner that such public use and loss was likely. *Id.* Looking to this standard, the Federal Circuit rejected the claims brought by the plaintiffs here against the United States Army Corps of Engineers, finding that any interest that the plaintiffs had in a particular salinity-range for oyster production, in light of the decades of public discussion of diversion projects and their consequences on salinity regimes, was not an interest supported by distinct investment-backed expectations and could not be "taken." *Avenal v. United States*, 100 F.3d 933, 937 (Fed. Cir. 1996) ("Assuming, as we must, that these plaintiffs did not invest in their leases until the 1970s, these plaintiffs, in the words of *Penn Central*, cannot have had reasonable investment-backed expectations that their oyster leases would give them rights protected from the planned freshwater diversion projects of the state and federal governments."). In fact, not only should the lessees have known of the long-percolating plans for implementation of

7

freshwater diversion when they acquired their lease rights, but at the time of lease renewal of many of the leases, the potential impact was made clear to – and the risk assumed by – the oyster lessees when they accepted the indemnity provision added to the leases in the late 1980s.

The Court of Appeal's decision completely rejects the *Penn Central* test as inapplicable to Louisiana law, even though that very court and other Louisiana appellate courts have held the "distinct investment-backed expectations" analysis to be an appropriate test of whether a taking has occurred under Louisiana law. *See Sanchez v. Bd. of Zoning Adjustments*, 488 So. 2d 1277, 1280 & n.1 (La. App. 4th Cir. 1986); *see also Lakeshore Harbor Condominium Dev. v. New Orleans*, 603 So. 2d 192, 196 (La. App. 4th Cir. 1993); *Tubbs v. Shreveport*, 584 So. 2d 380, 1991 La. App. LEXIS 3607, *6-7 (La. App. 2nd Cir. 1991).

Accordingly, the Court of Appeal's decision has thrown Louisiana takings law into disarray on three fronts:   (1) A taking cannot occur where the public use is neither on the property at issue nor results in permanent and complete disruption of the use of the property interest in a manner particular to an affected party; (2) a public use cannot result in a compensable taking when its alleged impacts are spread generally throughout the vicinity of the public use; and (3) a property interest cannot be taken when it is not supported by reasonable investment-backed expectations.   The Business Amici urge that this Court reverse the Court of Appeal's decision and reaffirm these three principles.

**D.   The Court Of Appeal's Reliance On Speculative And General Proof Of Damages Contradicts This Court's Decisions Regarding Property Valuation.**

In awarding damages based on the cost to restore the lessor's property to the lessees under the premise that the lessees' property interest was taken, the decision of the Court of Appeal upholds the reliance on speculative proof to support a general and uniform damages award of $21,345 per acre.   This generalized damage calculation conflicts with precedent regarding property valuation, and further upsets the litigation backdrop against which the members of the Business Amici must operate.

None of the "proof" offered by the lessees in this case provided a particular assessment of the amount and type of damage suffered by each lessee.   The plaintiffs did not prove they had oyster reefs covering all leases.   They did not prove whether any such coverage extended across each whole lease or portions of each lease, or the thickness of any such formations.   From these

failures follows the ultimate failure of the plaintiffs to prove the particular damage to each oyster lease that could be attributable to operation of the CFDS. Instead, the plaintiffs provided speculative and inconsistent testimony that three to six inches of cultch would be required to restore leases for full-growth oyster cultivation, derived from a general formula aimed at resolving private claims against third parties who caused actual physical damage to oyster reefs. In apparent reliance on this speculation and this general formula, the jury's award of $21,345 per acre for the class was based on the cost to construct a six-inch-thick mat of "cultch" on the entirety of every acre of plaintiffs' leases. By upholding this uniform damages award, the Court of Appeal ignored holdings in this Court regarding property valuation.

In *Exxon Corp. v. Hill*, this Court examined the nature of proof that would be acceptable in showing a property's highest and best use for purposes of determining constitutional "just compensation" in an expropriation action, the same standard applicable in property damages actions. 00-2535 (La. 05/15/01), 788 So. 2d 1154. The Court held that such proof may not be speculative in nature. 788 So. 2d at 1162. In an earlier decision, this Court rejected proof of severance damages in an expropriation, noting that the evidence of severance damages was "highly tenuous and speculative." *State v. Ross Continental Motor Lodge, Inc.*, 328 So. 2d 883, 886 (La. 1976).

No reported decisions regarding property value uphold an award based on speculative or general proof.[15] Class action decisions involving property valuation emphasize the importance of relying on particularized proof of each class member's property value in calculating the eventual award. *See, e.g., Crutchfield v. Plaquemines Parish*, 94-1161 (La. App. 4th Cir. 06/29/95), 658 So. 2d 46, 47 (class certification decision acknowledging different property characteristics for which compensation would be sought in expropriation matter); *Eubanks v. Bayou D'Arbonne Lake Watershed Dist.*, 26,309 (La. App. 2d Cir. 01/25/95), 649 So. 2d 120, 122 (reversing class certification because questions of damages and causation requiring individualized proof

---

[15]    Not only does this aspect of the Fourth Circuit's decision conflict with the admonition against speculative evidence in property damage calculation in *Hill* and *Ross*, as discussed above it also conflicts with this Court's holding that damages are not available against the state where the impact of a public use is spread generally amongst those within the vicinity of the public use. *See Constance*, 626 So. 2d at 1156 ("The liability of a public body in such case, however, had been limited to those instances where there is a physical taking or damage to or a special damage peculiar to the particular property *and not general damage sustained by other property similarly located*.") (emphasis added).

predominated); *Pillow v. Bd. of Commissioners*, 369 So. 2d 1172, 1178 (La. Ct. App. 2d Cir. 1979) (reversing class certification in expropriation case, finding that "[d]ifferent results might ensue as to different plaintiffs based on when the property was or will be used, the nature of the use, the location and nature of the property used, origin of title, and other varying factors."); *see also Banks v. N.Y. Life Ins. Co.*, 98-0551 (La. 07/02/99), 737 So. 2d 1275, 1283.

 *Eubanks* is particularly instructive here; in that case, the putative class sued the watershed district for negligently damaging the property owner's land through its failure to adequately control flooding or warn property owners adjacent to the lake of the potential extent of flooding. 649 So. 2d at 122. In reversing an order certifying the class, the *Eubanks* decision listed a number of particularized considerations to be made in assessing property damages:

> [F]or each class member, a factual determination must be made as to the elevation of each particular lot and the location on that lot of the improvements suffering damage. It must also be determined whether the alleged property damage resulted from flooding of areas within the expropriated level and the extent of each class member's knowledge or reliance on third parties in the placement of the improvements alleged to have been damaged by the flooding, as well as any other factual issues relating to the damages which are specific to each plaintiff.

*Id.*

 Similarly, in this case, to assess damages against the State for operation of the CFDS, for each lease issued to a class member there should be a determination of the proximity of the lease to the CFDS, the extent of improvements existing or made to the oyster reef or water bottom of the lease, the change in salinity range for the lease before and after the operation of the CFDS, the change in oyster production for the lease, the degree of sedimentation for the lease attributable to the CFDS, the date of acquisition of the lease, and the knowledge of the lessee of the implementation and potential effects of the CFDS at the time of the acquisition or renewal of the lease. All of this information was omitted, however, in favor of the application of the general award to all lessees based on speculative proof. Accordingly, under the principles in *Hill* and *Ross*, this Court should reverse the Court of Appeal's decision.

**II.** **The Consequence Of Undermining Louisiana Property Law Is A Violation Of The State's Public Trust Duty.**

 Under the Louisiana Constitution,

> The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment

> shall be protected, conserved, and replenished insofar as possible
> and consistent with the health, safety, and welfare of the people.

La. Const. Art. IX, § 1.   This Court has held that this public trust duty properly embodies a balance between maintaining environmental values and promoting the public welfare, with consideration being given to both sides of the scale.  *Save Ourselves, Inc. v. La. Envtl. Control Comm'n*, 452 So. 2d 1152, 1157 (La. 1984).  Coastal restoration projects such as the CFDS exemplify a narrow category of state action that respects both sides of this public trust balance – protecting, replenishing, and conserving the environment while also promoting the health, safety, and welfare of the people.  While restoring wetlands lost to saltwater intrusion and erosion satisfies the mandate to protect, replenish, and conserve the state's resources and environment, substantial economic and safety interests also are at stake in restoring Louisiana's coastal landscape.  Both sides of this balance will be endangered, however, under the Court of Appeal's convolution of established legal regimes regarding lessee/lessor relations, restoration/market valuation, taking/damage distinctions, and use of speculative and general proof.

The ability of the State to uphold its public trust obligation in the coastal erosion context is of particular importance to the Business Amici.  Located throughout the coastal region – onshore, in the marsh, and in the protected waters adjacent to the advancing Gulf of Mexico – is a transportation infrastructure vital to the region's industry and commerce.  Activities that rely on this infrastructure include, *inter alia*, fisheries, oil and gas exploration and development, chemical manufacturing, and agriculture.  *See* La. Coastal Wetlands Conservation & Restoration Task Force, et al., *Coast 2050: Toward a Sustainable Coastal Louisiana*, 53-54 (1998) (detailing the infrastructure at risk).

Coastal restoration efforts are required to maintain this infrastructure, which serves as a foundation for Louisiana's economic success, for three reasons.  First, coastal deterioration will literally pull the ground out from under much of this infrastructure, making it far more vulnerable to hurricanes and leading to costly repairs, replacement, or obsolescence, and to the interruption of statewide business activities dependent on its reliability.  *Id.* at 54.  Second, as marsh is replaced by open water, the very nature of some of these transportation modes – such as the protected water routes of the intracoastal waterway and other commercial navigation corridors – will be destroyed, while others will be subject to increasing interruption due to unchecked storm

surges during the annual hurricane season. *Id.* at 55-56. These transportation disruptions can be devastating to existing businesses throughout the state, and may convince future businesses to locate elsewhere. Third, land areas now protected from storm surges by the coastal marshes will become increasingly exposed and vulnerable to storms, making those areas inhospitable to commercial activities that have been carried on for decades and for expanded and new ventures that otherwise would locate in those areas.

Additionally, the state's general economic health may be harmed by the destruction of a substantial portion of industry sectors such as fisheries, tourism, and agriculture. For fisheries, the estuarine and freshwater habitats unique to Louisiana's coastal region serve as important nursery areas and primary habitats for many species of fish and mollusks; those same habitats are directly and adversely affected by the saltwater intrusion that accompanies the lack of freshwater flow and the erosion of coastal marsh vegetation. *Id.* at 71-72. In short, "Loss of coastal wetlands in Louisiana has severe implications for the long-term sustainability of fisheries resources." *Id.* at 68. In 1996, commercial fisheries in Louisiana had a total economic impact of $2.2 billion, with another $944 million in economic impact from recreational use of the fisheries; an estimated 50,000 to 70,000 jobs statewide are tied to the health of the state's commercial fisheries. *Id.* at 56. Tourism is also directly tied to the existence of the marsh ecosystem, as approximately 800,000 visitors annually are drawn to the state's parks located in the coastal region. *Id.* at 57. Agriculture – specifically citrus farming in Plaquemines and St. Bernard Parishes and rice cultivation in the central and western coastal regions of the state – is also directly affected by saltwater intrusion caused by coastal erosion. *Id.* at 52.

More directly, the members of the Business Amici, particularly members of JBC and BCNO, have a vested interest in maintenance and restoration of wetlands because of the protection provided for property from storm surges during the annual hurricane season. Much of the coastal region lies near or below sea level, and is therefore acutely susceptible to the impacts of tropical systems. *Id.* at 63. In the New Orleans metropolitan area, the fair market value of real estate and property exceeds $40 billion, much of it related to the businesses of the members of the Business Amici. *Id.* at 63. As wetlands disappear and are replaced by open water, the storm surges that precede tropical systems will proceed unchecked into these asset-rich metropolitan areas, causing billions of dollars in damage. *Id.* at 63-64.

Louisiana's Constitution and laws strongly encourage, arguably to the point of mandate, coastal restoration projects, such as the CFDS, that are aimed at ameliorating these public welfare and safety impacts of coastal erosion and replenishing and protecting the state's resources. Yet the Fourth Circuit's decision clearly impedes the state's exercise of its public trust duty to continue with such projects. Because of the magnitude of this judgment, existing funding for restoration projects will be diverted, and likely exhausted. *See* Robert L. Rogers, *Turning River Water Into Gold: Why Oyster Harvesters Should Not Be Permitted to Cash in on Changes in Salinity Caused by the Caernarvon Water Diversion Project*, 22 Va. Envtl. L.J. 53 (2003). If the state's legal system may be twisted to divert a windfall of public money to a few private parties without proof of particular damages, the federal government will be deterred from allocating funds for future projects, leaving only the devastating effects of coastal erosion as the state is prevented from fulfilling its public trust duties. *Id.* at 64-65.

## III.   CONCLUSION

For the foregoing reasons, as well as those asserted by the Petitioners in this matter, the Business Amici respectfully submit that this Court should reverse the Court of Appeal's decision.

Respectfully submitted,

*S. Gene Fendler*

Gene Lafitte, Lead Counsel (Bar #8091)
S. Gene Fendler (Bar #5510)
H.S. Bartlett (Bar #26795)
Liskow & Lewis
One Shell Square, 50th Floor
701 Poydras Street
New Orleans, LA 70139-5099
Telephone: (504) 581-7979

Attorneys for Amici Curiae, The Business Council of New Orleans and the River Region, Inc., Jefferson Business Council, Louisiana Association of Business and Industry, Chamber of Greater Baton Rouge, and Greater Shreveport Chamber of Commerce

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon all counsel of record by placing same in the United States mail, properly addressed and postage prepaid, this 12th day of March, 2004.