**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF THE | * | Civil Action No. 2:13-cv-05410 |
| SOUTHEAST LOUISIANA FLOOD | * | |
| PROTECTION AUTHORITY — EAST, | * | Section: G |
| INDIVIDUALLY AND AS THE BOARD | * | |
| GOVERNING THE ORLEANS LEVEE | * | Division: 3 |
| DISTRICT, THE LAKE BORGNE BASIN | * | |
| LEVEE DISTRICT, AND THE EAST | * | Judge: Nannette Jolivette Brown |
| JEFFERSON LEVEE DISTRICT, | * | |
| | * | Magistrate: Daniel E. Knowles, III |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TENNESSEE GAS PIPELINE | * | |
| COMPANY, LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF JOINT MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

APPLICABLE STANDARD..................................................................................................4

ARGUMENT ....................................................................................................................4

I.      LOUISIANA LAW DOES NOT RECOGNIZE ENTERPRISE LIABILITY...................4

II.     EACH OF THE BOARD'S CAUSES OF ACTION IS LEGALLY FLAWED ................7

        A.      The Board Has Not Stated Viable Negligence And Strict Liability Claims............7

                1.      Defendants owe no legal duty under Louisiana law ...................................8

                2.      Defendants owe no legal duty to protect the Board from indirect
                        economic harm under Louisiana law .......................................................11

                3.      Where no legal duty is otherwise owed, one does not arise under
                        the statutes cited by the Board .................................................................13

        B.      The Board Has Not Stated A Claim Under Natural Servitude Of Drain Or
                Nuisance Because It Does Not Own Property Adjacent To Defendants'
                Property........................................................................................................17

                1.      Nuisance claims under Article 667 apply only to neighbors ....................18

                2.      Natural servitude of drain claims under Articles 655 and 656 only
                        arise when the parties own properties that are adjacent............................19

        C.      The Board Has Not Stated A Claim For Breach Of Contract Because It Is
                Neither A Party Nor A Third Party Beneficiary To Any Contract With
                Defendants ...................................................................................................23

CONCLUSION................................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................ 3-4, 21

*Atchafalaya Basinkeeper v. Chutz,*
    682 F.3d 356 (5th Cir. 2012) ...................................................................22

*Audler v. CBC Innovis Inc.,*
    519 F.3d 239 (5th Cir. 2008) ...................................................................14

*Babin v. Texaco, Inc.,*
    449 So. 2d 718 (La. App. 3d Cir. 1984) ...................................................13

*Barasich v. Columbia Gulf Transmission Co.,*
    467 F. Supp. 2d 676 (E.D. La. 2006) ................................................ *passim*

*Bateman v. Johns-Manville Sales Corp.,*
    781 F.2d 1132 (5th Cir. 1986) ...................................................................5

*Battaglia v. Gulf Stream Coach, Inc.,*
    679 F. Supp. 2d 704 (E.D. La. 2011) .........................................................8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................ 3-4, 21

*Black v. Avondale Indus., Inc.,*
    783 So. 2d 505 (La. App. 5th Cir. 2001) ...................................................4

*Boykin v. La. Transit Co., Inc.,*
    707 So. 2d 1225 (La. 1998) .......................................................................5

*Butler v. Baber,*
    529 So. 2d 374 (La. 1988) .........................................................................4

*Caldwell v. Gore,*
    175 La. 501, 502, 143 So. 387 (1932) .....................................................21

*Caldwell v. Let the Good Times Roll Festival,*
    717 So. 2d 1263 (La. App. 2d Cir. 1998),
    *writ. denied,* 729 So. 2d 566 (La. 1998) ..................................................9

*Ca. Coastal Comm'n v. Granite Rock Co.,*
    480 U.S. 572 (1987) ............................................................................ 16-17

*California v. Sierra Club*,
   451 U.S. 287 (1981) ...............................................................................................16

*Candelaria v. BC General Contractors, Inc.*,
   600 N.W.2d 348 (Mich. Ct. App. 1999) ...............................................................24

*Caton v. Leach Corp.*,
   896 F.2d 939 (5th Cir. 1990) ..................................................................................9

*Cimino v. Raymark Indus.*,
   151 F.3d 297 (5th Cir. 1998) ..................................................................................6

*City of Shreveport v. Gulf Oil Corporation*,
   431 F. Supp. 1 (W.D. La. 1975), *aff'd*, 551 F.2d 93 (5th Cir. 1977)...........................24-25

*Cormier v. T.H.E. Ins. Co.*,
   745 So. 2d 1 (La. 1999) .................................................................................... 13-14

*Dempster v. Louis Eymard Towing Co.*,
   503 So. 2d 99 (La. App. 5th Cir. 1987) ................................................................13

*Dupre v. Chevron U.S.A. Inc.*,
   20 F.3d 154 (5th Cir. 1994) ....................................................................................8

*Dyer & Moody, Inc. v. Dynamic Constructors, Inc.*,
   357 So. 2d 615 (La. App. 1st Cir. 1978)................................................................21

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*,
   79 So. 3d 246 (La. 2011) .......................................................................................25

*Entrevia v. Hood*,
   427 So. 2d 1146 (La. 1983) .....................................................................................7

*First La. Bank v. Morris & Dickson, Co., LLC*,
   55 So. 3d 815 (La. App. 2d Cir. 2010) ............................................................ 23-24

*Forsyth Cnty. v. Waterscape Servs., LLC*,
   694 S.E.2d 102 (Ga. App. 2010)...................................................................... 23-24

*Gaharan v. State Through Dep't of Transp. & Dev.*,
   579 So. 2d 420 (La. 1991) .....................................................................................21

*George v. Housing Authority of New Orleans*,
   906 So. 2d 1282 (La. App. 4th Cir. 2005) ..............................................................5

iii

*George v. NYC Dep't of City Planning*,
    436 F.3d 102 (2d Cir. 2006)........................................................22

*Great Sw. Fire Ins. Co. v. CAN Ins. Cos.*,
    557 So. 2d 966 (La. 1990) .........................................................11

*Hannon v. Waterman S.S. Corp.*,
    567 F. Supp. 90 (E.D. La. 1983).................................................7

*Harmon Cove Condominium Ass'n v. Marsh*,
    815 F.2d 949 (3d Cir. 1987)......................................................22

*Henry v. Zurich Am. Ins. Co.*,
    107 So. 3d 874 (La. App. 3d Cir. 2013) ......................................4

*Hill v. Lundin & Assoc., Inc.*,
    256 So. 2d 620 (La. 1972) ...................................................13, 14

*Hogg v. Chevron USA, Inc.*,
    45 So. 3d 991 (La. 2010) ..........................................................18

*In re Fibreboard Corp.*,
    893 F.2d 706 (5th Cir. 1990) .....................................................6

*In re Great Lakes Dredge & Dock Co. LLC*,
    624 F.3d 201 (5th Cir. 2010) .....................................................7

*In re Katrina Canal Breaches Consol. Litig.*,
    647 F. Supp. 2d 644 (E.D. La. 2009),
    *rev'd on other grounds*, 696 F.3d 436 (5th Cir. 2012) ............... 18-19

*Jefferson v. Lead Indus. Ass'n*,
    106 F.3d 1245 (5th Cir. 1997) ...................................................5

*Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*,
    939 So. 2d 1206
    (La. 2006).......................................................................23, 24, 25

*La. Crawfish Purchasers Ass'n-West v. Amerada Hess Corp.*,
    935 So. 2d 380 (La. App. 3d Cir. 2006) ................................ 12-13

*La. Irrigation & Mill Co. v. Sixth Ward Drainage Dist.*,
    104 So. 623 (La. 1925) .............................................................21

*Lafleur v. Topp*,
    352 So. 2d 426 (La. App. 3d Cir. 1977) ....................................21

*Lattimore v. Davis*,
    14 La. 161 (1839)................................................................................21

*Lazard v. Foti*,
    859 So. 2d 656 (La. 2003) ................................................... 8, 14-15

*Lasyone v. Kansas City S. R.R.*,
    786 So. 2d 682 (La. 2001) .................................................................4

*Lemann v. Essen Lane Daiquiris, Inc.*,
    923 So. 2d 627 (La. 2006) .................................................................7

*Ludeling v. Stubbs*,
    34 La. Ann. 935 (La. 1882).............................................................20

*MAW Enterprises, LLC v. City of Marksville*,
    No. 2014-C-0090, 2014 WL 4355955 (La. Sept. 3, 2014) ......... 11-12

*Mitchell v. Random House, Inc.*,
    865 F.2d 664 (5th Cir. 1989) .............................................................9

*Nicholson v. Holloway Planting Co.*,
    229 So. 2d 679 (1969).................................................................4, 20

*Pickett v. Taylor*,
    316 So. 2d 778 (La. App. 3d Cir. 1975) .........................................20

*Poole v. Guste*,
    262 So. 2d 339 (La. 1972) .........................................................21, 22

*PPG Industries, Inc. v. Bean Dredging*,
    447 So. 2d 1058 (La. 1984) ......................................................... 11-12

*Pyramid Co. of Onondaga v. N.Y. State Dep't of Labor*,
    223 A.D.2d 285 (NY. Ct. App. 1996)..............................................24

*Ramey v. Cantrell Mach. Co., Inc.*,
    No. 07-1286, 2008 WL 4155335 (W.D. La. Sept. 8, 2008) ...............7

*Roberts v. Benoit*,
    605 So. 2d 1032 (La. 1992) ...........................................4, 7, 8, 15

*Roberts v. Cardinal Servs., Inc.*,
    266 F.3d 368 (5th Cir. 2001) ...........................................................18

*Robinson v. Cheetah Transp.*,
     No. 06-cv-0005, 2007 WL 677245 (W.D. La. Feb. 28, 2007) ..........................................12

*S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*,
     541 U.S. 95 (2004) .........................................................................................................16

*Sweet v. C.B.G. Pontiac-Buick-Olds-GMC, Inc.*,
     463 So. 2d 82 (La. App. 3d Cir. 1985) ...........................................................................4

*Terrebonne Parish School Bd. v. Castex Energy, Inc.*,
     893 So. 2d 789 (La. 2005) ..........................................................................................9-10

*Thomas Learning Ctr., Inc. v. McGuirk*,
     766 So. 2d 161 (Ala. Civ. App. 1998) ..........................................................................24

*Thompson v. Johns-Manville Sales Corp.*,
     714 F.2d 581 (5th Cir. 1983) .........................................................................................5

*Till v. Unifirst Fed. Sav. & Loan Ass'n*,
     653 F.2d 152 (5th Cir.1981) ........................................................................................14

*Tool House, Inc. v. Tynes*,
     564 So. 2d 720 (La. App. 2d Cir. 1990) ........................................................................21

*Toye Bros. Yellow Cab Co. v. Coop. Cab Co.*,
     7 So. 2d 353 (La. 1942) ................................................................................................22

*Trevino & Gonzalez Co. v. R.F. Muller Co.*,
     949 S.W.2d 39 (Tex. App. 1997) ..................................................................................24

*TS&C Invs., LLC v. Beusa Energy, Inc.*,
     637 F. Supp. 2d 370 (W.D. La. 2009),
     *aff'd*, 344 Fed. App'x 907 (5th Cir. 2009) ...........................................................12, 18

*Wiltz v. Bayer CropScience, Ltd. P'ship*,
     645 F.3d 690 (5th Cir. 2011) .......................................................................................12

*Wyandotte Transp. Co. v. United States*,
     389 U.S. 191 (1967) ..................................................................................................15-16

## Statutes, Rules and Codal Articles

Clean Water Act of 1972 ...........................................................................................................16

Coastal Zone Management Act of 1972 ................................................................................16-17

Rivers and Harbors Act of 1899 .................................................................................15

16 U.S.C. § 1456 ..........................................................................................................16

33 U.S.C. § 1251(A) .....................................................................................................16

Fed. R. Civ. P. 12(b)(6)............................................................................................. *passim*

La. C.C. art. 533 ...........................................................................................................19

La. C.C. art. 534 ...........................................................................................................19

La. C.C. art. 646 ......................................................................................................19, 21

La. C.C. art. 650 ...........................................................................................................21

La. C.C. art. 654 ......................................................................................................19, 20

La. C.C. art. 655 ........................................................................................................19-21

La. C.C. art. 656 .....................................................................................................4, 19-21

La. C.C. art. 657 ...........................................................................................................19

La. C.C. art. 658 ...........................................................................................................19

La. C.C. art. 667 .....................................................................................................4, 18-19

La. C.C. art. 668 ...........................................................................................................18

La. C.C. art. 669 ...........................................................................................................18

La. C.C. art. 1831 .........................................................................................................22

La. C.C. art. 1994 ...........................................................................................................5

La. C.C. art. 2317 ........................................................................................................4, 7

La. C.C. art. 2317.1 ........................................................................................................4

Defendants file this memorandum in support of their motion to dismiss the Petition of the Board of Commissioners of the Southeast Louisiana Flood Protection Authority – East (the "Board") for failure to state a claim under Rule 12(b)(6).

## INTRODUCTION

The Petition filed by the Board complies with neither Federal Rule of Civil Procedure 12(b)(6) nor controlling Louisiana law.  Rather than alleging any act or omission by any individual Defendant that could give rise to liability, the Board has launched a sweeping attack against the oil and gas industry, as if the collective industry could be held liable.  But under Rule 12, a complaint must plead sufficient facts against a particular defendant to state a claim, and Louisiana law rejects enterprise (or market share) liability.  Indeed, Judge Vance reached this conclusion in *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676 (E.D. La. 2006) (Vance, J.), when she rejected another suit claiming that the oil and gas industry should be held responsible for coastal erosion.

The Board's Petition also should be dismissed because each of its causes of action is legally flawed.  The Board's negligence and strict liability claims (Counts 1 and 2) fail because Defendants owe no legal duty to the Board that extends so far as restoring the marshlands, let alone underwriting the levee protection that the Board is assigned to provide.  As this Court noted in denying remand, "oil and gas companies do not have a duty under Louisiana law to protect members of the public 'from the results of coastal erosion allegedly caused by [pipeline] operators that were physically and proximately remote from plaintiffs or their property.'"  (Order and Reasons of June 27, 2014, at 67-68) (R.Doc. 363) (quoting *Barasich*, 467 F. Supp. 2d at 693) (brackets in original).  The Board apparently realized as much, asserting that such a duty arises under federal statutes, but that is demonstrably wrong.  The Board's claim of natural servitude of drain (Count 3) fails because the Board has not alleged, and cannot allege, that its property is

1

adjacent to Defendants' properties, nor has the Board alleged dominant and servient estates.  The Board's public and private nuisance claims (Counts 4 and 5) similarly fail because the Board and Defendants are not neighbors.  Finally, the Board's breach of contract claim (Count 6) fails because the Board is neither a party nor a third-party beneficiary to any contract with Defendants.  For these reasons, the Petition should be dismissed in its entirety.

## STATEMENT OF FACTS

While the Petition sets forth a detailed exposition of the Board's creation and responsibilities, it says virtually nothing about the individual Defendants.  It asserts that the Board was created by the Louisiana Legislature in 2006 to safeguard the levee systems in Orleans, Lake Borgne, and East Jefferson.  (Pet. ¶¶ 4.1-4.5).  And it claims that this is "one of the most important and challenging jobs in the state." (Pet., Introduction).

In stark contrast, the Petition provides no information whatsoever about individual Defendants.  It does not attempt to identify what any individual Defendant is alleged to have done wrong.  It does not even name the Defendants, but rather lists them only in an exhibit.  (Pet. ¶ 2.1, referencing Exh. A to Pet.)   Indeed, it does not even specify how many individual Defendants it has sued, but rather refers to them only as "approximately 100 oil and gas production and pipeline companies."  *Id.*

All of the Board's allegations are made against the "oil and gas industry"—as if there are no differences among Defendants and the multitude of varied activities in which they have engaged at different times over the past century.  Thus, after defining the relevant period as "nearly 100 years of profitable oil and gas production," which began "in Louisiana's coastal zone in the early 1900s," (Pet. ¶ 6.1), the Board alleges in conclusory fashion that, "[c]ontinuous and ongoing oil and gas activity has scarred Louisiana's coast with an extensive network of thousands of miles of oil and gas access and pipeline canals."  (Pet. ¶ 6.4).  The Board does not

allege which canals, if any, were negligently maintained, when or how this occurred, or by which Defendants.   Instead, the Board simply asserts that "oil and gas production and pipeline companies together dredged [this] network of canals to access oil and gas wells and to transport the many products and by-products of oil and gas production."  (Pet. ¶ 6.3).  This approach continues throughout the Petition, with no specific Defendant's act or omission ever being pled. Instead, the Petition complains only of generic "oil and gas activities."  (*See, e.g.*, Pet. ¶ 6.7.)

As to how these activities are alleged to have caused damage to the Board, the gravamen of the suit is that Defendants have collectively caused damage to coastal lands; this damage has in turn caused an increased risk of storm surge; and this increased risk has in turn caused, or will in the future cause, the Board to pay increased costs for levee protection.  (Pet. ¶¶ 5.1-7.6.6).  On this basis, the Board seeks not only to make the oil and gas industry pay for levee protection, but also to pay for "injunctive relief in the form of abatement and restoration of the coastal land loss at issue, including, but not limited to, the backfilling and revegetating of each and every canal Defendants dredged [or] used."  (Pet., Prayer for Relief).

## APPLICABLE STANDARD

The ultimate question on a Rule 12(b)(6) motion is whether the complaint states a valid claim.  While well-pleaded facts should be accepted as true, legal conclusions are not entitled to the "assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Even "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 677 (quoting *Twombly,* 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 668 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

The Board's claims against Defendants fail for two independent reasons. First, the Board has failed to allege a cause-in-fact connecting any act by any Defendant to the alleged damages, instead alleging that an entire industry is liable for its "oil and gas activities." This fatal flaw defeats all of the Board's claims. Second, each of the Board's six causes of action fails as a matter of law.

## I.   LOUISIANA LAW DOES NOT RECOGNIZE ENTERPRISE LIABILITY.

A plaintiff must plead cause-in-fact to state any tort claim under Louisiana law. *See Henry v. Zurich Am. Ins. Co.*, 107 So. 3d 874, 882-83 (La. App. 3d Cir. 2013); *Black v. Avondale Indus., Inc.*, 783 So. 2d 505, 509 (La. App. 5th Cir. 2001). Cause-in-fact is an essential element of a negligence claim, *Roberts v. Benoit*, 605 So. 2d 1032, 1051 (La. 1992), as well as an essential element of claims for strict liability,[2] natural servitude of drain,[3] public or private nuisance under La. C.C. art. 667,[4] and breach of contract.[5] This element asks a simple

---

[2]   "Cause-in-fact" is an element of a strict liability claim under La. C.C. art. 2317. *Lasyone v. Kansas City S. R.R.*, 786 So. 2d 682, 689 (La. 2001). La. C.C. art. 2317.1, effective April 16, 1996, added a requirement that the defendant had knowledge or constructive knowledge of the defective thing, but it did not alter the cause-in-fact requirement.

[3]   Causation is an essential element of a cause of action based on La. C.C. art. 656 and the natural servitude of drain, and thus the plaintiff "must establish causation between the defendant-owner's acts or omissions and the damage resulting from the defendant-owner's acts or omissions." *Sweet v. C.B.G. Pontiac-Buick-Olds-GMC, Inc.*, 463 So. 2d 82, 84 (La. App. 3d Cir. 1985); *see also Nicholson v. Holloway Planting Co.*, 229 So. 2d 679, 683 (1969) ("The record is barren of proof that this circumstance has increased in even the slightest degree the amount of water draining" from one property to adjacent property).

[4]   *Butler v. Baber*, 529 So. 2d 374, 378 (La. 1988) (Under La. C.C. art. 667 "causation must be proved, but to be actionable cause need not be the sole cause, although it must be a cause in fact. In order to be a cause in fact in a legal contemplation, it must have a proximate relation to the harm which occurs, and it must be substantial in character."). Thus, in *Barasich*, the court dismissed the plaintiffs' nuisance claim

Footnote continued on next page

question—did the alleged tortious act actually cause plaintiff's injury?   As the Louisiana Supreme Court has explained:  "Cause-in-fact usually is a 'but for' inquiry that tests whether the accident would or would not have happened but for the defendant's substandard conduct." *Boykin v. La. Transit Co., Inc.*, 707 So. 2d 1225, 1230 (La. 1998).

Here, the Petition does not identify any act by any Defendant that is alleged to have caused damages.  Instead, the Petition alleges that Defendants collectively should be held liable for conduct by the oil and gas industry as a whole.  (*See, e.g.*, Pet. ¶¶ 6.1-6.14.)  This is an allegation of enterprise (market share) liability.

Enterprise (market share) liability has been uniformly rejected.  In *George v. Housing Authority of New Orleans*, 906 So. 2d 1282 (La. App. 4th Cir. 2005), the court rejected market share liability after finding that no Louisiana courts had adopted the theory.  *Id.* at 1287.  In *Jefferson v. Lead Industries Ass'n*, 106 F.3d 1245, 1247 (5th Cir. 1997), the Fifth Circuit affirmed the district court's Rule 12(b)(6) dismissal because the plaintiff did not allege a cause-in-fact specific to each defendant, instead relying on a market share theory of liability.  As the Fifth Circuit stated in *Thompson v. Johns-Manville Sales Corp.*, 714 F.2d 581, 583 (5th Cir. 1983), the "'enterprise' and 'market share' . . . theories represent radical departures from traditional theories of tort liability" under Louisiana law.  "Louisiana courts have not indicated any trend that would support our adopting for Louisiana such a radical expansion of tort liability theories."  *Bateman v. Johns-Manville Sales Corp.*, 781 F.2d 1132, 1133 (5th Cir. 1986).

---

Footnote continued from previous page

because by relying solely upon market share liability, the plaintiffs had failed to allege "that any individual defendant's actions were a cause-in-fact of any individual plaintiff's harms, further precluding recovery under Article 667."  467 F. Supp. 2d at 690.

[5]  An obligor is only liable for damages that are "caused by his failure" to perform under the contract.  La. C.C. art. 1994.

Additionally, the Fifth Circuit recognized in *In re Fibreboard Corp.*, 893 F.2d 706, 710-11 (5th Cir. 1990), that if these theories were allowed, it would transform the essence of the judicial proceeding itself:

> We are also uncomfortable with the suggestion that a move from one-on-one 'traditional' modes is little more than a move to modernity.  Such traditional ways of proceeding reflect far more than habit.  They reflect the very culture of the jury trial . . . .  Ultimately, these concerns find expression in defendants' right to due process.

*Id.*  The Fifth Circuit thus held that the plaintiff's attempt to impose "collective" liability could not be allowed.  "We are persuaded upon reflection that the procedures here called for comprise something other than a trial within our authority.  It is called a trial, but it is not."  *Id.* at 711-12; *see also Cimino v. Raymark Indus.*, 151 F.3d 297, 316 (5th Cir. 1998).

In *Barasich*, a putative class of individuals and entities damaged by Hurricanes Katrina and Rita argued that activities of oil and gas companies collectively damaged the marshlands, allegedly causing greater impact from the storms—essentially the same allegations made here.  But rather than attempting to allege cause-in-fact between specific acts and alleged damages, the plaintiffs (without owning up to it) relied on an enterprise theory, seeking to hold all oil and gas company defendants liable as a group.

Judge Vance rejected this group-liability theory, explaining that it would subvert the requirement of causation at the core of Louisiana tort law:

> The Court has not found a controlling or persuasive case at all similar to that proposed by plaintiffs, in which a plaintiff could collect damages from an industry as a whole without demonstrating any individual connection between any single member of the industry and the plaintiff's harm, and in which liability would be assessed against industry defendants on a group liability theory.  The court concludes that such cases do not exist because they would subvert the notion of causation that underlies the system of tort liability in Louisiana.

467 F. Supp. 2d at 695.  Because the plaintiffs could not establish causation, Judge Vance dismissed their negligence and strict liability claims for failure to state a claim.  *Id.*; *see also Ramey v. Cantrell Mach. Co., Inc.*, No. 07-1286, 2008 WL 4155335, at *5 n.3 (W.D. La. Sept. 8, 2008) (declining to adopt market share liability); *Hannon v. Waterman S.S. Corp.*, 567 F. Supp. 90, 91-93 (E.D. La. 1983) (same); *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 214 (5th Cir. 2010) (dismissing claims because complaint did not allege with specificity how each defendant's dredging operations resulted in the claimants' damages from levee failure after Hurricane Katrina and maritime law does not recognize enterprise liability).

Like the plaintiffs in *Barasich*, the Board here improperly relies on enterprise liability in an attempt to circumvent the cause-in-fact requirement of Louisiana tort law.  As in *Barasich*, every one of the Board's claims should be dismissed.

## II.   EACH OF THE BOARD'S CAUSES OF ACTION IS LEGALLY FLAWED.

Even if the Board could satisfy the causation requirement, and it cannot do so, each of its causes of action are still subject to dismissal on purely legal grounds.

### A.   The Board Has Not Stated Viable Negligence And Strict Liability Claims.

In *Barasich*, there was a second, independent reason that Judge Vance granted the motion to dismiss, and that rationale applies here as well:  Defendants do not owe a legal duty to the Board to protect it against any increased cost of maintaining levees.

Under the Louisiana Supreme Court's articulation of the duty-risk analysis, a court must decide both whether the defendant had a "duty to conform his conduct to a specific standard (the duty element)" and whether the defendant's alleged "substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element)."  *Roberts*, 605 So.2d at 1051; *see also Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). These are both questions of law for the court to decide.  *Lemann*, 923 So.2d at 633; *Barasich*,

467 F. Supp. 2d at 691.[6]  Even assuming the existence of some duty, the question remains, "[w]as a duty imposed on the defendant by a general rule of law to protect this plaintiff from this type of harm arising in this manner?"  *Dupre v. Chevron U.S.A. Inc.*, 20 F.3d 154, 156 (5th Cir. 1994).  Actors are not liable for "all consequences spiraling outward until the end of time." *Lazard v. Foti*, 859 So.2d 656, 662 (La. 2003).  When examining whether a defendant owed a plaintiff a duty to prevent alleged harm, Louisiana courts look at the "ease of association," *i.e.*, "how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced." *Roberts*, 605 So. 2d at 1045.[7]

Here, Defendants did not owe a legal duty to the Board to prevent risk of flooding from hurricanes, let alone the alleged resulting increased costs of levee protection.  Louisiana law does not impose such a duty and, contrary to the Board's allegations, no federal statute imposes such a duty that does not otherwise exist under state law.

### 1.    Defendants owe no legal duty under Louisiana law.

When this Court denied the Board's motion to remand, it recognized that the Board's claims "necessarily involve[] the application of federal law" because "oil and gas companies do not have a duty under Louisiana law to protect members of the public 'from the results of coastal erosion allegedly caused by [pipeline] operators that were physically and proximately remote from plaintiffs or their property.'"  (Order and Reasons of June 27, 2014, at 67-68) (R.Doc. 363)

---

[6]  This applies both to negligence and strict liability claims.  As the Louisiana Supreme Court has explained, the question of scope of duty or legal cause under duty-risk analysis is the same as whether a risk is unreasonable under La. C.C. art. 2317.  *Entrevia v. Hood*, 427 So. 2d 1146, 1149 (La. 1983).

[7]  This inquiry is equivalent to a determination of whether there is proximate cause.  *See Roberts*, 605 So.2d at 1052 ("Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy."); *see also Battaglia v. Gulf Stream Coach, Inc*., 679 F. Supp. 2d 704, 711 (E.D. La. 2011) ("Proximate cause primarily inquires whether a party's duty extends to the particular risk in question that causes injury to another party in a tort action." (citations and internal quotation marks omitted)).

(quoting *Barasich*, 467 F. Supp. 2d at 693).   That conclusion was correct.   The injuries complained of by the Board are too attenuated by time, place, scope, subject matter, and countless superseding, intervening, and concurrent causes.   Restoring marshlands to guard against future hurricanes cannot be easily associated with the alleged dredging and maintenance of canals that, in many cases, occurred decades earlier and hundreds of miles away.   And, as discussed below, considering that the Board's claim is for monetary harm, its claims are even more attenuated.   Not surprisingly, then, no court has ever imposed a duty under these circumstances, and as a federal court adjudicating state-law claims, this Court should decline the Board's invitation to create this novel duty under Louisiana law.   *See Caton v. Leach Corp.*, 896 F.2d 939, 949 (5th Cir. 1990) (federal courts sitting in diversity "cannot boldly go where no [state] court has gone before"); *Mitchell v. Random House, Inc.*, 865 F.2d 664, 672 (5th Cir. 1989) (federal courts sitting in diversity should not "adopt innovative theories of recovery").

Not only is there no Louisiana precedent holding that oil and gas companies owe a duty to pay the Board for hurricane-related expenses, but the case law demonstrates that the courts have specifically declined to impose any such duty.   In *Caldwell v. Let the Good Times Roll Festival*, 717 So. 2d 1263, 1272-74 (La. App. 2d Cir. 1998), *writ. denied*, 729 So. 2d 566 (La. 1998), the court recognized that a defendant cannot be held liable for damages caused by a weather event unless the defendant specifically assumed that duty.   The court reasoned that even if the festival organizers may have owed general duties to the plaintiff attendees, they did not bear a specific legal duty to protect against a storm.   *Id.* at 1272.

Similarly, courts have specifically declined to impose a duty to restore marshland.   In *Terrebonne Parish School Bd. v. Castex Energy, Inc.*, 893 So. 2d 789 (La. 2005), a school board that had granted oil and mineral rights in coastal marshland, including the right to dredge canals,

argued that oil and gas companies had a duty to restore the wetlands to their original condition, even though no such requirement was written into the mineral lease.  The Louisiana Supreme Court ruled that no duty existed under Louisiana law, explaining that "the School Board could have bargained for an express lease term so providing" and, furthermore, the State of Louisiana, "in recognition of the inherent value of Louisiana's coastal wetlands" was "at liberty to attempt to pass legislation" to impose such a duty, but in the absence of either, the defendants owed no specific duty to restore wetlands.  893 So. 2d at 802.

And the closest case is *Barasich*, in which Judge Vance explained that in light of the Louisiana Supreme Court's ruling in *Terrebonne Parish*, "plaintiffs will be unable to establish that defendants owed them a duty."  *Id.* at 691.  Judge Vance further noted that there was no contract between the plaintiffs and the oil and gas companies that might have "served as a platform for implying a duty."  *Id.* at 692.  Instead, there was at most an "attenuated" relationship between the parties "because they are suing for hurricane damage from storm surge allegedly magnified by coastal erosion caused by the canals, not for a direct loss of acreage due to erosion."  *Id.*  The court concluded that "[i]f the Louisiana Supreme Court refused to read an implied duty to restore the surface on the facts of *Terrebonne Parish*, it would almost certainly decline to do so when remote parties seek to impose a general duty that has no basis in their relationship or controlling law."  *Id.*

The same is true here.  A defendant cannot be held liable for damages caused by a natural disaster or other natural occurrence unless the defendant had a specific duty to protect the plaintiff from damage caused by the event.  The Board can point to no law holding that Defendants owe the Board a duty to restore marshlands or to pay for flood protection that the Board is required to provide.

### 2.    Defendants owe no legal duty to protect the Board from indirect economic harm under Louisiana law.

In the aforementioned cases finding no duty, plaintiffs at least complained that the defendants' activities had caused, in however attenuated a fashion, damage to plaintiffs' own property.  Here, the Board is suing solely for indirect economic losses—the alleged increased cost of flood control—caused by alleged damage to the property of others.  In *PPG Industries, Inc. v. Bean Dredging*, 447 So. 2d 1058 (La. 1984), the Louisiana Supreme Court refused to find a legal duty in a claim of indirect economic injury arising from physical harm to another's property.

In *PPG*, the plaintiff was the customer of a pipeline owner.  It sued a dredging contractor who damaged the pipeline, allegedly causing the pipeline owner to increase the cost of gas to the plaintiff.  The Louisiana Supreme Court affirmed judgment in favor of the contractor, concluding that its duty to avoid damage to the pipeline did not encompass the risk that such damage would create the economic harm that befell the plaintiff—the increased cost of gas.  In so holding, the Supreme Court emphasized that courts must determine whether the harm in question "is one that falls within the intended protection of the rule of law whose violation gave rise to the damages." *Id.* at 1061 (citations omitted).  Because imposition of liability for economic harm arising from injury to another's property "could create liability in an indeterminate amount for an indeterminate time to an indeterminate class," the Supreme Court "necessarily ma[de] a policy decision" that such damages are not recoverable.  *Id.* at 1061-62; *see also Great Sw. Fire Ins. Co. v. CAN Ins. Cos.*, 557 So. 2d 966, 970 (La. 1990) (courts "have refused to cross the bright line that has traditionally marked negligence claims for economic harm as off limits").  Just this month in *MAW Enterprises, LLC v. City of Marksville*, No. 2014-C-0090, 2014 WL 4355955 (La. Sept. 3, 2014), the Supreme Court confirmed that *PPG* remains the law in Louisiana and, on

that basis, reversed a judgment for a plaintiff in which the plaintiff suffered only an indirect economic injury. *Id.* at *5.

The Fifth Circuit and other courts have applied *PPG* to bar claims for economic injury arising from damage to property of another. In *Wiltz v. Bayer CropScience, Limited Partnership*, 645 F.3d 690, 699 (5th Cir. 2011), crawfish purchasers sued a chemical manufacturer, alleging economic harm stemming from damage to crawfish farmers' crop caused by the manufacturer's product. Applying *PPG*, the Fifth Circuit held the crawfish purchasers had no claim because under Louisiana law there was no tort liability for "the type of iterative economic loss" for which plaintiffs sought recovery. *Wiltz*, 645 F.3d at 701. The court noted that "*PPG* held that not even a binding, contractual right to buy a third party's property was sufficient to create an ease of association between negligent damage to that property and the plaintiff's resulting economic loss." *Id*. at 700.

Similarly, in *TS&C Investments, L.L.C. v. Beusa Energy, Inc*., 344 F. App'x 907 (5th Cir. 2009) (*per curiam*), the Fifth Circuit affirmed dismissal of the plaintiffs' claims against companies involved in drilling an oil well after a blowout caused closure of a highway, allegedly resulting in the plaintiffs' economic losses, on the ground that the plaintiffs' economic harm was too attenuated from the defendants' alleged misconduct. The Fifth Circuit agreed, noting that "the obvious trend over the past century is for Louisiana and United States courts to prohibit the recovery in tort of indirect economic losses." *Id.* at *2; *see also Robinson v. Cheetah Transp*., No. 06-cv-0005, 2007 WL 677245 (W.D. La. Feb. 28, 2007) (no ease of association between the duty to operate a vehicle with care and any economic harm stemming from a bridge closure after driver struck the bridge); *La. Crawfish Purchasers Ass'n-West v. Amerada Hess Corp.*, 935 So. 2d 380, 382 (La. App. 3d Cir. 2006) (denying recovery for economic loss resulting from physical

damage to property in which plaintiff had no proprietary interest); *Dempster v. Louis Eymard Towing Co.*, 503 So. 2d 99, 102 (La. App. 5th Cir. 1987) (affirming summary judgment in favor of defendants where plaintiff fishermen claimed a barge collision befouled their fishing site); *Babin v. Texaco, Inc.*, 449 So. 2d 718 (La. App. 3d Cir. 1984) (affirming dismissal of salt mine employees' claims for closure of salt mine caused by drilling rig).

This same reasoning bars the Board's claims here.  The Board alleges that damage to another's property caused, or will cause, economic damage in the form of increased cost of maintaining levees.  Because the Board alleges only indirect economic injury, resulting from damage to physical property which it does not own, its claims squarely fall within the category of claims rejected by the Louisiana Supreme Court, the Fifth Circuit, and many others.

### 3.      Where no legal duty is otherwise owed, one does not arise under the statutes cited by the Board.

In denying the Board's motion to remand, this Court cited *Barasich* and noted that since Defendants do not owe a duty to the Board under Louisiana law, the only remaining question is whether the three federal statutes cited by the Board create such a duty.  (Order and Reasons of June 27, 2014, at 67-68) (R.Doc. 363).  The Board cannot show that these statutes impose a legal duty that does not otherwise exist.

"Where the rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court's own judgment of the scope of protection intended by the Legislature."  *Hill v. Lundin & Assoc., Inc.*, 256 So. 2d 620, 622 (La. 1972).  In making this determination, courts consider policy factors "such as whether the imposition of a duty would result in an unmanageable flow of litigation; ease of association between the plaintiff's harm and a defendant's conduct; economic, social, and moral implications on similarly situated parties; the

nature of defendant's activity; the direction in which society and its institutions are evolving; and precedent." *Cormier v. T.H.E. Ins. Co.*, 745 So. 2d 1, 7 (La. 1999).

Even if a statute creates a duty, a plaintiff can recover only if the legislature intended to extend that duty to that plaintiff.  Legally imposed duties are only "designed to protect Some persons under Some circumstances against Some risks.  Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury."  *Hill*, 256 So. 2d at 623 (quoting Malone, Ruminations on Cause-In-Fact, 9 Stanford L. Rev. 60, 73 (1956)).

For example, in *Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008), the issue was whether a company hired by a bank to determine flood zones owed a duty to a homeowner when it mistakenly determined that the plaintiff's home was outside of a flood zone.  The plaintiff argued that the National Flood Insurance Act of 1968 (NFIA), 42 U.S.C. § 4001, *et seq.*, was the source of such a duty.  Rejecting this argument, the Fifth Circuit held that the NFIA was intended to protect the federal treasury, since the federal government pays for flood insurance. Even though the defendant knew that the homeowner would be told about the results of the flood zone report, and even though Congress also "intended to help borrowers damaged by flooding" when it enacted the NFIA, the Fifth Circuit held that the NFIA still did not impose a duty on the defendants to a homeowner because the "principal purpose" of Congress enacting the NFIA was "to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever increasing federal flood disaster assistance."  *Id.* at 251-52 (quoting *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 159 (5th Cir.1981)).  Thus, even if the federal statute created a duty, it was not a duty to the plaintiff, and the Fifth Circuit, therefore, affirmed the district court's judgment granting the defendants' motion to dismiss.

Moreover, even when a plaintiff identifies a duty created by a federal statute, the plaintiff must also show that the statute was intended to protect the plaintiff from the particular type of risk at issue in the lawsuit.  "Since the law never gives absolute protection to any interest, recovery will be allowed only if a rule of law on which plaintiff relied includes within its limits protection against the particular risk that plaintiff's interests encountered." *Lazard*, 859 So. 2d at 661.  In *Lazard*, a juvenile was arrested and incarcerated in an adult jail instead of a juvenile jail as a statute required.  He therefore was not released into his parent's custody, as would have happened upon release from a juvenile jail.  Soon after his release, he was killed.  The Louisiana Supreme Court ruled that the sheriff could not be liable for the juvenile's death.  Even though a statute established the sheriff's duty to imprison a juvenile in a juvenile facility, it was "based on the premise that juveniles are entitled to different internal procedures while incarcerated," and that duty did not encompass the risk of what might happen after release.  *Id.* at 662.  A statutory duty does not make one liable for "all consequences spiraling outward until the end of time."  *Id.* (quoting *Roberts*, 605 So. 2d at 1052).

Against this legal framework, there is no basis to conclude that the three statutes implicated by the Board's claims create a duty on the part of Defendants to protect the Board from its alleged harm.

***Rivers and Harbors Act.***  The Board claims that the Rivers and Harbors Act of 1899 "prohibits the unauthorized alteration of or injury to levee systems and other flood control measures built by the United States."  (Pet. ¶ 9.1.)  But the Board cannot show that when Congress passed the law in 1899 it intended to protect the Board, an entity that was not even created by the Louisiana Legislature until 2006.  To the contrary, the navigable waters of the United States are the public property of the United States, and the intended beneficiary of this

Act is the federal government itself.  *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) ("[W]e have found that a principal beneficiary of the Act, if not the principal beneficiary, is the Government itself."); *California v. Sierra Club*, 451 U.S. 287, 294 (1981) (the Act "carries with it no implication of an intent to confer rights on a particular class of persons").  The purpose of this Act is not to reduce expenses of the Board, but rather it "was obviously intended to prevent obstructions in the Nation's waterways."  *Wyandotte Transp. Co.*, 389 U.S. at 201. Accordingly, even if the Rivers and Harbors Act of 1899 imposes some duty on Defendants, it is not owed to the Board to protect it from indirect economic losses.

  ***Clean Water Act.***  The Board contends that the Clean Water Act requires Defendants to maintain canals, restore dredged areas, and minimize the environmental impact of Defendants' activities.  (Pet. ¶ 9.2.)  Again, the Board does not and cannot show that in passing this law in 1972, Congress intended to protect a local levee board that was not created until many years later.  Nor was it Congress's intent to reduce the expense of maintaining levees.  To the contrary, the purpose of this Act can be found in the explicit "congressional declaration of goals and policy" contained in 33 U.S.C. § 1251(A):  "The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  *Id.*; *see also S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 102 (2004).  Thus, even if the Clean Water Act of 1972 imposes some duty on Defendants, it is not to protect a levee board from indirect economic losses.

  ***Coastal Zone Management Act.***  The Board claims that the Coastal Zone Management Act of 1972 (CZMA) imposes a "litany of duties and obligations" on Defendants, Pet. ¶ 9.4, but it does not cite any provision of the federal statute imposing any specific duty on any Defendant towards the Board.  Nor could it.  The CZMA merely establishes a framework for cooperation

between the federal government and state governments in issuing permits for activities affecting coastal zones. *See, e.g.*, 16 U.S.C. § 1456 (establishing a system of federal and state "coordination and cooperation" in issuing permits); *see also Ca. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 592 (1987) ("[The CZMA] has as its main purpose the encouragement and assistance of States in preparing and implementing management programs to preserve, protect, develop and whenever possible restore the resources of the coastal zone of the United States.") (quoting S.Rep. No. 92–753, p. 1 (1972)).  Thus, the CZMA does not create a statutory duty owed by Defendants to protect the Board from indirect economic losses.

***State Land Office Regulations.***  Finally, the Board refers in general to various state regulations.  (Pet. ¶¶ 9.3, 9.4.)  But the Board does not cite any specific regulation or even attempt to show how any regulation imposed any duty on Defendants, let alone a duty that was intended to protect the Board from paying additional expenses to repair levees.

In sum, Louisiana law does not impose any legal duty on Defendants to protect the Board from indirect economic loss, and the federal statutes cited by the Board likewise do not impose such a duty.  Thus, as a matter of law, the Board's negligence (Count 1) and strict liability (Count 2) claims should be dismissed.

**B.      The Board Has Not Stated A Claim Under Natural Servitude Of Drain Or Nuisance Because It Does Not Own Property Adjacent To Defendants' Property.**

The next three causes of action in the Petition—natural servitude of drain (Count 3), public nuisance (Count 4), and private nuisance (Count 5)—all suffer from the same flaw.  The Civil Code articles governing those claims require that the plaintiff and the defendant own adjacent property, making them neighbors.  The Board does not state a claim because the Board does not allege that it owns property adjacent to property owned by any Defendant (let alone all

17

Defendants).  This was an additional reason that Judge Vance dismissed the nuisance claims in *Barasich*, and the reasoning applies here as well.  467 F. Supp. 2d at 690.

### 1.    Nuisance claims under Article 667 apply only to neighbors.

In Counts 4 and 5 of the Petition, the Board alleges that Defendants' acts were public and private nuisances.  These claims are governed by Louisiana Civil Code article 667,[8] and the claims fail because the Board has not alleged that its property is adjacent to property owned by any Defendant such that the Board and Defendants are neighbors.

Article 667 by its terms "applies only in the case of damage done to neighbors." *Barasich*, 467 F. Supp. 2d at 690 (citing Louisiana cases).  As Judge Vance recognized, the provision creates "obligations between owners of adjacent properties" or owners of "properties that [are] physically close to one another."  *Id*.; *see also Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 387-88 (5th Cir. 2001) ("Article 667 creates obligations in favor of proprietors who are neighbors").  Federal courts in Louisiana have thus consistently dismissed article 667 claims for failure to state a claim when a plaintiff's property was not near or adjacent to the defendant's property.  *See, e.g.*, *Barasich*, 467 F. Supp. 2d at 690; *TS&C Invs., LLC v. Beusa Energy, Inc*., 637 F. Supp. 2d 370, 383 (W.D. La. 2009) (holding that because the plaintiffs' properties were located approximately twenty miles from the defendant's property where a well-blowout occurred, plaintiffs were not "neighbors"), *aff'd*, 344 F. App'x 907; *In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d 644, 734 (E.D. La. 2009) (concluding that because the

---

[8]   *See, e.g.*, *Hogg v Chevron USA, Inc.*, 45 So. 3d 991, 1003 n.13 (La. 2010) ("The obligations of neighborhood set forth in LSA–C.C. arts. 667–669 are the source of nuisance actions in Louisiana."). The Board asserts claims only under article 667 so Defendants focus on that article, but to the extent the Petition may be read to assert claims under articles 668 and 669, those articles also include a requirement that the defendant be a neighbor of the plaintiff.

plaintiffs' property was 3 miles away, they had no claim under article 667), *rev'd on other grounds*, 696 F.3d 436 (5th Cir. 2012).

The Board has failed to state a claim under article 667 because the Petition includes no allegations that the Board's property is either adjacent to, or physically close to, property owned by any Defendant, let alone all Defendants. As Judge Vance explained in *Barasich*: "Plaintiffs ask for a finding of liability between parties whose property are hundreds of miles apart in many cases. If these parties could be held to be neighbors, the restrictive meaning of the statutory language would be eviscerated." *Barasich*, 467 F. Supp. 2d at 690. Accordingly, the nuisance claims (Counts 4 and 5) fail to state a claim and should be dismissed.

### 2. Natural servitude of drain claims under Articles 655 and 656 only arise when the parties own properties that are adjacent.

The Board's claim for interference with the natural servitude of drain (Count 3) fails for a similar reason: the Board does not allege that it owns property adjacent to property owned by any Defendant, let alone all Defendants.

Under Louisiana law, there are two types of servitudes: a personal servitude, which is a charge on a thing for the benefit of a person, and a predial servitude, which is a charge on a servient estate for the benefit of a dominant estate. La. C.C. arts. 533, 534, 646. Predial servitudes are real rights which give rise to real obligations, and ownership is a basic tenet to be able to assert rights regarding a predial servitude. *See* La. C.C. arts. 646 and 650 and Revision Comments–1977 to both. The two estates must belong to different owners. La. C.C. art. 646. A predial servitude may arise from law (a "legal" servitude), by a juridical act, prescription, or destination of the owner (a "voluntary or conventional" servitude) or from the natural situation of estates (a "natural" servitude). La. C.C. art. 654. One such natural servitude is the natural servitude of drain. This servitude is governed by Articles 655 through 658, the first two of

which are particularly relevant here.  Article 655 provides: "An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow."  Article 656 provides:  "The owner of the servient estate may not do anything to prevent the flow of the water.  The owner of the dominant estate may not do anything to render the servitude more burdensome."

Natural servitudes must "arise from the natural situation of estates," La. C.C. art. 654, and thus the natural servitude of drain applies when there are two properties (estates) that are adjacent to each other, located so that one derives a benefit from the other.  This rule dates back well over 100 years.  As the Louisiana Supreme Court stated in *Nicholson*, the rule was "most clearly and fully set forth in *Ludeling v. Stubbs*, [34 La. Ann. 935 (La. 1882)], decided by the Supreme Court in 1882," where the Court said:

> [T]he owner of the superior estate cannot improve his lands to the injury of his neighbor, and thus he will not be allowed to cut ditches or canals, or do other drainage works by which the waters running on his lands will be diverted from their natural flow, and concentrated so as to flow on the lower lands of the adjacent estate at a point which would not be their natural destination, thus increasing the volume of water which would by natural flow run over or reach any portion of the lower adjacent estate, or to drain over his neighbor's lands stagnant waters from his, and to thus render the servitude due by the estate below more burdensome.

*Nicholson*, 229 So. 2d at 692-93 (quoting *Ludeling*, 34 La. Ann. at 938).  As explained by the Supreme Court, the servitude is thus owed by one neighbor (the dominant estate) to another neighbor (the servient estate).  *Id.*; *see also Pickett v. Taylor*, 316 So. 2d 778, 780-81 (La. App. 3d Cir. 1975) ("Article 660 [of the La. Civil Code of 1870, now La. C.C. arts. 655 and 666] contemplates a natural servitude of drain along particular points of a boundary between lands, attaching where one estate is upper to the other and drainage results over the latter.").

Not surprisingly, when a defendant has been found liable for interference with natural servitude of drain, he has owned property adjacent to that owned by plaintiff. *See, e.g.*, *Gaharan v. State Through Dep't of Transp. & Dev.*, 579 So. 2d 420, 422 (La. 1991) (affirming judgment for the plaintiff when the defendant's "construction interfered with the natural drainage in the area, which led to the flooding of the plaintiffs' adjacent properties"); *Lafleur v. Topp*, 352 So. 2d 426, 427 (La. App. 3d Cir. 1977) (finding interference with natural servitude of drain when "[p]laintiff and defendant own adjacent tracts of land in Allen Parish"); *Tool House, Inc. v. Tynes*, 564 So. 2d 720, 721 (La. App. 2d Cir. 1990) (affirming judgment for plaintiff when the "properties occupied by plaintiff and defendants are contiguous"); *La. Irrigation & Mill Co. v. Sixth Ward Drainage Dist.*, 104 So. 623, 624 (La. 1925) (a defendant's only duty to "the owner of some adjacent estate" is to "let the drainage take its natural course"); *Dyer & Moody, Inc. v. Dynamic Constructors, Inc.*, 357 So. 2d 615, 616 (La. App. 1st Cir. 1978) (affirming judgment against a defendant "immediately adjacent to the property of" the plaintiff); *Lattimore v. Davis*, 14 La. 161, 163 (1839) (affirming judgment for the plaintiff when "[t]he parties are owners of adjacent tracts of land"); *Poole v. Guste*, 262 So. 2d 339, 342 (La. 1972) (affirming judgment when "[t]he parties own adjacent tracts of land"); *Caldwell v. Gore*, 143 So. 387, 387-88 (La. 1932) (plaintiff and defendant owned "adjacent estates" that were "immediately across the border" from one another). The Board's Petition does not allege that property owned by it is adjacent to properties owned by Defendants, nor does the Board allege that the properties are located in a relationship that allows one estate to derive a benefit from another estate.

There are two additional flaws with respect to Count 3. First, the Board can only state a claim under these articles by alleging with the specificity required by *Iqbal* and *Twombly* that the Board owns a servient estate and that Defendants own dominant estates. The Board has not done

21

so.  The Board makes allegations in the Petition regarding its purpose, mission, statutory charge, and responsibilities, but nowhere does the Board allege what property, owned by the Board, is the servient estate, instead making only a single vague reference to a servient estate in Paragraph 22.  Nor does the Board identify properties owned by Defendants that are dominant estates, nor could it when Defendants' rights to access canals are personal servitude rights of use, insusceptible of creating a predial servitude.  La. C.C. arts. 646, 650.

Second, these articles only apply to the natural flow of water from a higher estate to a lower estate, but the Board is complaining about something different:  the failure of coastal lands to impede storm surges coming from the Gulf.  As Justice Summers noted in a dissent in *Poole* after reviewing decades of Louisiana law and French authorities:

> What these authorities so wisely expound is that the law of drain servitude does not and cannot apply to flat marsh and swamp where tide is the prevailing cause of water flow. The reason for this should be obvious.  Tidal waters alternately rise and fall. Consequently these waters run both ways, in and out of the lands so affected. Drainage laws on the other hand were enacted to govern the flow of water in one direction. The rule of Article 660 [of the La. Civil Code of 1870, now La. C.C. arts. 655 and 666] cannot apply to lands periodically and so frequently subject to overflow and innundation by storm and tide.  The vast reaches of lowlands, swamp and marsh which dominate the coastal regions of Louisiana can never be protected against the frequent surges of hurricanes ….

262 So. 2d 339, 348 (Summers, J., dissenting).

In short, the Board's claims under Articles 655 and 656 fail for the same reason that the Board's claim under Article 667 fails:  the Board does not, and cannot, allege that it owns property adjacent to property owned by Defendants.  Additionally, the Board has not alleged that the parties own servient dominant estates, nor do these codal articles apply to this type of claim.  Thus, Count 3 should be dismissed.

### C.   The Board Has Not Stated A Claim For Breach Of Contract Because It Is Not A Third Party Beneficiary To Any Contract With Defendants.

Recognizing that it is not a party to any contract with Defendants, the Board asserts that it is a third-party beneficiary of obligations contained in permits and right-of-ways.  (Pet. ¶¶ 8-11 & Count 6.)  In Louisiana, a stipulation *pour autrui* "is never presumed" and, accordingly, the Board bears the burden of pleading and proving both the existence of a contract and that the contract, if any, manifests "a *clear* intention to benefit [the Board]."  *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 939 So. 2d 1206, 1212 (La. 2006) (emphasis added); *see also* La. C.C. art. 1831.  In its order denying remand, this Court observed that "whether state and local entities are properly considered third-party beneficiaries of federal dredging permits is 'a nearly pure issue of law . . . that could be settled once and for all."  Doc. 363, at 81.  No such legal duty has ever been found, and this Court should not be the first to create one.[9]

The Board's argument fails for two additional reasons.  First, as La. C.C. art. 1831 states, "[a] party who demands performance of an obligation must prove the existence of the obligation."  The Board cannot prove the existence of a contractual obligation because, as the Louisiana Supreme Court has noted, "a license or permit . . . is not a contract nor property in any constitutional sense."  *Toye Bros. Yellow Cab Co. v. Coop. Cab Co.*, 199 La. 1063, 1068-69, 7 So. 2d 353, 354 (1942) (citation omitted).  Cases from other jurisdictions are to the same effect, many holding on this basis that permits cannot be the basis for a third-party beneficiary claim.[10]

---

[9]  Indeed, federal courts have expressly held there to be no private right of action to enforce the permits involved here.  *See, e.g.*, *Harmon Cove Condominium Ass'n v. Marsh*, 815 F.2d 949, 953-54 (3d Cir. 1987) (no private right of action under RHA); *Atchafalaya Basinkeeper v. Chutz*, 682 F.3d 356, 360 (5th Cir. 2012) (affirming dismissal of suit on the grounds that CWA does not allow for citizen suits for violation of permits); *George v. NYC Dep't of City Planning*, 436 F.3d 102, 104 (2d Cir. 2006) (holding that the CZMA is not "a basis for stating a claim upon which relief can be granted") (citation omitted).

[10]  *See, e.g.*, *Forsyth Cnty. v. Waterscape Servs., LLC*, 694 S.E.2d 102, 113 (Ga. App. 2010) ("a third-party beneficiary theory cannot support recovery unless there is an underlying contract … [a]nd the LAS

Footnote continued on next page

Second, the Board is not a third-party beneficiary because the permits predate the Board, were issued irrespective of the Board, and were not created to discharge an obligation owed by the permitting authority to the Board. Indeed, no court has ever found that a state or local entity was a third-party beneficiary of a permit issued for oil and gas activities. That is because parties like the Board have been uniformly held to constitute, at most, incidental beneficiaries that lack legal authority to sue in their own name for alleged non-compliance.

It is well settled in Louisiana that "[a] person may derive a benefit from a contract to which he is not a party without being a third party beneficiary." *Joseph*, 939 So. 2d at 1214. Accordingly, "[t]he most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof." *Id.* at 1212 (citation omitted). In addition, "the third-party relationship must form the consideration for a condition of the contract and the benefit may not be merely incidental to the contract." *First La. Bank v. Morris & Dickson, Co., LLC*, 55 So. 3d 815, 823-24 (La. App. 2d Cir. 2010).

Here, the Board cannot allege any specific permit or right-of-way provision that reflects a clear intent to benefit the Board. Indeed, the Board was not yet in existence when they were issued. Similar claims have been repeatedly rejected. In *City of Shreveport v. Gulf Oil*

---

Footnote continued from previous page
Permit did not create a contract"); *Candelaria v. BC General Contractors, Inc.*, 600 N.W.2d 348, 356 (Mich. Ct. App. 1999) (state permit "was not a contract, but rather a grant of permission," and for a third-party beneficiary to enforce a promise, it must be made by way of a contract); *Thomas Learning Ctr., Inc. v. McGuirk*, 766 So. 2d 161, 166 (Ala. Civ. App. 1998) (the plaintiff could not recover as third-party beneficiary because "the issuance of the building permit did not constitute a contract between Martin and the city"); *Trevino & Gonzalez Co. v. R.F. Muller Co.*, 949 S.W.2d 39, 42 (Tex. App. 1997) ("Because the construction permit in question does not operate as a contract . . ., appellant has alleged no viable cause of action against the appellees. Where there is no contract, there can be no breach of contract and, likewise, there can be no third party beneficiary."); *Pyramid Co. of Onondaga v. N.Y. State Dep't of Labor*, 223 A.D.2d 285, 287-88 (NY. Ct. App. 1996) (permits for road construction are not contracts, but "merely grant petitioner a right to access the State highway under prescribed terms and conditions").

*Corporation*, 431 F. Supp. 1 (W.D. La. 1975), *aff'd*, 551 F.2d 93 (5th Cir. 1977), the City of Shreveport alleged that an oil company failed to provide it with gasoline pursuant to a contract between the oil company and the State of Louisiana.  The court found that even though the contract provided "some benefit" to the City—allowing it to purchase fuel at modest cost during an energy shortage—the City was not at third-party beneficiary because "[t]he contract was not made to obtain discharge of any legal obligation owed by the State to Shreveport."  *Id.* at 4.  Similarly, in *Joseph*, the Court rejected third-party beneficiary claims arising from a hospital's breach of a contract with a provider of anesthesia services because "there is no obligation owed by the Hospital to the individual doctors which will be discharged by performance of the contract because the contract provides no direct benefit to the doctors."  *Joseph*, 939 So. 2d at 1214.

The same is true here:  The permits and right-of-ways identified in the Petition were not issued to discharge a legal obligation owed to the Board, and the Petition does not even quote any language purporting to grant them third-party beneficiary status.  Because a "stipulation for a third party [must be] manifestly clear," the Board's failure to allege any actual language in the permit manifesting an intention to benefit the Board is fatal to its claim, and Count 6 should be dismissed.  *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 283 (La. 2011).

## CONCLUSION

By failing to allege cause-in-fact and instead relying upon an enterprise theory of liability disallowed under Louisiana law, the Board has failed to state a cause of action under any of its six counts.  In addition, all six of the Board's causes of action fail on independent legal grounds.  Accordingly, the Petition should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

KING AND SPALDING LLP

/s/ Robert E. Meadows
 Robert E. Meadows (*admitted pro hac vice*)
Jeremiah J. Anderson (*admitted pro hac vice*)
1100 Louisiana, Suite 4000
Houston, Texas 77002
Tel: (713) 751-3200
Facsimile:  (713) 751-3290
bmeadows@kslaw.com
jjanderson@kslaw.com

-and-

KING AND SPALDING LLP (Washington)
Ashley C. Parrish (*admitted pro hac vice*)
1700 Pennsylvania Ave., N.W.
Suite 200
Washington, DC 20006-4706
Tel: 202-737-0500
aparrish@kslaw.com

-and-

Michael R. Phillips (#21020)
KEAN MILLER LLP
909 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone:  (504) 585-3050
Facsimile:  (504) 585-3951
mike.phillips@keanmiller.com

-and-

L. Victor Gregoire (#22400)
Linda S. Akchin (#17904)
Charles S. McCowan, III (#19699)
Pamela Roman Mascari (#25162)
KEAN MILLER LLP
II City Plaza
400 Convention St., Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone:  (225) 387-0999
Facsimile:  (225) 388-9133
victor.gregoire@keanmiller.com
linda.akchin@keanmiller.com
trey.mccowan@keanmiller.com
pam.mascari@keanmiller.com

*Attorneys for Chevron U.S.A. Inc.,*
*Chevron Pipeline Company,*
*Union Oil Company of California, and*
*Kewanee Industries, Inc.*

CURRY & FRIEND, PLC

/s/Meghan E. Smith
_____
CHRISTOFFER C. FRIEND (#1888)
MOLLY STEELE (#32251)
LAURA C. COCUS (#31435)
MEGHAN E. SMITH (#34097)
Whitney Bank Building, Suite 1200
228 Saint Charles Avenue
New Orleans, Louisiana 70130
T. (504) 524-8556
F. (504) 524-8703
christofferfriend@curryandfriend.com
mollysteele@curryandfriend.com
lauracocus@curryandfriend.com
meghansmith@curryandfriend.com

*Attorneys for Placid Oil Company and*
*Vintage Petroleum, LLC*


NEUNER PATE

/s/Ben L. Mayeaux
_____
FRANK X. NEUNER, JR.#07674
BEN L. MAYEAUX #19042
KEVIN P. MERCHANT #24559
CLIFF A. LACOUR #30581
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Post Office Drawer 52828
Lafayette, Louisiana 70505-2828
T. (337) 237-7000
F. (337) 233-9450

*Attorneys for EnLink LIG, LLC*


JONES WALKER LLP

*/s/*Alida C. Hainkel
_____
ALIDA C. HAINKEL, T.A.  (#24114)
LAUREN C. MASTIO  (#33077)
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
T. (504) 582-8602
F. (504) 589-8602
ahainkel@joneswalker.com
lmastio@joneswalker.com

*Attorneys for Defendants,*
*McMoRan Exploration Co. and*
*PXP Producing Co., LLC*


NEUNER PATE

/s/ Brandon W. Letulier
_____
Brandon W. Letulier #28657
Cliff A. LaCour #30581
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
T. (337) 237-7000
F. (337) 233-9450
bletulier@NeunerPate.com
clacour@NeunerPate.com

*Attorneys for Defendant Rozel Operating*
*Company*

1

STRONG PIPKIN BISSELL & LEDYARD, L.L.P.

/s/ John G. Bissell
John G. Bissell (Federal I.D.: 4562)
Michael Hendryx (Federal I.D.: 2956)
Jason C. McLaurin (LA No. 34675)
4900 Woodway Dr., Suite 1200
Houston, Texas 77056
T. (713) 651-1900
F. (713) 651-1920
jbissell@strongpipkin.com
mhendryx@strongpipkin.com
jmclaurin@strongpipkin.com

**Attorneys for Defendant
Mosbacher Energy Company**

FRILOT L.L.C.

/s/ Kerry J. Miller
KERRY J. MILLER (#24562), T.A.
PAUL C. THIBODEAUX (#29446)
DANIEL J. DYSART (#33812)
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
T. (504) 599-8000
F. (504) 599-8100
kmiller@frilot.com
pthibodeaux@frilo.com
ddysart@frilot.com

**Attorneys for Defendant,
Murphy Exploration & Production Company -
USA**

JONES WALKER LLP

/s/Carl D. Rosenblum
CARL D. ROSENBLUM, T.A.  (#02083)
ALIDA C. HAINKEL  (#24114)
LAUREN C. MASTIO  (#33077)
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
T. (504) 582-8296
F. (504) 589-8296
crosenblum@joneswalker.com

**Attorneys for Hilliard Oil and Gas, Inc.**

LAPEYRE AND LAPEYRE, L.L.P.

/s/ F. Henri Lapeyre, Jr.
F. Henri Lapeyre, Jr. (APLC)
Louisiana Bar Roll No. 8035
Etienne C.  Lapeyre (APLC)
Louisiana Bar Roll No. 20169
400 Magazine Street, Suite 304
New Orleans, Louisiana 70130
T. (504) 524-5152
F. (504) 524-3321
lapeyre@att.net

**Attorneys for Davis Oil Company**

GRAY REED & McGRAW, P.C.

/s/ James J. Ormiston
James J. Ormiston, Trial Attorney
admitted *pro hac vice*
Michael A. Ackal, III
admitted *pro hac vice*
Gabe T. Vick
admitted *pro hac vice*
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
T. (713) 986-7000
F. (713) 986-7100
jormiston@grayreed.com
mackal@grayreed.com
gvick@grayreed.com

and

LARZELERE PICOU WELLS
SIMPSON LONERO, LLC

Morgan J. Wells, Jr. (No. 18499)
Evan J. Godofsky (No. 32471)
Two Lakeway Center - Suite 1100
3850 North Causeway Boulevard
Metairie, Louisiana  70002
T. (504) 834-6500
F. (504) 834-6565
mwells@lpwsl.com
egodofsky@lpwsl.com

***Attorneys for Defendant Crawford Hughes
Operating Company***

GRAY REED & McGRAW, P.C.

/s/ Julie M. Palmer
Julie M. Palmer, Trial Attorney
admitted *pro hac vice*
James J. Ormiston
admitted *pro hac vice*
Michael A. Ackal, III
admitted *pro hac vice*
Gabe T. Vick
admitted *pro hac vice*
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
T. (713) 986-7000
F. (713) 986-7100
jpalmer@grayreed.com
jormiston@grayreed.com
mackal@grayreed.com
gvick@grayreed.com

and

LARZELERE PICOU WELLS
SIMPSON LONERO, LLC

Morgan J. Wells, Jr. (No. 18499)
Evan J. Godofsky (No. 32471)
Two Lakeway Center - Suite 1100
3850 North Causeway Boulevard
Metairie, Louisiana  70002
T. (504) 834-6500
F. (504) 834-6565
mwells@lpwsl.com
egodofsky@lpwsl.com

***Attorneys for Defendant
Seneca Resources Corporation***

KUCHLER POLK SCHELL
WEINER & RICHESON, L.L.C.

*/s/* Deborah D. Kuchler
Deborah D. Kuchler, T.A. (#17013)
Janika D. Polk (#27608)
Leigh Ann Schell (#19811)
Michele Hale DeShazo (#29893)
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
T. 504-592-0691
F. 504-592-0697
dkuchler@kuchlerpolk.com
jpolk@kuchlerpolk.com
lschell@kuchlerpolk.com
mdeshazo@kuchlerpolk.com

*Counsel for ConocoPhillips Company,*
*Continental Oil Company, and Louisiana*
*Land and Exploration Company, LLC*

KUCHLER POLK SCHELL
WEINER & RICHESON, L.L.C.

*/s/* Deborah D. Kuchler
Deborah D. Kuchler, T.A. (#17013)
Janika D. Polk (#27608)
Leigh Ann Schell (#19811)
Robert E. Guidry (#28064)
Michele Hale DeShazo (#29893)
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
T. 504-592-0691
F. 504-592-0697
dkuchler@kuchlerpolk.com
jpolk@kuchlerpolk.com
lschell@kuchlerpolk.com
rguidry@kuchlerpolk.com
mdeshazo@kuchlerpolk.com

*Counsel for Anadarko E&P Onshore LLC*

MONTGOMERY BARNETT, L.L.P.

/s/ John Y. Pearce
JOHN Y. PEARCE (Bar No. 10374), T.A.
EDWARD L. FENASCI (Bar No. 24793)
3300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana  70163
T. (504)585-3200
F. (504) 585-7688
jpearce@monbar.com
tfenasci@monbar.com

*Attorneys for Whiting Oil and Gas*
*Corporation*

ADAMS AND REESE LLP

/s/ Martin A. Stern
Martin A. Stern (#17154)
Glen M. Pilié (#1539)
Jeffrey E. Richardson (#23273)
701 Poydras Street, Suite 4500
New Orleans, LA 70139
T. (504) 581-3234
martin.stern@arlaw.com
glen.pilie@arlaw.com
jeffrey.richardson@arlaw.com

*Counsel for Defendant, Exxon Mobil*
*Corporation*

4

STONE PIGMAN WALTHER
WITTMANN L.L.C.

/s/ John Farnsworth
Barry W. Ashe, La. Bar No. 14056
John P. Farnsworth, La. Bar No. 26028
Justin P. Lemaire, La. Bar No. 29948
Brooke C. Tigchelaar, La. Bar No. 32029
546 Carondelet Street
New Orleans, Louisiana  70130-3588
Telephone:  (504) 581-3200
**bashe@stonepigman.com**
**jfarnsworth@stonepigman.com**
**jlemaire@stonepigman.com**
**btigchelaar@stonepigman.com**

***Attorneys for Noble Energy, Inc.***

GIEGER, LABORDE & LAPEROUSE**, LLC**

/s/ Andrew A. Braun
Andrew A. Braun, T.A. (La. Bar #3415)
Caitlin J. Hill (La. Bar #34303)
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
T. (504) 561-0400
F. (504) 561-1011
abraun@glllaw.com
chill@glllaw.com

***Attorneys for Harvest Oil and Gas, LLC***

SLATTERY, MARINO & ROBERTS

/s/Gerald F. Slattery,Jr.
Gerald F. Slattery, Jr., T.A. (La. Bar Roll No. 12129)
Emile J. Dreuil, III (La. Bar Roll No. 29840)
Energy Centre, 1100 Poydras Street, Suite 1800
New Orleans, Louisiana 70163
Telephone:  (504) 585-7800
Telecopier:  (504) 585-7890

***Attorneys for Defendant Chroma Operating, Inc.***

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

/s/ Tyler L. Weidlich
Roy C. Cheatwood (#4010)
Nancy Scott Degan (#1819)
Tyler L. Weidlich (#30790)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:   (504) 636-4000

***Attorneys for Defendant Cox  Operating, LLC***

DANIEL C. HUGHES, APLC

/s/ Daniel C. Hughes
Daniel C. Hughes, Bar# 07075
126 Heymann Boulevard (70503)
P.O. Box 51595
Lafayette, LA 70505-1595
Telephone:     (337) 237-6566
Facsimile:     (337) 235-6355
Email: Dan@hughesaplc.com

*Attorney for The Pickens Company, Inc.*

SCHONEKAS, EVANS, MCGOEY &
MCEACHIN, LLC

 /s/ Kyle D. Schonekas
Kyle D. Schonekas, 11817
William P. Gibbens, 27225
Frances M. Montegut, 33288
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Kyle@semmlaw.com
Billy@semmlaw.com
Frannie@semmlaw.com

SHIPLEY SNELL MONTGOMERY LLP

George T. Shipley (*pro hac vice*)
Amy Snell (*pro hac vice*)
712 Main St., Ste. 1400
Houston, Texas 77002
T: (713) 652-5920
F: (713) 652-3057
gshipley@shipleysnell.com
asnell@shipleysnell.com

*Attorneys for CenterPoint Energy
Resources Corp.*

/s/ George M. Gilly
George M. Gilly (#06234)
1001 Ochsner Blvd., Suite 200
Covington, Louisiana  70433
(985) 801-4300
(985) 801-4795
georgeg@llog.com

*Attorney for LLOG Exploration Company,
L.L.C.*

TAYLOR,  PORTER,  BROOKS  &  PHILLIPS
L.L.P.

/s/ Edward D. Hughes
John Michael Parker, Bar# 10321
Edward D. Hughes, Bar# 28617 (T.A.)
Paul O. Dicharry, Bar# 4928
Erin B. Sayes, Bar #34079
451 Florida Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone:     (225) 387-3221
Facsimile:     (225) 346-8049
Email:  mike.parker@taylorporter.com
             eddie.hughes@taylorporter.com
             paul.dicharry@taylorporter.com
             erin.sayes@taylorporter.com

*Attorneys for Defendants, Helis Oil & Gas
Company, L.L.C., Helis Energy, L.L.C. and
Estate of William G. Helis, Yuma Exploration
and  Production  Co.,  Inc.,  and  Source
Petroleum, Inc.*

LISKOW & LEWIS

*/s/* Jonathan A. Hunter
Jonathan A. Hunter, T.A. (#18619)
Kelly Brechtel Becker (#27375)
Elizabeth S. Wheeler (#21148)
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
jahunter@liskow.com
kbbecker@liskow.com
ewheeler@liskow.com

*Attorneys for Defendant Hess Corporation*


LISKOW & LEWIS

/s/ R. Keith Jarrett
R. Keith Jarrett (Bar #16984)
Mark L. McNamara (Bar #25170)
Dana M. Douglas (Bar #26866)
Kelly Brechtel Becker (Bar #27375)
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108
rkjarrett@liskow.com
mlmcnamara@liskow.com
dmdouglas@liskow.com
kbbecker@liskow.com

*Attorneys for Shell Oil Company*


LARZELERE PICOU WELLS
SIMPSON LONERO, LLC

/s/ Morgan J. Wells, Jr.
Morgan J. Wells, Jr. (No. 18499)
Evan J. Godofsky (No. 32471)
Two Lakeway Center - Suite 1100
3850 North Causeway Boulevard
Metairie, Louisiana  70002
Telephone:  (504) 834-6500
Facsimile:  (504) 834-6565
mwells@lpwsl.com
egodofsky@lpwsl.com

*Attorneys for Defendant CasKids Operating
Company*


ADAMS AND REESE LLP

/s/Francis V. Liantonio, Jr.
THOMAS G. O'BRIEN (#10149)
FRANCIS V. LIANTONIO, JR. (#19282)
JANE C. RAIFORD (#1274)
GREGORY F. ROUCHELL (#28746)
701 Poydras Street, Suite 4500
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile:    (504) 566-0210
Emails:Tom.Obrien@arlaw.com
          Frank.Liantonio@arlaw.com
          Jane.Raiford@arlaw.com
          Greg.Rouchell@arlaw.com

*Attorneys for Alta Mesa Services, LP and The
Meridian Resource & Exploration LLC*

KEAN MILLER LLP

/s/ Leonard L. Kilgore, III
Leonard L. Kilgore, III, T.A. (#7372)
Esteban Herrera, Jr. (#20859)
Mark Marionneaux (#21743)
Richard D. McConnell, Jr. (#29973)
Victor J. Suane, Jr. (#31337)
Erin P. Tadie (#33627)
II City Plaza, Suite 700
400 Convention Street (70802)
Post Office Box 3513
Baton Rouge, Louisiana 70821-3513
Telephone:  (225) 387-0999
Facsimile:  (225) 388-9133
len.kilgore@keanmiller.com
esteban.herrera@keanmiller.com
mark.marionneaux@keanmiller.com
richard.mcconnell@keanmiller.com
victor.suane@keanmiller.com
erin.tadie@keanmiller.com

-and-

KEAN MILLER LLP

Richard S. Pabst (#17736)
Brett P. Fenasci (#29858)
909 Poydras Street, Suite 3600
New Orleans, Louisiana   70112
Telephone:  (504) 585-3050
Facsimile:  (504) 585-3051
richard.pabst@keanmiller.com
brett.fenasci@keanmiller.com

*Attorneys for Callon Offshore Production, Inc., Callon Petroleum Company, EOG Resources, Inc., Enterprise Intrastate LLC, EP Energy Management, L.L.C., Marathon Oil Company, Williams Exploration Company, Sun Oil Company, and Devon Energy Production Company, L.P.*

McGUIREWOODS LLP

/s/ Ronald G. Franklin
Ronald G. Franklin *(Admitted Pro Hac Vice)*
JPMorgan Chase Tower
600 Travis Street
Suite 7500
Houston, Texas 77002-2906
(832) 214-9942 (Telephone)
(713) 571-9652 (Facsimile)
rfranklin@mcguirewoods.com

Angela M. Spivey *(Admitted Pro Hac Vice)*
1230 Peachtree Street, NE
Promenade II, Suite 2100
Atlanta, Georgia  30309-3534
(404) 443-5720 (Telephone)
(404) 443-5792 (Facsimile)
aspivey@mcguirewoods.com

R. Trent Taylor *(Admitted Pro Hac Vice)*
One James Center
901 East Cary Street
Richmond, Virginia  23219-4030
(804) 775-1182 (Telephone)
(804) 225-5409 (Facsimile)
rtaylor@mcguirewoods.com

-and-

KEAN MILLER LLP

Leonard L. Kilgore, III, T.A. (#7372)
Esteban Herrera, Jr. (#20859)
Mark Marionneaux (#29973)
Richard D. McConnell, Jr. (#29973)
Victor J. Suane, Jr. (#31337)
Erin P. Tadie (#33627)
II City Plaza, Suite 700
400 Convention Street
Post Office Box 3513
Baton Rouge, Louisiana  70821-3513
(225) 387-0999 (Telephone)
(225) 388-9133 (Facsimile)
len.kilgore@keanmiller.com
richard.mcconnell@keanmiller.com

Richard Pabst (#17736)
Brett P. Fenasci (#29858)
909 Poydras Street, Suite 1400
New Orleans, Louisiana  70112
(504) 585-3050
richard.pabst@keanmiller.com

*Counsel for Devon Energy Production Company, L.P.*

GUGLIELMO, LOPEZ, TUTTLE,
HUNTER & JARRELL

/s/ James T. Guglielmo
James T. Guglielmo #6417
306 E. North Street
P O Drawer 1329
Opelousas LA  70571-1299
337-948-8201

-and-

WALL, BULLINGTON & COOK

Jonathan R. Cook (#25629)
Guy E. Wall (#7718)
540 Elmwood Park Blvd.
New Orleans LA  70123
504-736-0347

*Attorneys for Liberty Oil & Gas
Corporation*


KEAN MILLER LLP


/s/ Bradley J. Schlotterer
Bradley J. Schlotterer (#24211)
Dylan T. Thriffiley (#31995)
909 Poydras Street, Suite 3600
New Orleans, LA  70112
Telephone:  (504) 585-3050
Facsimile:   (504) 585-3051

*Attorneys for Newfield Exploration
Company*

KEOGH, COX & WILSON, LTD.

/s/ John P. Wolff, III
John P. Wolff, III, #14504
Nancy B. Gilbert, #23095
Christopher K. Jones, #28101
Richard W. Wolff, #34844
Mark T. Assad, #35029
701 Main Street
Post Office Box 1151
Baton Rouge, Louisiana 70821
Telephone: (225) 383-3796
Telecopier: (225) 343-9612
jwolff@kcwlaw.com
ngilbert@kcwlaw.com
cjones@kcwlaw.com
rwolff@kcwlaw.com
massad@kcwlaw.com

*Attorneys for Sundown Energy, LP*


BLUE WILLIAMS, L.L.P.


/s/ Scott A. Soule
Scott A. Soule – Bar #20379
Emily C. Canizaro – Bar #31101
Josephine A. Hood – Bar #33894
1060 West Causeway Approach
Mandeville, LA  70471
Telephone:  (504) 830-4977
Facsimile:   (504) 849-3883
*ssoule@bluewilliams.com*
*ecanizaro@bluewilliams.com*
*jhood@bluewilliams.com*

*Attorney for Defendant
Republic Mineral Corporation*

9

PREIS PLC
(A Professional Law Corporation)

/s/Robert M. Kallam
ROBERT M. KALLAM (#20242)
JENNIFER A. WELLS (#26549)
102 Versailles Blvd., Suite 400
Post Office Drawer 94-C
Lafayette, Louisiana  70509
Telephone:      337.237.6062
Facsimile:      337.237.9129
rmk@preisplc.com
jaw@preisplc.com

-and-

LAW OFFICE OF STEPHEN D. BAKER

STEPHEN D. BAKER (#2705)
412 West University Ave., Suite 101
Lafayette, LA  70506
Telephone:  (337) 235.8298
Facsimile (337) 235.8307
sdbaker10@hotmail.com

***Counsel for Clayton Williams Energy, Inc.***

PHELPS DUNBAR LLP

/s/ Steven J. Levine
Steven J. Levine, Bar Roll No. 14139
John B. Shortess, Bar Roll No. 26513
Kevin W. Welsh, Bar Roll No. 35380
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802-5618
Post Office Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: 225-346-0285
Facsimile: 225-381-919
Email:  levines@phelps.com
john.shortess@phelps.com
kevin.welsh@phelps.com

-and-

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Michael J. Lyle (*admitted pro hac vice*)
Eric C. Lyttle (*admitted pro hac vice*)
777 6th Street, 11th Floor
Washington, DC 20001
Telephone: (202) 538-8000
Facsimile:  (202) 538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com

***Attorneys for Defendants***
***Koch Exploration Company, LLC and***
***Koch Industries, Inc.***

LISKOW & LEWIS

/s/ Robert B. McNeal
ROBERT B. McNEAL (Bar No. 14211)
One Shell Square
701 Poydras St. Suite 5000
New Orleans, LA 70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108
rbmcneal@liskow.com

MICHAEL P. CASH (Bar No. 31655)
First City Tower
1001 Fannin Street
Houston, TX 77002-6756
Telephone:  (713) 651-2900
Facsimile:  (713) 651-2908
mcash@liskow.com

JAMIE D. RHYMES (Bar No. 24621)
822 Harding Street
Lafayette, LA 70503
Telephone:  (337) 232-7424
Facsimile:  (447) 267-2399
jdrhymes@liskow.com

**Attorneys for Exxon Mobil Corporation, Exxon Mobil Pipeline Corporation, Collins Pipeline Company, and Moem Pipeline, LLC**

-and-

ADAMS AND REESE LLP

Martin A. Stern (#17154)
Glen M. Pilié (#1539)
Jeffrey E. Richardson (#23273)
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone:  (504) 581-3234
*martin.stern@arlaw.com*
*glen.pilie@arlaw.com*
*Jeffrey.richardson@arlaw.com*

and

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

Roy C. Cheatwood (No. 04010)
Monica a. Frois (No. 20187)
Matthew A. Woolf (No. 27146)
Tyler L. Weidlich (No. 30790)
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Tel.:  (504) 566-5200
Fax:  (504) 636-4000
rcheatwood@bakerdonelson.com
mfrois@bakerdonelson.com
mwoolf@bakerdonelson.com
tweidlich@bakerdonelson.com

**Attorneys for Exxon Mobil Corporation**

LISKOW & LEWIS

/s/ George Arceneaux III
George Arceneaux III, T.A. (Bar No. 17442)
Brittan J. Bush (Bar No. 34472)
822 Harding St.
P.O. Box 52008
Lafayette, LA 70505
T.  (337) 232-7424
F. (337) 267-2399
garceneaux@liskow.com
bjbush@liskow.com

Joe B. Norman (Bar #8160)
K. Todd Wallace (Bar #25920)
Kathryn Zainey Gonski (Bar #33442)
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
T. (504) 581-7979
F. (504) 556-4108
jbnorman@liskow.com
ktwallace@liskow.com
kzgonski@liskow.com

ARNOLD & PORTER LLP

Matthew T. Heartney (CA Bar No. 123516)
(*Pro Hac Vice*)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
T. (213) 243-4150
matthew.heartney@aporter.com

-and-

ARNOLD & PORTER LLP

Nancy G. Milburn (NY Bar No. 1956554)
(*Pro Hac Vice*)
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1008
nancy.milburn@aporter.com

**Attorneys for BP America Production Company, BP Oil Pipeline Company, BP Pipelines (North America) Inc., and Atlantic Richfield Company**

11

SLATTERY, MARINO & ROBERTS

/s/Gerald F. Slattery,Jr.
Gerald F. Slattery, Jr., T.A. (La. Bar Roll No. 12129)
David S. Landry (La. Bar Roll No. 25751)
Emile J. Dreuil, III (La. Bar Roll No. 29840)
Energy Centre, 1100 Poydras Street, Suite 1800
New Orleans, Louisiana 70163
Telephone:  (504)  585-7800
Telecopier:  (504)  585-7890

and

KEAN MILLER, LLP

Leonard L. Kilgore, III, T.A. (#7372)
Esteban Herrera, Jr. (#20859)
Mark Marionneaux (#29973)
Richard D. McConnell, Jr. (#29973)
Victor J. Suane, Jr. (#31337)
Erin P. Tadie (#33627)
II City Plaza, Suite 700
400 Convention Street
Post Office Box 3513
Baton Rouge, Louisiana  70821-3513
(225) 387-0999 (Telephone)
(225) 388-9133 (Facsimile)
len.kilgore@keanmiller.com
richard.mcconnell@keanmiller.com


***Attorneys for Defendant Energen Resources Corporation***

JONES WALKER LLP

/s/ Douglas C. Longman, Jr.
Douglas C. Longman, Jr. (#8719)
Carmen M. Rodriguez (#22573)
600 Jefferson St., Suite 1600
P. O. Box 3408
Lafayette, LA 70502-3408
Telephone:  (337) 593-7600
Facsimile:    (337) 593-7601

Grady S. Hurley (La. Bar #13913)
Jones Walker LLP
201 St. Charles Avenue, 48th Floor
New Orleans, LA  70170
Telephone:  (504) 582-8224
Facsimile:  (504) 589-8224

Robert C. Kirsch
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6779
Facsimile: (617) 526-5000
rob.kirsch@wilmerhale.com

Felicia H. Ellsworth
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6687
Facsimile: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Paul R.Q. Wolfson
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
paul.wolfson@wilmerhale.com

Heather Zachary
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
heather.zachary@wilmerhale.com

***Attorneys for Apache Corporation***

GORDON, ARATA, MCCOLLAM,
DUPLANTIS & EAGAN, LLC

*/s/ Terrence K. Knister*
Terrence K. Knister, T.A. (La. #7755)
Kelly Dussel Perrier (La. #32634)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana  70170-4000
Telephone:  (504) 582-1115
Facsimile: (504) 582-1121
tknister@gordonarata.com
kperrier@gordonarata.com

**Attorneys for Defendant, HKN, INC.**

JONES WALKER LLP

/s/ Douglas C. Longman, Jr.
Douglas C. Longman, Jr. (#8719)
Carmen M. Rodriguez (#22573)
600 Jefferson St., Suite 1600
P. O. Box 3408
Lafayette, LA 70502-3408
Telephone: (337) 593-7600
Facsimile:   (337) 593-7601

Grady S. Hurley (La. Bar #13913)
Jones Walker LLP
201 St. Charles Avenue, 48th Floor
New Orleans, LA  70170
Telephone:  (504) 582-8224
Facsimile:  (504) 589-8224

**Attorneys for J.M. Huber Corporation**

BRADLEY MURCHISON KELLY &
SHEA LLC

/s/ Stephen C. Fortson
Stephen C. Fortson (LSBA #28352)
Anna W. O'Neal (LSBA #34813)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile:  (318) 227-1141

**Attorneys for O'MEARA, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2014, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

/s/  Jeremiah J. Anderson
Jeremiah J. Anderson

13