**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BOARD OF COMMISSIONERS OF THE** | **CIVIL ACTION** |
| **SOUTHEAST LOUISIANA FLOOD PROTECTION** | |
| **AUTHORITY – EAST et al** | |
| | |
| **VERSUS** | **CASE NO. 13-5410** |
| | |
| **TENNESSEE GAS PIPELINE COMPANY, LLC et al** | **SECTION: "G"(3)** |

**ORDER**

Before the Court is Defendants' "Joint Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)."[1] Having considered the motion, the memoranda in support, the memoranda in opposition, the statements at oral argument, the Petition, and the applicable law, the Court will grant the motion with respect to each of Plaintiff's claims.

**I. Background**

*A.     Factual Background*

Plaintiff in this matter is the Board of Commissioners of the Southeast Louisiana Flood Protection Authority—East, individually and as the board governing the Orleans Levee District, the Lake Borgne Basin Levee District, and the East Jefferson Levee District.[2] The Southeast Louisiana Flood Protection Authority (the "Authority") was created by statute in 2006 to further "regional coordination of flood protection."[3] According to Plaintiff, the Authority's "mission is to ensure the physical and operational integrity of the regional flood risk management system, and to work with local, regional, state and federal partners to plan, design and construct projects that will reduce the

---

[1] Rec. Doc. 427.

[2] Rec. Doc. 1-2 at p. 2.

[3] 2006 La. Sess. Law. Serv. 1st Ex. Sess. Act 1 (S.B. 8) (West) (codified at LA. REV. STAT. §38:330.1(F)(2)(a)).

1

probability and risk of flooding of the residents within the Authority's jurisdiction."[4]

Defendants are eighty-eight oil and gas companies operating in what Plaintiff refers to as the "Buffer Zone."[5] The Buffer Zone "extends from East of the Mississippi River through the Breton Sound Basin, the Biloxi Marsh, and the coastal wetlands of eastern New Orleans and up to Lake St. Catherine."[6]

Plaintiff alleges that Defendants' oil and gas operations have led to coastal erosion in the Buffer Zone, making south Louisiana more vulnerable to severe weather and flooding. According to Plaintiff, "[c]oastal lands have for centuries provided a crucial buffer zone between south Louisiana's communities and the violent wave action and storm surge that tropical storms and hurricanes transmit from the Gulf of Mexico."[7] However, "[h]undreds of thousands of acres of coastal lands that once protected south Louisiana are now gone as a result of oil and gas activities."[8] Specifically, Plaintiff asserts that Defendants have "dredged a network of canals to access oil and gas wells and to transport the many products and by-products of oil and gas production."[9] This canal network, in conjunction with "the altered hydrology associated with oil and gas activities," has caused vegetation die-off, sedimentation inhibition, erosion, and submergence—all leading to coastal land loss.[10] In addition to the initial dredging, Plaintiff maintains that Defendants "exacerbate direct land loss by failing to

---

[4] Rec. Doc. 1-2 at p. 5.

[5] Plaintiff initially named 149 defendants. *See id.* at pp. 25–34. However, only 88 defendants remain in this litigation.

[6] *Id.* at p. 7.

[7] *Id.* at p. 2.

[8] *Id.*

[9] *Id.* at p. 9.

[10] *Id.*

maintain the canal network and banks of the canals that Defendants have dredged, used, or otherwise overseen."[11] This failure has "caused both the erosion of the canal banks and expansion beyond their originally permitted widths and depths of the canals comprising that network."[12] Looking beyond the alleged effects of the canal network, Plaintiff identifies ten other oil and gas activities that, it claims, "drastically inhibit the natural hydrological patterns and processes of the coastal lands"—road dumps, ring levees, drilling activities, fluid withdrawal, seismic surveys, marsh buggies, spoil disposal/dispersal, watercraft navigation, impoundments, and propwashing/ maintenance dredging.[13]

## B.   *Procedural Background*

On July 24, 2013, Plaintiff filed suit in Civil District Court for the Parish of Orleans, State of Louisiana.[14] In its petition, Plaintiff asserts six causes of action: (1) negligence,[15] (2) strict liability,[16] (3) natural servitude of drain,[17] (4) public nuisance,[18] (5) private nuisance,[19] and (6) breach of contract—third party beneficiary.[20] Plaintiff requests both damages and injunctive relief

> . . . in the form of abatement and restoration of the coastal land loss at issue, including, but not limited to, the backfilling and revegetating of each and every canal

---

[11] *Id.* at p. 11.

[12] *Id.*

[13] *Id.* at p. 10.

[14] *Id.* at p. 1.

[15] *Id.* at p. 17.

[16] *Id.* at p. 18.

[17] *Id.* at p. 19.

[18] *Id.* at p. 20.

[19] *Id.* at p. 21.

[20] *Id.* at p. 22.

Defendants dredged, used, and/or for which they bear responsibility, as well as all manner of abatement and restoration activities determined to be appropriate, including, but not limited to, wetlands creation, reef creation, land bridge construction, hydrologic restoration, shoreline protection, structural protection, bank stabilization, and ridge restoration.[21]

While Plaintiff's six causes of action are all ostensibly state-law claims, Plaintiff contends that "Defendants' dredging and maintenance activities at issue in this action are governed by a longstanding and extensive regulatory framework under both federal and state law specifically aimed at protecting against the deleterious effects of dredging activities."[22] According to Plaintiff, "the relevant components of this regulatory framework . . . buttress the Authority's claims."[23] Specifically, Plaintiff points to the Rivers and Harbors Act of 1899, which "grants to the [Army Corps of Engineers] exclusive authority to permit modification of navigable waters of the United States and prohibits the unauthorized alteration of or injury to levee systems and other flood control measures built by the United States."[24] Plaintiff also cites the Clean Water Act of 1972 and accompanying regulations, which require Defendants to "[m]aintain canals and other physical alterations as originally proposed; [r]estore dredged or otherwise modified areas to their natural state upon completion of their use or their abandonment; and [m]ake all reasonable efforts to minimize the environmental impact of the Defendants' activities."[25] Further, Plaintiff references the Coastal Zone Management Act of 1972 and related Louisiana coastal zone regulations that "impose . . . a litany of duties and obligations expressly designed to minimize the adverse ecological, hydrological,

---

[21] *Id.* at p. 23.

[22] *Id.* at p. 16.

[23] *Id.*

[24] *Id.*

[25] *Id.*

4

topographical, and other environmental effects" associated with oil and gas activities.[26] Finally, Plaintiff cites "[r]egulations and rights-of-way granted across state-owned lands and water bottoms administered by the Louisiana Office of State Lands."[27] According to Plaintiff, "[t]his regulatory framework establishes a standard of care under Louisiana law that Defendants owed and knowingly undertook when they engaged in oil and gas activities."[28] Additionally, Plaintiff avers that these "permitting schemes created numerous individual obligations under Louisiana law between Defendants and governmental bodies of which Plaintiff is the third-party beneficiary."[29]

On August 13, 2013, Defendant Chevron U.S.A. Inc. ("Chevron") removed the case to federal court.[30] On September 10, 2013, Plaintiff filed a "Motion to Remand."[31] All Defendants filed a "Joint Response in Opposition to the Motion to Remand,"[32] and Defendant Tennessee Gas Pipeline Company, LLC, Gulf South Pipeline Co. LP, Southern Natural Gas Company, and Boardwalk Pipeline Partners, LP filed an additional "Response in Opposition to Motion to Remand"[33] addressing jurisdictional issues specific to certain natural gas producers. The Court also received

---

[26] *Id.* at p. 17.

[27] *Id.* at p. 16.

[28] *Id.* at p. 17.

[29] *Id.*

[30] Rec. Doc. 1.

[31] Rec. Doc. 70.

[32] Rec. Doc. 260.

[33] Rec. Doc. 254.

supplemental briefs from HKN, Inc.,[34] White Oak Operating, LLC,[35] Liberty Oil and Gas Corporation,[36] Manti Operating Company,[37] Mosbacher Energy Company,[38] Coastal Exploration & Production, LLC,[39] and Flash Gas & Oil Northeast, Inc.[40] On November 13, 2013, Plaintiff filed an "Omnibus Reply Memorandum in Support of Its Motion to Remand."[41]

The Court denied Plaintiff's Motion to Remand on June 27, 2014.[42] In its Order, the Court explained that federal question jurisdiction exists in this case under an exception to the "well-pleaded complaint" rule providing that federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.[43]

Applying this test, the Court determined that Plaintiff's claims for negligence under Louisiana Civil Code Article 2315,  public nuisance under Louisiana Civil Code Article 667,  and breach of contract as a third-party beneficiary necessarily raise a federal issue.[44] First, the Court found that Plaintiff's claim "necessarily raises" what duties the Rivers and Harbors Act, the Clean

---

[34] Rec. Doc. 258.

[35] Rec. Doc. 262.

[36] Rec. Doc. 263.

[37] Rec. Doc. 264.

[38] Rec. Doc. 265.

[39] Rec. Doc. 266.

[40] Rec. Doc. 268.

[41] Rec. Doc. 292.

[42] Rec. Doc. 363.

[43] *Id.* at p. 83.

[44] *See id.* at pp. 66–75.

Water Act, and the Coastal Zone Management Act impose upon Defendants. The Court determined that these three federal statutes do not merely present "one of multiple theories" that could support Plaintiff's negligence claim; rather, they are the only specific sources of the duty Plaintiff must establish in order to prevail. Next, the Court determined that Plaintiff's claim for public nuisance necessarily involves the application of federal law because, as with the negligence claim, Plaintiff "necessarily raises" what conduct constitutes "unreasonable interference" under the three federal statutes listed above. Finally, with respect to Plaintiff's claim as a third-party beneficiary for breach of contract, the Court determined that federal law applies to nonparty breach of contract claims where the contract implicated a federal interest, the United States was a party to the contract, and the contract was entered into pursuant to federal law. Accordingly, the Court stated that federal common law applies to the interpretation of the alleged contracts at issue, and, therefore, Plaintiff's breach of contract claim necessarily raises an issue of federal law.

The Court then determined that the federal issues identified above are all disputed[45] and substantial.[46] Specifically, the Court found that the disputed issues implicate coastal land management, national energy policy, and national economic policy—all vital federal interests. The Court additionally noted that Plaintiff's claims amount to a collateral attack on an entire regulatory scheme. Finally, the Court determined that exercising jurisdiction will not disturb the balance of federal and state judicial responsibilities because Plaintiff's claims look to federal law to impose liability on an entire industry for the harms associated with coastal erosion.[47] Accordingly, the Court

---

[45] *See id.* at p. 75.

[46] *See id.* at pp. 76–82.

[47] *See id.* at pp. 82–83.

found that it has jurisdiction over the pending matter because Plaintiff's state law claims for negligence, public nuisance, and breach of contract necessarily raise a federal issue, actually disputed and substantial, which a  federal forum may entertain without disturbing the congressionally approved balance of federal and state judicial responsibilities.[48]

On September 5, 2014, Defendants filed the pending "Joint Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)."[49] Plaintiff filed a memorandum in opposition on October 1, 2014,[50] and Defendants filed a reply memorandum in further support of their motion on October 15, 2014.[51] Plaintiff filed a supplemental memorandum on November 21, 2014,[52] and Defendants filed a supplemental response on December 5, 2014.[53]  The Court heard oral arguments with respect to this motion on November 12, 2014.[54]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support*

Defendants first argue that Plaintiff has failed to allege a cause-in-fact connecting any act by any Defendant to the alleged damages, "instead alleging that an entire industry is liable for its 'oil and gas activities.'"[55] According to Defendants, the petition alleges enterprise, or market share,

---

[48] *See id.*

[49] Rec. Doc. 427.

[50] Rec. Doc. 446.

[51] Rec. Doc. 469.

[52] Rec. Doc. 487.

[53] Rec. Doc. 490.

[54] Rec. Doc. 482.

[55] Rec. Doc. 427-1 at p. 12.

liability, which has been rejected under Louisiana law.[56]

Defendants next contend that each of Plaintiff's six causes of action fail to state a claim upon which relief may be granted.[57] First, Defendants argue that Plaintiff cannot state viable negligence or strict liability claims[58] because Defendants do not owe a legal duty under state or federal law to protect Plaintiff against a storm, to restore marshland, or to protect Plaintiff from any increased cost of maintaining levees.[59] Defendants distinguish this case from *Terrebonne Parish School Bd. v. Castex Energy, Inc.* and *Barasich v. Columbia Gulf Transmission Co.*, where "plaintiffs at least complained that the defendants' activities had caused, in however attenuated a fashion, damage to plaintiffs' own property."[60] Here, in contrast, Defendants argue, Plaintiff "is suing solely for indirect economic losses–the alleged increased cost of flood control–caused by alleged damage to the property of others."[61] Defendants aver that both Louisiana courts and the United States Court of Appeals for the Fifth Circuit have refused to find a legal duty in a claim of indirect economic injury arising from physical harm to another's property. Additionally, Defendants contend that the three federal statutes implicated by Plaintiff's claims–the Rivers and Harbors Act, the Clean Water Act, and the Coastal Zone Management Act–do not impose a statutory duty on Defendants to protect

---

[56] *Id.* at pp. 13–14 (citing, e.g., *Barasich v. Columbia Gulf Transmission Co.*, 467 F.Supp.2d 676 (E.D. La. 2006) (Vance, J.)).

[57] *Id.* at p. 15.

[58] Defendants do not conduct separate analyses for Plaintiff's negligence and strict liability claims.

[59] Rec. Doc. 427-1 at p. 17–18 (citing *Barasich*, 467 F.Supp.2d at 691–92; *Terrebonne Parish School Bd. v. Castex Energy, Inc.*, 2004-0968 (La. 1/19/05), 893 So.2d 789; *Caldwell v. Let the Good Times Roll Festival*, 30-800,717 So. 2d 1263, (La. App. 2d Cir. 1998), *writ. denied*, 729 So. 2d 566 (La. 1998)).

[60] *Id.* at p. 19.

[61] *Id.*

Plaintiff from indirect economic losses.[62] It is Defendants' position, therefore, that a duty to protect Plaintiff does not arise under either state or federal law.

Next,  Defendants argue that, under Louisiana law, claims for natural servitude of drain and nuisance[63] require that the plaintiff and defendant own adjacent property, making them neighbors.[64] Here, according to Defendants, Plaintiff has not stated a viable claim under natural servitude of drain or nuisance because it does not own property adjacent to property owned by any Defendant.[65] Defendants also argue that Plaintiff's natural servitude of drain claim fails for several independent reasons. First, Defendants contend that Plaintiff  has not alleged with the requisite specificity that it owns a servient estate and that Defendants own dominant estates, "nor could it when Defendants' rights to access canals are personal servitude rights of use, insusceptible of creating a predial servitude."[66] Additionally, according to Defendants, a natural servitude of drain applies only to the natural flow of water from a higher estate to a lower estate, whereas here, Plaintiff's claims involve the failure of coastal lands to impede storm surges coming from the Gulf.[67]

Finally, Defendants argue that Plaintiff has not stated a claim for breach of contract because it is not a third-party beneficiary to any contract with Defendants.[68] According to Defendants, a

---

[62] *Id.* at pp. 23–24.

[63] Defendants do not conduct separate analyses for Plaintiff's private nuisance and public nuisance claims, but rather refer to both claims as "nuisance."

[64] *Id.* at pp. 25–26.

[65] *Id.* at p. 25.

[66] *Id.* at p. 30 (citing La. Civ Code arts. 646, 650).

[67] *Id.* (citing *Poole v. Guste*, 262 So.2d 339, 348 (La. 1972) (Summers, J., dissenting)).

[68] *Id.* at p. 31.

license or permit is not a contract under Louisiana law.[69]  Moreover, "the permits predate the Board, were issued irrespective of the Board, and were not created to discharge an obligation owed by the permitting authority to the Board."[70] It is Defendants' position that even if the permits constitute contracts, Plaintiff is, at most, an incidental beneficiary without legal authority to sue for alleged non-compliance.[71] Defendants contend that Plaintiff cannot allege any specific permit or right-of-way provision that reflects an intent to benefit the Board.[72]

### B.    Plaintiff's Arguments in Opposition

Plaintiff argues first that its claims do not rely on enterprise liability theory because:

> The Petition contains extensive details about the defendants, including more than 120 pages about each defendant's activities in the Buffer Zone, including permit numbers, locations, dates, and other information identifying where and when each defendant was involved; the referenced permits and rights-of-way contain detailed information about each defendant's obligations.[73]

According to Plaintiff, the petition is sufficiently pled to survive dismissal at this stage in the litigation.[74]

First, Plaintiff contends that it has stated viable negligence and strict liability claims[75] against Defendants based on both the general legal rule of duty found in Louisiana Civil Code Article 2315 and on specific standards of care found in "permits, rights-of-way, and statutory and regulatory

---

[69] *Id.* (citing *Toye Bros. Yellow Cab Co. v. Coop. Cab Co.*, 7 So.2d 353, 354 (La. 1942)).

[70] *Id.* at p. 32.

[71] *Id.*

[72] *Id.* (citing *City of Shreveport v. Gulf Oil Corp.*, 431 F.Supp.1 (W.D. La. 1975), *aff'd*, 551 F.2d 93 (5th Cir. 1977); *Joseph*, 939 So.2d at 1214)).

[73] Rec. Doc. 446 at pp. 10–11.

[74] *Id.* at p. 13 (citing *Moore v. BASF Corp.*, No. 11-1001, 2011 WL 5869597 (E.D. La. 11/21/11) (Vance, J.)).

[75] Plaintiff does not conduct separate analyses for its negligence and strict liability claims.

11

obligations."[76] According to Plaintiff, "the rule of law imposed is highly specific to duties and obligations to maintain the defendants' permitted and regulated works within prescribed metes and bounds, and to otherwise operate reasonably, specifically in order to avoid land loss and the resultant increase in storm surge."[77] Plaintiff argues that this duty extends to damages alleged in this lawsuit because "[t]he increased storm surge that results from the defendants' breach of their duties impacts *directly* on the hurricane protection and flood control structures owned and operated by the plaintiffs here."[78] It is Plaintiff's position that the impact of Defendants' conduct on the Plaintiff's storm protection assets is direct, and there is accordingly an ease of association between the alleged negligent conduct of Defendants and the alleged injury suffered by Plaintiff.[79]

Next, Plaintiff argues that natural servitude of drain and nuisance[80] are predial servitudes, and neither adjacency nor ownership of property are necessary to assert such claims under Louisiana law.[81] According to Plaintiff, "[n]either contiguity nor proximity of the two estates is necessary for the existence of a predial servitude. It suffices that the two estates be so located as to

---

[76] *Id.* (distinguishing *Caldwell v. Let the Good Times Roll Festival*, 30-800, 717 So.2d 1263 (La. App. 2 Cir. 1998)).

[77] *Id.* at p. 18.

[78] *Id.* at p. 17.

[79] *Id.* at pp. 18–19 (citing *PPF Indus., Inc. v. Bean Dredging*, 447 So.2d 1058, 1062 (La. 1984); *Gulf Explorer Co. v. Hoover Oilfield Supply, Inc.*, No. 08-5016, 2011 WL 4572688, *4-5 (E.D. La. 9/30/11) (Lemelle, J.); *Virgin Oil Co. v. Tenn. Gas Pipeline Co.*, No. 11–01521, 2012 WL 652037, at *3 (W.D. La. 2/27/12); *Cleco Corp. v. Johnson*, 2001-175 (La. 9/18/11), 795 So.2d 302, 306-07)).

[80] Plaintiff does not conduct separate analyses for its private nuisance and public nuisance claims, but rather refers to both claims as "nuisance."

[81] *See id.* at pp. 20–21.

allow one to derive some benefit from the charge on the other."[82] Plaintiff further argues that "Louisiana courts have long recognized that the adjacency requirement in Article 667 depends on the ability of one proprietor's actions to effect another proprietor's property, not on a bright-line test dependent on physical proximity."[83] With respect to ownership of the property, Plaintiff argues that Defendants possess or have possessed  temporary ownership rights over dominant estates, which have carried a natural servitude of drain over Plaintiff's property, the servient estate.[84] The extent of ownership rights that each Defendant possesses over the relevant area in which it operated, Plaintiff argues, is a fact-intensive inquiry that is not susceptible to determination on a motion to dismiss.[85] Plaintiff additionally argues that a servitude has been found to exist on tidal lands, and that accordingly a servitude of drain claim may apply to the failure of coastal lands to impede storm surges coming from the Gulf.[86]

Finally, Plaintiff avers that it has stated a viable claim for breach of contract as a third-party beneficiary of the obligations undertaken by Defendants in more than 200 permits issued by the Corps and more than 50 right-of-way agreements.[87] It is Plaintiff's position that the permits, rights-of-way, and regulatory framework impose obligations upon Defendants, and that these obligations

---

[82] *Id.* at p. 20 (citing LA. CIV. CODE art. 648; *Id.* (citing *Young v. International Paper Co.*, 179 La. 803, 805 (1934); *Maddox v Int'l Paper Co.*, 47 F.Supp. 829, 831 (W.D. La. 1942)).

[83] *Id.* at p. 26 (citing *Gulf Ins. Co. v. Employers Liab. Assurance Corp.*, 170 So.2d 125, 129 (La. App. 4 Cir. 1964); *Roberts*, 266 F.3d at 386; *Craig v. Montelpre Co.*, 211 So.2d 627, 631 n.3 (La. 1968); *Brister v. Gulf C. Pipeline Co.*, 684 F. Supp 1373, 1385 (W.D. La. 1988)).

[84] *Id.* at p. 21 (citing Petition at ¶ 22) (citing *Tool House, Inc. v. Tynes*, 564 So.2d 720, 721 (La. App. 2 Cir. 1990) *writ denied*, 568 So.2d 1087 (La.1990)).

[85] *Id.* at p. 22.

[86] *Id.* at pp. 22–23 (citing *Poole v. Guste*, 262 So.2d 339 (La. 1972)).

[87] Rec. Doc. 446 at p. 27.

manifest an intent to confer a benefit in favor of third parties, constituting stipulations *pour autrui* under Louisiana law.[88]   Plaintiff additionally argues that  Louisiana courts have rejected the argument that there can be no stipulation *pour autrui* unless the third-party beneficiary is named or determinable.[89] Instead, according to Plaintiff, it is permissible to stipulate for undetermined persons as long as those persons are "determinable" on the day on which the agreement is to have effect for their benefit.[90]

## C.     Defendants' Arguments in Reply

In response to Plaintiff's memorandum in opposition, Defendants reaver that Plaintiff's claims impermissibly rely on enterprise liability.[91] Defendants argue that Plaintiff has failed to plead facts supporting breach of duty based on the permits because "it has provided merely a 'sampling' of permits and, in fact, many of the permittees are not even Defendants."[92]

Defendants reaver that they do not owe any legal duty that extends so far as protecting Plaintiff from the risk of storm surge or indirect economic injury.[93] They contend that it is "settled jurisprudence" that a federal statute can create a  duty only if its purpose is to impose a duty upon

---

[88] *Id.* at pp. 28–29 (citing LA. CIV. CODE art. 1756;  *Hargroder v. Columbia Gulf Transmission Co.*, 290 So.3d 874 (La. 1974); *Duck v. Hunt Oil Co.*, No. 13–628, 134 So.3d 114 (La. App. 3 Cir. 2014), *writ denied*, 140 So.3d 1189 (2014); *Cooper v. La. Dep't of Public Works*, No. 03–10745, 870 So.2d 315 (La. App. 3 Cir. 2004)).

[89] *Id.* at pp. 30–31 (citing *Andrepont v. Acadia Drilling Co.*, 231 So.2d 347 (La. 1969)).

[90] *Id.* (citing *Andrepont v. Acadia Drilling Co.*, 231 So.2d 347 (La. 1969); *Lawson v. Shreveport Waterworks Co.*, 35 So. 390 (La. 1903);  *Duck v. Hunt Oil Co.*, No. 13–628, 134 So.3d 114 (La. App. 3 Cir. 3/5/14), *writ denied*, 140 So.3d 1189 (2014)*; Lemon v. Bossier Parish Sch. Bd.*, 240 F. Supp. 709 (W.D. La. 1965)).

[91] Rec. Doc. 469 at p. 7.

[92] *Id.* at p. 8.

[93] *Id.* at pp. 9–10 (citing *Maw Enterprises, L.L.C. v. City of Marksville*, No. 2014-0090, 149 So.3d 210 (La. 9/13/14); *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La. 1984)).

the defendant to protect the plaintiff from the particular risk at issue.[94]  According to Defendants, neither the Rivers and Harbors Act, nor the Clean Water Act, nor the Coastal Zone Management Act were intended by Congress to impose a duty on Defendants to protect Plaintiff from the increased costs of flood protection.[95]

Defendants additionally argue that, while adjacency of estate is not required for some predial servitudes, servitudes arising under Article 667 apply only to "neighbors."[96] Defendants reaver that the "neighbors" requirement is not met in this case.[97] Defendants additionally contend that "[a]lthough Articles 655 and 656 do not include the word 'neighbors,' they require that the properties be sufficiently close that water flows from a higher estate to another that is lower."[98] Defendants reaver that Article 655 concerns only surface waters that "flow naturally from a dominant estate (the estate 'situated above') to a servient estate (the estate 'situated below')," and that Plaintiff has not alleged that Defendants have any property, let alone property "situated above" Plaintiff's property.[99] According to Defendants, Plaintiff seeks to create a new obligation requiring a coastal property owner to preserve a buffer zone to slow storm surge, and such an obligation is not cognizable under a natural servitude of drain cause of action.[100]

---

[94] *Id.* at p. 11 (citing *Hill v. Lundin & Assoc., Inc.*, 256 So.2d 620 (La. 1972); *Cormier v. T.H.E. Ins. Co.*, No. 98-2208, 745 So.2d 1 (La. 1999); *Lazard v. Foti*, No. 2002-2888, 859 So.2d 656 (La. 2003)).

[95] *Id.* at p. 12 (citing *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967); *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

[96] *Id.* at pp. 12–13.

[97] *Id.* at p. 13.

[98] *Id.* at p. 14.

[99] *Id.*

[100] *Id.* at p. 15.

15

Finally, Defendants reaver that the permits and rights-of-way at issue do not create contractual rights, and that Plaintiff has failed to allege any contract with the requisite "clear intention" to benefit Plaintiff.[101] According to Defendants, Louisiana law requires that a stipulation *pour autrui* be in writing if the contract itself must be in writing, and Plaintiff has neither identified any express written stipulation nor suggested that a writing is not required.[102]

## D.   Plaintiff's Supplemental Memorandum in Opposition

Following oral argument on the pending motion, Plaintiff submitted a supplemental memorandum in further opposition to Defendants' motion to dismiss.[103] Plaintiff argues first that the Fifth Circuit has recognized that the exact type of conduct alleged here–the widening of oilfield canals due to erosion and failure to maintain the canals used by oil, gas, and pipeline companies–implicates an Article 2315 duty.[104] Plaintiff reavers that Defendants' duty extends from Article 2315, but that the standard of care is "delineated" from federal statutes; namely, the Rivers and Harbors Act, the Clean Water Act, and the Coastal Zone Management Act.[105] Plaintiff argues that the Fifth Circuit and Louisiana courts have recognized that a defendant's standard of care with respect to a state law cause of action may be determined by reliance on federal statutes.[106]

Plaintiff next argues that it is owed a duty of care by Defendants because it, or its

---

[101] *Id.* at p. 16.

[102] *Id.* at n. 29.

[103] Rec. Doc. 487.

[104] *Id.* at p. 3 (citing *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 325 (5th Cir. 2002)).

[105] *Id.* at p. 4 (citing *Langois v. Allied Chem. Corp.*, 249 So.2d 133, 137 (La. 1971), *abrogated by statute on other grounds, as recognized in Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La. 1988)).

[106] *Id.* (citing *Lowe v. General Motors Corp.*, 624 F.2d 1373, 1378 (5th Cir. 1980); *Mancheck v. Willamette Indus., Inc.*, 621 So.2d 649, 652-53 (La. App. 2 Cir. 1993)).

16

predecessors, have operated, maintained, and controlled the levees for more than 100 years.[107]
According to Plaintiff, this demonstrates "a clear 'ease of association' between the [D]efendants'
duty not to impair the usefulness of the levees through activities that cause the loss of coastal
wetlands and [Plaintiff's] harm resulting directly from the impairment of the usefulness of the levees
under its charge."[108] Further, Plaintiff contends that it has the express "statutory charge" specifically
regarding the levees, the coastal erosion, and marsh management issues that are the subject of the
Defendants' duty.[109]

Finally, Plaintiff argues that the United States Supreme Court's recent decision in *Johnson
v. City of Shelby, Miss.* "made clear that courts are not to apply the strictures of *Bell Atlantic Corp.
v. Twombly* and *Ashcroft v. Iqbal*, beyond questions of fact alleged, in motions to dismiss claims
based on allegations of the legal basis.[110] According to Plaintiff, *Johnson* held that *Twombly* and
*Iqbal* apply only to factual allegations. Plaintiff argues that questions of the existence of duty and
the analysis of standards of care and ease of association under Louisiana law are issues of law, not
fact.[111]

### E.    *Defendants' Arguments in Further Support*

Defendants first contend that *Johnson* does not alter the pleading standard set forth in
*Twombly* and *Iqbal*, but rather reaffirms that to "stave off threshold dismissal, a plaintiff must plead

---

[107] *Id.* at p. 6.

[108] *Id.* at p. 7.

[109] *Id.* at pp. 7–8 (citing LA. REV. STAT. § 38:330.1(F)(2)(a)).

[110] *Id.* at p. 8 (citing *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346 (2014)).

[111] *Id.*

facts sufficiently to show that her claim has substantive plausibility."[112] Defendants reaver that because Plaintiff has failed to allege facts of wrongful acts by any one Defendant, and instead relies on allegations against an entire industry, the Complaint must be dismissed.[113] Defendants argue, additionally, that Plaintiff never entered into a contract with any Defendant, nor does Plaintiff own the land on which any Defendant dredged canals.[114]

Defendants reaver that the Fifth Circuit in *Audler* held that in order for a federal statute to create a duty in favor of a plaintiff against a defendant, the plaintiff must be the intended beneficiary – not simply an incidental beneficiary – of the statute.[115]  The Rivers and Harbors Act, the Clean Water Act, and the Coastal Zone Management Act, according to Defendants, are intended to create a duty in favor of the federal government, not the Plaintiff.[116] Defendants argue that even if Plaintiff could establish that it was the intended beneficiary, the harm is too attenuated to establish an "ease of association" between Plaintiff's harm and Defendants' conduct.[117]

### III. Legal Standards

**A.**     ***Standard on a Motion to Dismiss Under Rule 12(b)(6)***

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[118] "To survive a motion to dismiss, a

---

[112] Rec Doc. 488-2 at p. 1 (citing *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346 (2014)).

[113] *Id.* at p. 2 (citing *Barasich*, 467 F.Supp. 2d 676 (E.D. La. 2006)).

[114] *Id.* (distinguishing *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 325 (5th Cir. 2002)).

[115] *Id.* (citing *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 252 (5th Cir. 2008)).

[116] *Id.*

[117] *Id.* (citing *Cormier v. T.H.E. Ins. Co.*, No. 98-2208, 745 So.2d 1, 7 (La. 1999)).

[118] FED. R. CIV. P. 12(b)(6).

18

complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[119] "Factual allegations must be enough to raise a right to relief above the speculative level."[120] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[121]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[122] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[123] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[124] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[125] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[126] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[127] From the face of the complaint, there must be enough factual matter to

---

[119] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see also Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) ("A plaintiff . . . must plead facts sufficient to show that her claim has substantive plausibility.").

[120] *Twombly*, 550 U.S. at 556.

[121] *Id.* at 570.

[122] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[123] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

[124] *Id.* at 679.

[125] *Id.* at 678.

[126] *Id.*

[127] *Id.*

raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[128]  If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[129]

Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.[130]  "Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[131]

## B.   *Applying Louisiana Law*

When a federal court interprets a state law, it must do so according to the principles of

---

[128] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[129] *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328, n.9 (5th Cir. 2007).

[130] *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted).

[131] *Id.* (internal citation and quotation marks omitted). The Court notes that Plaintiff asserts that the United States Supreme Court's recent decision in *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346 (2014) "made clear that courts are not to apply the strictures of *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, beyond questions of fact alleged, in motions to dismiss claims based on allegations of the legal basis." (Rec. Doc. 487 at p. 8). In *Johnson*, the Supreme Court reversed the Fifth Circuit's decision affirming the dismissal of a civil rights claim for failure to expressly invoke 42 U.S.C. § 1983. The Court noted that the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Contrary to Plaintiff's position, this Court does not read *Johnson* to prohibit a district from dismissing a claim on the basis of a dispositive issue of law, or to alter the long-standing rule that dismissal is appropriate as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Here, Plaintiff has not submitted an "imperfect statement" of the legal theories upon which it relies. Rather, for the reasons stated below, Plaintiff has not stated a claim for negligence, strict liability, natural servitude of drain, private nuisance, public nuisance, or breach of contract upon which relief may be granted.

interpretation followed by that state's highest court.[132] In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[133] These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."[134] To make a so-called "*Erie* guess" on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.[135]   With respect to issues of federal law, however, "[i]t is beyond cavil that [federal courts] are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question."[136] Accordingly, "the *Erie* doctrine does not apply [ . . . ] in matters governed by the federal Constitution or by acts of Congress."[137]

## IV. Analysis

Defendants move this Court to dismiss each and every claim asserted by Plaintiff in this action. As stated above, Plaintiff brings the following claims: (1) negligence pursuant to Article 2315; (2) strict liability pursuant to Articles 2317 and 2317.1; (3) natural servitude of drain pursuant

---

[132] *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010); *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

[133] *Shaw Constructors v. ICF Kaiser Engineers, Inc*., 395 F.3d 533, 547 (5th Cir. 2004).

[134] *Id.* (quoting LA. CIV. CODE. art. 1).

[135] *Id.* (citation omitted).

[136] *Id.* (citations omitted).

[137] *Grantham v. Avondale Indus., Inc.*, 964 F.2d 471, 473 (5th Cir. 1992) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

to Article 656; (4) public nuisance pursuant to Article 667; (5) private nuisance pursuant to Article 667; and (6) breach of contract as a third party beneficiary.[138] The Court will address each claim in turn.

## A.     *Negligence*

Article 2315 of the Louisiana Civil Code establishes a general cause of action for negligence: "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[139]  In determining whether to impose liability under Article 2315, Louisiana courts employ a duty-risk analysis, whereby a plaintiff must establish the following five elements:  "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)."[140] "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability."[141]

Literally interpreted, a tortfeasor may be held liable under Article 2315 for any damage remotely caused by his or her fault.[142]  However, "[a]s a matter of policy, the courts, under the scope

---

[138] *See* Rec. Doc. 1-2 at pp. 17–23.

[139] LA. CIV. CODE art. 2315.

[140] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008); *Lemann v. Essen Lane Daiquiris*, No. 2005-1095, 923 So.2d 627, 633 (La. 2006); *Long v. State ex rel. Dept. of Transp. and Dev.*, No. 2004-0485, 916 So.2d 87, 101 (La. 2005).

[141] *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 321 (La. 1994).

[142] *Severn Place Associates v. Am. Bldg. Servs., Inc.*, 05-859, 930 So.2d 125, 127 (La. App. 5 Cir. 4/11/06).

of duty element of the duty-risk analysis, have established limitations on the extent of damages for which a tortfeasor is liable."[143] Under Louisiana law, determining the scope of a duty is "ultimately a question of policy as to whether the particular risk falls within the scope of the duty."[144] There "must be an 'ease of association' between the rule of conduct, the risk of injury, and the loss sought to be recovered."[145] That inquiry typically requires consideration of the facts of each case, and dismissal is therefore only proper "where no duty exists as a matter of law and  no factual or credibility disputes exist."[146]  In deciding whether to impose a duty in a particular case, Louisiana courts examine "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty."[147] Accordingly, the Court must determine whether a statute or rule of law imposes a duty on Defendants, for the benefit of Plaintiff, to prevent the loss of coastal lands in the Buffer Zone, mitigate storm surge risk and/or prevent the attendant increased flood protection costs incurred by Plaintiff.

This Court has already opined that "oil and gas companies do not have a duty under Louisiana law to protect members of the public 'from the results of coastal erosion allegedly caused by [pipeline] operators that were physically and proximately remote from plaintiffs or their property.'"[148] Since the general duty articulated by Article 2315 is insufficient to satisfy Plaintiff's

---

[143] *Id.* (citations omitted).

[144] *Roberts v. Benoit*, 605 So.2d 1032, 1044 (La. 1991).

[145] *Severn*, 930 So.2d at 127 (citation omitted).

[146] *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir. 1992);  *Parish v. L.M. Daigle Oil Co.*, 98-1716, 742 So.2d 18, 25 (La. Ct. App. 3 Cir. 1999).

[147] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citation omitted).

[148] Rec. Doc. 363 at pp. 67–68 (citing *Barasich*, 467 F. Supp. 2d 676, 693 (Vance, J.)).

burden under the duty-risk analysis, Plaintiff turns to the Rivers and Harbors Act, the Clean Water Act, and the Coastal Zone Management Act to establish the requisite standard of care. Defendants do not dispute that these statutes may impose some type of duty upon them.[149] Instead, they argue that where, as here, no legal duty arises under state law, one does not arise under those statutes because Congress did not intend Plaintiff to benefit from them.[150] Accordingly, the Court must determine the scope of the duties set forth in the federal statutes at issue.

The relevant inquiry under Louisiana law is "whether the enunciated rule or principle of law extends to or is intended to protect *this plaintiff* from *this type of harm* arising in *this manner*."[151] *Cormier v. T.H.E. Ins. Co.* is instructive on this point. There, the plaintiff was injured on an amusement park ride and brought a negligence claim against the Department of Public Safety and Corrections, a governmental agency, for failure to inspect the ride pursuant to Louisiana's "Amusement Ride Safety Law."[152]  In determining whether the Department owed a duty to the plaintiff, the Louisiana Supreme Court articulated the following test:

> When a duty is imposed by statute, the court must attempt to interpret the legislative intent as to the risk contemplated by the legal duty, often resorting to the court's own judgment of the scope of protection intended by the legislature. The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. Courts

---

[149] *See* Rec. Doc. 427-1 at pp. 24–25 ("[E]ven if the Rivers and Harbors Act of 1899 imposes some duty on Defendants, it is not owed to the Board to protect it from indirect economic losses;" "[E]ven if the Clean Water Act of 1972 imposes some duty on Defendants, it is not to protect a levee board from indirect economic losses;" "[T]he CZMA does not create a statutory duty owed by Defendants to protect the Board from indirect economic losses").

[150] *Id.*

[151] *Roberts v. Benoit*, 605 So.2d 1032, 1044-45 (La. 1991), *on reh'g* (May 28, 1992) (emphasis in original) (distinguishing between the duty inquiry and the scope of protection (or scope of liability) inquiry: "[w]hile the former questions the existence of a duty, the latter assumes a duty exists and questions whether the injury the plaintiff suffered is one of the risks encompassed by the rule of law that imposed the duty.").

[152] *Cormier v. T.H.E. Ins. Co.*, 98-2208 (La. 9/8/99); 745 So.2d 1.

24

consider various policy factors that the legislature might consider, such as whether the imposition of a duty would result in an unmanageable flow of litigation; ease of association between the plaintiff's harm and a defendant's conduct; economic, social, and moral implications on similarly situated parties; the nature of defendant's activity; the direction in which society and its institutions are evolving; and precedent.[153]

The Louisiana Supreme Court held that although the Amusement Ride Safety Law imposed various duties upon the Department,  the duty to inspect rides is only activated once a ride operator requests an inspection. Where an inspection is not requested, the Department's duty is limited to the issuance and adoption of rules for amusement rides.  Therefore, because no inspection was requested, the Department owed no duty to the plaintiff.[154]

The Fifth Circuit has also examined the applicability of a statute in defining the scope of duty under a state law negligence claim. In *Audler v. CBC Innovis Inc.*, a Louisiana homeowner whose property was damaged by floodwaters from Hurricane Katrina brought negligence and negligent misrepresentation claims against CBC Innovis, Inc., the company that provided flood zone determinations to the homeowner's lender.[155]   The primary issue on appeal was whether, under Louisiana law, CBC owed the homeowner a duty  under the National Flood Insurance Act (the "NFIA") to provide accurate information with regard to the flood zone determination.[156] The Fifth Circuit held that a flood determination company retained by the lender to perform a flood zone determination on a borrower's property does not owe a duty to the borrower because:

Although Congress intended to help borrowers damaged by flooding, the principal

---

[153] *Id.* (citations omitted).

[154] *Id.*

[155] *Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008).

[156] *Id.* at 249.

> purpose in enacting the [NFIA] was to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever increasing federal flood disaster assistance. Therefore, the purpose of the requirement that a lender obtain a flood zone determination is not to inform the borrower of the home's flood zone status, but rather to protect the lender and the federal government from the financial risk that is posed by uninsured homes located in flood zones.[157]

Concluding that the Louisiana Supreme Court would find that the homeowner had not stated a claim for negligence or negligent misrepresentation under Louisiana law, the Fifth Circuit affirmed the district court's dismissal of those claims.

In this case, as in *Cormier* and *Audler*, Plaintiff attempts to demonstrate as a matter of law that the Rivers and Harbors Act, the Clean Water Act, and the Coastal Zone Management Act impose a duty upon Defendants to protect Plaintiff from the harm alleged.  However, like in *Cormier* and *Audler*, the duties imposed upon Defendants pursuant to those statutes do  not extend to the protection of Plaintiff.  Although, like the homeowner in *Cormier* and the plaintiff in *Audler*, Plaintiff may derive some benefit from Defendants' compliance with those statutes, Plaintiff is not an intended beneficiary under any of them.

First, the principal purpose in enacting the Rivers and Harbors Act was to facilitate the federal government's ability to ensure that navigable waterways, like any other routes of commerce over which it has assumed control, remain free of obstruction.[158]  "The coverage of the Rivers and

---

[157] *Id.* at 252 (citations omitted).

[158] *See Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967). Plaintiff argues that *Wyandotte* is inapposite because it addresses section 409 of the Rivers and Harbors Act, not section 408. However, Plaintiff fails to cite any other authority suggesting that the Act was enacted for a purpose other than that stated in *Wyandotte*, nor can the Court locate any such authority. Accordingly, the Court finds Plaintiff's arguments on this point unpersuasive. (*See* Rec. Doc. 446 at pp. 14–15).

Harbors Act is broad, and its principal beneficiary is the United States government."[159] Section 408 of the Rivers and Harbors Act makes it illegal for any person to damage or impair a public work built by the United States to prevent floods.[160]

Plaintiff argues that a levee operator is a member of the class for whose benefit § 408 was enacted. The only authority that Plaintiff cites for this argument is *U.S. and City of Dallas v. City of Irving*, a 1979 decision from the Northern District of Texas that is not binding authority on this Court. In that case, the United States and the City of Dallas brought a lawsuit against the City of Irving, alleging that Irving's landfill operations violated section 408. The court held, without further explanation, that "Dallas, as the owner and operator of levees built by the United States to prevent floods, is a member of the class for whose benefit Section 408 was enacted."[161] No subsequent case cites *Dallas* for the proposition that the duties imposed by any section of the Rivers and Harbors Act

---

[159] *In re S. Scrap Material Co., L.L.C.*, 713 F.Supp.2d 568, 575 (E.D. La. 2010) (Feldman, J.) (citing *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967)).

[160] 33 U.S.C.A. § 408 states:

It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works: *Provided,* That the Secretary of the Army may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in his judgment such occupation or use will not be injurious to the public interest: *Provided further,* That the Secretary may, on the recommendation of the Chief of Engineers, grant permission for the alteration or permanent occupation or use of any of the aforementioned public works when in the judgment of the Secretary such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work.

[161] *United States v. City of Irving, Tex.*, 482 F.Supp. 393, 396 (N.D. Tex. 1979).

27

extend to the protection of a levee owner or operator, and this Court will not be the first to do so.[162]

In the absence of any controlling or persuasive authority similar to the rule proposed by Plaintiff, the Court cannot conclude that section 408 of the Rivers and Harbors Act imposes a duty upon Defendants for the protection of Plaintiff.

Similarly, Plaintiff has not demonstrated that Congress intended the Clean Water Act to create a legal duty in favor of Plaintiff or its predecessor levee districts. The Clean Water Act is a comprehensive statutory regime designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."[163] The Clean Water Act prohibits, among other things, the "discharge of any pollutant" into "navigable waters" unless authorized by a permit.[164] It defines navigable waters as "the waters of the United States."[165] Under Section 404 of the Clean Water Act, the Corps has authority to issue permits– termed 404 permits–for the discharge of dredged or fill materials into navigable waters.[166]

Plaintiff alleges that these permits impose upon Defendants a duty to "[m]aintain canals and other physical alterations as originally proposed;  [r]estore dredged or otherwise modified areas to their natural state upon completion of their use or their abandonment; and [m]ake all reasonable

---

[162] The only case citing *Dallas* does so in a footnote for the proposition that no cause of action lies under 33 U.S.C. § 701(c) in favor of the City of Dallas because such an action "would be inconsistent with the scheme of federal enforcement evident in the regulations." *See Creppel v. U.S. Army Corps of Engineers*, 670 F.2d 564, 575, n. 15 (5th Cir. 1982).

[163] *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356, 358 (5th Cir. 2012) (citing 33 U.S.C. § 1251(a)).

[164] *Belle Co., L.L.C. v. U.S. Army Corps of Engineers*, 761 F.3d 383, 386 (5th Cir. 2014) (citing 33 U.S.C. §§ 1311(a), 1344).

[165] *Id.* (citing  33 U.S.C. § 1362(7)).

[166] *Id.* (citing  33 U.S.C. § 1344).

efforts to minimize the environmental impact of Defendants' activities."[167]  Plaintiff does not argue

that Defendants were negligent in failing to obtain permits; rather, Plaintiff argues that the  § 404

permitting provisions were intended to protect a levee and flood control system that is alleged "to

be integrated with the very the [sic] coastal wetlands to which that permitting program applies."[168]

However, as with the Rivers and Harbors Act, Plaintiff points to no legal authority supporting its

argument that the permits issued pursuant to the Clean Water Act impose a standard of care upon

Defendants for the benefit of a levee board.

Finally, Plaintiff has not demonstrated that the Coastal Zone Management Act imposes a

duty upon Defendants for the benefit of Plaintiff. The United States Supreme Court has stated that

"[The Coastal Zone Management Act] has as its main purpose the encouragement and assistance of

States in preparing and implementing management programs to preserve, protect, develop and

whenever possible restore the resources of the coastal zone of the United States."[169]  Plaintiff alleges

that the Coastal Zone Management Act "impose[s], in conjunction with the issuance of permits

licensing the oil and gas exploration and production activities at issue here, a litany of duties and

obligations expressly designed to minimize the adverse ecological, hydrological, topographical, and

other environmental effects associated with such activities in the state's coastal region."[170] However,

---

[167] Rec. Doc. 1-2 ¶9.2. The grammatical construction of paragraph 9.2, including the inconsistent placement of punctuation, suggests either that Plaintiff is attributing the duties listed in 9.2.1, 9.2.2, and 9.2.3 to the CWA, or that those duties stem from regulations promulgated by the Corps  in "Part 209 – Rules Relating to Administrative Procedure." Plaintiff's briefing with respect to the pending motion does not address these "general duties," or cite to Corps regulations. Accordingly, the Court interprets paragraph 9.2 to mean that Plaintiffs believe the Clean Water Act creates a regulatory framework specifically aimed at protecting against the deleterious effects of dredging activities (*see* ¶8), but that the specific duties listed in paragraph 9.2 derive from the permits, not from the Clean Water Act itself.

[168] Rec. Doc. 446 at p. 16.

[169] *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 592 (1987) (citing  S.Rep. No. 92–753, supra, at 1, U.S.Code Cong. & Admin.News 1972, p. 4776).

[170] Rec. Doc. 1-2 at ¶ 9.4.

29

Plaintiff does not point to a specific provision of the Coastal Zone Management Act wherein specific duties or obligations are imposed on Defendants for the benefit of Plaintiff, nor can the Court locate any.

Plaintiff cites a number of cases purporting to establish that Louisiana courts have found a duty under state law by applying standards of care articulated in federal statutes and regulations.[171] These cases do not overcome the problems stated above, however, because the plaintiff in each is an intended beneficiary of the federal statute at issue.[172] In contrast, Plaintiff here has not demonstrated that it is the intended beneficiary of any duties imposed upon Defendants under the Rivers and Harbors Act, the Clean Water Act, or the Coastal Zone Management Act.

Plaintiff additionally relies on *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.* for the argument that the failure to maintain oilfield canals implicates an Article 2315 duty.[173] In that case, which was before the Fifth Circuit on appeal of a grant of a motion for summary judgment, a school board brought suit against two companies that owned gas pipelines built on

---

[171] Rec. Doc. 487 at p. 4, n. 2.

[172] *See, e.g., Lowe v. Gen. Motors Corp.*, 624 F.2d 1373 (5th Cir. 1980) (holding that a violation of the federal Motor Vehicle Safety Act, which creates a duty upon the automobile manufacturer to construct his product to be "reasonably" safe, may be used by survivors of two women killed in automobile accident as evidence of the manufacturer's negligence *per se*); *Manchack v. Willamette Indus., Inc.*, 621 So.2d 649 (La. Ct. 2 App.1993) writ denied, 629 So.2d 1170 (La.1993) (holding that violations of the Occupational Safety and Health Act, which sets out workplace safety standards, can be used by injured employees or non-employees as nonconclusive evidence that the workplace is unreasonably dangerous); *Reyes v. Vantage S.S. Co., Inc.*, 609 F.2d 140 (5th Cir. 1980) (holding that the Jones Act, which imposes an affirmative duty on a ship to use every reasonable means to retrieve a seaman from the water, imposes that duty even where the seaman deliberately jumps overboard); *Manning v. M/V 'Sea Road'*, 417 F.2d 603 (5th Cir. 1969) (negligence arising from a breach of the Longshoremen's Act–namely, failure to cover a manhole–created a condition that made the vessel unseaworthy, and "[v]iolation of the statutory regulations only makes it worse"); *Simmons v. Wichita River Oil Corp.*, No. 01-0050, 2002 WL 31098544, at *3 (E.D. La. Sept. 19, 2002) (Vance, J.) ("In the Fifth Circuit, federal regulations governing *maritime conduct* establish the applicable standard of care if the plaintiff belongs to the class of persons the regulation is designed to protect and the statute intends to protect against the risk of harm that occurred.") (emphasis added); *Tidewater Marine, Inc. v. Sanco Int'l, Inc.*, 113 F.Supp.2d 987, 990 (E.D. La. 2000) (Mentz, J.) (same).

[173] *See* Rec. Doc. 487 at p. 3 (citing *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303 (5th Cir. 2002)).

servitudes over property owned by the school board, alleging that the companies failed to maintain the canals in which the pipelines were located or their banks.[174] The school board, unlike Plaintiff here, claimed a direct loss of acreage of its own property due to erosion caused by the two defendants. The Fifth Circuit determined that the contract between the parties did not impose a duty to maintain the canals, but remanded the case to the district court to determine whether Louisiana's suppletive rules of property law might impose such a duty.

The Court does not read *Columbia Gulf Transmission* to stand for the broad proposition that Plaintiff advances. The duty of two specific pipeline companies to maintain canals on specific property *vis a vis* a specific lessor, combined with Louisiana's suppletive rules of property law,[175] provide a much firmer basis for implying a duty than the general pronouncement of Article 2315 that a tortfeasor is liable for any damage caused by his or her fault. Moreover, the plaintiff in *Columbia Gulf Transmission* did not rely on federal statutes to supply the relevant standard of care. Here, in contrast, Plaintiff has expressly and repeatedly argued that the standard of care applicable in this case is supplied by the federal regulatory regime, not by Louisiana law. Finally, as this Court and another section of this district have already held, "oil and gas companies do not have a duty under Louisiana law to protect members of the public 'from the results of coastal erosion allegedly caused by [pipeline] operators that were physically and proximately remote from plaintiffs or their property.'"[176]

---

[174] *Columbia Gulf Transmission Co.,* 290 F.3d at 306.

[175] *Id.*

[176] Rec. Doc. 363 at pp. 67–68 (citing *Barasich*, 467 F. Supp. 2d 676, 693 (Vance, J.)).

It is not enough for Plaintiff to assert that it is a beneficiary of the federal statutes at issue.[177] Rather, under *Audler*, Plaintiff must demonstrate as a matter of law that Defendants owe a specific duty to protect Plaintiff from the results of coastal erosion allegedly caused by Defendants' oil and gas activities in the Buffer Zone. Plaintiff has not and cannot make that showing under the Rivers and Harbors Act, the Clean Water Act, or the Coastal Zone Management Act. Accordingly, the Court is compelled to conclude that Plaintiff has not stated a viable claim for negligence.

### B.    Strict Liability

Plaintiff seeks injunctive relief and damages under a theory of strict liability pursuant to Articles 2317 and 2317.1.[178] Aside from two sentences located in a footnote in Defendants' motion to dismiss,[179] neither party addresses or analyzes this claim directly. Rather, both Plaintiff and Defendants appear to urge the Court to apply their negligence arguments to Plaintiff's strict liability claim.[180]

Under Louisiana Civil Code article 2317, "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." In 1996, the Louisiana legislature adopted Article 2317.1, which significantly modified Article 2317's imposition of liability by providing in pertinent part that:

---

[177] Rec. Doc. 485 at 43:16-18.

[178] *See* Rec. Doc. 1-2 at pp. 18–19.

[179] Rec. Doc. 427-1 at p. 16, n. 6 (stating that the duty-risk analysis "applies both to negligence ans strict liability claims. As the Louisiana Supreme Court has explained, the question of scope of duty or legal cause under duty-risk analysis is the same as whether a risk is unreasonable under La. C.C. art. 2317") (citing *Entrevia v. Hood*, 427 So.2d 1146, 1149 (La. 1983)).

[180] *See, e.g.*, Rec. Doc. 427-1 at p. 15; Rec. Doc. 446 at p. 13.

> [t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.[181]

The adoption of Article 2317.1 appears to have eliminated the distinction between strict liability under Article 2317 and negligence under Article 2315.[182]  In 1991, the Louisiana Supreme Court distinguished between strict liability and negligence as follows:

> In essence, the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove the defendant was aware of the existence of the "defect" under a strict liability theory. Under the negligence theory, it is the defendant's *awareness* of the dangerous condition of the property that gives rise to a duty to act. Under a strict liability theory, it is the defendant's *legal relationship* with the property containing a defect that gives rise to the duty. Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant.[183]

After the adoption of Article 2317.1, the Louisiana Supreme Court reiterated that "the sole distinction between the burden of proof necessary to recover under a negligent action based on La. Civ. Code arts. [sic] 2315 versus a strict liability action based on La. Civ. Code art. 2317 was that in the former the plaintiff had the additional burden of proving the defendant's scienter, i.e., that the defendant 'knew or should have known' of the defect."[184] It appears well settled under Louisiana law that by requiring knowledge or constructive knowledge under Article 2317.1, the Louisiana legislature effectively eliminated strict liability under Article 2317, turning causes of action arising

---

[181] La. Civ. Code art. 2317.1.

[182] *Dupree*, 765 So.2d at 1007.

[183] *Oster v. Dept. of Trans. & Development,* 582 So.2d 1285 (La. 1991).

[184] *Dupree*, 765 So.2d at 1007 (citations omitted).

under Article 2317 into negligence claims.[185]

Further demonstrating the application of Article 2317.1, the Louisiana Supreme Court appears to analyze actions arising under Articles 2317 and 2317.1 under the same duty-risk analysis as is used with respect to negligence claims arising under Article 2315. For example, in *Bufkin v. Felipe's Louisiana, LLC*, the Louisiana Supreme Court applied Articles 2317 and 2317.1 to determine whether a building contractor breached any legal duty owed to a pedestrian crossing a street next to the contractor's dumpster, who was struck by an oncoming bicycle.[186] The Supreme Court stated that "the threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law."[187] After determining that the contractor had effectively assumed custody of the sidewalk, the Supreme Court performed a duty-risk analysis and determined that any visual obstruction caused by the dumpster was obvious, apparent, and reasonably safe for persons exercising ordinary care and prudence, and did not create an unreasonable risk of harm.[188] Therefore, the Supreme Court held that the construction company had no legal duty to warn the pedestrian of the obstruction.[189]

This Court has already determined that Defendants do not owe a legal duty to Plaintiff, arising under either Louisiana law or the federal regulatory regime upon which Plaintiff relies, to

---

[185] *See Jackson v. Brumfield*, 2009–2142, 40 So.3d 1242, 1243 (La. App. 1 Cir. 6/11/10) ("The 1996 amendment enacting [article 2317.1] abolished the concept of strict liability governed by prior interpretation of [article 2317].")*; Dufrene v. Gautreau Family, LLC*, 980 So.2d 68, 80 (La. App. 5 Cir. 2008); *Ruschel v. St. Amant*, 11-78, 66 So.3d 1149, 1153 (La. App. 5 Cir. 2011); *Riggs v. Opelousas Gen. Hosp. Trust Auth.*, 2008-591, 997 So.2d 814, 817 (La. App. 3 Cir. 11/5/08); *Reitzell v. Pecanland Mall Associates, Ltd.*, 852 So.2d 1229, 1232, (La.App. 2 Cir. 8/20/03, 3).

[186] 2014-288 (La. 10/15/14), 2014 WL 5394087.

[187] *Id.* at * 5 (citation omitted).

[188] *Id.* at *10.

[189] *Id.*

protect Plaintiff from the results of coastal erosion allegedly caused by Defendants' oil and gas activities in the Buffer Zone. Accordingly, for the same reasons stated above with respect to Plaintiff's claim arising under Article 2315, the Court finds that Plaintiff has not stated a viable claim for strict liability under Articles 2317 and 2317.1.

## C.    *Natural Servitude of Drain*

Plaintiff next alleges that Defendants have interfered with a natural servitude of drain in violation of Article 656.[190] A natural servitude of drain is a type of predial servitude, which is "a charge on a servient estate for the benefit of a dominant estate, and requires that the two estates must belong to different owners."[191] There can be no predial servitude without an identified dominant estate and an identified servient estate.[192] The word "estate" means a distinct corporeal immovable, such as a tract of land or a building.[193] The estate burdened with a predial servitude is designated as "servient"; the estate in whose favor the servitude is established is designated as "dominant."[194] There is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate.[195]

Additionally, in general,  the two immovables that constitute the two estates need not be

---

[190] Rec. Doc. 1-2 at ¶ 24.

[191] LA. CIV. CODE art. 646.

[192] *Id.*; *see also* 2007 Revision Comment (b) to  LA. CIV. CODE art. 646;  A.N. Yiannopoulos, 4 LA. CIV. L. TREATISE: PREDIAL SERVITUDES § 9 (2004).

[193] 2007 Revision Comment (b) to  LA. CIV. CODE art. 646 and A.N. Yiannopoulos, 4 LA. CIV. L. TREATISE: PREDIAL SERVITUDES § 7 (2004) (stating that "[t]he word "estate" is a translation of "héritage," which the Code Civil reserved exclusively for lands and buildings and stated that only these immovables were capable of being burdened with a predial servitude").

[194] LA. CIV. CODE art. 646, Revision Comments—1977, comment (d).

[195] LA. CIV. CODE. art. 647.

contiguous or within any given proximity.[196] However, they must be located "as to allow one to derive some benefit from the charge on the other."[197] Predial servitudes are considered derogations of public policy because they form restraints on the free disposal and use of property.[198] Therefore, predial servitudes are not viewed with favor by the law and can never be sustained by implication.[199] Any doubt as to the existence, extent, or manner of exercise of a predial servitude must be resolved in favor of the servient estate.[200]

A natural servitude of drain is established under Louisiana Civil Code articles 655 and 656. According to Article 655, an estate situated below "is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow."[201] Article 656 states that "[t]he owner of the servient estate may not do anything to prevent the flow of the water, and the owner of the dominant estate may not do anything to render the servitude more burdensome."[202] According to A.N. Yiannopoulos' treatise on predial servitudes:

> The person who claims a servitude of drain has the burden of proving by a preponderance of the evidence that his estate is higher than that of his neighbor. However, Article 655 does not require that the dominant estate be overall higher than the servient estate. The natural servitude of drain follows individual patterns along particular points of the boundary, namely, it attaches to points at which one estate is

---

[196] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 385 (5th Cir. 2001) (citing  LA. CIV. CODE art. 648).

[197] LA. CIV. CODE art. 648.

[198] *F.E. Palomeque v. Prudhomme*, 664 So.2d 88, 93 (La. 1995).

[199] *Id. See also Buras Ice Factory Inc. v. Dept. of Hwys. of La.*, 103 So.3d 74, 80 (La. 1958).

[200] LA. CIV. CODE. art. 730, *Palomeque*, 664 So.2d at 93. *See also McDuffy v. Weil*,  125 So.2d 154, 158 (La. 1960).

[201] LA. CIV. CODE art. 655.

[202] LA. CIV. CODE art. 656.

higher than the other.[203]

The question of whether an estate is dominant or servient is one of fact and can be established by all means of evidence, including expert testimony.[204]

Defendants argue that Plaintiff's natural servitude of drain claim fails as a matter of law because Plaintiff has not alleged that it owns property adjacent to property owned by any Defendants, or that the dominant and servient estates are "sufficiently close that water flows from a higher estate to another that is lower."[205] In response, Plaintiff contends that, pursuant to Louisiana Civil Code Article 648, neither contiguity nor proximity of estates are requirements of a natural servitude of drain, and that, in fact, "[c]ourts interpret article 648's allowance liberally in finding servitudes of drain between properties miles apart."[206]

Plaintiff cites only two cases in support of its argument that the servient and dominant estates need not be contiguous.[207] First, in *Young v. International Paper Co.*, decided by the Louisiana Supreme Court in 1934, a landowner sued a paper mill operator located approximately eight miles upstream for emptying waste water "into Stalkinghead creek [sic] – the chief medium of drainage for the city of Bastrop – [which] then enters Black bayou [sic], which traverses plaintiff's land."[208] As a result, the plaintiff's land was flooded and some of his timber was destroyed.[209] The legal basis

---

[203] A.N. Yiannopoulos, 4 La. Civ. L. Treatise: Predial Servitudes, § 2:2.

[204] *Id.*

[205] Rec. Doc. 469 at p. 14.

[206] Rec. Doc. 446 at p. 20.

[207] *Id.*

[208] *Young v. Int'l Paper Co.*, 179 La. 803, 155 So. 231, 232 (La. 1934).

[209] *Id.*

for the lawsuit is not apparent from the opinion, which neither cites nor mentions the codal articles for natural servitude of drain. However, *Young* has been cited by scholars for the principle that damages due to interference with a natural servitude of drain are subject to a one year prescriptive period.[210]

In *Maddox v. Int'l Paper Co.*, decided by the Western District of Louisiana in 1942, the owner of a fishing business filed a lawsuit pursuant to Article 2315 against a mill operator located thirty miles away for releasing waste material into a stream that fed directly into Bodcaw Bayou.[211] Although the opinion suggests that the plaintiff's claim was for negligence, the *Maddox* court applied Article 660 and found, without further analysis, that the mill operator rendered a natural servitude of drain more burdensome on the plaintiff's estate. To reach this conclusion, the court cited the Louisiana Supreme Court's 1907 decision in *McFarlain v. Jennings-Heywood Oil Syndicate*, which involves a claim for interference of a natural servitude of drain between contiguous estates.[212]

Both *Young* and *Maddox* are distinguishable from the instant case. First, there was no question in either case as to the relative positions of the dominant and servient estates because, in both cases, the plaintiff's estate was located downstream from the defendant mill operator. Here, in contrast, it is unclear whether the Defendants' estates are "situated above" the Plaintiff's estate, and Plaintiff does not so allege.[213] Moreover, the plaintiffs in *Young* and *Maddox* suffered direct economic harm as a result of the upstream mill operators' activities. Here, Plaintiff alleges indirect

---

[210] *See* A.N. Yiannopoulos, 4 LA. CIV. L. TREATISE: PREDIAL SERVITUDES § 2:7.

[211] *Maddox v. Int'l Paper Co.*, 47 F.Supp. 829 (W.D. La. 1942).

[212] *McFarlain v. Jennings Heywood Oil Syndicate*, 118 La. 537, 538, 43 So. 155 (1907).

[213] However, even if Plaintiff did allege the relative positions of the estates, the claim would nevertheless fail because, as discussed *infra*, Plaintiff has not established that a servitude of drain claim includes "violent wave action and storm surge that tropical storms and hurricanes transmit from the Gulf of Mexico."

economic harm to flood control structures over which it has a "usufructory" type of interest.[214] The alleged harm at issue here is far more attenuated than the loss of physical property suffered by the landowner in *Young*, or the revenue loss suffered by the fisherman in *Maddox*. Additionally, as stated above, the plaintiff in *Maddox* appears to have sued for negligence, not natural servitude of drain, and the legal basis for the complaint in *Young* is unclear from the opinion. Moreover, in addition to the distinctions between *Maddox* and this case as noted above, *Maddox* is a decision from another federal district court and is therefore not binding on this Court.

Plaintiff additionally relies on *Poole v. Guste* to support its argument that a natural servitude of drain may exist on tidal lands.[215] In *Poole*, the Louisiana Supreme Court was presented with the issue of whether a dominant estate had a servitude of drain into and through a canal constructed on the adjacent servient estate.[216] Prior to 1916, surface water, including rainwater and "tidal overflow water" from a bordering canal and creek, flowed southeasterly across the dominant estate and into the servient estate.[217] In 1916, a canal was constructed on the servient estate, and until 1965 the surface water flowed into and down that canal.[218] In 1965, however, the owners of the servient estate constructed a levee that obstructed that flow of water through the canal.[219] The Louisiana Supreme Court determined that the servitude of drain at issue was "in part a natural servitude of drain, and

---

[214] *See* Rec. Doc. 485 at p.65:6–11.

[215] Rec. Doc. 446 at p. 22 (citing *Poole v. Guste*, 262 So.2d 339 (La. 1972)).

[216] *Poole v. Guste*, 262 So.2d 339 (La. 1972).

[217] *Id.* at 340.

[218] *Id.* at 341.

[219] *Id.*

39

in part a 'conventional' servitude of drain acquired by acquisitive prescription."[220]  The Supreme Court explained that a conventional servitude of drain is the right of passing water collected in pipes or canals through the estate of one's neighbor,[221]  and held that the servient estate was required to remove the levee so that the surface water from the dominant estate could, once again, flow into and through the canal.[222] In so holding, the Supreme Court expressly did not determine "[t]o what extent the servitude of drain from the [dominant estate] onto the [servient] estate at the bridge site is a natural servitude of drain under Article 660 . . ."[223]

Plaintiff contends that Poole establishes that a servitude may exist on tidal lands because, in that case, the drainage over the dominant estate included "tidal overflow" from a canal to the south and a natural creek to the west of the property.[224] However, Poole does not assist the Court in determining whether a natural servitude of drain may exist with respect to "the violent wave action and storm surge that tropical storms and hurricanes transmit from the Gulf of Mexico."[225] Moreover, as stated above, the Supreme Court did not address or analyze the extent to which the servitude at issue was a natural servitude of drain. In fact, it appears that the holding in Poole is directed at reinstating the right of passing water collected in a canal through the neighboring servient estate, i.e. a conventional servitude of drain. The Court notes, additionally, that Poole involved a dispute between contiguous estates, whereas here, the alleged dominant and servient estates are not adjacent.

---

[220] *Id.* at 342.

[221] *Id.* (citing LA. CIV. CODE art. 714).

[222] *Id.* at 344.

[223] *Id.* at 343-344.

[224] Rec. Doc. 446 at p. 22; *Poole*, 262 So.2d at 341.

[225] Rec. Doc. 1-2 at p. 2.

Plaintiff cites no case law, nor can the Court locate any, where the Louisiana Supreme Court has found a natural servitude of drain under similar facts as the instant case. Plaintiff essentially urges this Court to expand Louisiana law by finding that a natural servitude of drain may exist between non-adjacent estates with respect to coastal storm surge. However, neither the codal articles nor the case law supports such a finding. If Articles 655 and 656 are to be expanded to include the circumstances presented in the instant case, such an undertaking must come from the legislature as the primary source of Louisiana law or from the Louisiana Supreme Court as a secondary source of law, not from a federal district court.[226] Having found no guidance from the civil code or the case law in support of Plaintiff's position, the Court is compelled to conclude that Plaintiff has not and cannot state a viable claim for natural servitude of drain.

### D.      *Public and Private Nuisance*

Neither party addresses or analyzes Plaintiff's public and private nuisance claims separately. Rather, both Plaintiff and Defendants appear to urge the Court to apply their Article 667 arguments to both claims.[227] Defendants argue that both claims fail because Plaintiff has not alleged that its property is adjacent to property owned by any Defendant, such that the parties are "neighbors."[228] Plaintiff argues that neither contiguity nor proximity of estates is necessary for the viability of a nuisance claim.[229]

Under Louisiana law, the owner of immovable property, or a person deriving rights from the

---

[226] *See Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997).

[227] *See, e.g.*, Rec. Doc. 427-1 at p. 26; Rec. Doc. 446 at p. 25.

[228] Rec. Doc. 427-1 at p. 26.

[229] Rec. Doc. 446 at p. 25 (citing La. Civ. Code art. 648).

owner, generally has the right to use the property as he or she pleases.[230] However, "the owner's right may be limited if the use causes damage to neighbors (and others)."[231] The "obligations of neighborhood" set forth in Louisiana Civil Code Articles 667–669[232] are the source of nuisance actions in Louisiana.[233]

Before 1996, Article 667 provided that: "[a]lthough a proprietor may do with his estate what he please, still he can not [sic] make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him." Louisiana courts interpreted Article 667 to impose strict liability – that is, liability without fault – on defendants for damage caused by an activity deemed "ultrahazardous."[234] In 1996, however, the Louisiana legislature amended Article 667 to require a showing of negligence in any claim for damages under Article 667 other than those caused by pile driving or blasting with explosives.[235] Article 667 now states:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages *only upon a showing that he knew or, in the exercise of reasonable care, should have known* that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he

---

[230] *Inabnet v. Exxon Corp.*, 93-0681, 642 So.2d 1243, 1250 (La. 9/6/94).

[231] *Id.*

[232] Article 668 permits uses which merely cause neighbors some inconvenience. Article 669 allows suppression of certain inconveniences, if excessive under local ordinances and customs, and requires tolerance of lesser inconveniences."

[233] *Hogg v. Chevron USA, Inc.*, 09-2632, 45 So.3d 991, 1003 (La. 7/6/10).

[234] *Bartlett v. Browning–Ferris Indus., Chem. Servs., Inc.*, 683 So.2d 1319, 1321 (La. Ct. App. 3 Cir. 1996).

[235] A.N. Yiannopoulos, 4 LA. CIV. L. TREATISE: PREDIAL SERVITUDES § 3:15; *Alford v. Anadarko E&P Onshore LLC*, No. 13-5457, 2015 WL 471596, at *8 (E.D. La. Feb. 4, 2015) (Vance, J.); *Vekic v. Wood Energy Corp.*, No. 03–1906, 2004 WL 2367732, at *4 (E.D.La. Oct. 20, 2004) (Vance, J.); *accord Yokum v. 615 Bourbon Street, L.L.C.*, 07-1785, (La. 2/26/08) 977 So.2d 859, 874.

failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.[236]

The Louisiana Supreme Court has held that the 1996 amendments to Article 667 "shift[] the absolute liability standard to a negligence standard  similar to that set forth in La. C.C. art. 2317.1."[237]

According to the Louisiana Supreme Court,

The 1996 amendments to article 667 did not change *who* could be held liable under the article, namely, the "proprietor"; rather, it changed the theory of liability under which the proprietor could be held responsible. As a result, in order for a proprietor/landowner to be held responsible for damages allegedly caused by works or actions on his property, it must be shown that the proprietor/landowner knew or should have known that the "works" on his property  would cause damage, and that the damage could have been prevented by the exercise of reasonable care.[238]

In *Brown v. Olin Chemical Corp.*, the United States Court of Appeals for the Fifth Circuit opined that the 1996 amendment to Article 667 applies to Articles 668 and 669 as well, "so that stating a claim under one or more of these articles now requires a showing of negligence."[239]

Accordingly, as another court in this district has stated, "liability under article 667 has always required three elements: (1) a proprietor (2) who conducts 'work' on his property (3) that causes damage to his neighbor. For actions accruing after 1996, a fourth element – negligence –

---

[236] See  La. Civ. Code art. 667, as amended by La. Acts 1996, No. 1 (1st Extraordinary Session) (emphasis added).

[237] *Yokum*, 977 So.2d at 874.

[238] *Id.*

[239] *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200 (5th Cir. 2000).

must also be shown, except for damages resulting from pile driving or blasting with explosives."[240] Plaintiff has not alleged that Defendants engaged in pile driving or blasting with explosives. Therefore, insofar as Plaintiff seeks redress for actions accruing after 1996, Plaintiff's claim against Defendants under Article 667 must be dismissed because, once again, Plaintiff has failed to state a claim for negligence upon which relief may be granted.[241]

Plaintiff's public and private nuisance claims, including those, if any, that accrued before 1996, fail for the additional reason that Plaintiff has not sufficiently alleged that it is a "neighbor," within any conventional sense of the word, to any property of Defendants. Louisiana courts have interpreted "neighbor," as articulated in Article 667, to contemplate estates that are physically close to one another. Similarly, the Fifth Circuit has determined that "[a]lthough courts and commentators disagree about the nature of the interest that a plaintiff must have to bring an action under art. 667, all appear to agree that the plaintiff must have some interest in an immovable near the defendant-proprietor's immovable."[242]   The Fifth Circuit has described Article 667 as "applicable to legal servitudes and covers such obligations of neighborhood as keeping buildings in repair, building projections across property lines,  building encroachments on adjoining property,  common walls, and right of passage to and from an enclosed estate."[243]

In *Barasich*, which was before another court in this District on a Rule 12(b)(6) motion to

---

[240] *Alford v. Anadarko E&P Onshore LLC*,  No. 13-5457, 2015 WL 471596, at *9 (E.D. La. Feb. 4, 2015) (Vance, J.)

[241] *See Hogg v. Chevron USA, Inc.*, 09-2632, 45 So.3d 991, 1003 (La. 7/6/10) (equating the concepts of continuing tort, continuing trespass, and continuing nuisance).

[242] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 386 (5th Cir. 2001) (finding that plaintiffs injured on an offshore oil platform have no right of action under Article 667, which "clearly requires that activity on the defendant's premises must damage the neighbor or the neighboring 'estate'"); *see also Barasich*, 467 F.Supp.2d at 690 (listing Louisiana cases).

[243] *Roberts*, 266 F.3d at 385 (citations omitted).

dismiss, the court stated that "[p]laintiffs' Article 667 claim fails because they do not demonstrate that the 'neighbor' referred to in Article 667 could be a party whose property is physically remote from that of the defendants."[244] Another court applying Louisiana law has found that properties located three miles apart do not constitute "neighbors" as contemplated by Article 667.[245] Accordingly, and despite Plaintiff's arguments to the contrary,[246] although "neighbor" does not strictly require contiguity between the servient and dominant estates, it does require some level of physical proximity between them.[247]

In this case, Plaintiff alleges that Defendants' oil and gas operations have led to coastal erosion in the "Buffer Zone," which "extends from East of the Mississippi River through the Breton Sound Basin, the Biloxi Marsh, and the coastal wetlands of eastern New Orleans and up to Lake St. Catherine."[248] Plaintiff alleges that "oil and gas activity has scarred Louisiana's coast with an extensive network of thousands of miles of oil and gas access and pipeline canals."[249] In the Buffer Zone, Plaintiff alleges that Defendants "bear responsibility for the network of access canals and pipelines throughout 20-plus inland oil and gas fields."[250] Although Plaintiff appears to sufficiently allege that the parties in this matter derive ownership rights from the owners of the properties at

---

[244] *Barasich*, 497 F.Supp.2d at 690.

[245] *In re Katrina Canal Breaches Consol. Litig.*, 647 F.Supp.2d 644, 734 (E.D. La. 2009) *rev'd on other grounds*, 696 F.3d 436 (5th Cir. 2012).

[246] Rec. Doc. 446 at p. 20.

[247] *See Butler v. Baber*, 529 So.2d 374, 377 (La.1988) *holding modified by Inabnet v. Exxon Corp.*, 93-0681, 642 So.2d 1243 (La. 9/6/94).

[248] Rec. Doc. 1-2 at p. 7.

[249] *Id.* at ¶ 6.4.

[250] *Id.* at ¶ 6.10.

issue,[251] Plaintiff has not alleged physical proximity of the servient and dominant estates. In fact, as noted above, Plaintiff states that neither adjacency nor ownership of property is necessary to establish a cause of action for public or private nuisance pursuant to Article 667. However, considering that both Louisiana courts and the United States Court of Appeals for the Fifth Circuit appear to agree that the plaintiff must have some interest in an immovable "near" the defendant proprietor's immovable to recover under Article 667, Plaintiff's public and private nuisance claims must be dismissed.[252]

## E.    Breach of Contract - Third Party Beneficiary

As this Court has previously determined, federal common law controls the interpretation of the permits at issue, which were granted by the United States to Defendants pursuant to federal law.[253]  To make a third-party beneficiary determination under federal common law, courts use the considerations set forth in the Restatement of Contracts.[254] Section 302 of the Restatement (Second) of Contracts provides that: "a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and

---

[251] *See, e.g.,* Rec. Doc. 1 at ¶ 1.3; ¶ 22.

[252] In its Order denying remand, the Court noted that Plaintiff's Petition alleges that the unreasonable interference alleged is in violation of the standard of care as prescribed in the regulatory framework, and that accordingly Plaintiff necessarily raises what conduct constitutes "unreasonable interference" under the Rivers and Harbors Act, the Clean Water Act, and the Coastal Zone Management Act. Since Plaintiff has failed to state a claim for which relief may be granted pursuant to Louisiana law, the Court need not examine the federal regulatory framework at this point.

[253] *See* Rec. Doc. 363 at p. 74 (holding that federal law applies to nonparty breach of contract claims where the contract implicates a federal interest, the United States is a party to the contract, and the contract was entered into pursuant to federal law).

[254] *See, e.g., Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003) (interpreting an arbitration contract under federal common law); *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994) (noting that federal common law "dovetails precisely with general principles of contract law," and "the judicial task in construing a contract is to give effect to the mutual intentions of the parties"); *Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406 (S.D. N.Y. 2013).

... (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." A plaintiff claiming to be the intended third-party beneficiary of a government contract must show that he was intended to benefit from the contract and that third-party beneficiary claims are consistent with the terms of the contract and the policy underlying it.[255]

Plaintiff characterizes at least some of the dredging permits at issue as "contracts" between Defendants and the United States Army Corps of Engineers, but fails to present any authority suggesting that a dredging permit issued by the federal government is a contract. Plaintiff nevertheless asks the Court to conclude that the permits constitute an obligation between a promisee (Defendants) and a promisor (the United States Government through the Corps) to "maintain and restore," and that Plaintiff is a third-party beneficiary of that obligation.[256] Plaintiff cites no authority, however, for the proposition that the third party beneficiary doctrine applies outside of a contractual relationship.

According to Black's Law Dictionary, a permit is "[a] certificate evidencing permission; a license."[257] A license, in turn, is defined as "[a] permission, usually revocable, to commit some act that would otherwise be unlawful . . ."[258]  Courts have consistently held that neither a permit nor a license are contracts.[259] Based on this authority, the Court cannot find that the dredging permits at

---

[255] 17A AM. JUR. 2D CONTRACTS § 429;  *see also Hamilton Equities Inc.*, 941 F.Supp.2d at 418.

[256] Rec. Doc. 485 at  pp. 65:19 – 66:2; p. 68:11-17.

[257] BLACK'S LAW DICTIONARY 1255 (9th ed. 2009).

[258] BLACK'S LAW DICTIONARY 1002 (9th ed. 2009).

[259] *See, e.g., California Pub. Interest Research Grp. v. Shell Oil Co.*, 840 F.Supp. 712, 716 (N.D. Cal. 1993) (An NPDES  permit is not a contract; rather it is a legally enforceable rule drafted by a regulatory agency. ); *Chance Mgmt., Inc. v. State of S.D.*, 97 F.3d 1107 (8th Cir. 1996) (holding that "[p]ublic licensure is not generally contractual in nature: a license neither grants the licensee a property right nor creates a mutual obligation"); *Lichterman v. Pickwick Pines Marina, Inc.*, No. 1:07-256, 2010 WL 1709980, at *2 (N.D. Miss. Apr. 23, 2010) (finding that a license is "[a] permit, granted by an appropriate governmental body, generally for a consideration, to a person, firm or corporation to

issue constitute contracts, such that the third party beneficiary doctrine is applicable.

Even if the permits were construed as contracts, however, Plaintiff has not and cannot establish that it is an intended third party beneficiary under the terms of the permits. To enforce a contract under federal common law, a third party must be an intended, rather than an incidental, beneficiary.[260] Federal courts apply the Restatement (Second) of Contracts to determine whether a third party is an intended beneficiary of a contract.[261] "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."[262]  Section 313 of the Restatement provides that a party is an intended third-party beneficiary to a government contract only if:

> (a) the terms of the promise provide for such liability; or (b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.[263]

---

pursue some occupation or to carry on some business subject to regulation under the police power. A license is not a contract between the [granting governmental body] and the licensee, but is a mere personal permit."); *Toye Bros. Yellow Cab Co. v. Coop. Cab Co.*, 7 So.2d 353, 354 (La. 1942) ("A license is not a contract nor property in any constitutional sense.") (citation omitted).

The Court notes that some courts employ contract interpretation principles when tasked with interpreting the terms of a permit. *See, e.g.*, *Natural Resources Defense Council, Inc. v. Cnty. of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013); *Meadow Green Wildcat Corp. v. Hathaway*, 936 F.2d 601, 605 (1st Cir. 1991) (declining to determine whether the permit at issue "'is' a contract, or  that courts should always consider it as such, we shall treat it like a contract for purposes of deciding how much weight to give the interpretation one party (here the agency) offers for one of its nontechnical terms").

[260] Louisiana law also requires that the third party be an intended beneficiary in order to enforce the contract. *See, e.g.*, *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 2005-2364 (La. 10/15/06, 9); 939 So.2d 1206, 1212 ("The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof.").

[261] *Speleos v. BAC Home Loans Servicing, L.P.*, 755 F.Supp.2d 304, 308 (D. Mass. 2010) (*citing Davis v. United Air Lines, Inc.*, 575 F.Supp. 677, 680 (E.D.N.Y. 1983)).

[262] Restatement (Second) of Contracts § 313 cmt. a. *See also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) (stating that there is a presumption that beneficiaries of government contracts are incidental beneficiaries).

[263] *Id.*

Therefore, where neither prong of the Restatement test is met, any beneficiaries of a government contract are merely incidental beneficiaries.

Plaintiff has not pointed to any language within the permits indicating that it was intended to benefit from the contract.[264] To the contrary, the permits indicate that they were issued for the purpose of complying with federal regulatory schemes.[265] Plaintiff essentially asks the Court to erase the legal distinction between intended and incidental beneficiaries, which would create numerous third-party beneficiaries under the so-called contracts.[266] The Court declines Plaintiff's invitation to expand the law. Considering that any benefit that might flow to Plaintiff pursuant to the permits is merely incidental, the Court finds that Plaintiff fails to state a claim upon which relief may be granted for breach of contract as a third party beneficiary.

## VI. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Joint Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)"[267] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this ___13th___ day of February, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[264] *See id.*

[265] For example, Plaintiff's Petition identifies the "Lake Borgne 59" permit issued to Chevron Oil Company on December 23, 1975. Rec. Doc. 1-2 at p. 113. As this Court stated in its Order denying Plaintiff's motion to remand, this permit was issued by the Department of the Army pursuant to the Rivers and Harbors Act and the Federal Water Pollution Control Act. *See* Rec. Doc. 260-6 at pp. 2–18; Rec. Doc. 363 at p. 69, n. 394.

[266] *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 376 (5th Cir. 2003).

[267] Rec. Doc. 427.

49